**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| REVEL AC, INC., <u>et al.</u>, | ) | Case No. 14-22654 (GMB) |
| | ) | |
| Debtors.[1] | ) | Jointly Administered |
| | ) | |

**JOINT CHAPTER 11 PLAN FOR REVEL AC, INC. AND ITS AFFILIATED DEBTORS**

Dated: June 19, 2014

**FOX ROTHSCHILD LLP**
(Formed in the Commonwealth of Pennsylvania)
Michael J. Viscount, Jr., Esq.
Raymond M. Patella, Esq.
1301 Atlantic Avenue, Suite 400
Atlantic City, NJ 08401
(609) 348-4515/fax (609) 348-6834
mviscount@foxrothschild.com
rpatella@foxrothschild.com

**WHITE & CASE LLP**
John K. Cunningham, Esq. (*pro hac vice* pending)
Richard S. Kebrdle, Esq. (*pro hac vice* pending)
Kevin M. McGill, Esq. (*pro hac vice* pending)
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, FL 33131
(305) 371-2700/fax (305) 358-5744
jcunningham@whitecase.com
rkebrdle@whitecase.com
kmcgill@whitecase.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are:  Revel AC, Inc. (3856), Revel AC, LLC (4456), Revel Atlantic City, LLC (9513), Revel Entertainment Group, LLC (2321), NB Acquisition, LLC (9387) and SI LLC (3856).  The location of the Debtors' corporate headquarters is 500 Boardwalk, Atlantic City, New Jersey 08401.

# TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINITIONS AND INTERPRETATION.................................................1

  1.1.   Definitions.................................................................................................1
  1.2.   Interpretation...........................................................................................10
  1.3.   Application of Definitions and Rules of Construction Contained in the
         Bankruptcy Code. ..................................................................................10
  1.4.   Other Terms. ...........................................................................................10
  1.5.   Appendices and Plan Documents............................................................10

ARTICLE II. RESOLUTION OF CERTAIN INTER-DEBTOR ISSUES ...................11

  2.1.   Settlement of Intercompany Claims........................................................11
  2.2.   Treatment of Guaranty and Joint Liability Claims Against a Debtor....11
  2.3.   Intercompany Claims. .............................................................................11

ARTICLE III. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS .........11

  3.1.   Administrative Claims and Tax Claims...................................................11
  3.2.   Claims and Equity Interests. ..................................................................12
  3.3.   Separate Classification of Non-Lender Secured Claims.........................12

ARTICLE IV. IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND
   EQUITY INTERESTS..................................................................................12

  4.1.   Unimpaired Classes of Claims and Equity Interests...............................12
  4.2.   Impaired Classes of Claims and Equity Interests. .................................12
  4.3.   Impairment Controversies.......................................................................13

ARTICLE V. PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY
   INTERESTS UNDER THE PLAN ...............................................................13

  5.1.   Claims and Equity Interests. ..................................................................13

ARTICLE VI. PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS
   UNDER THE PLAN.....................................................................................14

  6.1.   Unclassified Claims. ...............................................................................14
  6.2.   Treatment of Administrative Claims. .....................................................14
  6.3.   Treatment of Tax Claims. .......................................................................16

ARTICLE VII. ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF
   REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY
   INTERESTS .................................................................................................16

  7.1.   Classes Entitled to Vote..........................................................................16
  7.2.   Class Acceptance Requirement................................................................16
  7.3.   Cramdown.................................................................................................16

i

ARTICLE VIII. MEANS FOR IMPLEMENTATION OF THE PLAN .......................................17

8.1.    Corporate Action.................................................................................17
8.2.    Consummation of the Sale. ..................................................................17
8.3.    Sources of Cash for Plan Distributions...................................................17
8.4.    Cancellation of Instruments. ................................................................17
8.5.    Oversight Committee. ........................................................................18
8.6.    Releases by the Debtors. .....................................................................19
8.7.    Releases by Creditors and Equity Security Holders. ...............................19

ARTICLE IX. THE PLAN TRUST ................................................................................20

9.1.    Execution of the Plan Trust Agreement..................................................20
9.2.    Purpose of Plan Trust........................................................................20
9.3.    Vesting of Assets in the Plan Trust; Dissolution of the Debtor...................20
9.4.    Governance of Plan Trust. ..................................................................21
9.5.    Role of the Plan Trustee. ....................................................................21
9.6.    Cash.................................................................................................21
9.7.    Compensation of the Plan Trustee. .......................................................22
9.8.    Retention of Professionals by the Plan Trustee. ......................................22
9.9.    Noncertificated Plan Trust Interests.......................................................22
9.10.   Dissolution of the Plan Trust. ..............................................................22
9.11.   Securities Exempt. ............................................................................22

ARTICLE X. PLAN DISTRIBUTION PROVISIONS .......................................................22

10.1.   Plan Distributions..............................................................................22
10.2.   Timing of Plan Distributions. ..............................................................23
10.3.   Address for Delivery of Plan Distributions/Unclaimed Plan Distributions...........23
10.4.   Time Bar to Cash Payments.................................................................23
10.5.   Manner of Payment under the Plan........................................................23
10.6.   Fractional Plan Distributions................................................................24
10.7.   De Minimis Distributions. ...................................................................24

ARTICLE XI. PROCEDURES FOR RESOLVING AND TREATING CONTESTED
CLAIMS ...............................................................................................................24

11.1.   Objection Deadline. ...........................................................................24
11.2.   Prosecution of Contested Claims...........................................................24
11.3.   Claims Settlement. .............................................................................24
11.4.   Entitlement to Plan Distributions upon Allowance. ..................................25
11.5.   Estimation of Claims...........................................................................25

ARTICLE XII. CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN
AND THE OCCURRENCE OF THE EFFECTIVE DATE...............................................25

12.1.   Conditions Precedent to Confirmation....................................................25
12.2.   Conditions Precedent to the Occurrence of the Effective Date. ..................26
12.3.   Waiver of Conditions..........................................................................26

12.4.    Effect of Non-Occurrence of the Effective Date. ...................................................26
12.5.    Option to Delay Occurrence of the Effective Date. .............................................26

ARTICLE XIII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ..............................................................................................27

13.1.    Assumption and Rejection of Executory Contracts and Unexpired Leases. .........27
13.2.    Cure. .................................................................................................................28
13.3.    Claims Arising from Rejection, Expiration or Termination. ...............................29

ARTICLE XIV. RETENTION OF JURISDICTION ....................................................................29

ARTICLE XV. MISCELLANEOUS PROVISIONS .................................................................31

15.1.    Payment of Statutory Fees. ..............................................................................31
15.2.    Satisfaction of Claims. .....................................................................................31
15.3.    Special Provisions Regarding Insured Claims. ...................................................32
15.4.    Third Party Agreements; Subordination. ............................................................32
15.5.    Exculpation. ......................................................................................................32
15.6.    Notices. .............................................................................................................33
15.7.    Headings. ..........................................................................................................34
15.8.    Governing Law. .................................................................................................34
15.9.    Exemption from Transfer Taxes. .......................................................................34
15.10.  Notice of Entry of Confirmation Order and Relevant Dates. ..............................34
15.11.  Interest and Attorneys' Fees. ............................................................................34
15.12.  Modification of the Plan. ...................................................................................35
15.13.  Revocation of Plan. ...........................................................................................35
15.14.  Setoff Rights. ...................................................................................................35
15.15.  Compliance with Tax Requirements. ..................................................................35
15.16.  Rates. ................................................................................................................36
15.17.  Dissolution of the Committee. ..........................................................................36
15.18.  Injunctions. .......................................................................................................36
15.19.  Binding Effect. ..................................................................................................37
15.20.  Severability. ......................................................................................................37
15.21.  No Admissions. .................................................................................................37

Revel AC, Inc. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases hereby collectively and jointly propose the following chapter 11 plan:

## ARTICLE I.

## DEFINITIONS AND INTERPRETATION

### 1.1.  Definitions.

The capitalized terms used herein shall have the respective meanings set forth below:

(a)      "Administrative Claim" means a Claim incurred by the Debtors (or their Estates) on or after the Petition Date and before the Effective Date for a cost or expense of administration in the Chapter 11 Cases entitled to priority under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, Fee Claims.

(b)      "Allowed," when used

　　(1)      with respect to any Claim, except for a Claim that is an Administrative Claim, means such Claim to the extent it is not a Contested Claim or a Disallowed Claim;

　　(2)      with respect to an Administrative Claim, means such Administrative Claim to the extent it has become fixed in amount and priority pursuant to the procedures set forth in Section 6.2(c) of this Plan; and

　　(3)      with respect to Equity Interests in any Debtor, means the Equity Interests in such Debtor as reflected in the stock transfer ledger or similar register of such Debtor as of the Effective Date.

(c)      "Asset Purchase Agreement" means that certain Asset Purchase Agreement between the Buyer and the Debtors which sets forth the terms of the Sale, substantially in the form filed with the Bankruptcy Court as a Plan Document.

(d)      "Assets" means all of the Debtors' right, title and interest of any nature in property of any kind, wherever located, as specified in section 541 of the Bankruptcy Code.

(e)      "Auction" means the auction of substantially all of the Debtors' Assets in accordance with the Bid Procedures Order.

(f)      "Available Proceeds" means, at any time, the amount of Cash on hand held by the Debtors or the Plan Trust on and after the Effective Date, excluding amounts sufficient to repay in full and in Cash (i) all Allowed DIP Claims, (ii) all Allowed Non-Lender Secured Claims (including the Non-Lender Secured Reserve), (iii) all Allowed Administrative Claims, (iv) all Allowed Tax Claims, and (v) all Allowed Priority Claims.

(g)      "Avoidance Actions" means all Causes of Action of the Estates that arise under section 542, 544, 545, 547, 548, 549, 550, 551, 552 and/or 553 of the Bankruptcy Code, except

1

any such Causes of Action transferred to the Buyer pursuant to the terms of the Asset Purchase Agreement.

(h)    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified at title 11 of the United States Code, as amended from time to time and applicable to the Chapter 11 Cases.

(i)    "Bankruptcy Court" means the United States Bankruptcy Court for the District of New Jersey.

(j)    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code and as applicable to the Chapter 11 Cases.

