| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR. 9004-2(c)<br><br>**DLA PIPER LLP (US)**<br>Stuart M. Brown (NJ ID #38826)<br>Timothy J. Lowry (NJ ID #013342002)<br>17 Gordon's Alley, Suite 100<br>Atlantic City, NJ  08401<br>(609) 449-7000<br><br>*Counsel to ACR Energy Partners LLC* | |
| In re:<br><br>REVEL AC, INC., et al.<br><br>DEBTORS.[1] | **Chapter 11**<br><br>Case No. 14-22654 (GMB)<br><br>**Expedited Hearing Requested** |

**EMERGENCY MOTION OF ACR ENERGY PARTNERS LLC FOR ORDER
DETERMINING ADEQUATE ASSURANCE OF PAYMENT OF POST-PETITION
UTILITY SERVICES PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE**

ACR Energy Partners LLC ("**ACR Energy**"), by and through its undersigned attorneys, files this motion (the "**Motion**"), requesting entry of an order substantially in the form attached hereto as Exhibit A (the "**Proposed Order**"), under sections 105(a) and 366 of title 11 of the United States Code (the "**Bankruptcy Code**"), directing the Debtors to provide ACR Energy with adequate assurance of payment for post-petition utility services, and states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Revel AC, Inc. (3856), Revel AC, LLC (4456), Revel Atlantic City, LLC (9513), Revel Entertainment Group, LLC (2321), NB Acquisition, LLC (9387) and SI LLC (3856). The location of the Debtors' corporate headquarters is 500 Boardwalk, Atlantic City, New Jersey 08401.

**PRELIMINARY STATEMENT**

When Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005), it amended section 366 of the Bankruptcy Code to provide greater rights to utility providers in chapter 11 bankruptcy cases. These changes require a debtor to provide "assurance of *payment*" that is both "adequate" and "satisfactory *to the utility*." 11 U.S.C. §§ 366(b) and 366(c) (emphasis added). Congress also expressly provided that with respect to an unpaid post-petition claim, "an administrative expense priority shall not constitute an assurance of payment" and that a court may not even consider "the availability of an administrative expense priority" in determining whether the assurance of payment is adequate. *Id*. §§ 366(c)(1)(B) and 366(c)(3)(B). These provisions cannot be ignored, as the law specifically protects ACR Energy from the relief sought by the Debtors and their debtor in possession financier in these bankruptcy cases.

The Debtors have failed to satisfy these recently enacted Congressional mandates and instead have originally proposed to make a mere *deposit* of about 17% of their utility payment obligations to ACR Energy. *See, e.g.,* D.I. 8 at Ex. A (proposing a deposit of $486,974.84 out of about $2,750,000.00 per month in utility obligations owed to ACR Energy). This is wholly inadequate and ACR Energy rightly has rejected it. The Debtors then removed ACR Energy from the list of utilities entitled to receive assurance of payment, relying instead on their motion for entry of an order reducing and impairing ACR Energy's contractual rights,[2] without

---

[2] This motion is titled, *Motion For Order Determining The Fair Market Value of Postpetition Services Under The Energy Sales Agreement* [D.I. 30] (the "**ESA Motion**") and was filed on June 19, 2014.

proposing any specific assurance of payment in connection with the ESA Motion.[3]  ACR Energy intends to object to the ESA Motion.

ACR Energy files this Motion in order to establish assurance of *payment*.  In their recently concluded bankruptcy case (the "**First Revel Bankruptcy**"), the Debtors and ACR Energy agreed that adequate assurance of payment would consist of payment of all the pre-petition and post-petition costs arising under that certain Second Amended and Restated Energy Sales Agreement between Revel Entertainment Group, LLC and ACR Energy dated April 11, 2011 (the "**ESA**"), and permitted the Debtors to forego posting a deposit.  ACR Energy is similarly prepared to support the current bankruptcy cases by making a sensible assurance of *payment* proposal that is adequate and fairly balances the Debtors' solvency issues with the financial risk these cases place on ACR Energy.  ACR Energy's monthly invoices to the Debtors average approximately $2,750,000.00 over a twelve month period, with seasonal highs (summer) and lows (winter).

