Order Filed on
**7/14/2014**
by Clerk U.S. Bankruptcy
Court District of New Jersey

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-2(c)**

**FOX ROTHSCHILD LLP**
(Formed in the Commonwealth of Pennsylvania)
Michael J. Viscount, Jr., Esq.
Raymond M. Patella, Esq.
1301 Atlantic Avenue, Suite 400
Atlantic City, NJ 08401
(609) 348-4515/fax (609) 348-6834

**WHITE & CASE LLP**
John K. Cunningham, Esq. (admitted *pro hac vice*)
Richard S. Kebrdle, Esq. (admitted *pro hac vice*)
Kevin M. McGill, Esq. (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, FL 33131
(305) 371-2700/fax (305) 358-5744

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| REVEL AC, INC., <u>et al.</u>, | Case No. 14-22654 (GMB) |
| Debtors.[1] | Jointly Administered |
| | **Re: Docket No. 57** |

**CORRECTED ORDER (A) AUTHORIZING AND APPROVING BID PROCEDURES TO BE
EMPLOYED IN CONNECTION WITH THE PROPOSED SALE OF THE ASSETS
OF THE DEBTORS, (B) SCHEDULING AN AUCTION AND SALE HEARING,
(C) AUTHORIZING AND APPROVING ASSIGNMENT PROCEDURES,
(D) APPROVING THE MANNER AND FORM OF NOTICE OF THE AUCTION
<u>AND ASSIGNMENT PROCEDURES AND (E) GRANTING RELATED RELIEF</u>**

The relief set forth on the following pages two (2) through fourteen (14) is hereby ORDERED:

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are:  Revel AC, Inc. (3856), Revel AC, LLC (4456), Revel Atlantic City, LLC (9513), Revel Entertainment Group, LLC (2321), NB Acquisition, LLC (9387) and SI LLC (3856).  The location of the Debtors' corporate headquarters is 500 Boardwalk, Atlantic City, New Jersey 08401.

**DATED: 7/14/2014**

Gloria M. Burns, Chief Judge
United States Bankruptcy Court Judge

(Page 2)

| | |
|---|---|
| Debtors: | Revel AC, Inc., et al. |
| Case No.: | 14-22654 (GMB) |
| Caption of Order: | ORDER (A) AUTHORIZING AND APPROVING BID PROCEDURES TO BE EMPLOYED IN CONNECTION WITH THE PROPOSED SALE OF THE ASSETS OF THE DEBTORS, (B) SCHEDULING AN AUCTION AND SALE HEARING, (C) AUTHORIZING AND APPROVING ASSIGNMENT PROCEDURES, (D) APPROVING THE MANNER AND FORM OF NOTICE OF THE AUCTION AND ASSIGNMENT PROCEDURES AND (E) GRANTING RELATED RELIEF |

Upon the motion (the "Motion")[2] of Revel AC, Inc. ("Revel") and its affiliated debtors and debtors in possession (collectively, the "Debtors" or "Sellers") for entry of: an order, pursuant to sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), Rules 2002, 6004 and 9008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the District of New Jersey Local Bankruptcy Rules (the "Local Rules") (a) authorizing and approving bid procedures (the "Bid Procedures") to be employed in connection with the proposed sale and transfer (the "Sale") of the assets (the "Purchased Assets") of Sellers, (b) scheduling an auction (the "Auction") and a hearing (the "Sale Hearing") to consider approval of the Sale, (c) authorizing and approving procedures (the "Assignment Procedures") to be employed in connection with the assumption and assignment of certain contracts (the "Assumed Contracts"), leases (the "Assumed Leases") and intellectual property (the "Intellectual Property Rights") of the Debtors, (d) approving the manner and form of notice of the auction with respect to the Sale (the "Auction"), the Sale Hearing and the Assignment Procedures, substantially in the form attached to this Bid Procedures Order as Exhibit "2" (the "Sale Notice"), Exhibit "3" (the "Publication Notice") and Exhibit "4" (the "Assignment Notice") and (e) granting related relief, all as more fully set forth in the Motion; and no previous motion for similar relief having been made; and it appearing that

---

[2]        Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*Approved by Judge Gloria M. Burns July  14, 2014*

| (Page 3) | |
|---|---|
| Debtors: | Revel AC, Inc., et al. |
| Case No.: | 14-22654 (GMB) |
| Caption of Order: | ORDER (A) AUTHORIZING AND APPROVING BID PROCEDURES TO BE EMPLOYED IN CONNECTION WITH THE PROPOSED SALE OF THE ASSETS OF THE DEBTORS, (B) SCHEDULING AN AUCTION AND SALE HEARING, (C) AUTHORIZING AND APPROVING ASSIGNMENT PROCEDURES, (D) APPROVING THE MANNER AND FORM OF NOTICE OF THE AUCTION AND ASSIGNMENT PROCEDURES AND (E) GRANTING RELATED RELIEF |

the Court has jurisdiction over this matter; and it appearing that due notice of the Motion as set forth therein is sufficient under the circumstances and that no other or further notice need be provided; and it further appearing that the relief requested in the Motion is in the best interests of the Debtors and their estates and creditors; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

NOW, THEREFORE, THE COURT HEREBY FINDS THAT:

A.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

B.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this District and before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Notice of the Motion having been given as described above, is timely, adequate, sufficient and proper under the circumstances.

C.    The Debtors have articulated good and sufficient reasons for, and the best interests of the estate, creditors, employees and other parties in interest and stakeholders will be served by, the Court granting certain of the relief requested in the Motion, including approval of (i) the Bid Procedures, (ii) the Assignment Procedures and (iii) the form, timing and manner of notice of the proposed Sale, the Bid Procedures, the Assignment Procedures and the other matters described herein, including the Sale Notice, the Publication Notice and the Assignment Notice.

*Approved by Judge Gloria M. Burns July  14, 2014*

(Page 4)

| | |
|---|---|
| Debtors: | Revel AC, Inc., et al. |
| Case No.: | 14-22654 (GMB) |
| Caption of Order: | ORDER (A) AUTHORIZING AND APPROVING BID PROCEDURES TO BE EMPLOYED IN CONNECTION WITH THE PROPOSED SALE OF THE ASSETS OF THE DEBTORS, (B) SCHEDULING AN AUCTION AND SALE HEARING, (C) AUTHORIZING AND APPROVING ASSIGNMENT PROCEDURES, (D) APPROVING THE MANNER AND FORM OF NOTICE OF THE AUCTION AND ASSIGNMENT PROCEDURES AND (E) GRANTING RELATED RELIEF |

D.      The Bid Procedures are reasonably designed to maximize the value to be achieved for the Purchased Assets.

E.      Under the circumstances, the Bid Procedures constitute a reasonable, sufficient, adequate and proper means to provide potential bidders with an opportunity to submit and pursue offers for the Purchased Assets.

F.      The Sale Notice is reasonably calculated to provide parties in interest with proper notice of the potential sale of the Purchased Assets, the related Bid Procedures, the Sale Hearing, the structure of the Sale and related implication on interested parties, including, without limitation, creditors, customers, suppliers and employees.

G.      The Assignment Notice is reasonably calculated to provide all counterparties to the Assumed Contracts, Assumed Leases and Intellectual Property Rights with proper notice of the potential assumption and assignment of their executory contracts or unexpired leases and Cure Payment Liabilities (as defined below) relating thereto and the Assignment Procedures.

H.      Publication of the Publication Notice as set forth herein in the New York Times (National Edition) and the Press of Atlantic City is reasonably calculated to provide all potential claimants and all unknown creditors and parties not otherwise required to be served with a copy of the Sale Notice pursuant to this Order with proper notice of the potential sale of the Purchased Assets, the related Bid Procedures, the Auction and the Sale Hearing.

*Approved by Judge Gloria M. Burns July 14, 2014*

(Page 5)

| | |
|---|---|
| Debtors: | Revel AC, Inc., et al. |
| Case No.: | 14-22654 (GMB) |
| Caption of Order: | ORDER (A) AUTHORIZING AND APPROVING BID PROCEDURES TO BE EMPLOYED IN CONNECTION WITH THE PROPOSED SALE OF THE ASSETS OF THE DEBTORS, (B) SCHEDULING AN AUCTION AND SALE HEARING, (C) AUTHORIZING AND APPROVING ASSIGNMENT PROCEDURES, (D) APPROVING THE MANNER AND FORM OF NOTICE OF THE AUCTION AND ASSIGNMENT PROCEDURES AND (E) GRANTING RELATED RELIEF |

I.      The Motion and this Order comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

J.      Due, sufficient and adequate notice of the relief granted herein has been given to parties in interest.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      All objections to the Motion and/or the entry of the Bid Procedures Order not otherwise withdrawn are overruled.

3.      The following Bid Procedures shall govern the bidding and the Auction with respect to the Sale of the Purchased Assets and Assumed Liabilities:

a.      <u>Letters of Intent</u>.  Each bidder shall, on or before July 18, 2014 (the "Letter of Intent Deadline"), deliver to the Debtors: (a) a letter of intent to bid under the Bid Procedures (the "Letter of Intent"), (b) reasonable proof acceptable to the Debtors, in consultation with a steering committee of Tranche B Term Loan Lenders under the First Lien Credit Agreement and the Second Lien Lenders (collectively, the "Steering Committee"), JPMorgan Chase Bank, N.A., as the First Lien Agent, Wilmington Trust, N.A., as the Second Lien Agent, Wells Fargo Bank, N.A., as the DIP Agent (the "DIP Agent"), and the Official Committee of Unsecured Creditors (collectively, the "Consultation Parties"), of the bidder's ability to consummate a purchase of the Purchased Assets and assumption of the Assumed Liabilities, which, if the bidder is an entity formed for the purpose of acquiring the Purchased Assets, shall include a written commitment for financing by the equity holder(s) of the bidder or another bona fide financing source to be responsible for the bidder's obligations with respect to the purchase of the Purchased Assets and assumption of the Assumed Liabilities and (c) a proposal detailing the structure and range of proposed purchase price for the Purchased

*Approved by Judge Gloria M. Burns July 14, 2014*

| | |
|---|---|
| (Page 6) | |
| Debtors: | Revel AC, Inc., et al. |
| Case No.: | 14-22654 (GMB) |
| Caption of Order: | ORDER (A) AUTHORIZING AND APPROVING BID PROCEDURES TO BE EMPLOYED IN CONNECTION WITH THE PROPOSED SALE OF THE ASSETS OF THE DEBTORS, (B) SCHEDULING AN AUCTION AND SALE HEARING, (C) AUTHORIZING AND APPROVING ASSIGNMENT PROCEDURES, (D) APPROVING THE MANNER AND FORM OF NOTICE OF THE AUCTION AND ASSIGNMENT PROCEDURES AND (E) GRANTING RELATED RELIEF |

Assets.  Unless otherwise agreed by the Debtors, a Letter of Intent submitted before the Letter of Intent Deadline is a prerequisite for a bid to be deemed a Qualified Bid (as defined below).   The Debtors shall provide copies of all Letters of Intent to the Consultation Parties promptly upon receipt.

b.      Qualified Bids.  Each bidder shall, on or before August 4, 2014 (the "Bid Deadline"), deliver to the Debtors: (a) a cash deposit of 10% of the purchase price (the "Deposit"), (b) reasonable proof acceptable to the Debtors, in consultation with the Consultation Parties, of the bidder's ability to consummate a purchase of the Purchased Assets and assumption of the Assumed Liabilities, including copies of such bidder's annual, quarterly and monthly financial statements for the most recently ended fiscal periods, certified to be true, correct and complete in all material respects, or if the bidder is an entity formed for the purpose of acquiring the Purchased Assets, the aforementioned financial statements for the equity holder(s) of the bidder, and evidence of sufficient financing, (c) reasonable proof acceptable to the Debtors, in consultation with the Consultation Parties, of whether the bidder will require a casino license, and, if so, disclosure as to whether (i) the bidder ever applied for a casino license in New Jersey or another jurisdiction and been denied or subsequently withdrew the application, (ii) the bidder currently holds a casino license in New Jersey or another jurisdiction, (iii) the bidder ever admitted to any violation or settled with the New Jersey Casino Control Commission ("NJCCC"), the New Jersey Division of Gaming Enforcement, or any other gaming investigatory or licensing entity or Federal Government, and (iv) there are any other reasons why the bidder believes that it may not obtain interim authorization from the NJCCC and (d) an executed asset purchase agreement on substantially the terms of, or on more favorable terms than those set forth in, the form of Asset Purchase Agreement attached hereto as Exhibit "1" (the "Agreement"), which asset purchase agreement shall (i) specify the amount of cash or other form of consideration acceptable to the Debtors (in consultation with the Consultation Parties), offered by the bidder for the Purchased Assets, (ii) not be subject to unperformed due diligence or obtaining financing nor provide for an expense reimbursement or break-up amount in favor of such bidder, (iii) constitute an irrevocable offer by such bidder to complete its proposed purchase upon the terms set forth therein, and must be irrevocable until closing of the Sale of the Purchased Assets to the Successful Bidder, (iv) seek to acquire the Purchased Assets, (v) include a copy of a board resolution or similar document demonstrating the authority of the bidder to submit an offer to purchase the Purchased Assets on the terms proposed by such bidder and identifies the officer(s) or authorized agent(s) appearing on behalf of the bidder and (vi) be accompanied by a marked-up version of (x) such asset purchase

*Approved by Judge Gloria M. Burns July  14, 2014*

(Page 7)

| | |
|---|---|
| Debtors: | Revel AC, Inc., et al. |
| Case No.: | 14-22654 (GMB) |
| Caption of Order: | ORDER (A) AUTHORIZING AND APPROVING BID PROCEDURES TO BE EMPLOYED IN CONNECTION WITH THE PROPOSED SALE OF THE ASSETS OF THE DEBTORS, (B) SCHEDULING AN AUCTION AND SALE HEARING, (C) AUTHORIZING AND APPROVING ASSIGNMENT PROCEDURES, (D) APPROVING THE MANNER AND FORM OF NOTICE OF THE AUCTION AND ASSIGNMENT PROCEDURES AND (E) GRANTING RELATED RELIEF |

agreement reflecting changes from the Agreement and (y) the Sale Order (a "Qualified Bid"). Nothing in the Bid Procedures shall prevent the Debtors, in the exercise of their business judgment, from considering bids for the purchase of less than substantially all of the Debtors' assets. The Debtors shall provide copies of all bids received by the Bid Deadline to the Consultation Parties promptly upon receipt.

c. <u>Qualified Bidders</u>. The Debtors shall determine, in consultation with the Consultation Parties, whether a bid, including any credit bid by any secured creditor, qualifies as a Qualified Bid. Only those persons who have submitted a Qualified Bid in compliance with this Bid Procedures Order shall be a "Qualified Bidder." If a bid submitted on or before the Bid Deadline fails to meet all the requirements of a Qualified Bid, the Debtors are entitled to work with such bidder in an effort to cure any defects in the bid and to cause such bid to become a Qualified Bid, in consultation with the Consultation Parties, prior to the commencement of the Auction. Notwithstanding anything to the contrary contained herein but subject to the terms and conditions set forth in the DIP Loan Documents, the DIP Agent and the Prepetition First Lien Agent shall be deemed to be Qualified Bidders for purposes of proposing any credit bid(s) and participating in any auction, without the need for compliance with any of the requirements contained in section 3(b) above; <u>provided</u>, <u>however</u>, that any such credit bid shall only qualify as a Qualified Bid if so determined by the Debtors, in consultation with the Consultation Parties. If the DIP Agent and/or the Prepetition First Lien Agent intends to submit a credit bid, such party or parties must declare its intention to do so and submit the credit bid prior to the commencement of the Auction. In the event the DIP Agent and/or the Prepetition First Lien Agent declares its intention to submit a credit bid, its status as a Consultation Party shall be terminated at that time.

d. <u>Due Diligence</u>. Upon execution of a confidentiality agreement in a form acceptable to the Debtors, any bidder that wishes to conduct due diligence on the Debtors or their assets shall be granted access to all material information that has been or will be provided to other bidders, subject, in all cases, to the terms and conditions of the confidentiality agreement, applicable law or other restrictions the Debtors may deem necessary or appropriate to protect the proprietary information of the Debtors. The due diligence period for bidders will end one business day prior to the Bid Deadline. The Debtors shall coordinate all reasonable requests for additional information and due diligence access from potential bidders. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline. The Purchased Assets shall be sold on an "as is, where is" basis and by submitting a bid, each potential bidder

*Approved by Judge Gloria M. Burns July 14, 2014*

(Page 8)

| | |
|---|---|
| Debtors: | Revel AC, Inc., et al. |
| Case No.: | 14-22654 (GMB) |
| Caption of Order: | ORDER (A) AUTHORIZING AND APPROVING BID PROCEDURES TO BE EMPLOYED IN CONNECTION WITH THE PROPOSED SALE OF THE ASSETS OF THE DEBTORS, (B) SCHEDULING AN AUCTION AND SALE HEARING, (C) AUTHORIZING AND APPROVING ASSIGNMENT PROCEDURES, (D) APPROVING THE MANNER AND FORM OF NOTICE OF THE AUCTION AND ASSIGNMENT PROCEDURES AND (E) GRANTING RELATED RELIEF |

acknowledges such. The due diligence period for bidders may be extended by the Debtors, in consultation with the Consultation Parties.

e.    The Auction. In the event the Debtors receive more than one Qualified Bid, an Auction shall commence at 9:00 a.m. (prevailing Eastern Time) on August 7, 2014. Each Qualified Bidder shall be invited to attend the Auction at the office of Debtors' counsel, White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036, which Auction must be attended in person. The Consultation Parties and their advisors shall be able to attend the Auction in person. The Purchased Assets shall be sold free and clear of all liens, claims and encumbrances to the fullest extent allowed under section 363(f) of the Bankruptcy Code. The following rules shall govern the Auction:

i.    Subject to the limitations set forth in these Bid Procedures, the opening price at such Auction shall be the highest and/or best offer of a Qualified Bidder selected, in consultation with the Consultation Parties, and announced by the Debtors.

ii.    Only Qualified Bidders may bid at the Auction. If multiple Qualified Bids are received, each Qualified Bidder shall have the right to continue to improve its Qualified Bid at the Auction.

iii.    Each subsequent overbid must provide an incremental amount of at least $1,000,000.00 of value to the Debtors, or such other amount as designated by the Debtors from time to time, in consultation with the Consultation Parties.

iv.    At the conclusion of the Auction and subject to Court approval following the Auction, the Debtors, in consultation with the Consultation Parties, shall announce the highest or otherwise best bid for the Purchased Assets (the "Successful Bidder") and the backup bidder (the "Backup Bidder").

v.    The Auction may be adjourned by the Debtors, in consultation with the Consultation Parties, from time to time without further notice other than an announcement of such adjournment by the Debtors at the Auction.

vi.    All parties' rights under section 363(k) of the Bankruptcy Code are preserved. In the event a valid credit bid (subject to and in accordance with section 363(k) of the Bankruptcy Code) is received for the Purchased Assets, it shall be deemed

*Approved by Judge Gloria M. Burns July  14, 2014*

(Page 9)

| | |
|---|---|
| Debtors: | Revel AC, Inc., et al. |
| Case No.: | 14-22654 (GMB) |
| Caption of Order: | ORDER (A) AUTHORIZING AND APPROVING BID PROCEDURES TO BE EMPLOYED IN CONNECTION WITH THE PROPOSED SALE OF THE ASSETS OF THE DEBTORS, (B) SCHEDULING AN AUCTION AND SALE HEARING, (C) AUTHORIZING AND APPROVING ASSIGNMENT PROCEDURES, (D) APPROVING THE MANNER AND FORM OF NOTICE OF THE AUCTION AND ASSIGNMENT PROCEDURES AND (E) GRANTING RELATED RELIEF |

in all respects to be equal in value to an all-cash bid in an amount equal to the face value of such credit bid on a dollar-for-dollar basis.

       f.    <u>Successful Bidder</u>.  The Debtors may base the selection of the Successful Bidder and Backup Bidder on the following factors, among others: purchase price; liabilities assumed in the bid; the ability to obtain necessary licenses, and the markup of the Agreement submitted with the bid.  The Debtors may, in consultation with the Consultation Parties, (a) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures or the terms and conditions of sale or (iii) contrary to the best interests of Sellers, their estates and creditors and/or (b) refuse to consider any bid that fails to comply with the Bid Procedures.  After the determination of the Successful Bidder, the Debtors shall promptly execute the asset purchase agreement previously executed and submitted by such Successful Bidder, together with any changes thereto necessitated by the parties' actions at the Auction.

       g.    <u>Backup Bidder</u>.  If the Successful Bidder fails to consummate the sale, breaches the asset purchase agreement executed by the Successful Bidder or otherwise fails to perform, (a) the Debtors, in consultation with the Consultation Parties, may consummate the proposed sale with the next highest or best bidder at the Auction (i.e., the Backup Bidder), which hereafter shall be included in the definition of "Successful Bidder," without the need for further Court approval, (b) the Debtors, in consultation with the Consultation Parties, will retain the Deposit of such bidder and (c) the Debtors will maintain the right to pursue all available remedies against such bidder.  Notwithstanding anything to the contrary in these Bid Procedures, the Deposit of the Successful Bidder will be retained by the Debtors.  Deposits of all other bidders will be retained by the Debtors until closing of the sale of the Purchased Assets to the Successful Bidder.

       h.    <u>Reservation of Rights</u>.  The Debtors reserve the right, in consultation with the Consultation Parties, to modify the Bid Procedures in any manner that will best promote the goals of the Sale; <u>provided</u>, <u>however</u>, that any such modification must be in form and substance reasonably satisfactory to the DIP Agent and the Required Lenders under the DIP Credit Agreement.

       i.    <u>Fees and Expenses</u>.  All bidders submitting bids shall bear their own fees and expenses in connection with the bid, the bid process, the Auction and the proposed sale, whether or not such sale is ultimately approved, unless otherwise agreed to by the

*Approved by Judge Gloria M. Burns July  14, 2014*

| | |
|---|---|
| (Page 10) | |
| Debtors: | Revel AC, Inc., et al. |
| Case No.: | 14-22654 (GMB) |
| Caption of Order: | ORDER (A) AUTHORIZING AND APPROVING BID PROCEDURES TO BE EMPLOYED IN CONNECTION WITH THE PROPOSED SALE OF THE ASSETS OF THE DEBTORS, (B) SCHEDULING AN AUCTION AND SALE HEARING, (C) AUTHORIZING AND APPROVING ASSIGNMENT PROCEDURES, (D) APPROVING THE MANNER AND FORM OF NOTICE OF THE AUCTION AND ASSIGNMENT PROCEDURES AND (E) GRANTING RELATED RELIEF |

Debtors and approved by the Court, in consultation with the Consultation Parties. Further, by submitting a bid, a bidder shall be deemed to waive its right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code in any way related to the submission of its bid, the bid process, the Auction or the Sale.