(k)    "Bar Date Notice" means the Notice of Establishment of Bar Dates for Filing Proofs of Claim for Prepetition Claims, as approved by the Bar Date Order.

(l)    "Bar Date Order" means the Order of the Bankruptcy Court (i) Establishing Bar Dates for Filing Proofs of Claim for Prepetition Claims Against the Debtors; (ii) Establishing Ramifications for Failure to Comply Therewith; (iii) Approving Electronic Proof of Claim Systems and Form of Proof of Claim; and (iv) Approving Form and Manner of Bar Date Notice and Publication Notice.

(m)    "Bid Procedures Order" means the order of the Bankruptcy Court approving procedures for the Sale of the Debtors' Assets and scheduling the Auction (if any) with respect thereto.

(n)    "Business Day" means any day other than a Saturday, a Sunday or any other day on which commercial banks are required or authorized to close for business in New York, New York.

(o)    "Buyer" means the bidder selected by the Debtors, in accordance with the Bid Procedures Order, as having made at the Auction the highest and best offer as determined by the Debtors to purchase substantially all of the Debtors' Assets in accordance with the Asset Purchase Agreement.

(p)    "Cash" means legal tender of the United States of America or readily marketable direct obligations of, or obligations guaranteed by, the United States of America.

(q)    "Causes of Action" means all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, asserted or unasserted, arising in law, equity or otherwise.

(r)      "Chapter 11 Cases" means the cases commenced under chapter 11 of the Bankruptcy Code pending before the Bankruptcy Court with respect to the Debtors styled as In re Revel AC, Inc., Chapter 11 Case No. 14-22654 (GMB).

(s)      "Claim" means (a) any right to payment, whether or not such right is known or unknown, reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is known or unknown, reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.   For the avoidance of doubt, "Claim" includes, without limitation, a right to payment, or equitable relief that gives rise to a right to payment, that has or has not accrued under non-bankruptcy law that is created by one or more acts or omissions of the Debtors if: (a) the act(s) or omission(s) occurred before or at the time of the Effective Date; (b) the act(s) or omission(s) may be sufficient to establish liability when injuries/damages are manifested; and (c) at the time of the Effective Date, the Debtors have received one or more demands for payment for injuries or damages arising from such acts or omissions.

(t)      "Claim Objection Deadline" means the deadline for filing objections to Claims as set forth in Section 11.1 of the Plan.

(u)      "Claims Agent" means the Person designated by order of the Bankruptcy Court to process proofs of claim.

(v)      "Committee" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases.

(w)      "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

(x)      "Confirmation Hearing" means the hearing held by the Bankruptcy Court, as it may be continued from time to time, to consider confirmation of the Plan.

(y)      "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan.

(z)      "Contested" (a) when used with respect to a Claim, means such Claim (i) to the extent it is listed in the Schedules as disputed, contingent, or unliquidated, in whole or in part, and as to which no proof of claim has been filed; (ii) if it is listed in the Schedules as undisputed, liquidated, and not contingent and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent (A) the proof of claim amount exceeds the amount indicated in the Schedules, or (B) the proof of claim priority differs from the priority set forth in the Schedules, in each case as to which an objection was filed on or before the Claim Objection Deadline, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court or the Plan; (iii) if it is not listed in the Schedules or was listed in the Schedules as disputed, contingent or unliquidated, in whole or in part, but as to which a proof of claim has been filed with the Bankruptcy Court, in each case as to which an objection was filed

on or before the Claim Objection Deadline, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court or the Plan; or (iv) as to which an objection has been filed on or before the Effective Date; provided, that a Claim that is fixed in amount and priority pursuant to the Plan or by Final Order on or before the Effective Date shall not be a Contested Claim; and (b) when used with respect to an Equity Interest, means such Equity Interest to the extent it is not reflected on the applicable Debtor's stock transfer register as of the Effective Date.

(aa)    "Debtors" means, collectively, Revel AC, Inc., Revel AC, LLC, Revel Atlantic City, LLC, Revel Entertainment Group, LLC, NB Acquisition, LLC and SI LLC.

(bb)    "Debtor in Possession" means any Debtor, in its capacity as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

(cc)    "DIP Agent" means Wells Fargo Bank, N.A., as administrative agent and collateral agent under the DIP Credit Agreement.

(dd)    "DIP Claims" means any Claim against the Debtors arising from or related to the DIP Documents and any Claim by the DIP Agent and the DIP Lenders under the Final DIP Order.

(ee)    "DIP Credit Agreement" means that certain Debtor-in-Possession Credit Agreement dated as of June 19, 2014, by and among Revel AC, Inc., as borrower, the other Debtors, as guarantors, the DIP Lenders and the DIP Agent.

(ff)    "DIP Documents" means the DIP Credit Agreement, together with all documents, instruments and agreements executed or entered into in connection therewith, and any amendments thereto.

(gg)    "DIP Lenders" means the lenders party to the DIP Credit Agreement.

(hh)    "Disallowed" when used with respect to a Claim, means a Claim, or such portion of a Claim, that has been disallowed by a Final Order.

(ii)    "Disclosure Statement" means the disclosure statement filed with respect to the Plan, as it may be amended, supplemented or otherwise modified from time to time, and the exhibits and schedules thereto.

(jj)    "Disclosure Statement Order" means the order entered by the Bankruptcy Court (a) approving the Disclosure Statement as containing adequate information required under section 1125 of the Bankruptcy Code, and (b) authorizing the use of the Disclosure Statement for soliciting votes on the Plan.

(kk)    "Effective Date" means, with respect to each Debtor, a date selected by such Debtor which shall be a Business Day that is no later than three (3) days after all of the conditions specified in Section 12.2 have been satisfied or waived (to the extent waivable).

(ll)     "Equity Interest" means (i) any outstanding ownership interest in any of the Debtors, including, without limitation, interests evidenced by common or preferred stock, membership interests, options, stock appreciation rights, restricted stock, restricted stock units or their equivalents, or other rights to purchase or otherwise receive any ownership interest in any Debtor and any right to payment or compensation based upon any such interest, whether or not such interest is owned by the holder of such right to payment or compensation, and (ii) any Claim against any of the Debtors that is subordinated and has the same priority as common or preferred stock by operation of the Bankruptcy Code or any order entered by the Bankruptcy Court.

(mm)    "Estate" means the estate of any Debtor created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

(nn)     "Exculpated Parties" means all Persons that are or were at any time on or after the Petition Date, and whether or not any such Person currently retains such capacity or position, (i) the Debtors; (ii) the directors, officers, agents, members of management and other employees of the Debtors, respectively; (iii) the Committee and its members; and (iv) predecessors, successors and assigns, subsidiaries, affiliates, members, partners, officers, directors, agents, attorneys, advisors, accountants, investment bankers, consultants, and other professionals, to the extent such parties are or were acting in such capacity of any of the Persons identified in (i) through (iv) above.

(oo)     "Fee Application" means an application for allowance and payment of a Fee Claim (including Claims for "substantial contribution" pursuant to section 503(b) of the Bankruptcy Code).

(pp)     "Fee Claim" means a Claim of a Professional Person.

(qq)     "Final Order" means (a) an order or judgment of the Bankruptcy Court or any other court or adjudicative body as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending, or (b) in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or any other court or adjudicative body shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order.

(rr)     "Final DIP Order" means the order approving the DIP Credit Agreement and related documents on a final basis entered by the Bankruptcy Court on [_____], 2014 [Docket No. __], as the same may be amended or modified from time to time.

(ss)     "First Lien Agent" means JPMorgan Chase Bank, N.A., as administrative and collateral agent under the First Lien Credit Documents.

(tt)     "First Lien Collateral" means assets of the Debtors securing the Debtors' obligations under the First Lien Credit Documents.

(uu)     "First Lien Credit Documents" means that certain Amended and Restated First-Lien Credit Agreement dated as of November 8, 2013, by and among Revel AC, Inc., as borrower, the guarantors party thereto, the lenders party thereto and JPMorgan Chase Bank, N.A., as administrative agent and collateral agent, together with all documents, instruments and agreements executed or entered into in connection therewith, and any amendments thereto.

(vv)     "First Lien Intercreditor Rights" means all intercreditor rights of the First Lien Agent and the First Lien Lenders with respect to any Lender Claim (including priority, payment and subordination provisions with respect thereto) under the First Lien Credit Documents.

(ww)     "First Lien Lender Claim" means a Claim of the First Lien Agent and the First Lien Lenders arising under the First Lien Credit Documents.

(xx)     "First Lien Lenders" means the lenders under the First Lien Credit Documents.

(yy)     "First Lien Tranche B Lenders" means lenders having a term loan commitment or holding a term loan under the First Lien Credit Documents.

(zz)     "General Bar Date" means the general bar date established pursuant to the Bar Date Order.

(aaa)     "Insider" means a Person that would fall within the definition assigned to such term in section 101(31) of the Bankruptcy Code.

(bbb)     "Insured Claim" means any Claim against a Debtor for which the Debtor is entitled to indemnification, reimbursement, contribution or other payment under a policy of insurance wherein the Debtor is an insured or beneficiary of the coverage of any of the Debtors.

(ccc)     "Intercompany Claim" means a Claim held by any Debtor against any other Debtor.

(ddd)     "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended, and any applicable rulings, regulations (including temporary and proposed regulations) promulgated thereunder, judicial decisions, and notices, announcements and other releases of the United States Treasury Department or the IRS.

(eee)     "IRS" means the United States Internal Revenue Service.

(fff)     "Lender Claim" means a First Lien Lender Claim or a Second Lien Lender Claim.

(ggg)     "Non-Lender Secured Claim" means a Claim, other than a Lender Claim, that is (a) secured by a lien on any Assets, which lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, and which is duly established in the Chapter 11 Cases, but only to the extent of the value of the holder's interest in the collateral that secures payment of the Claim; (b) asserted

against any Debtor that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in section 506(a) of the Bankruptcy Code; and (c) deemed or treated under the Plan as a Non-Lender Secured Claim.

(hhh)   "Non-Lender Secured Reserve" means the Cash reserve set aside out of the Sale Consideration to adequately protect the interests of Contested Non-Lender Secured Claims in an amount to be determined by the Bankruptcy Court.