ACR Energy proposes assurance of payment under section 366(c)(1)(A)(v) of the Bankruptcy Code as follows:

(a) an initial payment for all services provided since the Petition Date: One Million One Hundred Thousand Dollars ($1,100,000.00) to be paid directly to ACR Energy for services rendered in June 2014, with an additional One Million Six Hundred Eighty Thousand Dollars ($1,680,000.00) to be paid to a designated escrow account (that is not subject to the liens and claims of any creditors) for the Fixed Monthly Payment amount;

---

[3] The proposed form of order suggests the Debtors would make a deposit, but leave the amount blank.  *See* ESA Motion at Ex. B (proposing that "the Debtors shall, within fifteen (15) days from the entry of this Order, pay ACR a

*(footnote continued to next page)*

(b) weekly pre-payments for services provided in an amount equal to one-quarter (1/4) of the average monthly invoice amount of Two Million Seven Hundred Fifty Thousand Dollars ($2,750,000.00), less the Fixed Monthly Payment of One Million Six Hundred Eighty Thousand Dollars ($1,680,000.00) (e.g., $2,750,000.00 - $1,680,000.00 = $1.07M /4 = $267,500.00 per week);

(c) weekly payments to the escrow account in an amount equal to one-quarter (1/4) of the Fixed Monthly Payment (e.g., $1,680,000.00 /4 = $420,000.00 per week) until further order of the Court; and

(d) all of the above payments are subject to a monthly true-up by the end of the next succeeding month (together, "**Adequate Assurance of Payment**").

Absent such Adequate Assurance of Payment, ACR Energy may have no choice but to "alter, refuse, or discontinue utility service" in accordance with section 366(b) and 366(c)(2). ACR Energy lacks the financial wherewithal to finance the Debtors' bankruptcy cases, especially in light of the Debtors' failure to pay several pre-petition invoices and the impact that non-payment has had on ACR Energy's own financial condition.

## JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

*(footnote continued from previous page)*
deposit in the amount of $[●] for the purpose of providing ACR with adequate assurance of payment for its postpetition services to the Debtors.")

3. Bankruptcy Code sections 105 and 366 provide the statutory bases for the relief requested in this Motion.

## PROCEDURAL BACKGROUND

4. On June 19, 2014 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their property as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or committee of creditors or equity holders has been appointed in these cases.

5. On the Petition Date, the Debtors filed *Debtors' Emergency Motion Pursuant To Sections 361, 362, 363 And 364 Of The Bankruptcy Code And Rule 4001 Of The Federal Rules Of Bankruptcy Procedure For The Entry Of Interim And Final Orders (A) Authorizing The Debtors To (i) Obtain Postpetition Financing, (ii) Grant Senior Priming Liens And Superpriority Claims To Postpetition Lenders, (iii) Use Cash Collateral, And (iv) Provide Adequate Protection To Prepetition Secured Parties, And (B) Prescribing For And Manner Of Notice Of And Scheduling Hearings* ("**DIP Motion**") [D.I. 16].

6. Also on the Petition Date, the Debtors filed their *Motion For Interim And Final Orders (I) Prohibiting Utility Companies From Altering, Refusing Or Discontinuing Service To The Debtors, (II) Deeming Utility Companies Adequately Assured Of Future Payment And (III) Establishing Procedures For Determining Requests For Additional Adequate Assurance* [D.I. 8] (the "**Utilities Motion**"), seeking, among other things, to make a deposit of $486,974.84 to ACR Energy as a provider of "thermal energy/electric/water." *See* Utility Mot. at Ex. A. Footnote four of the Utility Motion, however, states that:

> The Debtors' proposed adequate assurance payments exclude certain payments (the "Non-Energy Payments") relating to a

> central utility plant (the "CUP") under [the ESA]. The Non-Energy Payments do not constitute the reasonable value of the energy services provided to the Debtors under the ESA. The Debtors will be filing a separate motion (the "CUP Motion") to determine the reasonable value of the postpetition energy services provided to the Debtors under the ESA. The CUP Motion will also determine which obligations related to the CUP should be paid by the Debtors postpetition.

*Id.* at 4, n.4.