4.      The Sale Hearing shall be held on August 8, 2014 at 10:00 a.m. (prevailing Eastern Time), or as soon thereafter as counsel may be heard, before the Honorable Gloria M. Burns, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of New Jersey, 401 Market Street, Second Floor, Camden, New Jersey 08101. At the Sale Hearing, the Debtors will seek entry of the Sale Order. The Sale Hearing may be adjourned from time to time without further notice other than an announcement by the Debtors in Court on the date scheduled for the Sale Hearing. Notwithstanding anything herein or in the Motion to the contrary, the Debtors may elect to seek to consummate all or part of the Sale in connection with and pursuant to a chapter 11 plan in these Chapter 11 Cases.

5.      The form of Sale Notice and the form of Publication Notice are hereby approved. The Debtors shall (a) serve within two (2) business days (by first class mail, postage prepaid) after entry of this Bid Procedures Order (the "Mailing Deadline"), the Sale Notice upon the Service Parties and (b) on the Mailing Deadline, or as soon as practicable thereafter, submit for publication the Publication Notice in the New York Times (National Edition) and the Press of Atlantic City and on the website of the Debtors' claims and noticing agent, AlixPartners, LLP, www.revelcaseinfo.com.

*Approved by Judge Gloria M. Burns July 14, 2014*

(Page 11)

| | |
|---|---|
| Debtors: | Revel AC, Inc., et al. |
| Case No.: | 14-22654 (GMB) |
| Caption of Order: | ORDER (A) AUTHORIZING AND APPROVING BID PROCEDURES TO BE EMPLOYED IN CONNECTION WITH THE PROPOSED SALE OF THE ASSETS OF THE DEBTORS, (B) SCHEDULING AN AUCTION AND SALE HEARING, (C) AUTHORIZING AND APPROVING ASSIGNMENT PROCEDURES, (D) APPROVING THE MANNER AND FORM OF NOTICE OF THE AUCTION AND ASSIGNMENT PROCEDURES AND (E) GRANTING RELATED RELIEF |

6.      Notice as set forth in the preceding paragraph shall constitute good and sufficient notice of the Motion as it relates to the Debtors' request for approval of the Sale Order, the Auction and the Sale Hearing, and no other or further notice of the Motion, the Auction and/or the Sale Hearing shall be necessary or required.

7.      Responses or objections, if any, to the entry of the Sale Order shall be filed with this Court and served, so as to be actually received no later than August 1, 2014 at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline") on: (i) the Debtors, c/o Revel AC, Inc. 500 Boardwalk, Atlantic City, New Jersey 08401 (Attn: Loretta Pickus, Esq.); (ii) co-counsel to the Debtors, White & Case LLP, 200 South Biscayne Boulevard, Suite 4900, Miami, Florida 33131 (Attn: John K. Cunningham, Esq.) and Fox Rothschild LLP, 1301 Atlantic Avenue, Suite 400, Atlantic City, New Jersey 08401 (Attn: Michael J. Viscount, Esq.); (iii) counsel to the DIP Agent; (iv) the Office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, New Jersey 07102 (Attn: Mitchell Hausman, Esq. and Jeffrey Sponder, Esq.); (v) counsel to the Steering Committee, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019-6064 (Attn: Andrew N. Rosenberg, Esq. and Elizabeth R. McColm, Esq.); (vi) counsel to the First Lien Agent; (vii) counsel to the Second Lien Agent; and (viii) counsel to the Official Committee of Unsecured Creditors, Cole, Schotz, Meisel, Forman & Leonard, P.A., 25 Main Street, Hackensack, New Jersey 07601 (Attn: Michael D. Sirota, Esq. and Warren A. Usatine, Esq.).

*Approved by Judge Gloria M. Burns July  14, 2014*

(Page 12)

| | |
|---|---|
| Debtors: | Revel AC, Inc., et al. |
| Case No.: | 14-22654 (GMB) |
| Caption of Order: | ORDER (A) AUTHORIZING AND APPROVING BID PROCEDURES TO BE EMPLOYED IN CONNECTION WITH THE PROPOSED SALE OF THE ASSETS OF THE DEBTORS, (B) SCHEDULING AN AUCTION AND SALE HEARING, (C) AUTHORIZING AND APPROVING ASSIGNMENT PROCEDURES, (D) APPROVING THE MANNER AND FORM OF NOTICE OF THE AUCTION AND ASSIGNMENT PROCEDURES AND (E) GRANTING RELATED RELIEF |

Notwithstanding the foregoing or anything herein to the contrary, the deadline to file an objection to the assumption and assignment of any Assumed Contract, Assumed Lease or Intellectual Property Right in connection with the Sale, other than a Cure Objection (as defined below), shall be August 11, 2014 at 4:00 p.m. (prevailing Eastern Time), and any such assumption and assignment objection shall be heard by the Court on August 18, 2014 at 10:00 a.m. (prevailing Eastern Time).

8.      If the Debtors seek to consummate the Sale pursuant to confirmation of a chapter 11 plan after the Objection Deadline, no party in interest that failed to file a timely objection to entry of the Sale Order shall be permitted to object to confirmation of such Chapter 11 plan on any grounds that could have formed the basis for an objection to entry of the Sale Order.

9.      The Debtors are authorized and empowered to take such steps, incur and pay such costs and expenses and do such things as may be reasonably necessary to fulfill the notice requirements established by this Bid Procedures Order.

10.      The following Assignment Procedures shall govern the assumption and assignment of the Assumed Contracts, Assumed Leases and the Intellectual Property Rights in connection with the Sale of the Purchased Assets to the Successful Bidder:

a.      Not later than fourteen (14) days prior to the Sale Hearing (as may be adjourned from time to time), the Debtors shall file with the Court a list (the "Cure Schedule") identifying such contracts and leases which may constitute Assumed

*Approved by Judge Gloria M. Burns July  14, 2014*

(Page 13)

| | |
|---|---|
| Debtors: | Revel AC, Inc., et al. |
| Case No.: | 14-22654 (GMB) |
| Caption of Order: | ORDER (A) AUTHORIZING AND APPROVING BID PROCEDURES TO BE EMPLOYED IN CONNECTION WITH THE PROPOSED SALE OF THE ASSETS OF THE DEBTORS, (B) SCHEDULING AN AUCTION AND SALE HEARING, (C) AUTHORIZING AND APPROVING ASSIGNMENT PROCEDURES, (D) APPROVING THE MANNER AND FORM OF NOTICE OF THE AUCTION AND ASSIGNMENT PROCEDURES AND (E) GRANTING RELATED RELIEF |

Contracts, Assumed Leases and Intellectual Property Rights in connection with the Sale and the amounts necessary to cure defaults and/or provide compensation or adequate assurance of compensation for actual pecuniary loss resulting from a default at the time of assumption as determined by the Debtors (such amounts, "Cure Payment Liability"). The Debtors shall serve all counterparties to such contracts and leases with the Assignment Notice, specifically stating that the Debtors are or may be seeking the sale, assumption and assignment of such contracts and leases and notifying such parties of the deadline for objecting (a "Cure Objection") to the amount of any Cure Payment Liability related thereto, which deadline shall be August 5, 2014 at 4:00 p.m. (the "Cure Objection Deadline"), with any unresolved Cure Objections to be heard before the Court at the Sale Hearing.

b.      In cases in which the Debtors are unable to establish that a default exists, the relevant Cure Payment Liability shall be set at $0.00 in the Assignment Notice.

c.      Notwithstanding anything herein to the contrary, the Debtors may, from time to time, modify the Cure Schedule to add or remove a contract or lease counterparty or to modify the proposed Cure Payment Liability with respect to any counterparty. The non-debtor counterparty to any such contract or lease will be provided written notice of any such modification and at least fourteen (14) days advance notice of its deadline to object to such modification, and the Debtors will seek to set any such objection for hearing before the Court as promptly as is reasonably possible.

11.      The form of notice of the Assignment Notice is hereby approved in all respects.

12.      The notice provided in the Assignment Procedures of (a) the Assumed Contracts, Assumed Leases and Intellectual Property Rights and the amounts necessary to cure defaults under each of such Assumed Contracts, Assumed Leases and Intellectual Property Rights determined by the Debtors and (b) the deadline for objecting to the proposed Cure

*Approved by Judge Gloria M. Burns July  14, 2014*

(Page 14)

| | |
|---|---|
| Debtors: | Revel AC, Inc., et al. |
| Case No.: | 14-22654 (GMB) |
| Caption of Order: | ORDER (A) AUTHORIZING AND APPROVING BID PROCEDURES TO BE EMPLOYED IN CONNECTION WITH THE PROPOSED SALE OF THE ASSETS OF THE DEBTORS, (B) SCHEDULING AN AUCTION AND SALE HEARING, (C) AUTHORIZING AND APPROVING ASSIGNMENT PROCEDURES, (D) APPROVING THE MANNER AND FORM OF NOTICE OF THE AUCTION AND ASSIGNMENT PROCEDURES AND (E) GRANTING RELATED RELIEF |

Payment Liabilities, shall constitute adequate and sufficient notice and no additional notice need be provided.

13.     This Bid Procedures Order shall constitute findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

14.     To the extent this Bid Procedures Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Bid Procedures Order shall govern.

15.     Notwithstanding the possible applicability of Bankruptcy Rules 6003 and 6004(h), or otherwise, this Court, for good cause shown, orders that the terms and conditions of this Bid Procedures Order shall be immediately effective and enforceable upon its entry.

16.     The Court shall retain exclusive jurisdiction over any matter or dispute arising from or relating to the implementation of this Bid Procedures Order.

*Approved by Judge Gloria M. Burns July 14, 2014*

# **EXHIBIT 1**

(Agreement)

*Approved by Judge Gloria M. Burns July  14, 2014*

ASSET PURCHASE AGREEMENT


DATED AS OF [●], 2014


BY AND AMONG


**REVEL AC, INC. AND
CERTAIN OF ITS SUBSIDIARIES
NAMED HEREIN**


**AS SELLERS,**


AND


**[PURCHASER]**


**AS PURCHASER**

*Approved by Judge Gloria M. Burns July  14, 2014*

**SECTION 1 INTERPRETATION** ............................................................................1

    1.1.   Definitions.................................................................................1

**SECTION 2 PURCHASE, SALE AND ASSIGNMENT OF PURCHASED ASSETS** .........10

    2.1.   Sale of Assets.............................................................................10

    2.2.   Excluded Assets.........................................................................12

    2.3.   Assumed Liabilities ...................................................................13

    2.4.   Excluded Liabilities ...................................................................14

    2.5.   Purchase Price............................................................................15

    2.6.   Purchaser Deposit ......................................................................15

    2.7.   Allocation of Purchase Price......................................................15

    2.8.   Excluded Assets and Liabilities .................................................16

**SECTION 3 REPRESENTATIONS AND WARRANTIES OF SELLERS** .........................16

    3.1.   Organization and Good Standing................................................16

    3.2.   Authorization .............................................................................16

    3.3.   No Conflicts...............................................................................17

    3.4.   Consents and Approvals .............................................................17

    3.5.   Compliance with Law ................................................................17

    3.6.   Title to Assets............................................................................17

    3.7.   No Broker or Finder...................................................................17

    3.8.   Financial Statements ..................................................................17

    3.9.   Disclaimer of Other Representations and Warranties..................18

**SECTION 4 REPRESENTATIONS AND WARRANTIES OF PURCHASER**...................18

    4.1.   Organization and Good Standing................................................18

    4.2.   Authorization .............................................................................18

    4.3.   No Conflicts...............................................................................19

    4.4.   Consents and Approvals .............................................................19

    4.5.   Financing...................................................................................19

    4.6.   Licensability..............................................................................19

    4.7.   "AS IS" TRANSACTION ..........................................................19

    4.8.   Disclaimer of Other Representations and Warranties..................20

**SECTION 5 CERTAIN COVENANTS OF SELLERS** ...............................................20

    5.1.   Provision of Records..................................................................20

    5.2.   Receipt of Property Relating to Assets .......................................20

-i-

*Approved by Judge Gloria M. Burns July  14, 2014*

| 5.3. | Conduct of Business Pending the Closing | 20 |
| 5.4. | Access to Information | 21 |
| 5.5. | Communication with Parties to Contracts | 22 |
| 5.6. | Bankruptcy Action | 22 |
| 5.7. | Sale Order | 22 |
| 5.8. | Transfer of Permits | 23 |
| 5.9. | Release of Encumbrances | 23 |
| 5.10. | Assignability of Certain Contracts | 23 |
| 5.11. | Rejected Contracts | 23 |
| 5.12. | Further Assurances | 23 |
| **SECTION 6 CERTAIN COVENANTS OF PURCHASER.** | | 23 |
| 6.1. | Performance with Respect to the Assets and the Assumed Contracts | 23 |
| 6.2. | Cure Amounts | 24 |
| 6.3. | Further Assurances | 24 |
| **SECTION 7 CERTAIN MUTUAL COVENANTS** | | 24 |
| 7.1. | Cooperation | 24 |
| 7.2. | Approvals and Filings | 25 |
| 7.3. | Public Statements | 27 |
| 7.4. | Notification of Certain Matters | 27 |
| **SECTION 8 EMPLOYEE MATTERS** | | 27 |
| 8.1. | Employment | 27 |
| 8.2. | Employee Benefit Matters | 28 |
| 8.3. | Defined Contribution Plans | 29 |
| 8.4. | Compliance with WARN Act | 29 |
| **SECTION 9 CONDITIONS TO SELLERS' OBLIGATIONS** | | 29 |
| 9.1. | Representations and Warranties | 29 |
| 9.2. | Compliance with Agreements | 30 |
| 9.3. | Approvals; No Injunctions | 30 |
| 9.4. | Purchaser's Closing Deliveries and Obligations | 30 |
| 9.5. | Entry of the Sale Order | 30 |
| **SECTION 10 CONDITIONS TO PURCHASER'S OBLIGATIONS** | | 30 |
| 10.1. | Representations and Warranties | 30 |
| 10.2. | Compliance with Covenants and Agreements | 30 |

*Approved by Judge Gloria M. Burns July  14, 2014*

10.3.  Approvals; No Injunctions ..................................................................30

10.4.  Sellers' Closing Deliveries and Obligations ......................................31

10.5.  Entry of the Sale Order .....................................................................31

10.6.  Assumed Contracts ...........................................................................31

**SECTION 11 CLOSING; TERMINATION** ..............................................31

11.1.  The Closing .......................................................................................31

11.2.  Termination .......................................................................................32

11.3.  Effects of Termination ......................................................................34

11.4.  Frustration of Closing Conditions ....................................................34

**SECTION 12 TAXES** ..................................................................................34

12.1.  Taxes Related to Purchase of Assets ................................................34

12.2.  Cooperation .......................................................................................35

**SECTION 13 EXPENSES, ATTORNEYS' FEES AND BROKERS' FEES** .......35

13.1.  Expenses ...........................................................................................35

**SECTION 14 MISCELLANEOUS** .............................................................35

14.1.  Sale of Assets Subject to Bankruptcy Court Approval ....................35

14.2.  Survival of Representations and Warranties and Covenants ............35

14.3.  Entirety of Agreement; Amendments and Waivers ..........................35

14.4.  Assignment .......................................................................................36

14.5.  Successors and Assigns; No Third Party Beneficiaries ...................36

14.6.  Governing Law; Jurisdiction ............................................................36

14.7.  Gender and Number ..........................................................................36

14.8.  Headings ...........................................................................................36

14.9.  Construction ......................................................................................36

14.10. Severability .......................................................................................37

14.11. Negotiated Agreement ......................................................................37

14.12. Notices ..............................................................................................37

14.13. Counterparts; Facsimile Copies .......................................................38

14.14. Specific Performance ........................................................................38

*Approved by Judge Gloria M. Burns July  14, 2014*

**EXHIBITS:**

Exhibit A        Form of Assignment and Assumption Agreement

Exhibit B        Form of Intellectual Property Assignment Agreement

Exhibit C        Form of Bill of Sale

*Approved by Judge Gloria M. Burns July  14, 2014*

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (this "<u>Agreement</u>") is made as of this [●] day of [●], 2014, by and among [PURCHASER], a limited liability company formed under the laws of [●] ("<u>Purchaser</u>")[1], Revel AC, Inc., a Delaware corporation ("<u>Parent</u>"), and each of Parent's direct and indirect Subsidiaries (as defined below) listed on the signature pages hereto (collectively with Parent, "<u>Sellers</u>" and, each individually, a "<u>Seller</u>" and, together with Purchaser, the "<u>Parties</u>").

## <u>W I T N E S S E T H</u>:

WHEREAS, Sellers are presently engaged in the Business (as defined below);

WHEREAS, on [●] Sellers filed voluntary Petitions (as defined below) for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court (each as defined below);

WHEREAS, Sellers, as debtors and debtors-in-possession, will continue in the possession of their respective assets and in the management of their respective businesses pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code;

WHEREAS, Purchaser desires to purchase and assume from Sellers, and Sellers desire to sell, convey, transfer, assign and deliver to Purchaser, the Assets and Assumed Liabilities (each, as defined below) in accordance with this Agreement, subject to the receipt by Sellers of any higher or better offer for the Assets and Assumed Liabilities, and in accordance with and subject to the Bid Procedures, the Bid Procedures Order and the Sale Order (each as defined below), pursuant to Sections 105, 363 and 365 of the Bankruptcy Code; and

WHEREAS, the Parties acknowledge and agree that the purchase by Purchaser of the Assets and the assumption by Purchaser of the Assumed Liabilities are being made at arm's length, in good faith and without intent to hinder, delay or defraud creditors of Sellers.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants, promises and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## <u>SECTION 1</u>
## <u>INTERPRETATION</u>

1.1.    <u>Definitions</u>.  Whenever used in this Agreement, the following words and phrases shall have the respective meanings ascribed to them as follows.

"<u>Accounts Receivable</u>" means all accounts receivable of Sellers and other rights to payment (whether current or noncurrent) outstanding as of the Closing Date, including in respect of goods shipped, products sold, licenses granted, services rendered or

---

[1] ***Note to Draft***: Purchaser to be an entity with financial wherewithal to satisfy all obligations under the Agreement, including payment of Purchase Price.

otherwise associated with the business of Seller, and all claims, remedies and/or causes of action related to the foregoing.

"Action" means any demand, claim, action, suit, proceeding, arbitral action or criminal prosecution by or before any Governmental Authority.

"Administrative Expenses" means claims allowed under Section 503 of the Bankruptcy Code.

"Affiliate" means, with respect to any Person, any other Person which directly or indirectly controls, is controlled by or is under common control with such Person.  For purposes of this definition "control" means, with respect to any Person, the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of such Person, whether through ownership of voting securities, by contract or otherwise.