(iii)   "Notice of Confirmation" means the notice of entry of the Confirmation Order to be filed with the Bankruptcy Court and mailed by the Claims Agent to holders of Claims and Equity Interests.

(jjj)   "Oversight Committee" means the committee consisting of three members selected by the Debtors (after consultation with the First Lien Lenders, the Steering Committee and the Committee), which shall oversee the implementation and administration of the Plan Trust and the Plan.  A list of the members of the Oversight Committee shall be filed with the Bankruptcy Court as a Plan Document.

(kkk)   "Person" means an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

(lll)   "Petition Date" means the date on which the Chapter 11 Cases were commenced.

(mmm)"Plan" means this chapter 11 plan, either in its present form or as it may be amended, supplemented or otherwise modified from time to time, and the exhibits and schedules hereto, as the same may be in effect at the time such reference becomes operative.

(nnn)   "Plan Distribution" means the payment or distribution under the Plan of Cash, Assets, securities or instruments evidencing an obligation under the Plan to the holder of an Allowed Claim.

(ooo)   "Plan Distribution Date" means (i) with respect to any Claim other than an Unsecured Claim, (a) if such Claim is Allowed on the Effective Date, a date that is as soon as reasonably practicable after the Effective Date, or (b) if such Claim is not Allowed on the Effective Date, a date that is as soon as reasonably practicable after the date such Claim becomes Allowed, and (ii) with respect to any Unsecured Claim, such date(s) that the Plan Trustee determines in its reasonable discretion, provided, however, that Plan Distributions shall be subject to Available Proceeds in accordance with the Plan at the time of any such Plan Distribution Date.

(ppp)   "Plan Documents" means the compilation of documents and forms of documents, schedules and exhibits to the Plan that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Section 1.5 of the Plan including, without limitation, the Asset Purchase Agreement and the Plan Trust Agreement.

(qqq)    "Plan Trust" means the trust established pursuant to Article IX of the Plan.

(rrr)    "Plan Trust Agreement" means the agreement governing the Plan Trust, dated as of the Effective Date, which shall be substantially in the form filed with the Bankruptcy Court as a Plan Document.

(sss)    "Plan Trust Beneficiaries" means all individuals and entities entitled to a Plan Distribution from the Plan Trust.

(ttt)    "Plan Trust Expenses" means all reasonable costs and expenses incurred on or after the Effective Date by the Plan Trustee and the Oversight Committee associated with the implementation and administration of the Plan Trust and the Plan.

(uuu)    "Plan Trustee" means the trustee selected by the Debtors (after consultation with the First Lien Lenders, the Steering Committee and the Committee) pursuant to Article IX of the Plan to manage the Plan Trust, with the identity of the initial such trustee filed with the Bankruptcy Court as a Plan Document no later than five (5) business days prior to the hearing on the adequacy of the Disclosure Statement.

(vvv)    "Priority Claim" means any Claim to the extent such Claim is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than Non-Lender Secured Claims, First Lien Lender Claims, Second Lien Lender Claims, Administrative Claims and Tax Claims.

(www)    "Professional Person" means a Person retained or to be compensated for services rendered or costs incurred on or after the Petition Date and on or prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in the Chapter 11 Cases.

(xxx)    "Pro Rata Share" means the proportion that an Allowed Claim bears to the aggregate amount of all Claims in a particular class, including Contested Claims, but excluding Disallowed Claims, (a) as calculated by the Plan Trustee; or (b) as determined or estimated by the Bankruptcy Court.

(yyy)    "Released Parties" means all Persons that are or were at any time on or after the Petition Date, and whether or not any such Person currently retains such capacity or position, (i) Debtors; (ii) directors, officers, agents, members of management and other employees of the Debtors, respectively; (iii) the Steering Committee, its members and their respective agents; (iv) the Plan Trustee; (v) the Committee and its members; (vi) the DIP Lenders and DIP Agent; and (vii) predecessors, successors and assigns, subsidiaries, affiliates, members, partners, officers, directors, agents, attorneys, advisors, accountants, investment bankers, consultants, and other professionals, to the extent such parties are or were acting in such capacity of any of the Persons identified in (i) through (vi) above.

(zzz)    "Revel" means Revel AC, Inc.

(aaaa)    "Sale" means the sale of substantially all of the Debtors' assets to the Buyer.

8

(bbbb) "Sale Consideration" means the consideration received by the Debtors from the Buyer in the Sale.

(cccc)  "Schedules" means, unless otherwise stated, the schedules of assets and liabilities and list of Equity Interests and the statements of financial affairs filed by the Debtors with the Bankruptcy Court, as required by section 521 of the Bankruptcy Code and in conformity with the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be amended or supplemented by the Debtors from time to time in accordance with Bankruptcy Rule 1009.

(dddd) "Second Lien Agent" means Wilmington Trust, N.A., as administrative and collateral agent under the Second Lien Credit Documents.

(eeee)  "Second Lien Collateral" means assets of the Debtors securing the Debtors' obligations under the Second Lien Credit Documents.

(ffff)   "Second Lien Credit Documents" means that certain Second-Lien Credit Agreement dated as of May 21, 2013, as amended from time to time, together with all documents, instruments and agreements executed or entered into in connection therewith, and any amendments thereto.

(gggg) "Second Lien Intercreditor Rights" means all intercreditor rights of the Second Lien Agent and the Second Lien Lenders with respect to any Lender Claim (including priority, payment and subordination provisions with respect thereto) under the Second Lien Credit Documents.

(hhhh) "Second Lien Lender Claim" means a Claim of the Second Lien Agent and the Second Lien Lenders arising under the Second Lien Credit Documents.

(iiii)    "Second Lien Lenders" means the lenders under the Second Lien Credit Documents.

(jjjj)    "Securities Act" means the Securities Act of 1933, 15 U.S.C. §§ 77a, et seq.

(kkkk) "Solicitation Agent" means the Person designated by order of the Bankruptcy Court to act as the Debtors' agent in soliciting the Plan and tabulating votes in connection with the Plan.

(llll)    "Steering Committee" means the informal committee comprised of First Lien Tranche B Lenders and Second Lien Lenders.

(mmmm)       "Tax Claim" means a Claim against any of the Debtors that is of a kind specified in section 507(a)(8) of the Bankruptcy Code.

(nnnn) "Unsecured Claim" means any Claim against any of the Debtors other than an Administrative Claim, a Priority Claim, a Tax Claim, a Fee Claim, a Non-Lender Secured Claim, a First Lien Lender Claim or a Second Lien Lender Claim.

(oooo) "Voting Deadline" means the deadline established by an order of the Bankruptcy Court for voting to accept or reject the Plan.

**1.2.    Interpretation.**

Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of or exhibit to the Plan, as the same may be amended, waived or modified from time to time.  Words denoting the singular number shall include the plural number and vice versa, as appropriate, and words denoting one gender shall include the other gender. The Disclosure Statement may be referred to for purposes of interpretation to the extent any term or provision of the Plan is determined by the Bankruptcy Court to be ambiguous.

**1.3.    Application of Definitions and Rules of Construction Contained in the Bankruptcy Code.**

Words and terms defined in section 101 of the Bankruptcy Code shall have the same meanings when used in the Plan, unless a different definition is given in Section 1.1 or elsewhere in the Plan.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

**1.4.    Other Terms.**

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.

**1.5.    Appendices and Plan Documents.**

All appendices to the Plan and the Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein.  Except as otherwise provided herein, all Plan Documents shall be filed with the Bankruptcy Court not less than five (5) days prior to the Voting Deadline.  Holders of Claims and Equity Interests may obtain a copy of the Plan Documents, once filed, at www.deb.uscourts.gov and revelcaseinfo.com, or by a written request sent to:

> White & Case LLP
> Southeast Financial Center
> 200 South Biscayne Boulevard, Suite 4900
> Miami, Florida 33131
> Attention:  Mark B. Fuhr
> Facsimile:   (305) 358-5744

10

# ARTICLE II.

## RESOLUTION OF CERTAIN INTER-DEBTOR ISSUES

**2.1.    Settlement of Intercompany Claims.**

In settlement and compromise of certain existing and potential disputes regarding Intercompany Claims and related matters, pursuant to sections 1123(b)(3) and (6) of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan treats the Debtors as comprising a single Estate solely for purposes of voting on the Plan, confirmation of the Plan and making Plan Distributions in respect of Claims against and Equity Interests in the Debtors under the Plan. Such treatment shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, nor cause the transfer of any assets; and, except as otherwise provided by or permitted in the Plan, all Debtors shall continue to exist as separate legal entities.  The above treatment serves only as a mechanism to effect a fair distribution of value to the Debtors' constituencies.

**2.2.    Treatment of Guaranty and Joint Liability Claims Against a Debtor.**

Any holder of a Claim against a Debtor and a Claim based on a guaranty of such base Claim given by a Debtor shall receive only a single recovery in respect of such Claims.  Any holder of a Claim against a Debtor and a Claim against another Debtor based on joint or joint and several liability of such Debtors shall receive only a single recovery in respect of such Claims.

**2.3.    Intercompany Claims.**

Except as otherwise provided in the Plan, Intercompany Claims and Administrative Claims between and among the Debtors shall, solely for purposes of receiving Plan Distributions, be deemed resolved as a result of the settlement and compromise described in Section 2.1 and therefore not entitled to any Plan Distribution and shall not be entitled to vote on the Plan.

# ARTICLE III.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

For the purposes of organization, voting and all confirmation matters, except as otherwise provided herein, all Claims against and all Equity Interests in the Debtors shall be classified as set forth in this Article III.

**3.1.    Administrative Claims and Tax Claims.**

As provided by section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Tax Claims shall not be classified under the Plan, and shall instead be treated separately as unclassified Claims on the terms set forth in Article VI.

**3.2.** **Claims and Equity Interests.**

The classes of Claims against and the Equity Interests in the Debtors shall be classified under the Plan as follows:

Class 1 – Priority Claims.  Class 1 shall consist of all Priority Claims against the Debtors.

Class 2 – Non-Lender Secured Claims.  Class 2 shall consist of all Non-Lender Secured Claims against the Debtors.

Class 3 – First Lien Lender Claims.  Class 3 shall consist of all First Lien Lender Claims against the Debtors.