7. On June 20, 2014, this court conducted a hearing on the emergency motions Debtors filed just the prior evening. Among many others, the court entered interim orders granting the DIP Motion ("**Interim DIP Order**") [D.I. 49] and the Utilities Motion (the "**Interim Utilities Order**") [D.I. 44]. ACR Energy was not on the list of utilities included in the Interim Utilities Order, which proposes assurance of payment to the listed utilities. *See* Interim Utilities Order at 6 ("pending entry of a final order on the Motion, nothing in this order shall in any way affect or be binding upon ACR Energy Partners, LLC.").

8. The Debtors also filed the ESA Motion on the Petition Date, seeking, among other things, a substantial and significant reduction in the contractual obligations they negotiated with ACR Energy and agreed to pay in the First Revel Bankruptcy. In the ESA Motion, the Debtors fail to articulate how the proposal they make for "assurance of payment" is adequate.

## FACTUAL BACKGROUND

9. Certain facts from the First Revel Bankruptcy cases are relevant to this Motion. The Debtors filed the First Revel Bankruptcy on March 25, 2013, and a day later filed their *Motion for Entry of An Order Determining Adequate Assurance of Payment for Future Utility Services*. *See* First Revel Bankruptcy D.I. 24 (the "**Original Utility Motion**"). The Original Utility Motion listed ACR Energy as a utility and proposed to provide a $535,000.00 deposit. *See* Orig. Utility Mot. at Ex. 2 to Ex. A. That was the Debtors' first effort to impermissibly and

EAST\78005816.6

unilaterally bifurcate ACR Energy's charges for utility services under the ESA. Subsequently, the Debtors withdrew the request to include ACR Energy within the Original Utility Motion, and ACR Energy and the Debtors entered into a Stipulation and Agreement in which they resolved the utility "assurance of payment" issues in the First Revel Bankruptcy (the "**Utility Payment Stipulation**"). *See* First Revel Bankruptcy D.I. 161 (Notice of Submission of Stip. Between Revel Enter. Grp., LLC and ACR Energy Partners, LLC Resolving Certain Utility Provider Issues) and D.I. 191 at ¶12 (Final Order approving the Original Utility Motion and Utility Payment Stipulation).

10. Under the Utility Payment Stipulation, the Debtors agreed, among other things, to pay ACR Energy in the ordinary course with respect to unpaid pre-petition invoices, and pay all of the post-petition invoices issued under the ESA within forty-five (45) days after ACR issued them.[4] *Id*. This Court approved the Utility Payment Stipulation,[5] and the ESA was assumed under the confirmed plan. *See* First Revel Bankruptcy D.I. 300.

11. In the First Revel Bankruptcy, the Debtors, by entering into the First Utility Stipulation, and by its assumption of the ESA under the plan in the First Revel Bankruptcy, agreed, as the Debtors here must, that their impermissible and unilateral efforts to bifurcate payments under the ESA is a breach of their covenant that "[Debtors] may not dispute [Debtors']

---

[4] Under the ESA, the Debtors are obliged to pay invoices issued within 30 days of receipt of a monthly invoice. ESA at 12.02. Payments are delinquent if not timely paid and not disputed in accordance with the Dispute Resolution Process defined in the ESA. *Id.* at 12.03. Failure to pay amounts when due and that remain unpaid for 15 days after written notice from [ACR Energy] constitutes an Event Constituting Breach by Buyer. *Id.* at 21.01. The Debtors routinely failed to pay monthly invoices within 30 days, thereby requiring ACR Energy to issue delinquency notices monthly. The provision of the Utility Payment Stipulation was intended to eliminate the need for ACR Energy to send delinquency notices during the administration of the First Revel Bankruptcy.

[5] *See* First Revel Bankruptcy D.I. 191 at ¶12 ("The stipulation and agreement by and between Revel Entertainment Group, LLC and ACR Energy Partners, LLC dated April 11, 2013 is hereby approved.").

EAST\78005816.6

obligation to pay to [ACR Energy] when due the Fixed Monthly Fee and the Operation and Maintenance Monthly Fee." ESA at 12.01(a).

12. Following the effective date of the confirmed plan for the First Revel Bankruptcy, the Debtors paid ACR Energy's invoices. The Debtors have not paid in full for services rendered and invoiced for January 2014[6] and have not paid any amounts for services rendered during the months of March 2014 through May 2014. These past due payments, in addition to ACR Energy's other pre-petition claims that arise under the ESA, total approximately $10 million. The Debtors have not disputed the amounts of any of these unpaid invoices.