"Agreement" has the meaning set forth in the preamble.

 "Ancillary Agreements" means, together, the Assignment and Assumption Agreement, the Bill of Sale and the Assignment of Intellectual Property.

"Antitrust Laws" means the Sherman Act, as amended; the Clayton Act, as amended; the HSR Act; the Federal Trade Commission Act, as amended; and all other federal, state and foreign statutes, rules, regulations, Orders, decrees, administrative and judicial doctrines and other Laws that are designed or intended to prohibit, restrict or regulate actions having the purpose or effect of monopolization or restraint of trade.

"Annual Financial Statements" has the meaning set forth in Section 3.8.

"Arbitrator" has the meaning set forth in Section 2.7.

"Assets" means, other than the Excluded Assets, all of Sellers' tangible and intangible assets, properties, rights, claims and contracts owned, leased and/or licensed by any Seller of every kind, character and description, whether accrued, contingent or otherwise, existing as of the Closing, including, without limitation those Assets set forth in Section 2.1.

"Assignment and Assumption Agreement" means that certain assignment and assumption agreement to be entered into at Closing, substantially in the form attached hereto as Exhibit A.

"Assignment of Intellectual Property" means that certain Intellectual Property assignment agreement to be entered into at Closing with respect to the Intellectual Property of Sellers, substantially in the form attached hereto as Exhibit B.

"Assumed Contracts" has the meaning set forth in Section 2.1(b).

"Assumed Liabilities" has the meaning set forth in Section 2.3.

-2-

"Avoidance Actions" means all causes of action arising under Chapter 5 of the Bankruptcy Code and all similar causes of action under state law.

"Bankruptcy Cases" means Sellers' cases under Chapter 11 of the Bankruptcy Code commenced by the filing of the Petitions in the Bankruptcy Court.

"Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of New Jersey.

"Bankruptcy Rules" has the meaning set forth in Section 5.6(a).

"Bid Procedures" means bid procedures approved by the Bankruptcy Court pursuant to the Bid Procedures Order.

"Bid Procedures Order" means the order of the Bankruptcy Court entered on [_____], 2014 approving bid procedures to govern the sale of the Assets and assumption of the Assumed Liabilities.

"Bill of Sale" means that certain bill of sale to be entered into at Closing with respect to the Assets, substantially in the form attached hereto as Exhibit C.

"Block 73" means Block 73, LLC, a New Jersey limited liability company.

"Business" means the business as conducted by Sellers of providing hospitality services (including lodging and dining), casino gaming offerings, entertainment offerings and convention spaces, and owning and leasing of real property, in each case, at the Revel Casino Hotel.

"Business Day" means a day other than a Saturday, Sunday or any other day on which commercial banks located in New York, New York are required or authorized to be closed for business.

"CBAs" mean, collectively, (i) the Collective Bargaining Agreement between Revel Entertainment and Northeast Regional Council of Carpenters Local #255 effective June 1, 2012, (ii) the Collective Bargaining Agreement between Revel Entertainment and International Union of Operating Engineers Local 68 effective June 1, 2012 and (iii) the Collective Bargaining Agreement between Revel Entertainment and District Council 711 International Union of Painters and Allied Trades effective June 1, 2012, in each case, with any amendments, supplements or modifications thereto.

"Claim" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, known or unknown; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed,

-3-

contingent, matured, unmatured, disputed, undisputed, secured or unsecured, known or unknown.

"Closing" has the meaning set forth in Section 11.1.

"Closing Date" has the meaning set forth in Section 11.1.

"COBRA" has the meaning set forth in Section 8.2(b).

"Code" means the Internal Revenue Code of 1986, as amended.

"Confidentiality Agreement" means that certain Confidentiality Agreement dated as of [●], 2014, by and between [Purchaser] and Sellers.

"Contracts" means all commitments, contracts, leases, licenses, agreements and understandings, written or oral, relating to the Assets or the operation of the Business to which any Seller is a party or by which any Seller or any of the Assets are bound.

"CRDA" means the New Jersey Casino Reinvestment Development Authority.

"Credit Agreements" means (a) that certain Amended and Restated First-Lien Credit Agreement, dated as of November 8, 2013, by and among Sellers, the lenders party thereto and JPMorgan Chase Bank, N.A., as administrative agent, collateral agent and issuing bank, (b) that certain Second-Lien Credit Agreement, dated as of May 21, 2013 and as amended on August 9, 2013, August 16, 2013 and November 8, 2013, by and among Sellers, the lenders party thereto and Wilmington Trust, National Association, as administrative agent and collateral agent, and (c) the DIP Loan Credit Agreement, in each case, with any amendments, supplements or modifications thereto.

"Cure Amounts" means all amounts payable in connection with the cure of monetary defaults under any of the Assumed Contracts to the extent required by Section 365(b) of the Bankruptcy Code.

"DIP Loan Credit Agreement" means that certain Debtor In Possession Credit Agreement, dated as of June [●], 2014, by and among Sellers and Wells Fargo Bank, as administrative agent, Wells Fargo Principal Lending, LLC, as sole arranger, and certain lenders thereunder, as may be amended from time to time.

"Documents" has the meaning set forth in Section 2.1(h).

"DOJ" has the meaning set forth in Section 7.2(d).

"Employee" means any employee of Sellers immediately prior to the Closing Date.

"Encumbrances" means, with respect to any Asset, any mortgage, deed of trust, pledge, security interest, lien, charge, lease, claim, encumbrance, option, right of first refusal, imperfection of title, restrictive covenant, easement, servitude, proxy, voting trust

or agreement, transfer restriction under any shareholder or similar agreement or any other restrictions or third party rights.

"Environmental Laws" means the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq.; the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq.; the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq.; the Clean Air Act, 42 U.S.C. § 7401 et seq.; the Toxic Substances Control Act, 15 U.S.C. §§ 2601 through 2629; the Oil Pollution Act, 33 U.S.C. § 2701 et seq.; the Emergency Planning and Community Right to Know Act, 42 U.S.C. § 11001 et seq.; the Safe Drinking Water Act, 42 U.S.C. §§ 300f through 300j, and all similar Laws (including implementing regulations) or Orders of any Governmental Authority having jurisdiction over the Assets in question, addressing pollution or protection of the environment or human health and safety (to the extent related to the exposure to Hazardous Materials).

"Excluded Assets" has the meaning set forth in Section 2.2.

"Excluded Liabilities" has the meaning set forth in Section 2.4.

"Financial Advisors" has the meaning set forth in Section 3.7.

"FTC" has the meaning set forth in Section 7.2(d).

"GAAP" means generally accepted accounting principles of the United States consistently applied, as in effect from time to time.

"Gaming Approvals" means all licenses, permits, approvals, authorizations, registrations, findings of suitability, franchises, entitlements, waivers and exemptions issued by any Gaming Authority or under Gaming Laws necessary for or relating to conduct of gaming and related activities or the manufacture, distribution, service or sale of alcoholic beverages, the ownership or the operation, management and development of any gaming operations, including the ownership, operation, management and development of the Business.

"Gaming Authority" means the New Jersey Casino Control Commission, the New Jersey Division of Gaming Enforcement and/or any other Governmental Authority possessing and exercising jurisdiction over the Assets, the Business, any Seller, any of Sellers' respective Affiliates or constituent owners, or any officers, directors, partners, members or managers of any of the foregoing, with respect to gaming activities.

"Gaming Laws" means any foreign, federal, tribal, state, county or local statute, law, ordinance, rule, regulation, permit, consent, approval, finding of suitability, license, judgment, Order, decree, injunction or other authorization governing or relating to gaming and related activities and operations or the manufacture, distribution, service or sale of alcoholic beverages, including the rules and regulations of any Gaming Authority.

"Governmental Authority" means any United States federal, state or local government or any foreign government, or political subdivision thereof, or any authority,

*Approved by Judge Gloria M. Burns July  14, 2014*

agency or commission entitled to exercise any administrative, executive, judicial, legislative, police, regulatory or taxing authority or power, any court or tribunal (or any department, bureau or division thereof), or any arbitrator or arbitral body, including Gaming Authorities.

"Hazardous Materials" means (a) any petrochemical or petroleum products, radioactive materials, asbestos, polychlorinated biphenyls, and radon gas; (b) any chemicals, materials or substances defined as or included in the definition of "hazardous substances," "hazardous wastes," "hazardous materials," "restricted hazardous materials," "extremely hazardous substances," "toxic substances," "contaminants" or "pollutants" or words of similar meaning and regulatory effect, which is prohibited, limited, or regulated by any applicable Environmental Law.

"HSR Act" means the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, and the rules and regulations promulgated thereunder.

"Intellectual Property" means all intellectual property and proprietary rights of any kind related to the Business, including the following: (a) trademarks, service marks, trade names, slogans, logos, trade dress, internet domain names, uniform resource identifiers, rights in design, brand names, and other similar designations of source or origin, together with all goodwill, registrations and applications related to the foregoing; (b) patents, utility models and industrial design registrations (and all continuations, divisionals, continuations in part, provisionals, renewals, reissues, re-examinations and applications for any of the foregoing); (c) copyrights and copyrightable subject matter (including any registration and applications for any of the foregoing); (d) trade secrets and other confidential or proprietary business information, know how, proprietary processes, formulae, algorithms, models, and methodologies; and (e) computer software, computer programs, and databases (whether in source code, object code or other form).

"Interim Financial Statements" has the meaning set forth in Section 3.8.

"Inventory" means all inventory (including finished goods, supplies, work in progress, spare, replacement and component parts) to the extent used in connection with the Business, maintained or held by, stored by or on behalf of, or in transit to, any of Sellers and to which Sellers have title.

"Law" means any federal, state, local or foreign statute, law, code, ordinance, Order, rule, regulation, common law requirement, policy, guideline or agency requirement of or undertaking to or agreement with any Governmental Authority.

"Liability" means any unsatisfied debt, liability, obligation, assessment, cost, expense, loss, expenditure, charge, fee, penalty, fine, or obligation of any kind, whether known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due, and regardless of when sustained, incurred or asserted or when the relevant events occurred or circumstances existed, including all costs and expenses relating thereto.

"Licensed Parties" has the meaning set forth in Section 4.6.

-6-

"Licensing Affiliates" has the meaning set forth in Section 4.6.

"Material Adverse Effect" means any event, circumstance, change, occurrence or state of facts that has had, or would reasonably be expected to have, individually or in the aggregate, a material adverse effect on the Business, financial condition or results of operations of Sellers, taken as a whole; provided, however, that in determining whether there has been a Material Adverse Effect, any effect, event, circumstance, change, occurrence or state of facts to the extent attributable to any of the following shall be disregarded:  (i)  any change in the general political, economic or business condition, including the commencement, continuation or escalation of war, acts of terrorism, natural disasters or acts of God; (ii) any change in financial or capital markets, including interest rates or currency exchange rates, and the industry in which Sellers are engaged; (iii) the taking of any action required to be taken by a Party under the terms of this Agreement or consented to by the other Party to this Agreement, (iv) the announcement or existence of this Agreement or the Transactions, including effects on relationships, contractual or otherwise, with financing sources, customers, suppliers, vendors or employees or the initiation of any litigation in connection therewith; (v) the commencement of the Bankruptcy Cases or resulting from or arising in connection therewith; (vi) changes in Laws or Orders or interpretations thereof or changes in accounting requirements or principles, GAAP or any other change or effect arising out of or relating to any proceeding, Claims or Orders before a Governmental Authority; (vii) any failure to meet any internal projections; and (viii) any seasonal changes in the results of operations of Sellers.

"Material Contract" means any Contract with a customer, vendor, supplier, distributor or other counterparty that is material to the Business.

"NJEDA" means the New Jersey Economic Development Authority.

"Nonunion Employees" has the meaning set forth in Section 8.1(b).

"Ordinary Course of Business" means the ordinary and usual course of normal day to day operations of the Business consistent with past practice.

"Order" means any order, judgment, writ, injunction, decree, settlement, stipulation, decision, ruling, subpoena, verdict or award of any Governmental Authority.

"Organizational Documents" means, with respect to any Person (other than an individual), (a) the certificate or articles of incorporation or organization and any joint venture, limited liability company, operating or partnership agreement and other similar documents adopted or filed in connection with the creation, formation or organization of such Person and (b) all by-laws, voting agreements and similar documents, instruments or agreements relating to the organization or governance of such Person, in each case, as amended or supplemented.

"Parent" has the meaning set forth in the preamble.

"Parties" has the meaning set forth in the preamble.

"Permits" means all material approvals, permits, certificates, qualifications, authorizations, licenses, franchises, consents, Orders and registrations, together with all modifications, amendments, supplements and extensions thereof, of all United States federal, state and local Governmental Authorities and any other Person that are necessary for Sellers to own the Assets.

"Permitted Encumbrances" means:  (a) those Encumbrances set forth on Section 1.1(b) of the Sellers Disclosure Letter; (b) any other Encumbrances such as utility easements, zoning restrictions, land use or environmental regulations, tax liens (for taxes not yet due and payable or for taxes being contested in good faith by appropriate proceedings and for which appropriate and adequate reserves have been maintained in accordance with GAAP), other exemptions noted on a current survey, or other customary covenants and restrictions of record or imperfections of title that do not materially affect the ownership or leasing of the real property or the conduct of the Business; (c) Encumbrances related to Assumed Liabilities; (d) any ad valorem personal property taxes with respect to the Assets; and (e) mechanics', carriers', workers', repairers' and similar Encumbrances arising or incurred in the Ordinary Course of Business.

"Person" means any individual or corporation, association, partnership, limited liability company, joint venture, joint stock or other company, business trust, trust, organization, Governmental Authority or other entity of any kind.

"Petition Date" means June 18, 2014, the date on which Sellers filed their Petitions.

"Petitions" mean voluntary petitions for Chapter 11 bankruptcy relief.

"Post Petition Ordinary Course Liabilities" has the meaning set forth in Section 2.3(i).

"Pre-Closing Period" has the meaning set forth in Section 5.3.

"Pre-Closing Tax Period" means all taxable years or other taxable periods that end on or before the Closing Date and, with respect to any taxable year or other taxable period beginning on or before and ending after the Closing Date, the portion of such taxable year or period ending on and including the Closing Date.

"Project Agreements" means the (a) Amended and Restated State Economic Redevelopment and Growth Incentive Grant Agreement dated as of May 21, 2013 by and among Revel Entertainment Group, Parent, the NJEDA and the Treasurer of the State of New Jersey, (b) Redevelopment Agreement dated November 8, 2007 by and between the City of Atlantic City, the City Council of the City of Atlantic City and Revel Entertainment, (c) Project Grant Agreement dated as of December 18, 2007 by and between the CRDA and Revel Entertainment, (d) Entertainment-Retail District Project Donation and Credit Agreement dated as of December 18, 2007 by and between the CRDA and Revel Entertainment, (e) Amended and Restated South Inlet Transportation Improvement Project Donation and Credit Agreement dated as of November 22, 2010 by and between the CRDA, Revel Entertainment and Revel Atlantic, (f) Agreement to

-8-

Reimburse for Remediation Costs last executed on November 11, 2009 by and among Revel Entertainment, the NJEDA and the Treasurer of the State of New Jersey, (g) Contract for Sale of Land for Private Redevelopment dated as of November 30, 2004 by and between the Housing Authority and Urban Redevelopment Agency of the City of Atlantic City and North Beach Holdings, LLC, (h) Securities Purchase Contact dated as of August 5, 2009 by and between the CRDA and Revel Entertainment, (i) South Inlet Transportation Improvement Project Donation Agreement dated as of August 5, 2009 by and between the CRDA and Revel Entertainment, (j) Agreement dated as of July 11, 2012 between Atlantic City Alliance and Revel Entertainment, (k) Declaration of Covenants and Restrictions dated as of December 4, 2009 by Parent, and (m) any amendments, supplements or modifications to the foregoing.

"Providing Party" has the meaning set forth in Section 7.1(b).

"Purchase Price" has the meaning set forth in Section 2.5.

"Purchaser" has the meaning set forth in the preamble.

"Purchaser Deposit Amount" has the meaning set forth in Section 2.6.

"Requesting Party" has the meaning set forth in Section 7.1(b).

"Revel Casino Hotel" means Revel Casino Hotel in the City of Atlantic City, New Jersey, as such hotel may be renamed from time to time.

"Sale Hearing" means the hearing conducted by the Bankruptcy Court to consider approval of the sale of the Assets.

"Sale Order" means the order of the Bankruptcy Court approving the sale of the Assets.

"Secured Loan Encumbrance" means all Encumbrances arising out of or relating to the Credit Agreements.

"Sellers" has the meaning set forth in the preamble.

"Sellers Disclosure Letter" has the meaning set forth in Section 3.

"Subsidiary" means, with respect to any Person, any corporation or other business entity, whether or not incorporated, of which more than fifty percent (50%) of the securities or equity interests are owned or have, by their terms, ordinary voting power to elect members of the board of directors or managers, or other persons performing similar functions with respect to such entity, are held, directly or indirectly, by such Person.

"Tax" or "Taxes" means  (i) all federal, state, local and foreign taxes, charges, fees, imposts, levies or other assessments, including income, gross receipts, excise, employment, sales, use, transfer, license, payroll, franchise, stamp, withholding, social security, unemployment, real property, personal property, alternative or add on minimum,

estimated or other taxes, charges, fees, imposts, levies or other assessments, including any interest, penalties or additions thereto, whether disputed or not, and (ii) any Liability for any items described in clause (i) payable by reason of transferee liability or operation of law (including Treasury Regulation 1.1502-6).

"Tax Return" means any report, return, information return, filing, claim for refund or other information, including any schedules or attachments thereto, and any amendments to any of the foregoing required to be supplied to a Taxing Authority in connection with Taxes.

"Taxing Authority" means any Governmental Authority responsible for the administration or the imposition of any Tax.

"Termination Date" has the meaning set forth in Section 11.2(b).

"Transaction Taxes" has the meaning set forth in Section 12.1.

"Transactions" mean the transactions contemplated by this Agreement, the Ancillary Agreements and all other transactions and agreements contemplated hereby and thereby.

"Transferred Employees" has the meaning set forth in Section 8.1(c).

"Transferred Nonunion Employees" has the meaning set forth in Section 8.1(b).

"Transferred Union Employees" has the meaning set forth in Section 8.1(a).

"Treasury Regulations" mean the Treasury Regulations promulgated pursuant to the Code, as amended from time to time, including the corresponding provisions of any successor regulations.

"Union Employees" has the meaning set forth in Section 8.1(a).

"WARN Act" means, collectively, the Worker Adjustment and Retraining Notification Act of 1988, as amended, and any other similar statutes or regulations of any jurisdiction relating to any plant closing or mass layoff (or such similar terms as used in such statutes or regulations).

## SECTION 2
## PURCHASE, SALE AND ASSIGNMENT OF PURCHASED ASSETS

2.1.   Sale of Assets.  Subject to the terms and conditions of this Agreement, at Closing, Sellers shall sell, convey, transfer, assign and deliver to Purchaser, and Purchaser shall purchase from Sellers, all of Sellers' right, title and interest in the Assets, free and clear of all Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) including all of Sellers' right, title and interest in the following:

*Approved by Judge Gloria M. Burns July  14, 2014*

(a)    all real property and tangible personal property owned or used by any Seller including, without limitation, all machinery, equipment (including gaming equipment), computers, furniture, furnishings, fixtures, office supplies, vehicles, and tools that relate in any way to the Business;

(b)    all Contracts listed or described in Section 2.1(b) of the Sellers Disclosure Letter, as may be amended by Purchaser in accordance with the last paragraph of this Section 2.1 ("Assumed Contracts");

(c)    all Inventory;

(d)    all interests of Sellers in and to all Intellectual Property (including all goodwill associated therewith or symbolized thereby);

(e)    subject to Section 2.2(b) below, all Accounts Receivable;

(f)    all Permits that relate in any way to the Business (to the extent transferrable to Purchaser);

(g)    customer database, excluding any records, data, customer information or any other item that is part of such database which Sellers are prohibited by Law (or Contract) from providing to Purchaser or the transfer of which would require consent if the required consent has not been provided;

(h)    Other than the customer database excluded under Section 2.1(g), all books and records, files, data, reports, computer codes and sourcing data, advertiser and supplier lists, cost and pricing information, business plans, and manuals, blueprints, research and development files, personnel records for Employees and other records that relate in any way to the Business (but excluding any personnel records with respect to former employees of Sellers and excluding personnel records with respect to Employees which Sellers are prohibited by Law from providing to Purchaser or the transfer of which would require Employee consent) (collectively, the "Documents");

(i)    all marketing, advertising and promotional materials;

(j)    all goodwill associated with the Business and/or the Assets;

(k)    all telephone, telex and telephone facsimile numbers and other directory listings used in connection with the Business;

(l)    all equity interests in Block 73 owned by any Seller; and

(m)    all cash of Sellers as of the Closing.