Class 4 – Second Lien Lender Claims.  Class 4 shall consist of all Second Lien Lender Claims against the Debtors.

Class 5 – Unsecured Claims.  Class 5 shall consist of all Unsecured Claims against the Debtors.

Class 6 – Revel Equity Interests.  Class 6 shall consist of all Equity Interests in Revel.

Class 7 – Other Equity Interests.  Class 7 shall consist of all Equity Interests in the Debtors, other than Revel.

**3.3.** **Separate Classification of Non-Lender Secured Claims.**

Although Non-Lender Secured Claims against the Debtors have been placed in one category for purposes of nomenclature, each such Non-Lender Secured Claim shall be treated as a separate class for purposes of voting on the Plan and receiving Plan Distributions (to be designated as Class 2A, 2B, 2C, etc.).

## ARTICLE IV.

### IDENTIFICATION OF IMPAIRED
### CLASSES OF CLAIMS AND EQUITY INTERESTS

**4.1.** **Unimpaired Classes of Claims and Equity Interests.**

Class 1 – Priority Claims, Class 2 – Non-Lender Secured Claims and Class 7 – Other Equity Interests are not impaired under the Plan.

**4.2.** **Impaired Classes of Claims and Equity Interests.**

Class 3 – First Lien Lender Claims, Class 4 – Second Lien Lender Claims, Class 5 – Unsecured Claims and Class 6 – Revel Equity Interests are impaired under the Plan.

**4.3.     Impairment Controversies.**

If a controversy arises as to whether any Claim or Equity Interest, or any class of Claims or Equity Interests, is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

## ARTICLE V.

## PROVISIONS FOR TREATMENT OF CLAIMS
## AND EQUITY INTERESTS UNDER THE PLAN

**5.1.     Claims and Equity Interests.**

The classes of Claims against the Debtors and Equity Interests in the Debtors shall be treated under the Plan as follows:

(a)     Class 1 – Priority Claims.

Each holder of an Allowed Priority Claim against the Debtors shall be unimpaired under the Plan and, pursuant to section 1124 of the Bankruptcy Code, all legal, equitable and contractual rights of each holder of an Allowed Priority Claim in respect of such Claim shall be fully reinstated and retained, except as provided in sections 1124(2)(A)-(D) of the Bankruptcy Code, and such holder of an Allowed Priority Claim shall be paid on the Plan Distribution Date in full and in Cash.

(b)     Class 2 – Non-Lender Secured Claims.

Each holder of an Allowed Non-Lender Secured Claim against the Debtors shall be unimpaired under the Plan and, pursuant to section 1124 of the Bankruptcy Code, all legal, equitable and contractual rights of each holder of an Allowed Non-Lender Secured Claim in respect of such Claim shall be fully reinstated and retained, except as provided in sections 1124(2)(A)-(D) of the Bankruptcy Code, and such holder of an Allowed Non-Lender Secured Claim shall be paid on the Plan Distribution Date in full and in Cash.

(c)     Class 3 – First Lien Lender Claims.

Subject to and in accordance with the First Lien Intercreditor Rights, each holder of an Allowed First Lien Lender Claim against the Debtors shall receive on the Plan Distribution Date, in full satisfaction of its Allowed First Lien Lender Claim, its Pro Rata Share of the Available Proceeds which constitute proceeds of the First Lien Collateral until such Allowed First Lien Lender Claim is paid in full and in Cash.

(d)     Class 4 – Second Lien Lender Claims.

Subject to the prior payment in full and in Cash of all Allowed First Lien Lender Claims and in accordance with the Second Lien Intercreditor Rights, each holder of an Allowed Second Lien Lender Claim against the Debtors shall receive on the Plan Distribution Date, in full satisfaction of its Allowed Second Lien Lender Claim, its Pro Rata Share of the Available

Proceeds which constitute proceeds of the Second Lien Collateral until such Allowed Second Lien Lender Claim is paid in full and in Cash.

(e)    Class 5 – Unsecured Claims.

Subject to the prior payment in full and in Cash of all Allowed Non-Lender Secured Claims and Allowed Lender Claims, each holder of an Allowed Unsecured Claim against the Debtors shall receive on the Plan Distribution Date, in full satisfaction of its Allowed Unsecured Claim, its Pro Rata Share of the Available Proceeds.

(f)    Class 6 – Revel Equity Interests.

On the Effective Date, all Equity Interests in Revel shall be cancelled, and each holder of an Equity Interest in Revel shall neither receive nor retain any property under the Plan on account such interest.

(g)    Class 7 – Other Equity Interests.

On the Effective Date, each holder of an Allowed Equity Interest in any Debtor other than Revel shall be unimpaired under the Plan and, pursuant to section 1124 of the Bankruptcy Code, all of the legal, equitable and contractual rights to which such Equity Interest entitles such holder in respect of such Equity Interest shall be fully reinstated and retained on and after the Effective Date.

## ARTICLE VI.

## PROVISIONS FOR TREATMENT
## OF UNCLASSIFIED CLAIMS UNDER THE PLAN

**6.1.    Unclassified Claims.**

Administrative Claims and Tax Claims are treated in accordance with sections 1129(a)(9)(A) and 1129(a)(9)(C) of the Bankruptcy Code, respectively.  Such Claims are not designated as classes of Claims for the purposes of this Plan or for the purposes of sections 1123, 1124, 1125, 1126 or 1129 of the Bankruptcy Code.

**6.2.    Treatment of Administrative Claims.**

All Administrative Claims shall be treated as follows:

(a)    Time for Filing Administrative Claims.

The holder of an Administrative Claim, other than (i) a Fee Claim, (ii) a DIP Claim, (iii) a claim under section 503(b)(9) of the Bankruptcy Code, (iv) a liability incurred and payable in the ordinary course of business by a Debtor (and not past due), or (v) an Administrative Claim that has been Allowed on or before the Effective Date, must file with the Bankruptcy Court and serve on the Debtors, the Committee and the Office of the United States

Trustee, notice of such Administrative Claim within forty (40) days after service of Notice of Confirmation.  Such notice must include at a minimum (i) the name of the holder of the Claim, (ii) the amount of the Claim, and (iii) the basis of the Claim.  **Failure to file and serve such notice timely and properly shall result in the Administrative Claim being forever barred and discharged.**

> (b)    Time for Filing Fee Claims.

Each Professional Person who holds or asserts a Fee Claim shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, a Fee Application within forty-five (45) days after the Effective Date.  **The failure to timely file and serve such Fee Application shall result in the Fee Claim being forever barred and discharged.**

> (c)    Allowance of Administrative Claims/Fee Claims.

An Administrative Claim (i) with respect to which, in the case of Administrative Claims that must file and serve notice pursuant to Section 6.2(a),  notice has been properly filed and served pursuant to Section 6.2(a) or (ii) with respect to which, in the case of claims under section 503(b)(9) of the Bankruptcy Code, a valid proof of claim has been filed prior to the General Bar Date, shall become an Allowed Administrative Claim if no objection is filed within thirty (30) days after the later of (i) the Effective Date, or (ii) the date of service of the applicable notice of Administrative Claim or (iii) such later date as may be (A) agreed to by the holder of such Administrative Claim or (B) approved by the Bankruptcy Court on motion of a party in interest, without notice or a hearing.  If an objection is filed within such 30-day period (or any extension thereof), the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order.  A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to Section 6.2(b) shall become an Allowed Administrative Claim only to the extent allowed by order of the Bankruptcy Court.

> (d)    Payment of Allowed Administrative Claims.

On the Plan Distribution Date, each holder of an Allowed Administrative Claim, shall receive (i) the amount of such holder's Allowed Administrative Claim in one Cash payment, or (ii) such other treatment as may be agreed upon in writing by the Plan Trustee and such holder; provided, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Administrative Claim; provided, further, that an Administrative Claim representing a liability incurred in the ordinary course of business of the Debtors may be paid at the Debtors' election in the ordinary course of business at any time prior to the occurrence of the Effective Date.

> (e)    Allowance and Payment of DIP Claims.

The DIP Claims shall be Allowed Administrative Claims on the Effective Date and shall be paid in full in Cash on the Effective Date.  On the Effective Date, in accordance with the terms of the DIP Documents, any outstanding letters of credit under the DIP Documents shall terminate or be cash collateralized.

**6.3.    Treatment of Tax Claims.**

At the election of the Plan Trustee, each holder of an Allowed Tax Claim will receive in full satisfaction of such Allowed Tax Claim (a) payments in Cash, in regular installments over a period ending not later that five (5) years after the Petition Date, of a total value, as of the Effective Date, equal to the Allowed amount of such Claim; (b) a lesser amount in one Cash payment as may be agreed upon in writing by such holder; or (c) such other treatment as may be agreed upon in writing by such holder; provided, that such agreed upon treatment may not provide such holder with a return having a present value as of the Effective Date that is greater than the amount of such holder's Allowed Tax Claim or that is less favorable than the treatment provided to the most favored nonpriority Unsecured Claims under the Plan.

**ARTICLE VII.**

**ACCEPTANCE OR REJECTION OF THE PLAN;
EFFECT OF REJECTION BY ONE OR MORE
CLASSES OF CLAIMS OR EQUITY INTERESTS**

**7.1.    Classes Entitled to Vote.**

Class 3 – First Lien Lender Claims, Class 4 – Second Lien Lender Claims and Class 5 – Unsecured Claims are each entitled to vote on the Plan.  Class 1 – Priority Claims, Class 2 – Non-Lender Secured Claims and Class 7 – Other Equity Interests are not impaired under the Plan and are deemed to accept the Plan.  Class 6 – Revel Equity Interests shall receive no recovery and is deemed to reject the Plan.

**7.2.    Class Acceptance Requirement.**

A class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such class that have voted on the Plan.  A class of Equity Interests shall have accepted the Plan if it is accepted holders of at least two-thirds (2/3) of the Equity Interests in such class that actually vote on the Plan.

**7.3.    Cramdown.**

If all applicable requirements for confirmation of the Plan are met as set forth in section 1129(a)(1) through (16) of the Bankruptcy Code, except subsection (8) thereof, then the Plan shall be treated as a request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to each class of Claims and Equity Interests that is impaired under, and has not accepted, the Plan.