## RELIEF REQUESTED

13. By this Motion, ACR Energy seeks entry of the Proposed Order directing the Debtors to provide Adequate Assurance of Payment during these chapter 11 cases as required by and in accordance with sections 366(c)(2) and 366(c)(1)(A)(v).

14. ACR Energy submits that providing Adequate Assurance of Payment in advance of ACR Energy's provision of utility services is the only means by which the Debtors can provide to ACR Energy adequate assurance of *payment* for their utility consumption during these cases.

## BASES FOR RELIEF

15. Bankruptcy Code section 366(b) provides:

> Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of

---

[6] The invoice issued by ACR Energy for January services was in the approximate amount of $3.7 million. The Debtors requested and ACR Energy agreed that the Debtors may extend the payment terms on their January invoice. There was a payment of $432,912.18 due on June 12, and a payment of $432,912.18 coming due on July 10, 2014.

> a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

11 U.S.C. § 366(b).

16. Bankruptcy Code section 366(c)(2) mandates the relief requested in this Motion as follows:

> Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

11 U.S.C. § 366(c)(2). Thus, if the Debtors have not provided adequate assurance of payment *satisfactory to the utility*, then on or after 31 days after the Petition Date (July 19, 2014), ACR Energy could terminate its utility services to the Debtors. *See In re Polly*, 392 B.R. 236, 240 (Bankr. N.D. Tex. 2008) (stating that section 366(c) requires a debtor to provide adequate assurance of payment); *see also In re Lucre, Inc.*, 333 B.R. 151, 154 (Bankr. W.D. Mich. 2005) (stating that subsection (c) of section 366 "clearly requires as a condition to continuing the injunction [in section 366(c)(2)] either the utility's acceptance of the adequate assurance offered by the . . . debtor in possession or . . . debtor in possession's acceptance of adequate assurance offered by the utility . . ." and adding that the "debtor in possession has no recourse to modify the adequate assurance payment the utility is demanding until the . . . debtor in possession actually accepts what the utility proposes."); *but see Long Island Lighting Co. v. Great Atlantic & Pacific Tea Co. (In re Great Atlantic & Pacific Tea Co.)*, No. 11-CV-1338 (CS), 2011 WL 5546954 at *3 (Nov. 14, 2011 S.D.N.Y.) (noting case law that disagrees with *Luce* and permits a debtor to file a motion for determination of adequate assurance without accepting the utility's proposal first).

17. ACR Energy is willing to provide the Debtors with utility services so long as the provision of those services does not expose ACR Energy to excessive risk of non-payment. Thus, ACR Energy has filed this Motion to bring the "adequate assurance of payment" issue to resolution as early as possible in these cases.

18. Both parties here agree that ACR Energy is a "utility"[7] and that ACR Energy is entitled to the protections of section 366; however, the Debtors offer only a deposit of approximately $480,000 to be paid within 15 days after entry of an order (as set forth in Debtors' proposed form of Order attached to the Utilities Motion). This proposal, with its additional 15 day delay, would result in violation of the 30 day time period in section 366(c)(2).[8] In addition, the amount of the initial proposed deposit – at only 17% of the expected costs of the utility services – is woefully inadequate. See 11 U.S.C. § 366(c)(1)(B). Instead, ACR Energy requires weekly pre-payment and a monthly true up. ACR Energy's proposal is patently more acceptable than the Debtors' under the facts of these cases, especially when viewed in conjunction with the Interim DIP Order and budget attached thereto. ACR Energy's proposal provides it with assurance of *payment* and will smooth out the Debtors' cash flow and permit clear budgeting and operational certainty.

---

[7] The case law supports this conclusion. *See One Stop Realtour Place, Inc. v. Allegiance Telecom, Inc. (In re One Stop Realtour Place, Inc.), 268 B.R. 430, 435 (Bankr. E.D. Pa. 2001); In re Coastal Dry Dock & Repair Corp., 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986)* (explaining that the landlord of the Brooklyn Navy yard "occupies a special position with respect to the debtor in its role as [debtor's] utility supplier"); *In re Woodland Corp., 48 B.R. 623, 624–25 (Bankr. D.N.M. 1985)* (finding that Bankruptcy Code section 366 applied to an electricity company that provided electrical services to debtor).