Subject to Sellers' prior written consent, Purchaser shall have the right at any time prior to seven (7) days prior to the Closing Date to amend Section 2.1(b) of the Sellers Disclosure Letter so as to exclude any Contract from being an Assumed Contract.  A schedule of Assumed Contracts and any Cure Amounts relating thereto shall be filed by Sellers with the Bankruptcy

*Approved by Judge Gloria M. Burns July 14, 2014*

Court and served on the counterparties to the Assumed Contracts in accordance with the Bid Procedures Order.  Notwithstanding anything to the contrary, in connection with any change to Section 2.1(b) of the Sellers Disclosure Letter as may be agreed to by Sellers and Purchaser, (i) any Assets attendant to any Contract that is excluded shall become an Excluded Asset to the extent applicable in accordance with Section 2.2, (ii) Sellers shall be permitted to update the Sellers Disclosure Letter as necessary to correct or complete any such disclosure contained therein, and (iii) the Cure Amount shall be adjusted, as applicable.

      2.2.   Excluded Assets.  Notwithstanding the generality of Section 2.1, the following assets are not a part of the sale and purchase contemplated by this Agreement and are excluded from the Assets (collectively, the "Excluded Assets"):

      (a)    any Contracts other than the Assumed Contracts;

      (b)    those assets of Sellers set forth on Section 2.2(b) of the Sellers Disclosure Letter;

      (c)    the Purchase Price;

      (d)    all Avoidance Actions;

      (e)    all rights, Claims and causes of action of Sellers (i) that do not relate to this Agreement, (ii) which accrue to any Seller pursuant to the terms of this Agreement or (iii) under any Ancillary Agreement or relating to the Excluded Assets or Excluded Liabilities;

      (f)    all proceeds and claims for refund or credit of Taxes and other Governmental Authority charges of whatever nature, and any other Tax benefits, arising out of or attributable to any Pre-Closing Tax Period;

      (g)    all of Sellers' rights and entitlements to (x) any payment made to, (y) investments made with the approval of, or (z) notes or bonds purchased from the CRDA, any sums held by the CRDA or any other agency or department of the State of New Jersey, or any city thereof, for the account of, benefit of, or attributable to a Seller and any credits accrued or due a Seller related to its obligations in connection therewith, as to each of (x), (y) and (z), including, without limitation, all such rights, entitlements and credits in connection with the Project Agreements, in each case, arising out of or attributable to any Pre-Closing Tax Periods;

      (h)    all corporate minute books, stock transfer books, the corporate seal of Sellers and all other corporate books and records relating to Sellers' organization and existence, and Documents (i) related to any Excluded Assets or Excluded Liabilities (including, without limitation, those which are subject to attorney-client or other privilege), (ii) which Sellers are required by Law to retain in its possession, (iii) prepared primarily in connection with the Transactions, (iv) relating to personnel records of former employees of Sellers who do not become employees of Purchaser, (v) relating to personnel records of Employees but which Sellers are prohibited by Law (or Contract) from providing to Purchaser or the transfer of which would require Employee consent or

*Approved by Judge Gloria M. Burns July  14, 2014*

(vi) any records, data, customer information or any other item that is part of the customer database which Sellers are prohibited by Law (or Contract) from providing to Purchaser or the transfer of which would require consent if the required consent has not been provided;;

(i)      any shares of stock or other equity interests in Parent or any Subsidiary of Parent (other than Block 73);

(j)      all Claims, rights of action, suits or proceedings, whether in Law or in equity, whether known or unknown, that Sellers or Sellers' bankruptcy estates may hold against any third party, foreign or domestic, under any law whatsoever, other than with respect to an Asset, Assumed Contract or any Assumed Liabilities under Sections 2.1 and 2.3 of this Agreement;

(k)      all rights or assets of any Seller relating to any employee benefit plan and all rights or assets of any employee benefit plan (including any insurance policies, annuity contracts or assets held in trust) sponsored, maintained or contributed to by any Seller for the benefit of its current or former employees; and

(l)      all refunds for insurance premiums paid by Sellers to the extent relating to any period after the Closing.

2.3.   Assumed Liabilities.  Notwithstanding anything to the contrary in this Agreement, Purchaser shall only assume the following Liabilities of Sellers (collectively, the "Assumed Liabilities):

(a)      certain trade payables of the vendors incurred prior to the Petition Date in the ordinary course of business, which are listed on Section 2.3(a) of the Sellers Disclosure Letter;

(b)      all Liabilities relating to ownership or use of the Assets or otherwise relating to the Business, in each case, arising after the Closing including, but not limited to, all Liabilities relating to gift cards, refunds and credits;

(c)      all Cure Amounts with respect to the Assumed Contracts and all fees and costs incurred by any Seller in connection with the rejection of any Contract by the counterparty thereto that is not an Assumed Contract;

(d)      all Liabilities arising out of or attributable to any CBAs;

(e)      (i) all Liabilities of Sellers with respect to obligations owed to Transferred Employees for (x) health or welfare benefits (including obligations owed to third party providers), and (y) accrued payroll (including accrued payroll Taxes), bonuses, commission pay, accrued paid time off and severance; (ii) all Liabilities with respect to Employees or former employees of any Seller assumed by Purchaser pursuant to Section 8 and (iii) all Liabilities relating to Transferred Employees following the Closing;

-13-

*Approved by Judge Gloria M. Burns July  14, 2014*

(f)     all Liabilities under the WARN Act assumed by Purchaser pursuant to Section 8.4;

(g)     all Liabilities relating to the real property of Sellers which includes, for the avoidance of doubt, (i) the Liabilities specifically set forth on Section 2.3(g) of the Sellers Disclosure Letter and (ii) all Liabilities under Environmental Laws related to the ownership or use of the real property of Sellers to the extent not transferable under applicable Laws;

(h)     any stamp or similar Taxes in connection with any transfer of any Asset pursuant to the Agreement to the extent not otherwise exempted pursuant to Section 1146 of the Bankruptcy Code;

(i)     all ordinary course Liabilities incurred by Sellers from the Petition Date to the Closing Date (the "Post Petition Ordinary Course Liabilities"); and

(j)     all Liabilities for Taxes arising out of or attributable to the operation of the Business on and after the Closing Date.

2.4.   Excluded Liabilities.  Sellers acknowledge and agree that pursuant to the terms and provisions of this Agreement, Purchaser will not assume any Liability of Sellers, other than the Assumed Liabilities.  In furtherance, and not in limitation, of the foregoing, except for the Assumed Liabilities, neither Purchaser nor any of its Affiliates shall assume, and shall not be deemed to have assumed, and Sellers shall retain any debt, Claim, obligation or other Liability of Sellers whatsoever, including, but not limited to the following (collectively, the "Excluded Liabilities"):

(a)     all Liabilities which are not Assumed Liabilities, including but not limited to any claims under Sections 503 and 507 of the Bankruptcy Code, other than Liabilities assumed pursuant to Section 2.3(i);

(b)     all Liabilities with respect to any Excluded Assets;

(c)     all Liabilities with respect to any and all indebtedness of any Seller for borrowed money not included in the Assumed Liabilities;

(d)     all penalties, fines, settlements, interest, costs and expenses arising out of or incurred as a result of any actual or alleged violation by any Seller of any Law prior to the Closing;

(e)     all Liabilities for Taxes arising out of or attributable to the operation of the Business prior to the Closing;

(f)     all Liabilities under the WARN Act assumed by Sellers pursuant to Section 8.4; and

(g)     all Liabilities for fees and expenses (i) relating to the negotiation and preparation of this Agreement and (ii) relating to the Transactions, in each case, to the extent incurred by Sellers.

2.5.     Purchase Price.  The aggregate purchase price for the Assets (the "Purchase Price") shall equal the sum of: (i) (x) [●] Million Dollars ($[●]) in cash, (y) plus with respect to any Tax paid by or on behalf of any Seller on or prior to the Closing Date with respect to any taxable year or other taxable period beginning on or before such date and ending after such date, an amount in cash equal to the product of (1) the aggregate amount of such Tax paid, multiplied by, (2) a fraction, (I) the numerator of which is the number of days from and including the Closing Date to and including the last day of the taxable year or taxable period applicable to each such Tax and (II) the denominator of which is the total number of days in the taxable year or taxable period applicable to each such Tax; and (ii) plus the assumption of the Assumed Liabilities.

2.6.     Purchaser Deposit.  As required under the Bid Procedures Order, Purchaser shall deposit into a separate bank account to be designated by Parent, an amount in cash equal to [●] Million Dollars ($[●][2]) (the "Purchaser Deposit Amount"), to be released by Parent and delivered to either Purchaser or Sellers in accordance with the provisions of this Agreement as follows:

(a)     If the Closing shall occur, then the Purchaser Deposit Amount, together with all accrued interest and investment income thereon, shall be applied in accordance with Section 11.1(b) hereof towards the cash portion of the Purchase Price payable by Purchaser under Section 2.5 hereof;

(b)     If this Agreement is terminated by Sellers pursuant to Sections 11.2(c) or 11.2(i), then the Purchaser Deposit Amount, together with all accrued interest and investment income thereon, shall be delivered to Sellers (it being understood and agreed that Sellers' right to the Purchaser Deposit Amount shall be in addition to any and all other remedies that Sellers may have against Purchaser with respect to any breach, violation or default by Purchaser under this Agreement); and

(c)     If this Agreement is terminated for any reason, other than by Sellers pursuant to Sections 11.2(c) or 11.2(i), then the Purchaser Deposit Amount, together with all accrued interest and investment income thereon, shall be returned to Purchaser.

2.7.     Allocation of Purchase Price.  Within sixty (60) days following the Closing Date, Purchaser shall deliver to Sellers a proposed allocation of the Purchase Price (including the Assumed Liabilities and any other amounts properly included therein) among the Assets in accordance with Section 1060 of the Code and Treasury Regulations thereunder (and any similar provision of state, local or foreign Law, as applicable).  Sellers shall have thirty (30) days following receipt of Purchaser's proposed allocation to review and comment on such proposed allocation, and Purchaser shall consider such comments in good faith.  If and to the extent the Parties are unable to agree on the allocation, the Parties shall retain a mutually agreed upon

---

[2] **Note to Draft**: Amount to be equal to 10% of the Purchase Price.

accounting firm of national repute (the "Arbitrator") to resolve such dispute.  The determination of the Arbitrator with respect to any such disagreement shall be final and binding upon each Party (absent fraud or manifest error) and the decision of the Arbitrator shall constitute an arbitral award that is final, binding, and non-appealable (absent fraud or manifest error) and upon which a judgment may be entered by a court having jurisdiction thereover.  Thereafter, Purchaser shall provide Sellers with Purchaser's final allocation schedule.  If Sellers and Purchaser submit any dispute to the Arbitrator for resolution pursuant to this Section 2.7, Sellers and Purchaser shall each pay their own costs and expenses incurred under this Section 2.7.  Each of Purchaser and Sellers shall bear fifty percent (50%) of the costs and expenses of the Arbitrator incurred pursuant to this Section 2.7.  To the extent required by Law after the Closing Date, Purchaser and Sellers shall prepare and file those statements or forms (including Form 8594) required by Section 1060 of the Code and the Treasury Regulations thereunder and shall file such statements or forms with their respective federal income Tax Returns no later than one hundred twenty (120) days after the Closing Date.  Each Party shall provide the other Party with a copy of such statements or forms as filed.  The Parties shall prepare such statements or forms, and all Tax Returns, consistently with the allocation of all or a portion of the Purchase Price and the Assumed Liabilities among the Assets as determined pursuant to this Section 2.7, except as may be adjusted by subsequent agreement following an audit by the IRS and provided that Sellers and Purchaser agree to update such final allocation as necessary to account for any subsequent adjustment to the Purchase Price; provided, further, that neither Sellers nor Purchaser (nor their respective Affiliates) shall be obligated to litigate any challenge to such allocation of the Purchase Price by any Governmental Authority.  The Parties shall promptly inform one another of any challenge by any Governmental Authority to any allocation made pursuant to this Section 2.7 and agree to consult with and keep one another informed with respect to the state of, and any discussion, proposal or submission with respect to, such challenge.

2.8.  Excluded Assets and Liabilities.  Notwithstanding anything to the contrary contained herein, Purchaser shall not purchase any of the Excluded Assets nor assume any liability for any of the Excluded Liabilities.

## SECTION 3
## REPRESENTATIONS AND WARRANTIES OF SELLERS

Except as set forth on the disclosure letter delivered by Sellers to Purchaser concurrently with the entering into this Agreement (the "Sellers Disclosure Letter"), Sellers hereby jointly and severally represent and warrant to Purchaser as follows:

3.1.  Organization and Good Standing.  Each Seller is (a) validly existing and in good standing under the laws of the jurisdiction of its organization and (b) duly qualified to do business and in good standing in each jurisdiction in which the ownership, use or leasing of its assets and properties, or the conduct or nature of its business, makes such qualification necessary, except for such failures to be so qualified and in good standing which, individually or in the aggregate, would not be reasonably expected to have a Material Adverse Effect.

3.2.  Authorization.  Subject to entry of the Sale Order, each Seller has all requisite power and authority to execute and deliver, and carry out its obligations under, this Agreement and the Ancillary Agreements and consummate the Transactions.  Each of this Agreement and

*Approved by Judge Gloria M. Burns July  14, 2014*

the Ancillary Agreements has been or will be duly executed and delivered by each Seller and, assuming due authorization, execution and delivery by Purchaser, constitutes or will constitute the legal, valid and binding obligation of such Seller, enforceable against it in accordance with its terms, subject to entry of the Sale Order.

3.3.    No Conflicts.  Subject to entry of the Sale Order, approval under the HSR Act and compliance with and obtaining such Gaming Approvals as may be required under applicable Gaming Laws, if required and other than as set forth on Section 3.3 of the Sellers Disclosure Letter, the execution, delivery and performance by each Seller of this Agreement and each of the Ancillary Agreements and the consummation by each Seller of the Transactions shall not, with or without the giving of notice or lapse of time (a) violate any provision of the Organizational Documents of such Seller, (b) violate any Law to which such Seller is subject, or (c) conflict with, result in any violation of any term or condition of, result in a breach or termination of, or constitute a default under any Material Contract to which such Seller is a party or result in the creation of any Encumbrance (other than a Permitted Encumbrance, Secured Loan Encumbrance or an Assumed Liability) upon any of the Assets (including any Assumed Contract), except in each case as would not be reasonably expected to have a Material Adverse Effect.

3.4.    Consents and Approvals.  Subject to (a) entry of the Sale Order, (b) approval under the HSR Act and other than as set forth on Section 3.4 of the Sellers Disclosure Letter and (c) compliance with and obtaining such Gaming Approvals as may be required under applicable Gaming Laws, the execution, delivery and performance by each Seller of this Agreement and the Ancillary Agreements and the consummation of the Transactions do not require the consent or approval of, or filing with, any Governmental Authority.

3.5.    Compliance with Law.  Sellers are in compliance with Sellers' Organizational Documents and with all Laws relating to the Assets, except as would not be reasonably expected to have a Material Adverse Effect.

3.6.    Title to Assets.  Except as set forth in Section 3.6(a) of the Sellers Disclosure Letter, Sellers are the owners of or have valid leasehold interests in or valid contractual rights to use, as applicable, the Assets as of the date hereof.  Subject to entry of the Sale Order, Sellers have, and at the Closing Purchaser shall receive, good, valid and marketable title to the material Assets, free and clear of any and all Encumbrances (other than Permitted Encumbrances. Secured Loan Encumbrance and Assumed Liabilities).

3.7.    No Broker or Finder.  Except for Moelis & Company LLC and Winter Harbor LLC (collectively, the "Financial Advisors"), no broker, finder or financial advisor has been engaged by any Seller in connection with the Transactions.

3.8.    Financial Statements.  Sellers have delivered to Purchaser true and complete copies of Sellers' unaudited balance sheet and the related consolidated statements of operations, stockholders deficit and cash flows as of and for the fiscal year ended December 31, 2013 (the "Annual Financial Statements"), and the unaudited consolidated balance sheet of Sellers as of March 31, 2014, and the related consolidated statements of operations and cash flows for the month then ended (the "Interim Financial Statements").  Except as set forth in Section 3.8 of the Sellers Disclosure Letter, the Annual Financial Statements were prepared in accordance with

-17-

Approved by Judge Gloria M. Burns July  14, 2014

GAAP consistently applied and were derived from Sellers' books and records, and fairly present, in all material respects, the financial position, results of operations and cash flows of Sellers as of the date thereof and the period covered thereby.  The Interim Financial Statements were prepared in accordance with GAAP (subject to normal, recurring year-end adjustments, and except for the omission of certain footnotes and other presentation items required by GAAP) consistently applied and maintained throughout the period indicated, and in accordance with a consistent with Sellers' books and records, and fairly present, in all material respects, the financial position, results of operations and cash flows of Sellers as of the date thereof and for the period covered thereby.

3.9.    Disclaimer of Other Representations and Warranties.    Except as expressly set forth in this Section 3, Sellers make no representation or warranty, statutory, express or implied, at law or in equity, in respect of Sellers, the Assets, the Business or the Assumed Liabilities, and any such other representations or warranties, express or implied, are hereby expressly disclaimed, and there are no other warranties, statutory, express or implied that extend beyond the warranties contained in this Agreement.  Purchaser hereby acknowledges and agrees that, except to the extent specifically set forth in this Section 3, Purchaser is purchasing the Assets on an "as-is, where-is" basis and "with all faults."  Sellers are not, directly or indirectly, making any representations or warranties regarding any pro-forma financial information, financial projections or other forward-looking statements.   It is understood that any due diligence materials made available to Purchaser or its Affiliates or their respective representatives do not, directly or indirectly, and shall not be deemed to, directly or indirectly, contain representations or warranties of Sellers.

## SECTION 4
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser hereby represents and warrants to Sellers as follows:

4.1.    Organization and Good Standing.    Purchaser is a [●], duly organized, validly existing and in good standing under the laws of [●] and has full [●] power and authority to execute and deliver, and carry out its obligations under, this Agreement and the Ancillary Agreements and consummate the Transactions.

4.2.    Authorization.    Purchaser has all requisite power and authority to execute and deliver and carry out its obligations under this Agreement and the Ancillary Agreements, and consummate the Transactions, and is not under any prohibition or restriction, contractual, statutory or otherwise, against doing so.  Each of this Agreement and the Ancillary Agreements has been or will be duly executed and delivered by Purchaser, and, assuming due authorization, execution and delivery by each Seller, constitutes or will constitute the legal, valid and binding obligation of Purchaser, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, fraudulent conveyance, moratorium or other Laws affecting the rights of creditors generally and by general principles of equity (regardless of whether enforcement is considered in a proceeding at law or in equity).

*Approved by Judge Gloria M. Burns July  14, 2014*

4.3.    No Conflicts.  Subject to entry of the Sale Order, approval under the HSR Act and compliance with and obtaining such Gaming Approvals as may be required under applicable Gaming Laws, if required, the execution, delivery and performance by Purchaser of this Agreement and each of the Ancillary Agreements and the consummation by Purchaser of the Transactions shall not, with or without the giving of notice or lapse of time, (a) violate any provision of the Organizational Documents of Purchaser, (b) violate any Law to which Purchaser is subject, or (c) conflict with, or result in a breach or default under, any term or condition of any other agreement or other instrument to which Purchaser is a party or by which Purchaser is bound.

4.4.    Consents and Approvals.  Subject to (a) entry of the Sale Order, (b) approval under the HSR Act and (c) compliance with and obtaining such Gaming Approvals as may be required under applicable Gaming Laws, the execution, delivery and performance by Purchaser of this Agreement and the Ancillary Agreements and the consummation of the Transaction do not require the consent or approval of, or filing with, any Governmental Authority.

4.5.    Financing.  Purchaser has sufficient funds, in an aggregate amount necessary to pay the Purchase Price and to perform and assume the Assumed Liabilities and to consummate all of the other Transactions.