# ARTICLE VIII.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**8.1.    Corporate Action.**

The entry of the Confirmation Order shall constitute authorization for the Debtors and the Plan Trustee, as applicable, to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and the Plan Documents prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including, without limitation, (a) the incurrence of all obligations contemplated by the Plan and the making of Plan Distributions, (b) the implementation of all settlements and compromises as set forth in or contemplated by the Plan and (c) the execution, delivery, filing and/or recording of any contracts, agreements, instruments or other documents contemplated by the Plan Documents (or necessary or desirable to effectuate the transactions contemplated by the Plan Documents).  On the Effective Date, the officers of the Debtors are authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and to take all necessary actions required in connection therewith, in the name of and on behalf of the Debtor.

**8.2.    Consummation of the Sale.**

On the Effective Date and only to the extent not already consummated during the Chapter 11 Cases pursuant to section 363 of the Bankruptcy Code, the transactions required to be consummated under the Asset Purchase Agreement and any documents entered into in connection therewith shall be incorporated into, and shall be deemed part of, the Plan and shall be entitled to all of the rights, benefits and protections of the Bankruptcy Code with respect thereto including, without limitation, those set forth in Section 15.9 of the Plan.  After the Confirmation Date, the Debtors shall be authorized to enter into non-material amendments to the Asset Purchase Agreement or any other documents in furtherance of the transactions contemplated thereby without the need for further notice or Bankruptcy Court approval.

**8.3.    Sources of Cash for Plan Distributions.**

All Cash necessary to make payments and Plan Distributions shall be obtained from (i) the Debtors' existing Cash balances, (iii) the liquidation of the Debtors' Assets and Causes of Actions and/or (iv) the proceeds of the Sale.

**8.4.    Cancellation of Instruments.**

Except as otherwise provided herein, all Equity Interests in the Debtors and any other note, bond, indenture or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors shall be deemed cancelled on the Effective Date.

**8.5.**    **Oversight Committee.**

On the Effective Date, the Oversight Committee shall be formed.  The Oversight Committee shall oversee the implementation and administration of the Plan Trust and the Plan. Decisions of the Oversight Committee shall be made with the approval of at least two (2) members.  The Oversight Committee shall have the following rights, obligations and duties:

(a)    approve the Plan Trustee's selection of, as well as the terms governing the engagement of, professionals to be engaged by the Plan Trustee on behalf of the Plan Trust, who may have been previously engaged by the Debtors and/or the Committee, and establish retainer terms, conditions and budgets;

(b)    decide whether, when and in what amounts Plan Distributions should be made, and direct the Plan Trustee (subject to the provisions of the Plan Trust Agreement) to make a Plan Distribution;

(c)    oversee the Plan Trustee's administration and implementation of the Plan and liquidation of the Assets in accordance with the Plan;

(d)    oversee, review and guide the Plan Trustee on performance of its duties and its activities proposed and underway, as often as is necessary and appropriate to implement the Plan;

(e)    seek an order terminating a member of the Oversight Committee and approving a replacement selected in a manner consistent with the original selection of such Oversight Committee member in the event the other members of the Oversight Committee determine there is cause to do so;

(f)    articulate the Oversight Committee's position in the event the Plan Trustee brings a dispute with the Oversight Committee to the Bankruptcy Court for resolution, or the Oversight Committee concludes it should bring a dispute with the Plan Trustee to the Bankruptcy Court for resolution; and

(g)    direct the pursuit and settlement of the Plan Trust's Causes of Action.

Each member of the Oversight Committee shall be entitled to the reimbursement of reasonable expenses incurred in the exercise of such member's duties as set forth herein.  Any disputes between and among the Oversight Committee, its members or the Plan Trustee shall be resolved by the Bankruptcy Court, and the Plan Trustee shall bring any such dispute to the Bankruptcy Court for resolution if so requested in writing by any of such parties.

Subject to any applicable law, the members of the Oversight Committee shall not be liable for any act done or omitted by any member in such capacity, while acting in good faith and in the exercise of business judgment.  Members of the Oversight Committee shall not be liable in any event except for gross negligence, fraud or willful misconduct in the performance of their duties hereunder.

Except as otherwise set forth in this Plan and to the extent permitted by applicable law, the members of the Oversight Committee, in the performance of their duties hereunder, shall be defended, held harmless and indemnified from time to time by the Plan Trust (and not any other person) against any and all losses, claims, costs, expenses and liabilities to which such members of the Oversight Committee may be subject by reason of such members' execution of duties pursuant to the discretion, power and authority conferred on such members by the Plan or the Confirmation Order; provided, however, that the indemnification obligations arising pursuant to this Section shall not indemnify the members of the Oversight Committee for any actions taken by such members which constitute fraud, gross negligence, willful misconduct, criminal condut or intentional breach of the Plan or the Confirmation Order. Satisfaction of any obligation of the Plan Trust arising pursuant to the terms of this Section shall be payable only from the assets of the Plan Trust, including, if available, any insurance maintained by the Plan Trust.  The indemnification provisions contained in this Section shall remain available to and be binding upon any future members of the Oversight Committee or the estate of any decedent.

**8.6.    Releases by the Debtors.**

**Except as otherwise provided herein, as of the Effective Date, for good and valuable consideration, including the obligations of the Debtors under this Plan and the contributions of the Released Parties to facilitate and implement this Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtors and their Estates from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Plan or the Disclosure Statement, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Equity Interests before or during the Chapter 11 Cases, the negotiation, formulation or preparation of this Plan, the DIP Documents, the Plan Trust Agreement, the Asset Purchase Agreement, the solicitation of votes with respect to this Plan, or any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; except, that nothing in this section shall be construed to release any party or entity from willful misconduct, gross negligence, intentional fraud or criminal conduct as determined by a Final Order.**

**8.7.    Releases by Creditors and Equity Security Holders.**

**Except as otherwise provided herein, as of the Effective Date, for good and valuable consideration, including the obligations of the Debtors under this Plan and the contributions of the Released Parties to facilitate and implement this Plan, each holder of a Claim against or Equity Interest in any of the Debtors who either voted in favor of, or is**

**conclusively presumed to have accepted, this Plan, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged the Debtors and the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Person would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Plan or the Disclosure Statement, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Equity Interests before or during the Chapter 11 Cases, the negotiation, formulation or preparation of this Plan, the DIP Documents, the Plan Trust Agreement, the Asset Purchase Agreement, the solicitation of votes with respect to this Plan, or any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; except, that nothing in this section shall be construed to release any party or entity from willful misconduct, gross negligence, intentional fraud or criminal conduct as determined by a Final Order; except, further, that the foregoing releases shall not apply to any holder of a Claim or Equity Interest if such holder elects to "opt out" of the releases provided in this Section on its timely submitted ballot.**

## ARTICLE IX.

## THE PLAN TRUST

**9.1.     Execution of the Plan Trust Agreement.**

The Plan Trust Agreement, in a form reasonably acceptable to the Debtors and the Committee, shall be executed on or before the Effective Date, and all other necessary steps shall be taken to establish the Plan Trust and the beneficial interests therein, which shall be for the benefit of holders of Allowed Claims.  This Article IX sets forth certain of the rights, duties and obligations of the Plan Trustee.  In the event of any conflict between the terms of this Article IX and the terms of the Plan Trust Agreement, the terms of the Plan Trust Agreement shall govern.

**9.2.     Purpose of Plan Trust.**

The Plan Trust shall be established for the sole purpose of liquidating and distributing its assets, in accordance with Treasury Regulation section 301.7701-4(d) and as a "grantor trust" for federal income tax purposes, pursuant to sections 671 through 679 of the Internal Revenue Code, with no objective to continue or engage in the conduct of a trade or business.

**9.3.     Vesting of Assets in the Plan Trust; Dissolution of the Debtor.**

On the Effective Date, the authority, power and incumbency of the Debtors shall terminate, and vest in the Plan Trustee, and all Assets of the Debtors not sold to the Buyer, including, without limitation, the Avoidance Actions and Causes of Action of the Debtors, shall

be deemed to have automatically been distributed to the Plan Trust Beneficiaries, who will immediately thereafter be deemed to have automatically transferred all such Assets to the Plan Trust.

### 9.4.    Governance of Plan Trust.

The Plan Trust shall be governed and administered by the Plan Trustee, subject to the supervision of the Oversight Committee, as provided under the Plan and the Plan Trust Agreement.  Notwithstanding anything to the contrary herein, the Oversight Committee shall act in furtherance of, and consistent with, the purpose of the Plan Trust and shall act in the best interests of the beneficiaries of the Plan Trust.

### 9.5.    Role of the Plan Trustee.

In furtherance of and consistent with the purpose of the Plan Trust and the Plan, the Plan Trustee shall (i) be authorized to take all steps necessary to wind down the affairs of the Debtors, (ii) have the power and authority to hold, manage, sell and distribute the assets of the Plan Trust to the holders of Allowed Claims, (iii) hold the assets of the Plan Trust for the benefit of the holders of Allowed Claims, (iv) have the power and authority to hold, manage, sell and distribute Cash or non-Cash  assets of the Plan Trust obtained through the exercise of its power and authority, (v) have the power and authority to prosecute and resolve, in the name of the Debtors and/or the name of the Plan Trustee, the Estates' Avoidance Actions and Causes of Action, (vi) administer the Non-Lender Secured Reserve and release amounts therefrom to the holders of Claims as Plan Distributions as appropriate when Contested Non-Lender Secured Claims become Allowed, Disallowed or are otherwise resolved by settlement, (vii) have the power and authority to perform such other functions as are provided in the Plan and (viii) have the power and authority to administer the closure of the Chapter 11 Cases.  The Plan Trustee shall be responsible for all decisions and duties with respect to the Plan Trust and its assets.  In all circumstances, the Plan Trustee shall act in the best interests of all beneficiaries of the Plan Trust and in furtherance of the purpose of the Plan Trust.

The Plan Trustee may be removed by the Oversight Committee with the approval of the Bankruptcy Court upon application for good cause shown.  In the event of the resignation, removal, death or incapacity of the Plan Trustee, the Oversight Committee shall designate another person to become the Plan Trustee and thereupon the successor Plan Trustee, without any further action, shall become fully vested with all of the rights, powers, duties and obligations of the predecessor Plan Trustee.