[8] Thirty days after the Petition Date is July 19, 2014, and since the issues raised in this Motion and the ESA Motion are not expected to be heard prior to July 11, 2014, granting an additional 15 days to permit Debtors to make a

*(footnote continued to next page)*

19. Under section 366 of the Bankruptcy Code, "assurance of payment" means only "(i) a cash deposit; (ii) a letter of credit; (iii) a certificate of deposit; (iv) a surety bond; (v) a prepayment of utility consumption; or (vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee." 11 U.S.C. § 366(c)(1)(A); *see also In re New Rochelle Telephone Corp.*, 397 B.R. 633, 638-39 (Bankr. E.D.N.Y. 2008) (stating that only these six forms of assurance of payment are permitted and that one of them is "required" since liens and administrative priorities are "no longer permitted" forms of assurance of payment).

20. Section 366 of the Bankruptcy Code has always required that in exchange for an injunction preventing shut off, utility providers must be adequately protected. The appropriate assurance of payment must protect utility providers from unreasonable risk of non-payment based on the specific facts of the case. *See, e.g., In re Caldor, Inc. – NY,* 199 B.R. 1, 3 (S.D.N.Y. 1996) (citing 2 COLLIER ON BANKR. ¶ 366.03 (15th ed. 1995) for the proposition that "[t]he intent [of section 366(b)], as elsewhere, is to leave some judicial flexibility while protecting the utility from unreasonable risk of future losses."); *In re Anchor Glass Container Corp.*, 342 B.R. 872, 875 (Bankr. M.D. Fla. 2005) ("The type of arrangement that constitutes adequate assurance of future payment is a fact-intensive inquiry, determined under the individual circumstances of the case."). A court, therefore, should consider the totality of the circumstances in determining whether utilities will be subject to an unreasonable risk of non-payment for post-petition services. *See Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80. 83-84 (Bankr. S.D.N.Y. 2002).

21. While "assurance of payment" is defined in the Bankruptcy Code, it does not

---

*(footnote continued from previous page)*
deposit, would mean the Debtors would not have provided assurance of payment until July 26, 2014, a week past the statutorily mandated time period.

EAST\78005816.6

provide a definition for "adequate." Black's Law Dictionary defines adequate to mean "[l]egally sufficient,"[9] and adequate is also defined as "[s]ufficient to satisfy a requirement or meet a need." AMER. HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th Ed. 2006) at 20. These definitions of "adequate" are important for the Court to consider, because here, what is adequate for a utility provider with a single customer (like ACR Energy), is considerably different from much of the existing case law interpreting Congress' amendment to section 366 of the Bankruptcy Code, where large utility companies with thousands of customers are better able to absorb lower payments from a single debtor.

22. Here, the Debtors are liquidating their assets in their second, back-to-back bankruptcy proceeding. There is absolutely no assurance that the ESA will be assumed and that all outstanding obligations will be cured by a buyer. Moreover, under the DIP Financing, the lenders may terminate their financing at any time if an acceptable buyer fails to materialize.

23. Because the Debtors are ACR Energy's only customer, it is less able to assume the risk of nonpayment than the typical utility provider, which can offset such risk with a roster of paying customers. Under the Debtors' proposed assurance of payment, ACR Energy would be forced to provide services to the Debtors for a payment amount that makes it extremely difficult for ACR Energy to meet its own financial obligations. The Debtors' proposed payment strategy would financially cripple ACR Energy, and this risk is further exacerbated by (1) the terms of the DIP financing, which permit pre-petition debt to be rolled up and grants priority liens and super-priority administrative claims to the Debtors' lenders (while at the same time

---

[9] *See* Black's Law Dictionary, 9th Ed., for the iPad, Version 2.1.2 (2009-2012). "Legally" means "in a way that accords with the law," and "Sufficient" means "of such quality, number, force, or value as is necessary for a given purpose." *Id.*

paying them $7.3 million of interest and fees through such period), and (2) the Debtors' failure to reserve any funds to pay the full amount of ACR Energy's post-petition invoices. The DIP financing Budget simply is not adequate to pay for the necessary expenses to preserve the value of these estates, and that puts the impermissible financial burden of these cases squarely on the back of ACR Energy in complete violation of section 366 of the Bankruptcy Code.