4.6.    Licensability.  Neither Purchaser nor any of its officers, directors, partners, managers, members, principals or Affiliates which may reasonably be considered in the process of determining the suitability of Purchaser for a Gaming Approval by a Gaming Authority, or any holders of any of Purchaser's capital stock or other equity interests who will be required to be licensed or found suitable under applicable Gaming Laws (the foregoing Persons collectively, the "Licensing Affiliates"), has ever abandoned or withdrawn (in each case in response to a communication from a Gaming Authority regarding a likely or impending denial, suspension or revocation) or been denied or had suspended or revoked a Gaming Approval, or an application for a Gaming Approval, by a Gaming Authority.  Purchaser and each of its Licensing Affiliates which is licensed or holds any Gaming Approval pursuant to applicable Gaming Laws (collectively, the "Licensed Parties") is in good standing in each of the jurisdictions in which such Licensed Party owns, operates, or manages gaming facilities or is otherwise required to be licensed.  To Purchaser's knowledge, there are no facts which, if known to any Gaming Authority, would be reasonably likely to (i) result in the denial, revocation, limitation or suspension of a Gaming Approval of any of the Licensed Parties or (ii) result in a negative outcome to any finding of suitability proceedings of any of the Licensed Parties currently pending, or under the suitability proceedings necessary for the consummation of the Transactions.

4.7.    "AS IS" TRANSACTION.  PURCHASER HEREBY ACKNOWLEDGES AND AGREES THAT, EXCEPT AS EXPRESSLY PROVIDED IN SECTION 3 OF THIS AGREEMENT, SELLERS MAKE NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO THE ASSETS OR THE BUSINESS INCLUDING, WITHOUT LIMITATION, THE CONDITION OF ANY REAL PROPERTY LEASED OR OWNED BY ANY OF THE SELLERS AND THE IMPROVEMENTS THEREON OR AS TO ANY ENVIRONMENTAL CONDITIONS OR THE PRESENCE OF ANY HAZARDOUS MATERIALS.  WITHOUT IN

*Approved by Judge Gloria M. Burns July  14, 2014*

ANY WAY LIMITING THE FOREGOING, SELLERS HEREBY DISCLAIM ANY WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AS TO ANY PORTION OF THE ASSETS. PURCHASER FURTHER ACKNOWLEDGES THAT PURCHASER HAS CONDUCTED AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE PHYSICAL CONDITION OF THE ASSETS AND ALL SUCH OTHER MATTERS RELATING TO OR AFFECTING THE ASSETS OR THE BUSINESS AND THAT IN PROCEEDING WITH ITS ACQUISITION OF THE ASSETS, EXCEPT FOR ANY REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN SECTION 3 HEREOF, PURCHASER IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS, ANALYSIS, EVALUATIONS AND INVESTIGATIONS. ACCORDINGLY, PURCHASER WILL ACCEPT THE ASSETS AT THE CLOSING "AS IS," "WHERE IS," AND "WITH ALL FAULTS."

4.8.   Disclaimer of Other Representations and Warranties.   Except as expressly set forth in this Section 4, Purchaser does not make any representation or warranty, statutory, express or implied, at law or in equity, and any such other representations or warranties, express or implied, are hereby expressly disclaimed, and there are no other warranties, statutory, express or implied that extend beyond the warranties contained in this Agreement.

**SECTION 5**
**CERTAIN COVENANTS OF SELLERS**

5.1.   Provision of Records.   Sellers shall arrange, at Purchaser's cost, as soon as reasonably practicable following the Closing Date for transportation to Purchaser of the Documents in the possession of any Seller that are Assets, to the extent not previously delivered in connection with the Transactions, but excluding Documents that are Excluded Assets.

5.2.   Receipt of Property Relating to Assets.   Subject to the terms and conditions of this Agreement and applicable Law, if, following the Closing, any of Sellers shall receive any money, check, note, draft, instrument, payment or other property which are Assets pursuant to Section 2.1, such Seller shall receive all such items in trust for, and as the sole and exclusive property of, Purchaser and, upon receipt thereof, shall notify Purchaser within a reasonable amount of time of such receipt and shall remit the same (or cause the same to be remitted) to Purchaser in the reasonable manner specified by Purchaser.

5.3.   Conduct of Business Pending the Closing.   From the date hereof through the Closing Date or the earlier termination of this Agreement (the "Pre-Closing Period"), except as may be expressly permitted or contemplated by this Agreement, provided in or required by the Credit Agreements or any Order approving post-petition financing, required, authorized or restricted pursuant to any Gaming Law or the Bankruptcy Code or ordered by the Bankruptcy Court, or as otherwise agreed to in writing by Purchaser, each Seller shall continue to operate its Business in the Ordinary Course of Business (it being understood that such ordinary course may take into account the fact that the Business is to be operated while in bankruptcy) and as a debtor and debtor-in-possession in the Bankruptcy Cases. Without limiting the generality of the foregoing, during the Pre-Closing Period, except as may be expressly permitted or contemplated by this Agreement, set forth in Section 5.3 of the Sellers Disclosure Letter, provided in the Credit

*Approved by Judge Gloria M. Burns July 14, 2014*

Agreements, required, authorized or restricted pursuant to any Gaming Law, the Bankruptcy Code or ordered by the Bankruptcy Court, or as otherwise agreed to in writing by Purchaser (which agreement shall not be unreasonably withheld, conditioned or delayed), no Seller shall, to the extent that any of the following would reasonably be expected to have a Material Adverse Effect on the Assets:

      (a)    conduct the Business and operate and maintain the Assets other than in the Ordinary Course of Business;

      (b)    fail to use its commercially reasonable efforts to preserve the goodwill of and relationships with customers, suppliers, vendors, lessors, licensors, licensees, contractors, distributors, agents, Employees and others having business dealings with the Business;

      (c)    sell (including by sale-leaseback), lease, transfer, license, mortgage or otherwise dispose of, encumber or subject to any Encumbrance (other than a Permitted Encumbrance, Secured Loan Encumbrance or an Assumed Liability), any material Assets or interests therein;

      (d)    fail to maintain in full force and effect insurance covering the Assets;

      (e)    incur or permit the incurrence of any Liability that would constitute a material Assumed Liability, except in the Ordinary Course of Business;

      (f)    sell or otherwise dispose of Inventory in a manner inconsistent with the Ordinary Course of Business;

      (g)    collect Accounts Receivable in a manner inconsistent with the Ordinary Course of Business;

      (h)    except as previously disclosed to or known by Purchaser, materially modify, amend, supplement or terminate any Assumed Contract, except in the Ordinary Course of Business; or

      (i)    authorize any of, or commit or agree to take any of, the foregoing actions.

    5.4.    <u>Access to Information</u>.  Upon reasonable notice by Purchaser and subject to the terms of the Confidentiality Agreement, Purchaser and its representatives shall have reasonable access during normal business hours during the Pre-Closing Period, to the Assets and documents relating thereto, and during such period Sellers shall furnish to Purchaser, at Purchaser's expense, all information concerning the Assets as Purchaser may reasonably request.  Sellers shall provide or cause to be provided to Purchaser, at Purchaser's expense and subject to the terms of the Confidentiality Agreement, such copies or extracts of Documents with respect to the Assets and Assumed Liabilities as Purchaser may reasonably request.  Any inspections, examinations and audits shall be conducted during normal business hours by Purchaser's employees or agents upon reasonable advance notice. Notwithstanding anything in this Agreement to the contrary, no Seller shall be required to provide access to or to disclose information where such access or disclosure would be reasonably likely to (i) breach any

-21-

agreement with any third party, (ii) constitute a waiver of or jeopardize the attorney-client or other privilege held by any Seller or (iii) otherwise violate any applicable Law, including Gaming Laws.

5.5.    <u>Communication with Parties to Contracts.</u>   Upon Sellers' prior written consent, such consent not to be unreasonably withheld, Purchaser may communicate with all suppliers, tenants, lenders, vendors and other parties to Assumed Contracts for the purpose of renegotiating such Assumed Contracts or establishing new agreements with such parties to be effective upon Closing.

5.6.    <u>Bankruptcy Action</u>.

(a)    Sellers shall comply in all material respects with all of the obligations of Sellers under the Bid Procedures Order and the Sale Order (after the entry of such Orders by the Bankruptcy Court).  The Sale Order shall be subject to the approval of Purchaser in its reasonable discretion.

(b)    Sellers shall use commercially reasonable efforts to comply (or obtain an Order from the Bankruptcy Court waiving compliance) with all requirements under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") in connection with obtaining approval of the Transactions.  Sellers shall serve on all required Persons in the Bankruptcy Case, including (i) all Persons who are known to possess or assert a Claim against or interest in any of the Assets, (ii) the Internal Revenue Service, (iii) all applicable Governmental Authorities, (iv) all applicable state and local Governmental Authorities with taxing authority, (v) all other Persons required by any Order of the Bankruptcy Court, (vi) all parties to Assumed Contracts, (vii) all Persons that request or are entitled to notice under Bankruptcy Rule 2002, and (viii) using its commercially reasonable efforts to serve any other Persons that Purchaser reasonably may request, any notice required to be served under the Bid Procedures Order or the Sale Order, and all objection deadlines in accordance with all applicable Bankruptcy Rules, the Bid Procedures Order, and any applicable local rules of the Bankruptcy Court.

5.7.    <u>Sale Order</u>.  The Sale Order shall, among other things:  (a) approve, pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, (i) the execution, delivery and performance by Sellers of this Agreement, (ii) the sale of the Assets to Purchaser on the terms set forth herein and free and clear of all Encumbrances (other than Permitted Encumbrances and Assumed Liabilities), and (iii) the performance by Sellers of their respective obligations under this Agreement; (b) authorize and empower Sellers to assume and assign to Purchaser the Assumed Contracts; and (c) find that Purchaser is a "good faith" buyer within the meaning of Section 363(m) of the Bankruptcy Code and grant Purchaser the protections of Section 363(m) of the Bankruptcy Code.  Purchaser agrees that it will promptly take such actions as are reasonably requested by Sellers to assist in obtaining entry by the Bankruptcy Court of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for purposes, among others, of:  (x) demonstrating that Purchaser is a "good faith" purchaser; and (y) establishing adequate assurance of future performance within the meaning of Section 365 of the Bankruptcy Code.  In the event that the Bankruptcy Court's entry of the Sale Order shall be appealed, Sellers shall use commercially reasonable efforts to defend such appeal.

*Approved by Judge Gloria M. Burns July  14, 2014*

5.8.    <u>Transfer of Permits</u>.    Except for those Permits that are not transferable to Purchaser by Law, Sellers shall use commercially reasonable efforts to cause the issuance or transfer at Purchaser's expense of all Permits that relate in any way to the Assets to Purchaser. Sellers shall give and make all notices and reports Sellers are required to make to the appropriate Governmental Authorities and other Persons, each at Purchaser's expense, with respect to the Permits that relate in any way to the Assets to Purchaser at the Closing.

5.9.    <u>Release of Encumbrances</u>.    Sellers' obligation to deliver the Assets free and clear of any Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) shall be limited to Sellers' commercially reasonable efforts to obtain the Sale Order that provides for the delivery of the Assets free and clear of any Encumbrances (other than Permitted Encumbrances and Assumed Liabilities).    If Purchaser desires to have any Encumbrances released and discharged other than by means of the Sale Order, Purchaser, at its sole cost and expense, shall obtain such releases or discharges.

5.10.    <u>Assignability of Certain Contracts</u>.    To the extent that the assignment to Purchaser of any Assumed Contract pursuant to this Agreement is not permitted without the consent of a third party and such restriction cannot be effectively overridden or canceled by the Sale Order or other related Order of the Bankruptcy Court, then this Agreement will not be deemed to constitute an assignment of or an undertaking or attempt to assign such Contract or any right or interest therein unless and until such consent is obtained; <u>provided</u>, <u>however</u>, that the Parties will use their commercially reasonable efforts, before the Closing, to obtain all such consents; <u>provided</u>, <u>further</u>, that if any such consents are not obtained prior to the Closing Date, Sellers and Purchaser will reasonably cooperate with each other in any lawful and feasible arrangement designed to provide Purchaser with the benefits and obligations of any such Contract and Purchaser shall be responsible for performing all obligations under such Contract required to be performed by Sellers on or after the Closing Date to the extent set forth in this Agreement. Notwithstanding the foregoing, Sellers shall not be obligated hereunder to incur any cost or expense relating to the actions contemplated by this <u>Section 5.10</u> or to execute any guaranty, assumption of liability or other document or instrument requiring Sellers to assume any obligations.

5.11.    <u>Rejected Contracts</u>.    No Seller shall reject any Assumed Contract in any bankruptcy proceeding following the date of this Agreement and prior to the Closing Date without the prior written consent of Purchaser.

5.12.    <u>Further Assurances</u>.    Upon the request of Purchaser, each Seller shall, at Purchaser's expense, forthwith execute and deliver such documents as Purchaser or its counsel may reasonably request to effectuate the purposes of this Agreement.

**SECTION 6**
**CERTAIN COVENANTS OF PURCHASER**.

6.1.    <u>Performance with Respect to the Assets and the Assumed Contracts</u>.    Purchaser agrees that from and after the Closing Date, it shall (a) assume all Assumed Liabilities, and (b) take all actions necessary to satisfy its obligations and liabilities with respect to the Assumed

-23-

Liabilities (including, without limitation, under the terms and conditions of each Assumed Contract).

6.2.    Cure Amounts.    Purchaser shall pay all Cure Amounts with respect to the Assumed Contracts in accordance with the Sale Order.

6.3.    Further Assurances.    Upon the request of Sellers, Purchaser shall, at Sellers' expense, forthwith execute and deliver such documents as Sellers or their counsel may reasonably request to effectuate the purposes of this Agreement.

## SECTION 7
## CERTAIN MUTUAL COVENANTS

7.1.    Cooperation.

(a)    Sellers, on one hand, and Purchaser, on the other hand, shall promptly give notice to the other upon becoming aware that any Action is pending or threatened by or before any Governmental Authority with respect to the Transactions.  Sellers, on the one hand, and Purchaser, on the other hand, (i) shall cooperate with each other in connection with the prosecution, investigation or defense of any such Action, (ii) shall supply as promptly as reasonably practicable all information requested by the other, by any such Governmental Authority or by any party to any such Action that is legally required to be produced, and (iii) shall each use commercially reasonable efforts to cause any such Action to be determined as promptly as reasonably practicable and in a manner which does not impact adversely on, and is consistent with, the Transactions.

(b)    After the Closing, each of Sellers and Purchaser shall use commercially reasonable efforts to provide to any other Party to this Agreement, the official committee of unsecured creditors, any trustee or other bankruptcy estate representative or fiduciary and the United States Trustee (the "Requesting Party") such records and information and to make available to the Requesting Party such employees or other personnel, in each case as may be reasonably requested in writing by the Requesting Party, for the purpose of responding to governmental inquiries, making required governmental filings or defending or prosecuting any Action or other proceeding involving any Person other than the Party providing such information or records or making available such employees or other personnel (the "Providing Party") and in resolving all claims, preparing all Tax Returns, and handling all matters necessary to administer and close the Bankruptcy Cases, including assisting the Requesting Party in winding down the bankruptcy estate of Sellers, liquidating the Excluded Assets, pursuing or processing any Action with respect to the bankruptcy estate of Sellers or the Excluded Liabilities; provided, however, that no Providing Party shall be required to (i) provide information, records or employees or other personnel under circumstances which the Providing Party believes in its sole reasonable determination may waive privilege, confidentiality or a similar protection or expose it to material liability to any Person or may prejudice any legal interest of the Providing Party, or (ii) take any action that in the Providing Party's reasonable determination unreasonably interferes with its business.

-24-

7.2.   <u>Approvals and Filings</u>.

(a)     Subject to the terms and conditions of this Agreement, each of the Parties shall use all reasonable best efforts to take, or cause to be taken, all action and to do, or cause to be done, all things necessary, proper or advisable under applicable Laws (including Gaming Laws) and regulations to consummate and make effective the Transactions, including using reasonable best efforts to obtain all necessary or appropriate waivers, consents and approvals (including Gaming Approvals), and effecting all necessary registrations and filings.  Purchaser shall make or cause to be made all filings and submissions under Laws (including Gaming Laws) applicable to Purchaser, if any, as may be required for the consummation of the Transactions.  Sellers shall make or cause to be made all such other filings and submissions under Laws (including Gaming Laws) applicable to any Seller, if any, as may be required for the consummation of the Transactions.  Purchaser, on the one hand, and Sellers, on the other hand, shall coordinate and cooperate in exchanging such information and reasonable assistance as may be requested by either of them in connection with the filings and submissions contemplated by this <u>Section 7.2</u>.  Purchaser, on the one hand, and Sellers, on the other hand, shall each promptly provide the other or their respective counsel with copies of all filings made by such Party with any Governmental Authority in connection with this Agreement and the Ancillary Agreements and the Transactions.

(b)     In furtherance and not in limitation of the provisions of <u>Section 7.2(a)</u>, Purchaser shall use all reasonable best efforts to, and agrees to cause their respective Affiliates and their respective directors, officers, partners, managers, members, principals and stockholders to, prepare and submit to the Gaming Authorities all applications and supporting documents that are necessary to obtain all required Gaming Approvals as promptly as reasonably practicable, and in any event no later than thirty (30) calendar days from the date of this Agreement.

(c)     If a Party receives a request for information or documentary material from any Governmental Authority with respect to this Agreement or any of the Transactions, including but not limited to requests for supporting, supplemental, or additional documentation from any Gaming Authority, then such Party shall use its reasonable best efforts to make, or cause to be made, as soon as reasonably practicable, a response in substantial compliance with such request.

(d)     Each of Purchaser and Sellers shall, as promptly as reasonably practicable after the date of this Agreement but in no event later than the fifth (5th) Business Day following the date hereof, make any filing required of it or any of its Affiliates under any applicable Antitrust Laws in connection with this Agreement and the transactions contemplated hereby, including with the United States Federal Trade Commission (the "<u>FTC</u>") and the United States Department of Justice (the "<u>DOJ</u>") the notification and report form, if any, required for the consummation of the Transactions.  Any such notification and report form and supplemental information shall be in substantial compliance with the requirements of the HSR Act or other applicable Antitrust Laws. Each of Purchaser and Sellers shall furnish to the other such necessary information and reasonable assistance as the other may reasonably request in connection with its

*Approved by Judge Gloria M. Burns July  14, 2014*

preparation of any filing or submission which is necessary under the HSR Act or other applicable Antitrust Laws and shall consult and cooperate with the other, and consider in good faith the views of the other, in connection with any analyses, appearances, presentations, memoranda, briefs, arguments, opinions and proposals made or submitted by or on behalf of any Party in connection with proceedings under or relating to any Antitrust Laws.

(e)     Sellers and Purchaser shall keep each other apprised of the status of any communications with, and any inquiries or requests for additional information from, the FTC, the DOJ, the Gaming Authorities or other applicable Governmental Authority and, subject to applicable Law, if reasonably practicable, permit the other Party to review in advance any proposed written communication to the FTC, the DOJ, the Gaming Authorities or other such Governmental Authority and incorporate the other Party's reasonable comments, not agree to participate in any substantive meeting or discussion with the FTC, the DOJ, the Gaming Authorities or other such Governmental Authority in respect of any filing, investigation or inquiry concerning this Agreement or the Transactions unless, to the extent reasonably practicable, it consults with the other Party in advance and, to the extent permitted by the FTC, the DOJ, the Gaming Authorities or other applicable Governmental Authority, gives the other Party the opportunity to attend, and furnish the other Party with copies of all correspondence, filings and written communications between them and their Affiliates and their respective representatives on one hand and the FTC, the DOJ, the Gaming Authorities or other applicable Governmental Authority or their respective staff on the other hand, with respect to this Agreement and the Transactions.  If a filing required under the Antitrust Laws is made, each of Purchaser and Sellers shall seek early termination of the waiting period under the HSR Act, use its reasonable best efforts to obtain as promptly as reasonably possible any clearance required under the HSR Act or other applicable Antitrust Laws for the consummation of the Transactions and, at the earliest reasonably practicable date comply with (or properly reduce the scope of) any formal or informal request for additional information or documentary material received by it or any of its Affiliates from any Governmental Authority having jurisdiction with respect to the transactions contemplated hereby pursuant to applicable Antitrust Laws.

(f)     Purchaser shall not, and shall cause its Affiliates not to, acquire or agree to acquire, by merging with or into or consolidating with, or by purchasing a substantial portion of the assets of or equity in, or by any other manner, any business or any corporation, partnership, association or other business organization or division thereof, or otherwise acquire or agree to acquire any assets, if the entering into of a definitive agreement relating to, or the consummation of such acquisition, merger or consolidation could reasonably be expected to: (i) impose any delay in the obtaining of, or increase the risk of not obtaining, any consents of any Governmental Authority necessary to consummate the transactions contemplated hereby or the expiration or termination of any applicable waiting period; (ii) increase the risk of any Governmental Authority entering an Order prohibiting the consummation of the transactions contemplated hereby; (iii) increase the risk of not being able to remove any such Order on appeal or otherwise; or (iv) delay or prevent the consummation of the transactions contemplated hereby.