### 9.6.    Cash.

The Plan Trustee may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code; provided, however, that such investments are investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

**9.7.    Compensation of the Plan Trustee.**

The Plan Trustee shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy proceedings.

**9.8.    Retention of Professionals by the Plan Trustee.**

The Plan Trustee may retain and reasonably compensate counsel and other professionals to assist in its duties as Plan Trustee on such terms as the Plan Trustee deems appropriate without Bankruptcy Court approval.  The Plan Trustee may retain any professional who represented parties in interest in the Chapter 11 Cases.

**9.9.    Noncertificated Plan Trust Interests.**

The beneficial interests in the Plan Trust shall not be certificated, except as otherwise provided in the Plan Trust Agreement.

**9.10.    Dissolution of the Plan Trust.**

The Plan Trustee and the Plan Trust shall be discharged or dissolved, as the case may be, at such time as (i) all assets of the Plan Trust have been liquidated and (ii) all distributions required to be made by the Plan Trustee under the Plan have been made, but in no event shall the Plan Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six (6) month period prior to the fifth (5th) anniversary (and, in the case of any extension, within six (6) months prior to the end of such extension), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Plan Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the assets of the Plan Trust.

**9.11.    Securities Exempt.**

The issuance of any beneficial interests of the Plan Trust satisfies the requirements of section 1145 of the Bankruptcy Code and, therefore, such issuance is exempt from registration under the Securities Act of 1933, as amended, and any state or local law requiring registration.

**ARTICLE X.**

**PLAN DISTRIBUTION PROVISIONS**

**10.1.    Plan Distributions.**

The Plan Trustee shall make all Plan Distributions in accordance with the Plan and the Plan Trust Agreement.  In the event a Plan Distribution shall be payable on a day other than a Business Day, such Plan Distribution shall instead be paid on the immediately succeeding Business Day, but shall be deemed to have been made on the date otherwise due.  For federal

income tax purposes, <u>except</u> to the extent a Plan Distribution is made in connection with reinstatement of an obligation pursuant to section 1124 of the Bankruptcy Code, a Plan Distribution will be allocated first to the principal amount of a Claim and then, to the extent the Plan Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest and other fees, premiums and charges, as applicable. Except as otherwise provided herein, Plan Distributions shall be made to the holders of Allowed Claims as reflected in the registry of claims maintained by the Claims Agent on the Effective Date.  The Plan Trustee and its agents shall have no obligation to recognize any transfer of a Claim after the Effective Date.

**10.2.   <u>Timing of Plan Distributions</u>.**

Each Plan Distribution shall be made on the relevant Plan Distribution Date therefor and shall be deemed to have been timely made if made on such date or within ten (10) days thereafter.

**10.3.   <u>Address for Delivery of Plan Distributions/Unclaimed Plan Distributions</u>.**

Subject to Bankruptcy Rule 9010, any Plan Distribution or delivery to a holder of an Allowed Claim shall be made at the last known address of such holder as set forth (a) in the Schedules, (b) on the proof of Claim filed by such holder, (c) in any notice of assignment filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e) or (d) in any notice served by such holder giving details of a change of address.  If any Plan Distribution is returned to the Plan Trustee as undeliverable, no Plan Distributions shall be made to such holder unless the Plan Trustee is notified of such holder's then current address within ninety (90) days after such Plan Distribution was returned.  After such date, if such notice was not provided, a holder shall have forfeited its right to such Plan Distribution, and the undeliverable Plan Distributions shall constitute Available Proceeds, free of any restrictions thereon, pending final Plan Distribution pursuant to the terms of this Plan.

**10.4.   <u>Time Bar to Cash Payments</u>.**

Checks issued in respect of Allowed Claims shall be null and void if not presented within ninety (90) days after the date of issuance thereof.  Requests for reissuance of any voided check shall be made directly to the Plan Trustee by the holder of the Allowed Claim to whom such check was originally issued.  Any claim in respect of such a voided check shall be made within ninety (90) days after the date of issuance of such check.  If no request is made as provided in the preceding sentence, any claims in respect of such voided check shall be discharged and forever barred and such unclaimed Plan Distribution shall constitute Available Proceeds, free of any restrictions thereon, pending final Plan Distribution pursuant to the terms of this Plan.

**10.5.   <u>Manner of Payment under the Plan</u>.**

Unless the Person receiving a Plan Distribution agrees otherwise, any Plan Distribution to be made in Cash under the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.  Cash payments to foreign creditors may, in addition to the

foregoing, be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**10.6.** **Fractional Plan Distributions.**

Notwithstanding anything to the contrary contained herein, no Plan Distributions of fractions of dollars will be made. Fractions of dollars shall be rounded to the nearest whole unit (with any amount equal to or less than one-half dollar to be rounded down).

**10.7.** **De Minimis Distributions.**

Notwithstanding anything contrary contained herein, no Plan Distribution of less than ten dollars ($10.00) shall be made to the holder of any Claim unless a request therefor is made in writing to the Plan Trustee. If no request is made as provided in the preceding sentence within ninety (90) days of the Effective Date, all such Plan Distributions shall constitute Available Proceeds, free of any restrictions thereon, pending final Plan Distribution pursuant to the terms of this Plan.

**ARTICLE XI.**

**PROCEDURES FOR RESOLVING
AND TREATING CONTESTED CLAIMS**

**11.1.** **Objection Deadline.**

As soon as practicable, but in no event later than one hundred and eighty (180) days after the Effective Date (subject to being extended by the order of the Bankruptcy Court upon motion of the Plan Trustee without notice or a hearing), objections to Claims shall be filed by the Debtors or the Plan Trustee, as applicable, with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made.

**11.2.** **Prosecution of Contested Claims.**

After the Effective Date, the Plan Trustee may (i) prosecute any objection to a Claim filed by the Debtors prior to the Effective Date and (ii) object to the allowance of Claims filed with the Bankruptcy Court on or after the Effective Date with respect to which liability is Contested. All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 11.3.

**11.3.** **Claims Settlement.**

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Plan Trustee shall have authority to settle or compromise all Claims and Causes of Action without further review or approval of the Bankruptcy Court, other than (a) the settlement or compromise of a Claim where the proposed Allowed amount of such Claim is greater than or equal to $1,000,000 and (b) any settlement or compromise of a Claim or Cause of Action that involves an Insider.

**11.4.**   **Entitlement to Plan Distributions upon Allowance.**

Notwithstanding any other provision of the Plan, no Plan Distribution shall be made with respect to any Claim to the extent it is a Contested Claim, unless and until such Contested Claim becomes an Allowed Claim, subject to the setoff rights as provided in Section 15.14.  When a Claim that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim (regardless of when) the holder of such Allowed Claim shall thereupon become entitled to receive the Plan Distributions in respect of such Claim, the same as though such Claim had been an Allowed Claim on the Effective Date.

**11.5.**   **Estimation of Claims.**

The Plan Trustee may, at any time, request that the Bankruptcy Court estimate any Contested Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Plan Trustee or the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Contested Claim, that estimated amount will constitute the Allowed amount of such Claim for all purposes under the Plan.  All of the objection, estimation, settlement and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

## ARTICLE XII.

## CONDITIONS PRECEDENT TO
## CONFIRMATION OF THE PLAN AND
## THE OCCURRENCE OF THE EFFECTIVE DATE

**12.1.**   **Conditions Precedent to Confirmation.**

The following are conditions precedent to confirmation of the Plan:

(a)      the Clerk of the Bankruptcy Court shall have entered an order or orders (i) approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, (ii) authorizing the solicitation of votes with respect to the Plan, (iii) determining that all votes are binding and have been properly tabulated as acceptances or rejections of the Plan, (iv) confirming and giving effect to the terms and provisions of the Plan, (vi) determining that all applicable tests, standards and burdens in connection with the Plan have been duly satisfied and met by the Debtors and the Plan, (vii) approving the Plan Documents and (viii) authorizing the Debtors to execute, enter into and deliver the Plan Documents,, and to execute, implement and to take all actions otherwise necessary or appropriate to give effect to the transactions and transfer of Assets contemplated by the Plan and the Plan Documents;

(b)      the Confirmation Order, the Plan Documents and the Plan are each in a form satisfactory to the Debtors; and

(c)      the Confirmation Order shall include determinations that all of the settlements and compromises contained in the Plan meet the applicable standards under section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 for approval and implementation.

**12.2.    Conditions Precedent to the Occurrence of the Effective Date.**

The following are conditions precedent to the occurrence of the Effective Date with respect to each of the Debtors' Estates:

(a)      the Confirmation Order shall have been entered by the Bankruptcy Court, be in full force and effect and not be subject to any stay or injunction, and the Debtors shall not have elected to delay the occurrence of the Effective Date with respect to such Estate in accordance with Section 12.5 of the Plan;

(b)      all necessary consents, authorizations and approvals shall have been given for the transfers of property and the payments provided for or contemplated by the Plan and the Plan Documents, including, without limitation, satisfaction or waiver of all conditions to the obligations of the Debtors under the Plan and the Plan Documents; and

(c)      the Debtors and the Buyer shall have received all consents and approvals, including any governmental or regulatory approvals, required to implement the Asset Purchase Agreement and all transactions related thereto.

**12.3.    Waiver of Conditions.**

The Debtors may waive any one or more of the conditions set forth in Section 12.1 or Section 12.2 in a writing without notice or order of the Bankruptcy Court and without notice to any other parties in interest.

**12.4.    Effect of Non-Occurrence of the Effective Date.**

If the Effective Date shall not occur (except as provided in Section 12.5 hereof), the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against or Equity Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, including, without limitation, any right to seek an extension of the exclusivity periods under section 1121(d) of the Bankruptcy Code; or (c) constitute an admission, acknowledgement, offer or undertaking by the Debtors.

**12.5.    Option to Delay Occurrence of the Effective Date.**

Notwithstanding the foregoing or anything in the Plan to the contrary, the Debtors reserve the right to delay the occurrence of the Effective Date with respect to one or more of the Debtors' Estates to a later date; provided, however, that any such election by the Debtors to delay the occurrence of the Effective Date with respect to one Estate shall not prevent the occurrence of the Effective Date with respect to any of the other Estates.