24.     For example, for the 13 weeks ending September 21, 2014, ACR Energy will be entitled to payment of only its post-petition invoice for services provided in June, and will have accrued claims for approximately $5.5 million for services expected to be rendered in July and August, for which the Debtors propose to provide a deposit of less than 10%. Furthermore, the budget attached to the Interim DIP Order contemplates total payments of $2.7 million (assuming no termination of the DIP financing commitments), including payments to all other utilities and excluding payment to ACR Energy of any amounts other than the commodity aspects of the invoices (it is not clear at all from the budget where the adequate assurance of payment deposit is accounted for), while leaving accrued and unpaid utility claims of in excess of $2.3 million for all utilities, which amount is understated by approximately $3.5 million. If there is no sale to a third party that assumes the ESA, or the ESA is rejected, and with the DIP financier rolling up $85 million of its pre-petition claims and being granted superpriority administrative claims, there is no assurance at all that ACR Energy's accrued administrative claims will be paid. This result is in direct contravention of section 366(c)(1)(B). Accordingly, the Debtors' proposed deposit of 17% of the utility costs to be made in 15 days after entry of an order is not adequate.

25.     Based on the totality of the circumstances, this Court should enter an order directing Debtors to provide the Adequate Assurance of Payment to ACR Energy to avoid subjecting it to an unreasonable risk of non-payment. Without Adequate Assurance of Payment,

ACR Energy is at risk of losing upwards of $2.75 million for each month of these cases, whereas the Debtors would continue to benefit from the provision of utility services without incurring the associated costs *that they bargained for in the ESA* and assumed through their recent chapter 11 plan, and the DIP lenders would receive interest and fees. ACR Energy is making a significant concession by not seeking immediate payment of the full amount of each monthly invoice (which would be similar to what the Debtors agreed to in the First Revel Bankruptcy). Rather, it is seeking payment of only *one-quarter* of each monthly invoice (excluding the Fixed Monthly Payment) each week, with a delayed true up for actual utility consumption.

26. ACR Energy submits that entry of the Proposed Order directing the Debtors to provide Adequate Assurance of Payment is appropriate and necessary to avoid potential extensive financial harm to ACR Energy and is the only way to provide "adequate assurance of payment" for its provision of utility services.

## WAIVER OF MEMORANDUM OF LAW

27. In accordance with Rule 9013-2 of the District of New Jersey Local Bankruptcy Rules, ACR Energy does not file a brief in support of this Motion because the legal principles involved are not novel or in dispute and are adequately set forth in the Motion.

## NOTICE

28. Notice of this Motion has been provided to the (i) Office of the United States Trustee for the District of New Jersey, (ii) counsel to the First Lien Lenders, (iii) counsel to the Second Lien Lenders, (iv) counsel to the DIP Agent, (v) the Debtors' 30 largest unsecured creditors on a consolidated basis (including counsel if known), (vi) all parties requesting notices pursuant to Bankruptcy Rule 2002, (vii) the Office of the Attorney General for the State of New Jersey, (viii) the New Jersey Division of Gaming Enforcement, (ix) the New Jersey Casino

Control Commission, (x) the Office of the Governor for the State of New Jersey, (xi) the United States Attorneys' Office for the District of New Jersey, (xii) the United States Attorney General, (xiii) the Internal Revenue Service, and (xiv) the Securities and Exchange Commission. ACR Energy submits that no other or further notice need be provided.

29. No previous motion for the relief sought herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, ACR Energy respectfully requests entry of the Proposed Order substantially in the form annexed hereto granting it the relief requested by this Motion and such other and further relief as is just and proper.

Dated: July 2, 2014

**DLA PIPER LLP (US)**

By /s/ Stuart M. Brown
Stuart M. Brown (NJ ID #38826)
Timothy J. Lowry (NJ ID #013342002)
17 Gordon's Alley, Suite 100
Atlantic City, NJ  08401
(609) 449-7000

*Counsel to ACR Energy Partners LLC*