*Approved by Judge Gloria M. Burns July  14, 2014*

7.3.    <u>Public Statements</u>.  The Parties shall consult with each other prior to issuing any press release or making any public announcement with respect to this Agreement, the Ancillary Agreements, or the Transactions (including the financial terms hereunder and thereunder), and shall not issue any such press release or public announcement without the prior written consent of the other Party, which consent shall not be unreasonably withheld, except for press releases or public announcement as may be required by Law or judicial process.  Purchaser shall not make any statement to, or otherwise communicate (whether orally or in writing) with, any employee, customer or supplier to any Seller regarding this Agreement, the Ancillary Agreements or the Transactions except for any statement or communication with respect to which Sellers shall have previously consented in writing.

7.4.    <u>Notification of Certain Matters</u>.  Sellers shall give prompt notice to Purchaser, and Purchaser shall give prompt notice to Sellers, of (a) any notice or other communication from any Person alleging that the consent of such Person which is or may be required in connection with the transactions contemplated by this Agreement or the Ancillary Agreements is not likely to be obtained prior to Closing, and (b) any written objection or proceeding that challenges the transactions contemplated hereby or the entry of the approval of the Bankruptcy Court.  To the extent permitted by applicable Law, Sellers shall give notice, as promptly as reasonably practicable, to Purchaser of (x) any written notice of any alleged violation of Law applicable to any Seller, and (y) the commencement of any Action by any Governmental Authority with respect to the Business.

**SECTION 8**
**EMPLOYEE MATTERS**

8.1.    <u>Employment</u>.  Purchaser shall make offers of employment to Employees subject to the following:

(a)    Prior to the Closing Date, Purchaser shall offer to employ, commencing upon Closing, each Employee of Sellers who is part of a union (collectively, the "<u>Union Employees</u>") with terms and conditions of employment in accordance with the terms of the applicable CBAs.  Union Employees who accept such offer of employment will be referred to in this Agreement as "<u>Transferred Union Employees</u>." Purchaser agrees to (i) recognize each union or other labor organization that as of the Closing represents any Employees as the collective bargaining representatives of such employees, (ii) adopt, assume and perform fully all rights, duties and obligations of Sellers with regard to the CBAs from and after the Closing and not undertake any action to avoid the employer obligations under the CBAs and (iii) execute such documents as may be necessary to effectuate such adoption and assumption.  Purchaser further agrees that Sellers shall have no further obligations pursuant to the CBAs. <u>Section 8.1(a)</u> of the Sellers Disclosure Letter sets forth all Employees who are subject to any of the CBAs, including those Employees who are on long-term disability, layoff with recall rights under any of the CBAs or on a leave of absence with a prior agreement or understanding to return to employment with Sellers at the end of such disability, layoff or leave, and, notwithstanding anything to the contrary in this Agreement, Sellers may update <u>Section 8.1(a)</u> of the Sellers Disclosure Letter up to and including the Closing Date.

(b)     Prior to the Closing Date, Purchaser shall offer to employ on substantially the same terms and conditions as those in effect pre-Closing, commencing upon the Closing, all Employees of Sellers who are not Union Employees ("Nonunion Employees").   Nonunion Employees who accept such offer of employment will be referred to in this Agreement as "Transferred Nonunion Employees." Notwithstanding the foregoing, nothing in this Agreement will, after the Closing Date, impose on Purchaser any obligation to retain any Transferred Nonunion Employee in its employment.  Section 8.1(b) of the Sellers Disclosure Letter sets forth all Employees who are not subject to any of the CBAs, including those Employees who are on long-term disability or leave who have a prior arrangement or understanding to return to employment which such leave or disability ends, and, notwithstanding anything to the contrary in this Agreement, Sellers may update Section 8.1(b) of the Sellers Disclosure Letter up to and including the Closing Date.   Purchaser shall assume the Employee contracts set forth on Section 8.1(b) of the Sellers Disclosure Letter in the event that the applicable Employee accepts an offer of employment in connection with this Section 8.1(b).

(c)     Transferred Nonunion Employees and Transferred Union Employees will collectively be referred to as "Transferred Employees."   The employment of each such Transferred Employee with Purchaser will commence immediately upon the Closing.

8.2.   Employee Benefit Matters.

(a)     As of the Closing, all of the Transferred Employees will cease participation in any of Sellers' employee benefit plans and fringe benefit programs that such Transferred Employees participated in immediately prior to the Closing.

(b)     In accordance with Treasury Regulation Section 54.4980B-9 Q&A-7, as of the Closing Date, Purchaser will assume all liability for providing and administering all required notices and benefits under the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"), to all Employees and their respective qualified beneficiaries (as defined in COBRA).   Sellers will have no COBRA liability or obligations to such Employees and their respective qualified beneficiaries after the Closing Date.

(c)     Purchaser constitutes a "successor employer" within the meaning of Code Section 3121(a)(1) and Code Section 3306(b)(1) and the regulations thereunder. Accordingly, Purchaser agrees to treat all wages paid to the Employees as paid by a successor employer for all federal and state income Tax and employment Tax purposes.

(d)     Transferred Employees shall be provided credit by Purchaser for all service with Sellers, to the same extent such service was credited for such purpose by Sellers and any predecessor employer, under all employee benefit plans, programs, policies and arrangements of Purchaser or its Affiliates for all purposes (including eligibility, vesting, benefit accrual and severance entitlements), except to the extent that such service credit would result in a duplication of benefits.  Commencing on the Closing Date, Purchaser shall provide coverage and benefits for all Transferred Employees and

-28-

their respective eligible spouses and dependents under its welfare benefit plans and shall waive any waiting periods or limitations for pre-existing conditions or other limitations or exclusions from coverage under its welfare benefit plans (including its medical, dental, prescription drug, hospitalization, life insurance, short-term and long-term disability plans), and shall ensure that such employees, spouses and dependents are given credit for any amounts paid toward deductibles, co-payments, co-insurance, out-of-pocket limits or other fees on or prior to the Closing Date.

8.3.   Defined Contribution Plans.   With respect to any defined contribution plan of Sellers that is intended to qualify under Sections 401(a) and 401(c) of the Code maintained by or for the benefit of any of the Transferred Employees, the Transferred Employees will cease to actively participate in such defined contribution plan as of the Closing Date.  As of the Closing Date or as soon as reasonably practicable thereafter, each Transferred Employee will be permitted to elect a distribution of his or her account balance in such defined contribution plan of Sellers and will be permitted to rollover his or her account balances in such plan (or any portion thereof) to the tax qualified defined contribution plan of Purchaser, including the ability to rollover any existing loans under such plan of Sellers for sixty (60) days after the Closing Date.

8.4.   Compliance with WARN Act.   During the first ninety (90) days following the Closing Date, Purchaser shall not engage in or effectuate any mass layoffs or plant closings (as such terms or similar terms are defined in the WARN Act). Purchaser will have full and sole responsibility for all Liabilities relating to the WARN Act arising on or after the Closing Date with respect to all former employees of Seller who suffered "employment losses" (within the meaning of the WARN Act) within ninety (90) days prior to the Closing Date, Employees and/or Transferred Employees (including, but not limited to, any Liability on account of the aggregation of "employment losses" that occur within ninety (90) days prior to the Closing Date with "employment losses" that occur following the Closing Date) or otherwise arising out of or resulting from the consummation of the Transactions.  Sellers shall be responsible for all other WARN Act liabilities relating to the periods more than ninety (90) days prior to the Closing Date and in the event the Agreement is not consummated.  On or before the Closing Date, Sellers shall provide a list of all employees who Sellers have caused to experience "employment losses" within ninety (90) days prior to the Closing Date and Seller shall update this list up to and including the Closing Date.

## SECTION 9
## CONDITIONS TO SELLERS' OBLIGATIONS

The obligations of Sellers to consummate the Transactions are subject to the satisfaction (unless waived in writing by Sellers) of each of the following conditions on or prior to the Closing Date:

9.1.   Representations and Warranties.   The representations and warranties of Purchaser contained in this Agreement that are not qualified by materiality or a Material Adverse Effect shall be true and correct in all material respects on and as of the Closing Date, except to the extent expressly made as of an earlier date, in which case as of such earlier date, and the representations and warranties of Purchaser contained in this Agreement that are qualified by materiality or a Material Adverse Effect shall be true and correct in all respects on and as of the

-29-

Closing Date, except to the extent expressly made as of an earlier date, in which case they shall be true and correct as of such earlier date.

9.2.    <u>Compliance with Agreements</u>.  Purchaser shall have performed and complied in all material respects with all covenants and agreements under this Agreement and the Ancillary Agreements to be performed or complied with by it on or prior to the Closing Date.

9.3.    <u>Approvals; No Injunctions</u>.  The approvals set forth on <u>Section 9.3</u>[3] of the Sellers Disclosure Letter shall have been obtained or provided by an Order of the Bankruptcy Court, including the expiration or termination of the waiting period (and each extension thereof, if any) applicable to the sale of the Assets under the HSR Act.   No Governmental Authority of competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any statute, rule, regulation or non-appealable judgment, decree, injunction or other Order that is in effect on the Closing Date and prohibits the consummation of the Closing.

9.4.    <u>Purchaser's Closing Deliveries and Obligations</u>.  Purchaser shall have delivered all items and satisfied all obligations pursuant to <u>Sections 11.1(b)</u> and <u>11.1(c)</u>.

9.5.    <u>Entry of the Sale Order</u>.  The Bankruptcy Court shall have entered the Sale Order.

## SECTION 10
## CONDITIONS TO PURCHASER'S OBLIGATIONS

The obligation of Purchaser to consummate the Transactions is subject to the satisfaction (unless waived in writing by Purchaser) of each of the following conditions on or prior to the Closing Date:

10.1.    <u>Representations and Warranties</u>.   The representations and warranties of Sellers contained in this Agreement shall be true and correct (without giving effect to any "material", "Material Adverse Effect" or similar qualifiers contained in any of such representations and warranties) on and as of the Closing Date, except to the extent expressly made as of an earlier date, in which case as of such earlier date, except, in each case, where the failure of such representations and warranties to be true and correct would not reasonably be expected to have a Material Adverse Effect.

10.2.    <u>Compliance with Covenants and Agreements</u>.  Each Seller shall have performed and complied in all material respects with all covenants and agreements under this Agreement and the Ancillary Agreements to be performed or complied with by it on or prior to the Closing Date.

10.3.    <u>Approvals; No Injunctions</u>.  The approvals and Permits set forth on <u>Section 9.3</u> of the Sellers Disclosure Letter shall have been obtained or provided by an Order of the Bankruptcy Court, including the expiration or termination of the waiting period (and each extension thereof, if any) applicable to the sale of the Assets under the HSR Act.   No Governmental Authority of

---

[3] ***Note to Draft***: <u>Section 9.3</u> of the Sellers Disclosure Letter will not include any approvals of Purchaser or its constituents (such approvals to be obtained prior to the execution of this Agreement). <u>Section 9.3</u> of the Sellers Disclosure Letter to include all material Gaming Approvals as may be required under applicable Gaming Laws.

*Approved by Judge Gloria M. Burns July  14, 2014*

competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any statute, rule, regulation or non-appealable judgment, decree, injunction or other Order that is in effect on the Closing Date and prohibits the consummation of the Closing.

10.4.   Sellers' Closing Deliveries and Obligations.  Each Seller shall have delivered all items and satisfied all obligations pursuant to Section 11.1(a).

10.5.   Entry of the Sale Order.  The Bankruptcy Court shall have entered the Sale Order.

10.6.   Assumed Contracts.  The Bankruptcy Court shall have approved and authorized the assumption and assignment of the Assumed Contracts set forth on Section 10.6 of the Sellers Disclosure Letter.

## SECTION 11
## CLOSING; TERMINATION

11.1.   The Closing.  The Closing of the purchase by Purchaser from Sellers and sale by Sellers to Purchaser of the Assets (the "Closing") shall be held on the second (2nd) Business Day after the satisfaction or waiver of the conditions set forth in Sections 9 and 10 of this Agreement (excluding those conditions which by their nature are to be satisfied as part of the Closing), or at such other time as the Parties may agree (the "Closing Date").  The Closing shall be held at the offices of White & Case LLP, 1155 Avenue of the Americas, New York, NY 10036 or at such other location as the Parties may agree.  At the Closing, all of the Transactions shall be deemed to be consummated on a concurrent and simultaneous basis.  The Closing shall be effective as of 12:01 a.m. New York City time on the Closing Date.

(a)   Sellers' Deliveries at Closing.  At the Closing, Sellers shall deliver (or cause to be delivered) to Purchaser the following:

(i)   the duly executed Assignment and Assumption Agreement;

(ii)   the duly executed Bill of Sale;

(iii)   the duly executed Assignment of Intellectual Property;

(iv)   a certified copy of the Sale Order and case docket reflecting that the Sale Order is in effect;

(v)   a copy of resolutions of the governing body of each Seller approving and authorizing the Transactions;

(vi)   officer's certificates, executed by a duly authorized officer of each Seller to the effect that all conditions to Closing set forth in Section 10.1 and Section 10.2 have been satisfied or waived;

(vii)   affidavits executed by each Seller organized under the laws of the United States stating that such Seller is not a "foreign person" within the meaning of Section 1445(f)(3) of the Code;

-31-

(viii)   a "bargain and sale" deed relating to all real property acquired as part of the Purchased Assets; and

(ix)   such other documents as Purchaser or its counsel shall reasonably require in order to effect the Transactions.

(b)   <u>Purchaser's Payment of Purchase Price</u>.  At the Closing, Purchaser shall deliver (or cause to be delivered) the Purchase Price, less the Purchaser Deposit Amount, together with all accrued interest and investment income thereon (which shall be released by Parent to Sellers in accordance with <u>Section 2.6</u>).

(c)   <u>Purchaser's Deliveries to Sellers at Closing</u>.  At the Closing, Purchaser shall deliver (or cause to be delivered) to Sellers the following:

(i)   the duly executed Assignment and Assumption Agreement;

(ii)   a copy of resolutions of the governing body of Purchaser approving and authorizing the Transactions;

(iii)   a certificate, executed by a duly authorized officer of Purchaser, to the effect that all conditions to Closing set forth in <u>Section 9.1</u> and <u>Section 9.2</u> have been satisfied or waived; and

(iv)   such other documents as Sellers or their counsel shall reasonably require in order to effect the Transactions.

11.2.   <u>Termination</u>.  Anything in this Agreement to the contrary notwithstanding, this Agreement and the Transactions may be terminated in any of the following ways at any time before the Closing and in no other manner, subject to the provisions hereof:

(a)   at any time by mutual written consent of Purchaser and Sellers;

(b)   by Purchaser, if the Closing shall not have occurred on or before the date that is ninety (90) days following the date the Sale Order is entered by the Bankruptcy Court or such later date as Sellers and Purchaser agree or is necessary due solely to the scheduling and availability of the Bankruptcy Court (the "<u>Termination Date</u>"); <u>provided</u>, <u>however</u>, that Purchaser may not terminate this Agreement pursuant to this <u>Section 11.2(b)</u> if the Closing shall not have occurred on or before the Termination Date due to a breach of any representations, warranties, covenants or agreements contained in this Agreement by Purchaser; <u>provided</u>, <u>further</u>, that if the Closing shall not have occurred on or before the Termination Date due solely to the lack of consent or approval under any applicable Antitrust Law or Gaming Law and if all other conditions to the respective obligations of the Parties to close hereunder that are capable of being fulfilled by the Termination Date have been so fulfilled or waived (other than those conditions that, by their terms, are to be satisfied on Closing), then Purchaser may not terminate this Agreement pursuant to this <u>Section 11.2(b)</u> prior to one hundred and eighty (180) days following the date the Sale Order is entered by the Bankruptcy Court, which date, in such case, shall be considered the Termination Date;

*Approved by Judge Gloria M. Burns July 14, 2014*

(c)     by Sellers, if Purchaser is in breach of any of its representations or is in violation or default of any of its covenants or agreements in this Agreement, which would result in a failure of a condition set forth in Section 9 and which breach, violation or default is incapable of being cured or if such breach, violation or default has not been cured or waived within twenty (20) days following receipt of written notice from Sellers specifying, in reasonable detail, such claimed breach, violation or default and demanding its cure or satisfaction; provided, however, that Sellers (i) are not themselves in material breach of any of their representations, warranties or covenants contained herein, in the Bid Procedures Order or Sale Order, (ii) send a notice of termination and (iii) specify in such notice of termination the representation, warranty or covenant contained herein, in the Bid Procedures Order or the Sale Order of which Purchaser is allegedly in material breach;

(d)     by Purchaser, if Sellers are in breach of any of their representations or is in violation or default of any of its covenants or agreements in this Agreement, which would result in a failure of a condition set forth in Section 10 and which breach, violation or default is incapable of being cured or if such breach, violation or default has not been cured or waived within twenty (20) days following receipt of written notice from Purchaser specifying, in reasonable detail, such claimed breach, violation or default and demanding its cure or satisfaction; provided, however, that Purchaser (i) is not itself in material breach of any of their representations, warranties or covenants contained herein, in the Bid Procedures Order or Sale Order, (ii) sends a notice of termination and (iii) specifies in such notice of termination the representation, warranty or covenant contained herein, in the Bid Procedures Order or the Sale Order of which a Seller or Sellers are allegedly in material breach;

(e)     by Sellers or Purchaser, if there shall be in effect a final non-appealable Order of a Governmental Authority of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the Transactions, it being agreed that the Parties shall as promptly as reasonably practicable appeal any adverse determination which is not non-appealable (and pursue such appeal with reasonable diligence); provided, that the Party seeking to terminate pursuant to this Section 11.2(e) shall have complied with its obligations, if any, under Section 7.1 and/or Section 7.2 in connection with such Law or Order;

(f)     by Purchaser, if, as a result of an Order of the Bankruptcy Court, the Bankruptcy Cases are converted to Chapter 7 and a Chapter 7 trustee is appointed with respect to Sellers;

(g)     by Purchaser, if any secured creditor of any Seller obtains relief from the stay to foreclose on or enforce its rights against any material portion of the Assets;

(h)     by Sellers, if Parent's Board of Directors determines based upon consultation with Sellers' counsel that proceeding with the Transaction as contemplated herein would be inconsistent with its fiduciary duties under applicable Law; or

*Approved by Judge Gloria M. Burns July 14, 2014*

(i)   by Sellers, if the Closing shall not have occurred on or before the Termination Date; provided, however, that Sellers may not terminate this Agreement pursuant to this Section 11.2(i) if the Closing shall not have occurred on or before the Termination Date due to a breach of any representations, warranties, covenants or agreements contained in this Agreement by Sellers; provided, further, that if the Closing shall not have occurred on or before the Termination Date due solely to the lack of consent or approval under any applicable Antitrust Law or Gaming Law and if all other conditions to the respective obligations of the Parties to close hereunder that are capable of being fulfilled by the Termination Date have been so fulfilled or waived (other than those conditions that, by their terms, are to be satisfied on Closing), then Sellers may not terminate this Agreement pursuant to this Section 11.2(i) prior to one hundred eighty (180) days following the date the Sale Order is entered by the Bankruptcy Court, which date, in such case, shall be considered the Termination Date.

11.3.   Effects of Termination.  If this Agreement is terminated pursuant to Section 11.2, this Agreement (other than Section 2.6 (Purchaser Deposit), this Section 11.3 (Effects of Termination), Section 13 (Expenses, Attorneys' Fees and Brokers' Fees), Section 14.6 (Governing Law; Jurisdiction), Section 14.11 (Negotiated Agreement), Section 14.12 (Notices) and Section 14.14 (Specific Performance), each of which shall remain in full force and effect) shall forthwith become null and void and no Party shall have any liability or further obligation to any other Party, except (i) as provided in this Section 11.3 and Section 14.14 of this Agreement and (ii) that nothing herein will relieve or release any Party from liability arising from any material breach by such Party of this Agreement prior to such termination.  If this Agreement is terminated as provided herein, each Party shall redeliver all documents, work papers and other material of any other Party relating to the Transactions, whether obtained before or after the execution hereof, in accordance with the terms of the Confidentiality Agreement.

11.4.   Frustration of Closing Conditions.  Neither Sellers nor Purchaser may rely on the failure of any condition set forth in Section 9, Section 10 or any right of termination under Section 11.2, as the case may be, if such failure was caused by such Party's failure to comply with any provision of this Agreement.

### SECTION 12
### TAXES

12.1.   Taxes Related to Purchase of Assets.  Purchaser shall be solely responsible for the payment of any state and local sales, transfer, recording, stamp or other similar transfer taxes (collectively "Transaction Taxes") that may be imposed by reason of the sale, transfer, assignment and delivery of the Assets and not exempted under the Sale Order, along with any recording and filing fees.  Purchaser and Sellers agree to cooperate to determine the amount of Transaction Taxes payable in connection with the Transactions.  At the Closing, Purchaser shall remit to Sellers such properly completed resale exemption certificates and other similar certificates or instruments as are applicable to claim available exemptions from the payment of sales, transfer, use or other similar Taxes under applicable Law.  Purchaser and Sellers shall cooperate in preparing such forms and shall execute and deliver such affidavits and forms as are reasonably requested by the other Party.