## ARTICLE XIII.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**13.1.** **Assumption and Rejection of Executory Contracts and Unexpired Leases.**

(a)     On the Effective Date, all executory contracts and unexpired leases of the Debtors not previously assumed and assigned to the Buyer shall be rejected pursuant to the provisions of section 365 of the Bankruptcy Code, including, but not limited to, those agreements listed and described in Schedule 3 attached to the Disclosure Statement, except: (i) any executory contracts and unexpired leases that are the subject of separate motions to reject, assume or assume and assign filed pursuant to section 365 of the Bankruptcy Code by the Debtors before the entry of the Confirmation Order; (ii) contracts and leases listed in Schedule 4 attached to the Disclosure Statement and any subsequently filed "Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases" to be filed by the Debtors with the Bankruptcy Court before the entry of, or as an exhibit to, the Confirmation Order; (iii) all executory contracts and unexpired leases assumed or assumed and assigned by order of the Bankruptcy Court entered before the Effective Date and not subsequently rejected pursuant to an order of the Bankruptcy Court; (iv) any executory contract or unexpired lease that is the subject of a dispute over the amount or manner of cure pursuant to the next section hereof and for which the Debtors make a motion to reject such contract or lease based upon the existence of such dispute filed at any time; (v) any guaranty or similar agreement executed by a third party which guarantees repayment or performance of an obligation owed to the Debtors or to indemnify the Debtors; and (vi) agreements with third parties regarding preservation of the confidentiality of documents produced by the Debtors.   Any order entered postconfirmation by the Bankruptcy Court, after notice and a hearing, authorizing the rejection of an executory contract or unexpired lease shall cause such rejection to be a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief was granted and such order was entered preconfirmation.  The Debtors reserve the right to amend Schedules 3 and 4 to the Disclosure Statement or the "Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases" prior to the entry of the Confirmation Order.

(b)     Inclusion of a contract, lease or other agreement on Schedule 3 to the Disclosure Statement shall constitute adequate and sufficient notice that (i) any Claims arising thereunder or related thereto shall be treated as Unsecured Claims (or Convenience Claims, as applicable) under the Plan, and (ii) the Debtors are no longer bound by, or otherwise obligated to perform, any such obligations, transactions, or undertakings relating thereto or arising thereunder.  The inclusion of a contract, lease or other agreement on Schedule 3 or 4 to the Disclosure Statement or a subsequently filed "Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases" shall not constitute an admission by the Debtors as to the characterization of whether any such included contract, lease, or other agreement is, or is not, an executory contract or unexpired lease or whether any claimants under any such contract, lease or other agreement are time-barred from asserting Claims against the Debtors.  The Debtors reserve all rights with respect to the characterization of any such agreements.

(c)     The Plan shall constitute a motion to reject such executory contracts and unexpired leases rejected pursuant to this section, and the Debtors shall have no liability

thereunder except as is specifically provided in the Plan.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected agreement, executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interests of the Debtors and their estates.

(d)    The Plan shall constitute a motion to assume or assume and assign to the Buyer (unless another party is otherwise listed) such executory contracts and unexpired leases as set forth in Schedule 4 to the Disclosure Statement or any subsequently filed "Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases" or as otherwise designated as being assumed or assumed and assigned in Section 13.1(a), and the Debtors shall have no liability thereunder for any breach of such assumed and assigned executory contract or lease occurring after such assignment pursuant to section 365(k) of the Bankruptcy Code, except as is specifically provided in the Plan.  Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumption and assignment pursuant to sections 365(a), (b) and (f) of the Bankruptcy Code, and a finding by the Bankruptcy Court that the requirements of section 365(f) of the Bankruptcy Code have been satisfied.  Any non-Debtor counterparty to an agreement listed on Schedule 4 to the Disclosure Statement or a subsequently filed "Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases" or otherwise designated as being assumed or assumed and assigned in Section 13.1(a) who disputes the assumption or assignment of an executory contract or unexpired lease must file with the Bankruptcy Court, and serve upon the Debtors and the Committee, a written objection to the assumption or assumption and assignment, which objection shall set forth the basis for the dispute by no later than ten (10) days prior to the Confirmation Hearing.  The failure to timely object shall be deemed a waiver of any and all objections to the assumption or assumption and assignment of executory contracts and leases as set forth in Schedule 4 to the Disclosure Statement or a subsequently filed "Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases" or as otherwise designated as being assumed or assumed and assigned in Section 13.1(a).

(e)    Notwithstanding the rejection of any of the Debtors' executory contracts under this Plan or by separate motion, the Debtors or the Plan Trustee, as applicable, shall retain and be entitled to enforce any warranties provided to, or for the benefit of, the Debtors under applicable federal or state law; provided, however, for the avoidance of doubt, that the foregoing does not include any warranties provided to, or for the benefit of, the Debtors pursuant to any contract that has been assumed and assigned by order entered by the Bankruptcy Court on or before the Effective Date.

**13.2.    Cure.**

At the election of the Debtors, any monetary defaults under each executory contract and unexpired lease to be assumed under this Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code: (a) by payment of the default amount in Cash on the Effective Date or as soon thereafter as practicable; or (b) on such other terms as agreed to by the parties to such executory contract or unexpired lease.  In the event of a dispute regarding: (a) the amount of any cure payments; (b) the ability to provide adequate assurance of future performance under the contract or lease to be assumed or assumed and assigned; or (c) any other matter pertaining to

assumption or assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving assumption or assignment, as applicable.  Schedule 4 to the Disclosure Statement and any subsequently filed "Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases" sets forth the Debtors' cure obligations for each agreement for which a cure obligation must be satisfied as a condition to the assumption or assumption and assignment of such agreement.  Any non-Debtor counterparty to an agreement listed on Schedule 4 to the Disclosure Statement and any subsequently filed "Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases" who disputes the scheduled cure obligation must file with the Bankruptcy Court, and serve upon the Debtors and the Committee, a written objection to the cure obligation, which objection shall set forth the basis for the dispute, the alleged correct cure obligation, and any other objection related to the assumption or assumption and assignment of the relevant agreement by no later than ten (10) Business Days prior to the Confirmation Hearing.  If a non-Debtor counterparty fails to file and serve an objection which complies with the foregoing, the cure obligation set forth on Schedule 4 to the Disclosure Statement and any subsequently filed "Schedule of Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases" shall be binding on the non-Debtor counterparty, and the non-Debtor counterparty shall be deemed to have waived any and all objections to the assumption or assumption and assignment of the relevant agreement as proposed by the Debtors.

### 13.3.   Claims Arising from Rejection, Expiration or Termination.

Claims created by the rejection of executory contracts and unexpired leases or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the Debtors (a) in the case of an executory contract or unexpired lease rejected by the Debtors prior to the Confirmation Date, in accordance with the Bar Date Notice, or (b) in the case of an executory contract or unexpired lease that (i) was terminated or expired by its terms prior to the Confirmation Date, or (ii) is rejected pursuant to this Article 13, no later than thirty (30) days after the Confirmation Date.  Any such Claims for which a proof of claim is not filed and served by the deadlines set forth in the Bar Date Notice or this Section 13.3, as applicable, will be forever barred from assertion and shall not be enforceable against the Debtors, their Estates or their Assets.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as Unsecured Claims under the Plan subject to objection by the Plan Trustee.

### ARTICLE XIV.

### RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Cases or the Plan or (c) that relates to the following:

(i)       to hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article XIII hereof for the

assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which any Debtor is a party or with respect to which a Debtor may be liable, and to hear and determine any and all Claims and any related disputes (including, without limitation, the exercise or enforcement of setoff or recoupment rights, or rights against any third party or the property of any third party resulting therefrom or from the expiration, termination or liquidation of any executory contract or unexpired lease);

(ii)     to determine any and all adversary proceedings, applications, motions and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Plan Trustee after the Effective Date;

(iii)     to hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without express or implied limitation, to hear and determine any objections to the classification of any Claim and to allow, disallow or estimate any Contested Claim in whole or in part;

(iv)     to issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

(v)     to consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(vi)     to hear and determine all Fee Applications and applications for allowances of compensation and reimbursement of any other fees and expenses authorized to be paid or reimbursed under the Plan or the Bankruptcy Code;

(vii)     to hear and determine all controversies, suits and disputes that may relate to, impact upon or arise in connection with the Plan, the Plan Trust Agreement, the Asset Purchase Agreement, and any other Plan Documents or their interpretation, implementation, enforcement or consummation;

(viii)     to hear and determine any matters relating to implementation of the Sale, including arising out of or in connection with the Asset Purchase Agreement and any ancillary agreement thereto;

(ix)     to hear and determine all controversies, suits and disputes that may relate to, impact upon or arise in connection with the Confirmation Order (and all exhibits to the Plan) or its interpretation, implementation, enforcement or consummation;

(x)     to the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or Cause of Action by, on behalf of or against the Estates;

(xi)     to determine such other matters that may be set forth in the Plan or the Confirmation Order, or that may arise in connection with the Plan or the Confirmation Order;

(xii)    to hear and determine matters concerning state, local and federal taxes, fines, penalties or additions to taxes for which the Debtors may be liable in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(xiii)    to hear and determine all controversies, suits and disputes that may relate to, impact upon or arise in connection with any setoff and/or recoupment rights of the Debtors or any Person under the Plan;

(xiv)    to hear and determine all controversies, suits and disputes that may relate to, impact upon or arise in connection with Causes of Action of the Debtors (including Avoidance Actions) commenced by the Plan Trustee, the Debtors or any third parties, as applicable, before or after the Effective Date;

(xv)    to enter an order or final decree closing the Chapter 11 Cases;

(xvi)    to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order; and

(xvii)    to hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code.

## ARTICLE XV.

## MISCELLANEOUS PROVISIONS

### 15.1.    Payment of Statutory Fees.

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date.

### 15.2.    Satisfaction of Claims.

(a)    Subject to the occurrence of the Effective Date, as of the Effective Date, except as provided in the Plan, the distributions and rights afforded under the Plan and the treatment of Claims and Equity Interests under the Plan shall be in exchange for and in complete satisfaction of all Claims against the Debtors, and in satisfaction of all Equity Interests and the termination of Equity Interests in the Debtors.  Except as otherwise specifically provided in the Plan, as of the Effective Date any interest accrued on Claims against the Debtors from and after the Petition Date shall be cancelled.  Accordingly, except as otherwise provided in the Plan or the Confirmation Order, confirmation of the Plan shall, as of the Effective Date, satisfy, terminate and cancel all Claims against the Debtors and Equity Interests and other rights of equity security holders in the Debtors.