*Approved by Judge Gloria M. Burns July  14, 2014*

12.2.   <u>Cooperation</u>.   Purchaser and Sellers agree to furnish or cause to be furnished to each other, as promptly as reasonably practicable, such information and assistance relating to the Assets as is reasonably necessary for the preparation and filing of any Tax Return, for the preparation for and proof of facts during any Tax audit, for the preparation for any Tax protest, for the prosecution or defense of any suit or other proceeding relating to Tax matters and for the answer of any governmental or regulatory inquiry relating to Tax matters.   Purchaser agrees to retain possession of all Tax files, books and records delivered to Purchaser by Sellers for a period of at least five (5) years from the Closing Date.   If Purchaser determines to destroy or discard any of such files, books or records after the end of such five (5) year period, Purchaser shall give Sellers reasonable notice thereof and shall allow Sellers to take possession of such files, books and records at Sellers' expense.   From and after the Closing Date, Purchaser agrees that it shall provide reasonable access to Sellers and their attorneys, accountants and other representatives (after reasonable notice and during normal business hours and without charge) to such files, books and records as Sellers may reasonably deem necessary to prepare for, file, prove, answer, prosecute or defend any claim, suit, inquiry or other proceeding, related to Taxes in connection with the Assets.

**SECTION 13**
**EXPENSES, ATTORNEYS' FEES AND BROKERS' FEES**

13.1.   <u>Expenses</u>.   Each Party shall be responsible for the payment of its own attorneys', brokers' and other fees and expenses in connection with the Transactions.

**SECTION 14**
**MISCELLANEOUS**

14.1.   <u>Sale of Assets Subject to Bankruptcy Court Approval</u>.   This Agreement, the sale of the Assets hereunder, and Sellers' obligations and ability to perform under this Agreement is conditioned and contingent upon Bankruptcy Court entry of the Sale Order.   Sellers shall use their commercially reasonable efforts to obtain entry of the Sale Order at the Sale Hearing.

14.2.   <u>Survival of Representations and Warranties and Covenants</u>.   Until the Closing, all representations and warranties herein or in any Ancillary Agreement shall be operative and in full force and effect.   All representations and warranties and covenants contained herein or in any Ancillary Agreement shall terminate and shall not survive the Closing, except that covenants that by their terms are to be performed after Closing shall survive Closing in accordance with their terms, including without limitation those contained in <u>Sections 5.1</u>, <u>5.2</u>, <u>5.12</u>, <u>Section 6</u>, <u>Section 7</u>, <u>Section 8</u>, <u>Section 12</u>, and <u>Section 13</u>.

14.3.   <u>Entirety of Agreement; Amendments and Waivers</u>.   This Agreement, the Sellers Disclosure Letter (including all schedules and exhibits hereto and thereto), together with the Ancillary Agreements and certificates delivered hereunder, state the entire agreement of the Parties with respect to the subject matter hereof, merge all prior negotiations, agreements and understandings, if any, and state in full all representations, warranties, covenants and agreements which have induced this Agreement.   Each of Sellers and Purchaser otherwise makes no other representations or warranties including any implied representations or warranties.   Each Party agrees that in dealing with third parties no contrary representations shall be made.   This

-35-

Agreement can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument making specific reference to this Agreement signed by the Party against whom enforcement of any such amendment, supplement, modification or waiver is sought.  The waiver by any Party of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any other or subsequent breach.  No failure on the part of any Party to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such Party preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

14.4.    Assignment.  Neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any of the Parties without the prior written consent of the other Party except, in the case of Purchaser, this Agreement and the rights, interests and obligations may be assigned to a Subsidiary of Purchaser without the consent of Sellers as long as such Subsidiary becomes a party to this Agreement and agrees to be bound by the representations, warranties, covenants and obligations herein and Purchaser guaranties such Subsidiary's obligations.   No Party shall be relieved of any liability or obligations hereunder in respect of any assignment pursuant to this Section 14.4, unless such assignor has received a written release expressly excepting such assignor from any liability that may arise hereunder.

14.5.    Successors and Assigns; No Third Party Beneficiaries.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.  This Agreement shall not confer any rights or remedies upon any Person other than the Parties and their respective heirs, personal representatives, legatees, successors and permitted assigns.

14.6.    Governing Law; Jurisdiction.   This Agreement shall be governed by, and construed and enforced in accordance with, the Laws of the State of New York applicable to contracts made and to be entirely performed therein, except to the extent that such Laws are superseded by the Bankruptcy Code.  In the event of any controversy or claim arising out of or relating to this Agreement or the breach or alleged breach hereof, each of the Parties irrevocably (a) submits to the exclusive jurisdiction of the Bankruptcy Court, (b) waives any objection which it may have at any time to the laying of venue of any Action or proceeding brought in the Bankruptcy Court, (c) waives any claim that such Action or proceeding has been brought in an inconvenient forum, and (d) agrees that service of process or of any other papers upon such Party by registered mail at the address to which notices are required to be sent to such Party under Section 14.12 shall be deemed good, proper and effective service upon such Party.

14.7.    Gender and Number.  In this Agreement, words importing the singular include the plural and vice versa and words importing a specific gender include all genders.

14.8.    Headings.   The division of this Agreement into Sections and the insertion of headings are for convenience of reference only and shall not affect the construction or interpretation of this Agreement.

14.9.    Construction.   In this Agreement (a) words denoting the singular include the plural and vice versa, (b) "it" or "its" or words denoting any gender include all genders, (c) the

Approved by Judge Gloria M. Burns July  14, 2014

word "including" shall mean "including without limitation," whether or not expressed, (d) any reference to a statute shall mean the statute and any regulations thereunder in force as of the date of this Agreement or the Closing Date, as applicable, unless otherwise expressly provided, (e) any reference herein to a Section or Exhibit refers to a Section of, or Exhibit to, this Agreement, unless otherwise stated and (f) when calculating the period of time within or following which any act is to be done or steps taken, the date which is the reference day in calculating such period shall be excluded and if the last day of such period is not a Business Day, then the period shall end on the next day which is a Business Day.

14.10.  Severability.  If any one or more of the provisions contained in this Agreement or in any other instrument referred to herein, shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, then to the maximum extent permitted by applicable Law, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement or any other such instrument.

14.11.  Negotiated Agreement.  Each of Sellers and Purchaser acknowledges that it has been advised and represented by counsel in the negotiation, execution and delivery of this Agreement and accordingly agrees that, if an ambiguity exists with respect to any provision of this Agreement, such provision shall not be construed against any party because such party or its representatives drafted such provision.

14.12.  Notices.  All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given or made as follows: (a) if sent by registered or certified mail in the United States return receipt requested, upon receipt; (b) if sent designated for overnight delivery by nationally recognized overnight air courier (such as Federal Express), one Business Day after delivery to such courier; (c) if sent by electronic mail or facsimile transmission before 5:00 p.m. in New York, when transmitted and receipt is confirmed; (d) if sent by electronic mail or facsimile transmission after 5:00 p.m. in New York and receipt is confirmed, on the following Business Day; and (e) if otherwise actually personally delivered, when delivered, provided that such notices, requests, demands and other communications are delivered to the address set forth below, or to such other address as any Party shall provide by like notice to the other Parties to this Agreement:

| | |
|---|---|
| Purchaser: | [_____]<br>[INSERT ADDRESS]<br>[INSERT EMAIL]<br>Facsimile: [●]<br>Attn:  [●] |
| with a copy to (which shall not constitute notice): | [INSERT NAME AND ADDRESS]<br>[INSERT EMAIL]<br>Facsimile: [●]<br>Attn:  [●] |
| Sellers: | Revel AC, Inc.<br>500 Boardwalk<br>Atlantic City, New Jersey 08401 |

*Approved by Judge Gloria M. Burns July  14, 2014*

skreeger@revelentertainment.com
tglebocki@revelentertainment.com
lpickus@revelentertainment.com
smartin@winterharborco.com
Facsimile: (609) 572 - 6608
Attn: Scott Kreeger
     Terry Glebocki
     Loretta Pickus
     Shaun Martin

with a copy to (which shall    White & Case LLP
not constitute notice):     1155 Avenue of the Americas
New York, New York 10036
mpierce@whitecase.com
jcunningham@whitecase.com
cgong@whitecase.com
rkebrdle@whitecase.com
Facsimile: (212) 354-8113
Attn:  Morton A. Pierce, Esq.
     John K. Cunningham, Esq.
     Chang-Do Gong, Esq.
     Richard Kebrdle, Esq.

And a copy to (which shall    Fox Rothschild LLP
not constitute notice):     1301 Atlantic Avenue
Suite 400 Midtown Building
Atlantic City, NJ 08401-7212
Email: ncasiello@foxrothschild.com
     mviscount@foxrothschild.com
Fax:   609.348.6834
Attn:  Nicholas Casiello, Jr., Esq.
      Michael Viscount, Esq.

Any Party may change its address for service from time to time by notice given to other Parties in accordance with the foregoing.

14.13. <u>Counterparts; Facsimile Copies</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Signed facsimile or other electronic copies of this Agreement shall legally bind the Parties to the same extent as original documents.

14.14. <u>Specific Performance</u>.  (a) Sellers acknowledge that Purchaser would be damaged irreparably in the event that this Agreement is not performed by Sellers in accordance with its specific terms or is otherwise breached, or threatened to be breached, by Sellers or Sellers fail to consummate the Closing as required hereunder and that, in addition to any other remedy that Purchaser may have under Law or equity as a remedy for any such breach or threatened breach, Purchaser shall be entitled to equitable relief, without proof of actual damages, including an

*Approved by Judge Gloria M. Burns July  14, 2014*

injunction or injunctions or Orders for specific performance to prevent breaches of the terms of this Agreement and to enforce specifically the terms and provisions hereof that are required to be performed by Sellers (including any Order sought by Purchaser to cause Sellers to perform their agreements and covenants contained in this Agreement or any Ancillary Agreement).

(a)      Purchaser acknowledges that Sellers would be damaged irreparably in the event that this Agreement is not performed by Purchaser in accordance with its specific terms or is otherwise breached, or threatened to be breached, by Purchaser or Purchaser fails to consummate the Closing as required hereunder and that, in addition to any other remedy that Sellers may have under Law or equity as a remedy for any such breach or threatened breach, Sellers shall be entitled to equitable relief, without proof of actual damages, including an injunction or injunctions or Orders for specific performance to prevent breaches of the terms of this Agreement and to enforce specifically the terms and provisions hereof that are required to be performed by Purchaser (including any Order sought by Sellers to cause Purchaser to perform its agreements and covenants contained in this Agreement or any Ancillary Agreement).

(b)      Sellers and Purchaser further agree that no other Party or any other Person shall be required to obtain, furnish or post any bond or similar instrument in connection with or as a condition to obtaining any remedy referred to in this Section 14.14, and each Party (i) irrevocably waives any right it may have to require the obtaining, furnishing or posting of any such bond or similar instrument and (ii) agrees to cooperate fully in any attempt by the other Party or Parties in obtaining such equitable relief.  Each Party further agrees that the only permitted objection that it may raise in response to any Action for equitable relief is that it contests the existence of a breach or threatened breach of this Agreement.

**[Remainder of Page Intentionally Left Blank]**

*Approved by Judge Gloria M. Burns July  14, 2014*

**IN WITNESS WHEREOF**, the Parties have duly executed and delivered this Agreement as of the date first above written.

<u>**SELLERS**</u>:

**REVEL AC, INC.**

By: _____
Name:
Title:

**REVEL AC, LLC**

By: _____
Name:
Title: Authorized Person

**REVEL ATLANTIC CITY, LLC**

By: _____
Name:
Title: Authorized Person

**REVEL ENTERTAINMENT GROUP, LLC**

By: _____
Name:
Title: Authorized Person

[Signature Page to Asset Purchase Agreement]

**NB ACQUISITION, LLC**


By: _____
Name:
Title: Authorized Person


**SI LLC**


By: _____
Name:
Title: Authorized Person

[Signature Page to Asset Purchase Agreement]

**PURCHASER:**

**[PURCHASER]**

By: _____
Name:
Title:

[Signature Page to Asset Purchase Agreement]

*Approved by Judge Gloria M. Burns July  14, 2014*

**Exhibit A**

**Form of Assignment and Assumption Agreement**

See attached.

**Exhibit B**

**Form of Intellectual Property Assignment Agreement**

See attached.

**Exhibit C**

**Form of Bill of Sale**

See attached.

**<u>EXHIBIT 2</u>**

(Sale Notice)

NEWYORK 9250300

*Approved by Judge Gloria M. Burns July  14, 2014*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-2(c)**

**FOX ROTHSCHILD LLP**
(Formed in the Commonwealth of Pennsylvania)
Michael J. Viscount, Jr., Esq.
Raymond M. Patella, Esq.
1301 Atlantic Avenue, Suite 400
Atlantic City, NJ 08401
(609) 348-4515/fax (609) 348-6834
mviscount@foxrothschild.com
rpatella@foxrothschild.com

**WHITE & CASE LLP**
John K. Cunningham, Esq. (admitted *pro hac vice*)
Richard S. Kebrdle, Esq. (admitted *pro hac vice*)
Kevin M. McGill, Esq. (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, FL 33131
(305) 371-2700/fax (305) 358-5744
jcunningham@whitecase.com
rkebrdle@whitecase.com
kmcgill@whitecase.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| REVEL AC, INC., et al., | Case No. 14-22654 (GMB) |
| Debtors.[1] | Jointly Administered |

**NOTICE OF (I) PROPOSED SALE OF THE ASSETS OF REVEL AC, INC. FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (II) BID PROCEDURES AND (III) AUCTION RELATED THERETO**

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are:  Revel AC, Inc. (3856), Revel AC, LLC (4456), Revel Atlantic City, LLC (9513), Revel Entertainment Group, LLC (2321), NB Acquisition, LLC (9387) and SI LLC (3856).  The location of the Debtors' corporate headquarters is 500 Boardwalk, Atlantic City, New Jersey 08401.

*Approved by Judge Gloria M. Burns July  14, 2014*

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.    On June 19, 2014, Revel AC, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors" or "Sellers") filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Court").  On June 20, 2014, the Debtors filed with the Court a motion [Docket No. 57] (the "Sale Motion") seeking, among other things: (a) authority to sell the assets of the Debtors free and clear of all liens, claims, interests and encumbrances (the "Sale"); (b) approval of certain procedures (the "Bid Procedures") for the solicitation of bids with respect to the Sale (the "Bid Procedures Relief"); (c) approval of certain procedures (the "Assignment Procedures") in connection with the identification and assumption of certain contracts and intellectual property rights in connection with the Sale; and (d) scheduling an auction (the "Auction") and a final hearing with the Court for approval of the Sale (the "Sale Hearing").

2.    The Debtors filed that certain form of Asset Purchase Agreement (including all exhibits, schedules and ancillary agreements related thereto, the "Agreement"), which contemplates the sale of the Sellers' assets (as described in Section 2.1 of the Agreement, the "Purchased Assets"), subject to higher and better offers made pursuant to the Bid Procedures.

3.    A hearing on the Bid Procedures was held before the Court on July 11, 2014, and thereafter the Court entered an order, among other things, approving the Bid Procedures Relief [Docket No. ___] (the "Bid Procedures Order").  The Bid Procedures Order establishes the Bid Procedures that govern the manner in which the Purchased Assets are to be sold.  All bidders must comply with the Bid Procedures and (i) submit a letter of intent so as to be received not later than July 18, 2014 and (ii) submit bids so as to be received not later than August 4, 2014.

5.    Pursuant to the Bid Procedures, each Qualified Bidder (as defined in the Bid Procedures) shall be invited to participate in the Auction at the office of Sellers' counsel, White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036, which Auction must be attended in person and which shall commence at 9:00 a.m. (prevailing Eastern Time) on August 7, 2014.

6.    The Sale Hearing currently is scheduled to be conducted on August 8, 2014 at 10:00 a.m. (prevailing Eastern Time) at the United States Bankruptcy Court for the District of New Jersey, 401 Market Street, Second Floor, Camden, New Jersey 08101, before the Honorable Gloria M. Burns, United States Bankruptcy Judge, to consider the approval the highest and best offer by a Qualified Bidder (the "Successful Bidder") and of the Agreement (as modified by the Successful Bidder) and seeking entry of an order approving the Sale substantially in the form of the order attached to the Sale Motion as Exhibit "B" (the "Sale Order").  The Sale Hearing may be adjourned or rescheduled from time to time without further notice other than an announcement by the Debtors in the Court of such adjournment on the date scheduled for the Sale Hearing.

7.    Sellers shall have the right, in their sole discretion, to elect to seek to close all or part of the Sale through or in connection with a chapter 11 plan (a "Plan Election").  If a Plan Election is made, then, among other things, the hearing to confirm such chapter 11 plan (the

*Approved by Judge Gloria M. Burns July  14, 2014*

"Confirmation Hearing") may be deemed the Sale Hearing and the order confirming such chapter 11 plan (the "Confirmation Order") may be deemed the Sale Order approving the Sale. As such, the Bid Procedures reserve the Debtors' rights to seek approval of the Sale in connection with and pursuant to a chapter 11 plan in these Chapter 11 Cases.

8.      A copy of the Bid Procedures Order, the Agreement (attached to the Bid Procedures Order as Exhibit "1") and the Sale Motion (including the proposed Sale Order) may be obtained by (a) sending a written request to co-counsel to the Debtors, White & Case LLP, Southeast Financial Center, 200 South Biscayne Boulevard, Suite 4900, Miami, Florida 33131, Facsimile: (305) 358-5744 (Attn: John K. Cunningham, Esq.) or Fox Rothschild LLP, 1301 Atlantic Avenue, Suite 400, Atlantic City, New Jersey 08401 (Attn: Michael J. Viscount, Esq.) or (b) accessing the website of the Debtors' claims and noticing agent, AlixPartners, LLP (www.revelcaseinfo.com).

9.      OBJECTIONS TO ENTRY OF THE SALE ORDER (OTHER THAN THE PROPOSED ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS, LEASES AND INTELLECTUAL PROPERTY OR TO ANY PROPOSED CURE PAYMENT LIABILITY AMOUNTS IN CONNECTION THEREWITH), INCLUDING THE DEBTORS' REQUEST TO APPROVE THE SALE OF THE PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS TO PURCHASER (AS DEFINED IN THE AGREEMENT) OR ANOTHER SUCCESSFUL BIDDER (EACH, AN "OBJECTION"), MUST BE MADE IN WRITING, FILED AND SERVED SO AS TO BE ACTUALLY RECEIVED BY 4:00 P.M. (PREVAILING EASTERN TIME) ON AUGUST 1, 2014 (THE "OBJECTION DEADLINE").

10.      ANY OBJECTION MUST BE SERVED IN ACCORDANCE WITH THE PRECEDING PARAGRAPH ON EACH OF THE FOLLOWING PARTIES: (i) the Debtors, c/o Revel AC, Inc. 500 Boardwalk, Atlantic City, New Jersey 08401 (Attn: Loretta Pickus, Esq.); (ii) co-counsel to the Debtors, White & Case LLP, 200 South Biscayne Boulevard, Suite 4900, Miami, Florida  33131 (Attn: John K. Cunningham, Esq.) and Fox Rothschild LLP, 1301 Atlantic Avenue, Suite 400, Atlantic City, New Jersey 08401 (Attn: Michael J. Viscount, Esq.); (iii) counsel to the DIP Agent; (iv) the Office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, New Jersey  07102 (Attn: Mitchell Hausman, Esq. and Jeffrey Sponder, Esq.); (v) counsel to the Steering Committee, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019-6064 (Attn: Andrew N. Rosenberg, Esq. and Elizabeth R. McColm, Esq.); (vi) counsel to the First Lien Agent; (vii) counsel to the Second Lien Agent; and (viii) counsel to the Official Committee of Unsecured Creditors, Cole, Schotz, Meisel, Forman & Leonard, P.A., 25 Main Street, Hackensack, New Jersey  07601 (Attn:  Michael D. Sirota, Esq. and Warren A. Usatine, Esq.).