(b)    Subject to the occurrence of the Effective Date, as of the Effective Date, except as provided in the Plan, all Persons shall be precluded from asserting against the Debtors, the Plan

Trustee or their respective successors or property, any other or further Claims, debts, rights, Causes of Action, liabilities or Equity Interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date.

(c)    No Person holding a Claim may receive any payment from, or seek recourse or recovery against, any Assets that are to be distributed under the Plan, other than Assets required to be distributed to that Person under the Plan.

## 15.3.    <u>Special Provisions Regarding Insured Claims</u>.

Plan Distributions to each holder of an allowed Insured Claim against the Debtors shall be made in accordance with the treatment provided under the Plan for the Class in which such Allowed Insured Claim is classified; <u>except</u>, that there shall be deducted from any Plan Distribution on account of an Insured Claim, for purposes of calculating the Allowed amount of such Claim, the amount of any insurance proceeds actually received by such holder in respect of such Allowed Insured Claim.  Nothing in this Section 15.3 shall constitute a waiver of any Claim, right or Cause of Action the Debtors or their Estates may hold against any Person, including any insurer.  Pursuant to section 524(e) of the Bankruptcy Code, nothing in the Plan shall release or discharge any insurer from any obligations to any Person under applicable law or any policy of insurance under which any Debtor is an insured or beneficiary or for purposes of any insurance recovery.

## 15.4.    <u>Third Party Agreements; Subordination</u>.

The Plan Distributions to the various classes of Claims hereunder shall not affect the right of any Person to levy, garnish, attach or employ any other legal process with respect to such Plan Distributions by reason of any claimed subordination rights or otherwise.  All such rights and any agreements relating thereto shall remain in full force and effect, <u>except</u> as otherwise compromised and settled pursuant to the Plan.

Plan Distributions shall be subject to and modified by any Final Order directing distributions other than as provided in the Plan.  The right of the Debtors or the Plan Trustee to seek subordination of any Claim or Equity Interest pursuant to section 510 of the Bankruptcy Code is fully reserved, and the treatment afforded any Claim or Equity Interest that becomes a subordinated Claim or subordinated Equity Interest at any time shall be modified to reflect such subordination.  Unless the Confirmation Order provides otherwise, no Plan Distributions shall be made on account of a subordinated Claim or subordinated Equity Interest.

## 15.5.    <u>Exculpation</u>.

**No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any claim, obligation, Cause of Action or liability for any claim in connection with or arising out of, the administration of the Chapter 11 Cases, the entry into the DIP Documents, the Plan Trust Agreement and the Asset Purchase Agreement, the consummation of the transactions contemplated therein, the negotiation and pursuit of this Plan, or the solicitation of votes for, or confirmation of, this Plan, the funding of this Plan, the consummation of this Plan, or the administration of this Plan or**

the property to be distributed under this Plan, and the issuance of securities under or in connection with this Plan or the transactions contemplated by the foregoing, <u>except</u> for willful misconduct, gross negligence, intentional fraud or criminal conduct as finally determined by the Bankruptcy Court, but in all respects such Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities pursuant to this Plan. The Exculpated Parties have participated in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the securities pursuant to the Plan, and are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of securities thereunder.

**15.6.** <u>**Notices**</u>**.**

Any notices, requests and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (<u>including</u>, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

if to the Debtors:

Revel AC, Inc.
Attention:  Loretta Pickus, General Counsel
500 Boardwalk
Atlantic City, New Jersey 08401
Facsimile:  (609) 572-6665

with a copy (which shall not constitute notice) to:

White & Case LLP
Attention: John K. Cunningham, Esq.
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile:  (305) 358-5744

with a copy (which shall not constitute notice) to:

Fox Rothschild LLP
Attention: Michael Viscount, Esq.
Midtown Building, Suite 400
1301 Atlantic Avenue
Atlantic City, New Jersey 7212
Telephone: (609) 348-4515

Facsimile: (609) 348-6834

if to the Committee:

[_____]

### 15.7.  **Headings.**

The headings used in the Plan are inserted for convenience only, and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

### 15.8.  **Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of New York, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements or documents.

### 15.9.  **Exemption from Transfer Taxes.**

Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under or in connection with the Plan, including the Asset Purchase Agreement, the creation of any mortgage, deed of trust, lien, pledge or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax. Transfers made under the Plan include, without limitation, any transfer, sale or exchange of the Assets that is the subject of a motion or notice pursuant to section 363 of the Bankruptcy Code filed by the Debtors before the Effective Date regardless of the date the transaction is approved by the Court or the date such transfer, sale or exchange closes.  To effectuate the terms of this Section, the Bankruptcy Court may enter any order necessary or appropriate to implement this provision of the Plan.

### 15.10.  **Notice of Entry of Confirmation Order and Relevant Dates.**

Promptly upon entry of the Confirmation Order, the Debtors shall publish as directed by the Bankruptcy Court and serve on all known parties in interest and holders of Claims and Equity Interests, notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan, including, but not limited to, the deadline for filing notice of Administrative Claims, and the deadline for filing rejection damage Claims.

### 15.11.  **Interest and Attorneys' Fees.**

Interest accrued after the Petition Date will accrue and be paid on Claims only to the extent specifically provided for in this Plan, the Confirmation Order, or as otherwise required by the Bankruptcy Court or by applicable law.  No award or reimbursement of attorneys' fees or

related expenses or disbursements shall be allowed on, or in connection with, any Claim, <u>except</u> as set forth in the Plan or as ordered by the Bankruptcy Court.

**15.12.  <u>Modification of the Plan</u>.**

As provided in section 1127 of the Bankruptcy Code, modification of the Plan may be proposed in writing by the Debtors at any time before confirmation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code.  The Debtors may modify the Plan at any time after confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

**15.13.  <u>Revocation of Plan</u>.**

The Debtors reserve the right to revoke and withdraw the Plan and/or to adjourn the Confirmation Hearing prior to the occurrence of the Effective Date.  If the Debtors revoke or withdraw the Plan, or if the Effective Date does not occur, then the Plan and all settlements and compromises set forth in the Plan and not otherwise approved by a separate Final Order shall be deemed null and void and nothing contained herein and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims against or Equity Interests in the Debtors or to prejudice in any manner the rights of the Debtors or any other Person in any other further proceedings involving the Debtors.

**15.14.  <u>Setoff Rights</u>.**

In the event that any Debtor or the Plan Trustee, as applicable, has a Claim of any nature whatsoever against the holder of a Claim against such Debtor, then such Debtor or the Plan Trustee, as applicable, may, but is not required to, setoff against the Claim (and any payments or other Plan Distributions to be made in respect of such Claim hereunder) such Debtor's Claim against such holder, subject to the provisions of sections 553, 556 and 560 of the Bankruptcy Code.  Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release of any Claims that any Debtor or the Plan Trustee, as applicable, may have against the holder of any Claim.

**15.15.  <u>Compliance with Tax Requirements</u>.**

In connection with the Plan, the Debtors and the Plan Trustee, as applicable, shall comply with all withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities and all Plan Distributions hereunder shall be subject to such withholding and reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any government unit, <u>including</u> income,

withholding and other tax obligations, on account of such Plan Distribution. The Plan Trustee has the right, but not the obligation, to not make a Plan Distribution until such holder has made arrangements satisfactory to the Plan Trustee for payment of any such tax obligations.

### 15.16. <u>Rates.</u>

The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date. Where a Claim has been denominated in foreign currency on a proof of Claim, the Allowed amount of such Claim shall be calculated in legal tender of the United States based upon the conversion rate in place as of the Petition Date and in accordance with section 502(b) of the Bankruptcy Code.

### 15.17. <u>Dissolution of the Committee.</u>

Upon the Effective Date, the Committee shall dissolve automatically, whereupon its members, professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to (a) applications for Fee Claims or reimbursement of expenses incurred as a member of the Committee and (b) any motions or other actions seeking enforcement or implementation of the provisions of the Plan or the Confirmation Order or pending appeals of orders entered in the Chapter 11 Cases.

### 15.18. <u>Injunctions.</u>

**Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against or Equity Interests in the Debtors or the Estates are, with respect to any such Claims or Equity Interests, permanently enjoined after the Confirmation Date from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Estates or any of their Assets, the Plan Trustee, the Buyer, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtors, the Estates or any of their Assets, the Plan Trustee, the Buyer, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Estates or any of their Assets, the Plan Trustee, the Buyer, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; (iv) commencing or continuing in any manner or in any place, any suit action or other proceeding on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of**

this Plan to the fullest extent permitted by applicable law; and (vi) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of this Plan.  **Each holder of an Allowed Claim or Allowed Equity Interest shall be deemed to have specifically consented to the injunctions set forth herein.**

## 15.19.  Binding Effect.

The Plan shall be binding upon the Debtors, the Buyer, the holders of all Claims and Equity Interests, parties in interest, Persons and their respective successors and assigns.  To the extent any provision of the Disclosure Statement or any other solicitation document may be inconsistent with the terms of the Plan, the terms of the Plan shall be binding and conclusive.

## 15.20.  Severability.

**IN THE EVENT THE BANKRUPTCY COURT DETERMINES THAT ANY PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR EQUITY INTEREST OR TRANSACTION, THE DEBTORS MAY MODIFY THE PLAN IN ACCORDANCE WITH SECTION 15.12 SO THAT SUCH PROVISION SHALL NOT BE APPLICABLE TO THE HOLDER OF ANY SUCH CLAIM OR EQUITY INTEREST OR TRANSACTION.  ANY SUCH DETERMINATION OF UNENFORCEABILITY SHALL NOT (A) LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN OR (B) REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.**

## 15.21.  No Admissions.

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF ACTION, THIS PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.  THIS PLAN SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES AND OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTORS AND DEBTORS IN POSSESSION IN THESE CHAPTER 11 CASES.**

Dated: June 19, 2014

Respectfully submitted,

REVEL AC, INC., on behalf of itself and each
of the other Debtors

By: _____
    Name: _____
    Title:   _____