11.      The Bid Procedures Order approves the Assignment Procedures, which set forth: (i) the manner in which the Debtors will (a) identify the Assumed Contracts, the Assumed Leases and the Intellectual Property Rights (each as defined in the Sale Motion) and (b) identify amounts the Debtors believe are necessary to cure defaults under each of such Assumed Contracts, Assumed Leases and Intellectual Property Rights as determined by Sellers; and (ii) procedures to be followed by any party that wishes to object to the proposed assumption and assignment of any Assumed Contract, Assumed Lease or Intellectual Property Rights, or the cure

*Approved by Judge Gloria M. Burns July  14, 2014*

amounts proposed by the Debtors in respect thereof.  An additional notice setting forth the specific Assumed Contracts, Assumed Leases and Intellectual Property Rights to be assumed by the Debtors and the proposed cure amounts for such contracts will be served upon all counterparties to the Assumed Contracts, Assumed Leases and Intellectual Property Rights.

12.    Under the Agreement, Purchaser will assume certain specified liabilities of the Debtors that fall within the definition of "Assumed Liabilities" under the Agreement as described in Section 2.3 of the Agreement.  Purchaser will not be assuming certain "Excluded Liabilities" listed in Section 2.4 of the Agreement.

13.    The failure of any person or entity to file an objection on or before the Objection Deadline shall be deemed a consent to the Sale of the Purchased Assets to the Successful Bidder and the other relief requested in the Sale Motion and be a bar to the assertion, at the Confirmation Hearing or thereafter, of any objection to the Bid Procedures, the Sale Motion, the Auction, the sale of the Purchased Assets, Sellers' consummation and performance of the Agreement (or marked-up agreement) with the Successful Bidder (including in any such case, without limitation, the transfer of the Purchased Assets free and clear of all liens, claims, encumbrances and interests).  If a Plan Election is made after the Objection Deadline, no party in interest that failed to file a timely objection to entry of the Sale Order shall be permitted to object to confirmation of the Plan on any grounds that could have formed the basis for an objection to entry of the Sale Order.

14.    This Notice is subject to the full terms and conditions of the Sale Motion, the Bid Procedures Order and the Bid Procedures, which shall control in the event of any conflict.  The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

Dated:  July __, 2014

| | |
|---|---|
| John K. Cunningham | Michael J. Viscount |
| Richard S. Kebrdle | Raymond M. Patella |
| Kevin M. McGill | FOX ROTHSCHILD LLP |
| WHITE & CASE LLP | 1301 Atlantic Avenue, Suite 400 |
| Southeast Financial Center | Atlantic City, New Jersey  08401 |
| 200 South Biscayne Boulevard, 49th Floor | Telephone:  (609) 348-4515 |
| Miami, Florida 33131 | Facsimile:  (609) 348-6834 |
| Telephone:  (305) 371-2700 | |
| Facsimile:  (305) 358-5744 | |

*Approved by Judge Gloria M. Burns July  14, 2014*

## **EXHIBIT 3**

(Publication Notice)

*Approved by Judge Gloria M. Burns July  14, 2014*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-2(c)**

**FOX ROTHSCHILD LLP**
(Formed in the Commonwealth of Pennsylvania)
Michael J. Viscount, Jr., Esq.
Raymond M. Patella, Esq.
1301 Atlantic Avenue, Suite 400
Atlantic City, NJ 08401
(609) 348-4515/fax (609) 348-6834
mviscount@foxrothschild.com
rpatella@foxrothschild.com

**WHITE & CASE LLP**
John K. Cunningham, Esq. (admitted *pro hac vice*)
Richard S. Kebrdle, Esq. (admitted *pro hac vice*)
Kevin M. McGill, Esq. (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, FL 33131
(305) 371-2700/fax (305) 358-5744
jcunningham@whitecase.com
rkebrdle@whitecase.com
kmcgill@whitecase.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| REVEL AC, INC., <u>et al.</u>, | Case No. 14-22654 (GMB) |
| Debtors.[1] | Jointly Administered |

**NOTICE OF (I) PROPOSED SALE OF THE ASSETS OF REVEL AC, INC. FREE AND
CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (II) BID
<u>PROCEDURES AND (III) AUCTION RELATED THERETO</u>**

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax
identification number, are:  Revel AC, Inc. (3856), Revel AC, LLC (4456), Revel Atlantic City, LLC (9513), Revel
Entertainment Group, LLC (2321), NB Acquisition, LLC (9387) and SI LLC (3856).  The location of the Debtors'
corporate headquarters is 500 Boardwalk, Atlantic City, New Jersey 08401.

*Approved by Judge Gloria M. Burns July  14, 2014*

**TO ALL INTERESTED PARTIES:**

PLEASE TAKE NOTICE that on June 19, 2014, Revel AC, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors" or "Sellers") filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Court"). On June 20, 2014, the Debtors filed with the Court a motion [Docket No. 57] (the "Sale Motion") seeking, among other things, (a) authority to sell the assets of the Debtors free and clear of all liens, claims, interests and encumbrances (the "Sale"); (b) approval of certain procedures (the "Bid Procedures") for the solicitation of bids with respect to the Sale (the "Bid Procedures Relief"); and (c) approval of certain procedures (the "Assignment Procedures") in connection with the identification and assumption of certain contracts and intellectual property rights in connection with the Sale.

PLEASE TAKE FURTHER NOTICE that the Sellers filed that certain form of Asset Purchase Agreement (including all exhibits, schedules and ancillary agreements related thereto, the "Agreement"), which contemplates the sale of the Sellers' assets (as described in Section 2.1 of the Agreement, the "Purchased Assets").

PLEASE TAKE FURTHER NOTICE a hearing on the Bid Procedures was held before the Court on July 11, 2014, and thereafter the Court entered an order, among other things, approving the Bid Procedures Relief [Docket No. ___] (the "Bid Procedures Order"). The Bid Procedures Order establishes the Bid Procedures that govern the manner in which the Purchased Assets are to be sold.

PLEASE TAKE FURTHER NOTICE that all bidders must comply with the Bid Procedures and (i) submit a letter of intent so as to be received not later than July 18, 2014 and (ii) submit a bid so as to be received not later than August 4, 2014.

PLEASE TAKE FURTHER NOTICE that pursuant to the Bid Procedures, each Qualified Bidder (as defined in the Bid Procedures) shall be invited to participate in an auction (the "Auction") at the office of Sellers' counsel, White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036, which Auction must be attended in person and which shall commence at 9:00 a.m. (prevailing Eastern Time) on August 7, 2014.

PLEASE TAKE FURTHER NOTICE that the Sale Hearing (as defined in the Bid Procedures Order) currently is scheduled to be conducted on August 8, 2014 at 10:00 a.m. (prevailing Eastern Time) at the United States Bankruptcy Court for the District of New Jersey, 401 Market Street, Second Floor, Camden, New Jersey 08101, before the Honorable Gloria M. Burns, United States Bankruptcy Judge, to consider the approval the highest and best offer by a Qualified Bidder (the "Successful Bidder") and of the Agreement (as modified by the Successful Bidder) and seeking entry of an order approving the Sale substantially in the form of the order attached to the Sale Motion as Exhibit "B" (the "Sale Order"). The Sale Hearing may be adjourned or rescheduled from time to time without further notice other than an announcement by the Debtors in the Court of such adjournment on the date scheduled for the Sale Hearing.

*Approved by Judge Gloria M. Burns July  14, 2014*

PLEASE TAKE FURTHER NOTICE THAT the Debtors shall have the right, in their sole discretion, to elect to seek to close all or part of the Sale through or in connection with a chapter 11 plan (a "Plan Election").  If a Plan Election is made, then, among other things, the hearing to confirm such chapter 11 plan (the "Confirmation Hearing") may be deemed the Sale Hearing and the order confirming such chapter 11 plan (the "Confirmation Order") may be deemed the Sale Order approving the Sale.  As such, the Bid Procedures reserve the Debtors' rights to seek approval of the Sale in connection with and pursuant to a chapter 11 plan in these Chapter 11 Cases.

PLEASE TAKE FURTHER NOTICE that objections to entry of the Sale Order must be made in writing, filed with the Court and served in accordance with the terms and conditions established by the Bid Procedures Order so as to be actually received by 4:00 p.m. (prevailing Eastern Time) on August 1, 2014.  If a Plan Election is made after the Objection Deadline, no party in interest that failed to file a timely objection to entry of the Sale Order shall be permitted to object to confirmation of the Plan on any grounds that could have formed the basis for an objection to entry of the Sale Order.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE SALE MOTION WITHOUT FURTHER NOTICE TO YOU OR THE OPPORTUNITY TO OBJECT.

PLEASE TAKE FURTHER NOTICE that a copy of the Agreement, the Bid Procedures Order and the Sale Motion (including the proposed Sale Order) may be obtained by (a) sending a written request to co-counsel to the Debtors, White & Case LLP, Southeast Financial Center, 200 South Biscayne Boulevard, Suite 4900, Miami, Florida 33131, Facsimile: (305) 358-5744 (Attn: John K. Cunningham, Esq.) or Fox Rothschild LLP, 1301 Atlantic Avenue, Suite 400, Atlantic City, New Jersey  08401 (Attn: Michael J. Viscount, Esq.) or (b) accessing the website of the Debtors' claims and noticing agent, AlixPartners, LLP (www.revelcaseinfo.com).

PLEASE TAKE FURTHER NOTICE that this Notice is subject to the full terms and conditions of the Sale Motion, the Bid Procedures Order and the Bid Procedures, which shall control in the event of any conflict.  The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

Dated:  July __, 2014

| | |
|---|---|
| John K. Cunningham | Michael J. Viscount |
| Richard S. Kebrdle | Raymond M. Patella |
| Kevin M. McGill | FOX ROTHSCHILD LLP |
| WHITE & CASE LLP | 1301 Atlantic Avenue, Suite 400 |
| Southeast Financial Center | Atlantic City, New Jersey  08401 |
| 200 South Biscayne Boulevard, 49th Floor | Telephone:  (609) 348-4515 |
| Miami, Florida 33131 | Facsimile:  (609) 348-6834 |
| Telephone:  (305) 371-2700 | |
| Facsimile:  (305) 358-5744 | |

*Approved by Judge Gloria M. Burns July  14, 2014*

# **EXHIBIT 4**

(Assignment Notice)

*Approved by Judge Gloria M. Burns July  14, 2014*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-2(c)**

**FOX ROTHSCHILD LLP**
(Formed in the Commonwealth of Pennsylvania)
Michael J. Viscount, Jr., Esq.
Raymond M. Patella, Esq.
1301 Atlantic Avenue, Suite 400
Atlantic City, NJ 08401
(609) 348-4515/fax (609) 348-6834
mviscount@foxrothschild.com
rpatella@foxrothschild.com

**WHITE & CASE LLP**
John K. Cunningham, Esq. (admitted *pro hac vice*)
Richard S. Kebrdle, Esq. (admitted *pro hac vice*)
Kevin M. McGill, Esq. (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, FL 33131
(305) 371-2700/fax (305) 358-5744
jcunningham@whitecase.com
rkebrdle@whitecase.com
kmcgill@whitecase.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| REVEL AC, INC., <u>et al.</u>, | Case No. 14-22654 (GMB) |
| Debtors.[1] | Jointly Administered |

## NOTICE OF DEBTORS' INTENT TO ASSUME AND ASSIGN
## <u>CERTAIN CONTRACTS, LEASES AND INTELLECTUAL PROPERTY RIGHTS</u>

PLEASE TAKE NOTICE THAT on June 19, 2014, Revel AC, Inc. and its
affiliated debtors and debtors in possession (collectively, the "Debtors" or "Sellers") filed

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax
identification number, are:  Revel AC, Inc. (3856), Revel AC, LLC (4456), Revel Atlantic City, LLC (9513), Revel
Entertainment Group, LLC (2321), NB Acquisition, LLC (9387) and SI LLC (3856).  The location of the Debtors'
corporate headquarters is 500 Boardwalk, Atlantic City, New Jersey 08401.

*Approved by Judge Gloria M. Burns July 14, 2014*

voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Court"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

PLEASE TAKE FURTHER NOTICE THAT on June 20, 2014, the Debtors filed a motion [Docket No. 57] (the "Motion") with the Court seeking, among other things, approval of certain procedures (the "Assignment Procedures") applicable to the identification and assumption of certain contracts (the "Assumed Contracts"), certain leases (the "Assumed Leases") and certain intellectual property rights (the "Intellectual Property Rights"), and assignment thereof, in connection with the Sale[2] by which the Debtors intend to sell their assets.

PLEASE TAKE FURTHER NOTICE THAT on July __, 2014, the Court entered an order (the "Order") granting the Motion as set forth therein [Docket No. ____] and approving the procedures for the assumption and assignment of the Assumed Contracts, Assumed Leases and Intellectual Property Rights. A copy of the Order is attached hereto as Exhibit "1".

PLEASE TAKE FURTHER NOTICE THAT the Debtors may assume and assign to the Successful Bidder the Assumed Contracts, Assumed Leases and Intellectual Property Rights listed on Exhibit "2" annexed hereto pursuant to section 365 of the Bankruptcy Code.

PLEASE TAKE FURTHER NOTICE THAT the Debtors have set forth on Exhibit "2" hereto (the "Cure Schedule") the amounts due and owing, if any, under the Assumed Contracts and Assumed Leases through the date hereof (the "Cure Amounts"). The Bankruptcy Code requires that the Cure Amounts (which include any amounts owing on account of the Debtors' obligations under the Assumed Contracts and Assumed Leases as of the date of assumption) be paid in full to the parties owed such amounts upon the Debtors' assumption of the Assumed Contracts and Assumed Leases.

PLEASE TAKE FURTHER NOTICE THAT the Debtors shall have the right, in their sole discretion, to elect to seek to close all or part of the Sale through or in connection with a chapter 11 plan (a "Plan Election"). If a Plan Election is made, then, among other things, the hearing to confirm such chapter 11 plan (the "Confirmation Hearing") may be deemed the Sale Hearing and the order confirming such chapter 11 plan (the "Confirmation Order") may be deemed the Sale Order approving the Sale. As such, the Bid Procedures reserve the Debtors' rights to seek approval of the Sale in connection with and pursuant to a chapter 11 plan in these Chapter 11 Cases.

**PLEASE TAKE FURTHER NOTICE THAT ANY PARTY SEEKING TO ASSERT AN OBJECTION TO THE VALIDITY OF ANY CURE AMOUNT AS DETERMINED BY THE DEBTORS OR TO OTHERWISE ASSERT THAT ANY OTHER AMOUNTS, DEFAULTS, CONDITIONS OR PECUNIARY LOSSES MUST BE CURED OR SATISFIED UNDER THE ASSUMED CONTRACTS AND ASSUMED LEASES (NOT INCLUDING ACCRUED BUT NOT YET DUE OBLIGATIONS) MUST**

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*Approved by Judge Gloria M. Burns July  14, 2014*

**FILE AND SERVE ITS OBJECTION (ANY SUCH OBJECTION, A "CURE OBJECTION") SETTING FORTH WITH SPECIFICITY THE CURE AMOUNT OR OTHER OBLIGATION THE OBJECTING PARTY ASSERTS IS DUE, THE SPECIFIC TYPES AND DATES OF THE ALLEGED DEFAULTS, PECUNIARY LOSSES AND CONDITIONS TO ASSIGNMENT AND THE SUPPORT THEREFOR, IF ANY, WITH RESPECT TO SUCH CONTRACT, LEASE OR INTELLECTUAL PROPERTY RIGHT SO THAT SUCH CURE OBJECTION IS ACTUALLY RECEIVED BY THE FOLLOWING PARTIES (THE "NOTICE PARTIES"):** (i) the Debtors, c/o Revel AC, Inc. 500 Boardwalk, Atlantic City, New Jersey 08401 (Attn: Loretta Pickus, Esq.); (ii) co-counsel to the Debtors, White & Case LLP, 200 South Biscayne Boulevard, Suite 4900, Miami, Florida 33131 (Attn: John K. Cunningham, Esq.) and Fox Rothschild LLP, 1301 Atlantic Avenue, Suite 400, Atlantic City, New Jersey  08401 (Attn: Michael J. Viscount, Esq.); (iii) counsel to the DIP Agent; (iv) the Office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, New Jersey  07102 (Attn: Mitchell Hausman, Esq. and Jeffrey Sponder, Esq.); (v) counsel to the Steering Committee, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019-6064 (Attn: Andrew N. Rosenberg, Esq. and Elizabeth R. McColm, Esq.); (vi) counsel to the First Lien Agent; (vii) counsel to the Second Lien Agent; and (viii) counsel to the Official Committee of Unsecured Creditors, Cole, Schotz, Meisel, Forman & Leonard, P.A., 25 Main Street, Hackensack, New Jersey  07601 (Attn:  Michael D. Sirota, Esq. and Warren A. Usatine, Esq.) **BY AUGUST 5, 2014 AT 4:00 P.M. (THE "CURE OBJECTION DEADLINE").**

**PLEASE TAKE FURTHER NOTICE THAT ANY PARTY SEEKING TO ASSERT AN OBJECTION TO THE ASSUMPTION AND ASSIGNMENT OF ANY ASSUMED CONTRACT, ASSUMED LEASE OR INTELLECTUAL PROPERTY RIGHT IN CONNECTION WITH THE SALE, OTHER THAN A CURE OBJECTION, MUST FILE AND SERVE ITS OBJECTION (ANY SUCH OBJECTION, AN "ASSUMPTION OBJECTION") SO THAT SUCH ASSUMPTION OBJECTION IS ACTUALLY RECEIVED BY THE NOTICE PARTIES BY AUGUST 11, 2014 (THE "ASSUMPTION OBJECTION DEADLINE").**

PLEASE TAKE FURTHER NOTICE THAT if, as to any Assumed Contract, Assumed Lease or Intellectual Property Right, no Cure Objection or Assumption Objection is received by the Cure Objection Deadline or Assumption Objection Deadline, as applicable, such Assumed Contract, Assumed Lease or Intellectual Property Right shall be deemed assumed by the Debtors and assigned to Successful Bidder without further order of the Court, effective as of the later of (i) the Assumption Objection Deadline, (ii) the payment of the applicable Cure Amount, if any, set forth in Exhibit "2" hereto or (iii) the date specified in the Agreement.  If a Cure Objection is received by the Cure Objection Deadline and the Debtors and/or the Successful Bidder is unable to resolve such objection consensually, the Cure Objection shall be heard by the Court on August 8, 2014 at 10:00 a.m.  If an Assumption Objection is received by the Assumption Objection Deadline and the Debtors and/or the Successful Bidder is unable to resolve such objection consensually, the proposed assumption and assignment which is the subject of such Assumption Objection shall be subject to further order of the Court and a hearing on such Assumption Objection shall be held on August 18, 2014 at 10:00 a.m..

*Approved by Judge Gloria M. Burns July  14, 2014*

PLEASE TAKE FURTHER NOTICE THAT hearings with respect to Cure Objections and Assumption Objections may be held on such later dates as the Court may designate.

PLEASE TAKE FURTHER NOTICE THAT the Debtors may, from time to time, modify the Cure Schedule to add or remove a contract or lease counterparty or to modify the proposed Cure Amount with respect to any counterparty.  The non-debtor counterparty to any such contract or lease will be provided separate written notice of any such modification and at least fourteen (14) days advance notice of its deadline to object to such modification, and the Debtors will seek to set any such objection for hearing before the Court as promptly as is reasonably possible.

**PLEASE TAKE FURTHER NOTICE THAT IF YOU AGREE WITH THE CURE AMOUNTS SET FORTH ON EXHIBIT "2" AND DO NOT OTHERWISE OBJECT TO THE DEBTORS' ASSUMPTION AND ASSIGNMENT OF YOUR CONTRACT, LEASE OR INTELLECTUAL PROPERTY RIGHT YOU NEED NOT TAKE ANY FURTHER ACTION.**

PLEASE TAKE FURTHER NOTICE THAT a complete copy of the Motion may be obtained by (a) sending a written request to co-counsel to the Debtors, White & Case LLP, Southeast Financial Center, 200 South Biscayne Boulevard, Suite 4900, Miami, Florida 33131, Facsimile: (305) 358-5744 (Attn: John K. Cunningham, Esq.) or Fox Rothschild LLP, 1301 Atlantic Avenue, Suite 400, Atlantic City, New Jersey  08401 (Attn: Michael J. Viscount, Esq.) or (b) accessing the website of the Debtors' claims and noticing agent, AlixPartners, LLP (www.revelcaseinfo.com).

Dated:  July __, 2014

John K. Cunningham
Richard S. Kebrdle
Kevin M. McGill
WHITE & CASE LLP
Southeast Financial Center
200 South Biscayne Boulevard, 49th Floor
Miami, Florida 33131
Telephone:  (305) 371-2700
Facsimile:  (305) 358-5744

Michael J. Viscount
Raymond M. Patella
FOX ROTHSCHILD LLP
1301 Atlantic Avenue, Suite 400
Atlantic City, New Jersey  08401
Telephone:  (609) 348-4515
Facsimile:  (609) 348-6834

*Approved by Judge Gloria M. Burns July  14, 2014*