Order Filed on
9/15/2014
by Clerk U.S. Bankruptcy
Court District of New Jersey

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-2(c)**

**FOX ROTHSCHILD LLP**
(Formed in the Commonwealth of Pennsylvania)
Michael J. Viscount, Jr., Esq.
Raymond M. Patella, Esq.
1301 Atlantic Avenue, Suite 400
Atlantic City, NJ 08401
(609) 348-4515/fax (609) 348-6834

**WHITE & CASE LLP**
John K. Cunningham, Esq. (admitted *pro hac vice*)
Richard S. Kebrdle, Esq. (admitted *pro hac vice*)
Kevin M. McGill, Esq. (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, FL 33131
(305) 371-2700/fax (305) 358-5744

*Co-Counsel to the Debtors and
Debtors in Possession*

In re:

REVEL AC, INC., et al.,

Debtors.[2]

Chapter 11

Case No. 14-22654 (GMB)

Jointly Administered

**Re: Docket Nos. 57, 231 & 610**

### ORDER MODIFYING THE BID PROCEDURES ORDER TO APPROVE CERTAIN BID PROTECTIONS INCLUDING BREAK-UP FEE AND GRANTING RELATED RELIEF

The relief set forth on the following pages two (2) through five (5) is hereby ORDERED:

9/15/14

/s/ C. U.S.BJ

---

[2] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Revel AC, Inc. (3856), Revel AC, LLC (4456), Revel Atlantic City, LLC (9513), Revel Entertainment Group, LLC (2321), NB Acquisition, LLC (9387) and SI LLC (3856). The location of the Debtors' corporate headquarters is 500 Boardwalk, Atlantic City, New Jersey 08401.

MIAMI 1025021

(Page 2)
Debtors: Revel AC, Inc., et al.
Case No.: 14-22654 (GMB)
Caption of Order: ORDER MODIFYING THE BID PROCEDURES ORDER TO APPROVE CERTAIN BID PROTECTIONS INCLUDING BREAK-UP FEE AND GRANTING RELATED RELIEF

---

Upon the motion (the "Motion")[3] of Revel AC, Inc. ("Revel") and its affiliated debtors and debtors in possession (collectively, the "Debtors") pursuant to sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") for entry of, among other things, an order modifying the Corrected Order (A) Authorizing and Approving Bid Procedures to be Employed in Connection With the Proposed Sale of the Assets of the Debtors, (B) Scheduling an Auction and Sale Hearing, (C) Authorizing and Approving Assignment Procedures, (D) Approving the Manner and Form of Notice of the Auction and Assignment Procedures and (E) Granting Related Relief [Docket No. 231] (the "Bid Procedures Order") to approve certain bid protections including a break-up fee and granting related relief; and no previous motion for similar relief having been made; and it appearing that the Court has jurisdiction over this matter; and it appearing that due notice of the Motion as set forth therein is sufficient under the circumstances and that no other or further notice need be provided; and it further appearing that the relief requested in the Motion is in the best interests of the Debtors and their estates and creditors; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that the Motion is GRANTED; and it is further

ORDERED that the Break-Up Fee is an essential inducement and condition relating to Stalking Horse Purchaser's entry into the Polo APA, and that the Break-Up Fee: (i) if triggered, shall be deemed to be an actual and necessary cost and expense of preserving the estate; (ii) is reasonable and appropriate in light of the size and nature of the proposed Sale, the

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*Approved by Judge Gloria M. Burns September 15, 2014*

(Page 3)
Debtors: Revel AC, Inc., et al.
Case No.: 14-22654 (GMB)
Caption of Order: ORDER MODIFYING THE BID PROCEDURES ORDER TO APPROVE CERTAIN BID PROTECTIONS INCLUDING BREAK-UP FEE AND GRANTING RELATED RELIEF

---

necessity to quickly consummate the Sale and resources that have been and will be expended by Stalking Horse Purchaser pending the Sale Hearing; (iii) has been negotiated by the parties and their respective advisors at arms' length and in good faith; and (iv) is necessary to ensure that Stalking Horse Purchaser will continue to pursue the closing of the Sale; and it is further

ORDERED that in the event that the Polo APA is terminated as a result of a higher and better Qualified Bid from another Qualified Bidder, and a closing occurs and is consummated with a Successful Bidder other than Stalking Horse Purchaser, then the Debtors shall be authorized without further order of the Court to pay the Break-Up Fee; and it is further

ORDERED that the Revised Bid Deadline is hereby set for September 23, 2014 at 4:00 p.m. (prevailing Eastern Time) in accordance with the Bid Procedures Order; and it is further

ORDERED that to be considered a Qualified Bid, in addition to the requirements found in the Bid Procedures Order, a bid (i) must include an executed asset purchase agreement on substantially the terms of, or on more favorable terms than those set forth in, the Polo APA and (ii) must be accompanied by a marked-up version of such asset purchase agreement reflecting changes from the Polo APA; and it is further

ORDERED that the Polo APA shall be deemed a Qualified Bid; and it is further

ORDERED that any initial overbid for the Purchased Assets must be in an amount of at least $4 million greater than the Purchase Price, and each subsequent overbid must provide an incremental amount of at least $1 million of value to Sellers, or such greater amount

(Page 4)
Debtors: Revel AC, Inc., et al.
Case No.: 14-22654 (GMB)
Caption of Order: ORDER MODIFYING THE BID PROCEDURES ORDER TO APPROVE CERTAIN BID PROTECTIONS INCLUDING BREAK-UP FEE AND GRANTING RELATED RELIEF

---

as designated by the Debtors from time to time, in consultation with the Consultation Parties; and it is further

ORDERED that in the event the Debtors receive more than one Qualified Bid, an Auction shall commence at 9:00 a.m. (prevailing Eastern Time) on September 24, 2014, and that each Qualified Bidder and each Consultation Party, and their respective advisors, shall be invited to attend the Auction at the office of Debtors' counsel, White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036, which Auction must be attended in person; and it is further

ORDERED that the revised bid procedures incorporating the above ordered paragraphs (the "Revised Bid Procedures"), in the form attached hereto as Schedule 1, are hereby approved; and it is further

ORDERED that the Debtors shall be authorized, but not directed, to hold the Deposit of the Stalking Horse Purchaser or any other bidder in an escrow account pursuant to the terms of an escrow agreement that is agreeable to the Debtors and such bidder; and it is further

ORDERED that to the extent this Order is inconsistent with any prior order or pleading with respect to the Motion or the Bid Procedures in these Chapter 11 Cases, the terms of this Order shall govern; and it is further

ORDERED that, notwithstanding the possible applicability of Bankruptcy Rules 6003 and 6004(h), or otherwise, this Court, for good cause shown, orders that the terms and conditions of this Bid Procedures Order shall be immediately effective and enforceable upon its entry; and it is further

MIAMI 1025021

*Approved by Judge Gloria M. Burns September 15, 2014*

(Page 5)
Debtors: Revel AC, Inc., et al.
Case No.: 14-22654 (GMB)
Caption of Order: ORDER MODIFYING THE BID PROCEDURES ORDER TO APPROVE CERTAIN BID PROTECTIONS INCLUDING BREAK-UP FEE AND GRANTING RELATED RELIEF

ORDERED that the Court shall retain exclusive jurisdiction over any matter or dispute arising from or relating to the implementation of this Order, and it is ORDERED that a hearing to approve Sale shall be held on September 30, 2014 at 1:00 PM.

*Approved by Judge Gloria M. Burns September 15, 2014*

## Schedule 1

(Revised Bid Procedures)

MIAMI 1025021

## Revised Bid Procedures[4]

1. <u>Consultation Parties</u>. "Consultation Parties" shall mean, collectively, the Debtors, the steering committee of Tranche B Term Loan Lenders under the First Lien Credit Agreement and the Second Lien Lenders (collectively, the "Steering Committee"), JPMorgan Chase Bank, N.A., as the First Lien Agent, Wilmington Trust, N.A., as the Second Lien Agent, Wells Fargo Bank, N.A., as the DIP Agent (the "DIP Agent"), and the Official Committee of Unsecured Creditors.

2. <u>Qualified Bids</u>. Each bidder shall, on or before September 23, 2014 at 4:00 p.m. (prevailing Eastern Time) (the "Bid Deadline"), deliver to the Debtors: (a) a cash deposit of 10% of the purchase price (the "Deposit"), (b) reasonable proof acceptable to the Debtors, in consultation with the Consultation Parties, of the bidder's ability to consummate a purchase of the Purchased Assets and assumption of the Assumed Liabilities, including copies of such bidder's annual, quarterly and monthly financial statements for the most recently ended fiscal periods, certified to be true, correct and complete in all material respects, or if the bidder is an entity formed for the purpose of acquiring the Purchased Assets, the aforementioned financial statements for the equity holder(s) of the bidder, and evidence of sufficient financing, (c) reasonable proof acceptable to the Debtors, in consultation with the Consultation Parties, of whether the bidder will require a casino license, and, if so, disclosure as to whether (i) the bidder ever applied for a casino license in New Jersey or another jurisdiction and been denied or subsequently withdrew the application, (ii) the bidder currently holds a casino license in New Jersey or another jurisdiction, (iii) the bidder ever admitted to any violation or settled with the New Jersey Casino Control Commission ("NJCCC"), the New Jersey Division of Gaming Enforcement, or any other gaming investigatory or licensing entity or Federal Government, and (iv) there are any other reasons why the bidder believes that it may not obtain interim authorization from the NJCCC and (d) an executed asset purchase agreement on substantially the terms of, or on more favorable terms than those set forth in the Polo APA, which asset purchase agreement shall (i) specify the amount of cash or other form of consideration acceptable to the Debtors (in consultation with the Consultation Parties), offered by the bidder for the Purchased Assets, (ii) not be subject to unperformed due diligence or obtaining financing nor provide for an expense reimbursement or break-up amount in favor of such bidder, (iii) constitute an irrevocable offer by such bidder to complete its proposed purchase upon the terms set forth therein, and must be irrevocable until closing of the Sale of the Purchased Assets to the Successful Bidder, (iv) seek to acquire the Purchased Assets, (v) include a copy of a board resolution or similar document demonstrating the authority of the bidder to submit an offer to purchase the Purchased Assets on the terms proposed by such bidder and identifies the officer(s) or authorized agent(s) appearing on behalf of the bidder and (vi) be accompanied by a marked-up version of (x) such asset purchase agreement reflecting changes from the Polo APA and (y) the Sale Order (a "Qualified Bid"). Nothing in the Bid Procedures shall prevent the Debtors, in the exercise of their business

---

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bid Procedures Order [Docket No. 231] and Order Modifying the Bid Procedures Order to Approve Certain Bid Protections Including Break-Up Fee and Granting Related Relief [Docket No. ●].

2

judgment, from considering bids for the purchase of less than substantially all of the Debtors' assets. The Debtors shall provide copies of all bids received by the Bid Deadline to the Consultation Parties promptly upon receipt.

3. <u>Qualified Bidders</u>. Any initial overbid for the Purchased Assets must be in an amount (in cash) of at least $94 million (plus the additional consideration and assumed liabilities set forth in the Polo APA), and each subsequent overbid must provide an incremental amount of at least $1 million of value to Sellers, or such greater amount as designated by the Debtors from time to time, in consultation with the Consultation Parties. In the event that Sellers shall reasonably determine that such bid is a higher and/or better bid than that set forth in the Polo APA, Stalking Horse Purchaser shall have the right to amend the Polo APA as necessary in its reasonable discretion in order to cause Stalking Horse Purchaser's bid to be comparable to such higher and/or better bid. The Debtors shall determine, in consultation with the Consultation Parties, whether a bid, including any credit bid by any secured creditor, qualifies as a Qualified Bid; <u>provided, however</u>, that the bid of the Stalking Horse Purchaser shall be deemed a Qualified Bid. Only those persons who have submitted a Qualified Bid in compliance with this Bid Procedures Order shall be a "Qualified Bidder." If a bid submitted on or before the Bid Deadline fails to meet all the requirements of a Qualified Bid, the Debtors are entitled to work with such bidder in an effort to cure any defects in the bid and to cause such bid to become a Qualified Bid, in consultation with the Consultation Parties, prior to the commencement of the Auction. Notwithstanding anything to the contrary contained herein but subject to the terms and conditions set forth in the DIP Loan Documents, the DIP Agent and the Prepetition First Lien Agent shall be deemed to be Qualified Bidders for purposes of proposing any credit bid(s) and participating in any auction, without the need for compliance with any of the requirements contained in section 2 above; <u>provided, however</u>, that any such credit bid shall only qualify as a Qualified Bid if so determined by the Debtors, in consultation with the Consultation Parties. If the DIP Agent and/or the Prepetition First Lien Agent intends to submit a credit bid, such party or parties must declare its intention to do so and submit the credit bid prior to the commencement of the Auction. In the event the DIP Agent and/or the Prepetition First Lien Agent declares its intention to submit a credit bid, its status as a Consultation Party shall be terminated at that time.

4. <u>Due Diligence</u>. Upon execution of a confidentiality agreement in a form acceptable to the Debtors, any bidder that wishes to conduct due diligence on the Debtors or their assets shall be granted access to all material information that has been or will be provided to other bidders, subject, in all cases, to the terms and conditions of the confidentiality agreement, applicable law or other restrictions the Debtors may deem necessary or appropriate to protect the proprietary information of the Debtors. The due diligence period for bidders will end one business day prior to the Bid Deadline. The Debtors shall coordinate all reasonable requests for additional information and due diligence access from potential bidders. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline. The Purchased Assets shall be sold on an "as is, where is" basis and by submitting a bid, each potential bidder

*Approved by Judge Gloria M. Burns September 15, 2014*

acknowledges such. The due diligence period for bidders may be extended by the Debtors, in consultation with the Consultation Parties.

5. <u>The Auction</u>. An Auction shall commence at 9:00 a.m. (prevailing Eastern Time) on September 24, 2014. Each Qualified Bidder shall be invited to attend the Auction at the office of Debtors' counsel, White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036, which Auction must be attended in person. The Consultation Parties and their advisors shall be able to attend the Auction in person. The Purchased Assets shall be sold free and clear of all liens, claims and encumbrances to the fullest extent allowed under section 363(f) of the Bankruptcy Code. The following rules shall govern the Auction:

a. Subject to the limitations set forth in these Bid Procedures, the opening price at such Auction shall be the highest and/or best offer of a Qualified Bidder selected, in consultation with the Consultation Parties, and announced by the Debtors.

b. Only Qualified Bidders may bid at the Auction. If multiple Qualified Bids are received, each Qualified Bidder shall have the right to continue to improve its Qualified Bid at the Auction.

c. If the Purchase Price is determined to be the opening price at the Auction, then any initial overbid for the Purchased Assets must be in an amount (in cash) of at least $94 million (plus the additional consideration and assumed liabilities set forth in the Polo APA). Each subsequent overbid (and, in the event the Purchase Price is not the opening price, each bid) must provide an incremental amount of at least $1 million of value to Sellers, or such greater amount as designated by the Debtors from time to time, in consultation with the Consultation Parties.

d. At the conclusion of the Auction and subject to Court approval following the Auction, the Debtors, in consultation with the Consultation Parties, shall announce the highest or otherwise best bid for the Purchased Assets (the "Successful Bidder") and the backup bidder (the "Backup Bidder").

e. The Auction may be adjourned by the Debtors, in consultation with the Consultation Parties, from time to time without further notice other than an announcement of such adjournment by the Debtors at the Auction.

f. All parties' rights under section 363(k) of the Bankruptcy Code are preserved. In the event a valid credit bid (subject to and in accordance with section 363(k) of the Bankruptcy Code) is received for the Purchased Assets, it shall be deemed in all respects to be equal in value to an all-cash bid in an amount equal to the face value of such credit bid on a dollar-for-dollar basis.

6. <u>Successful Bidder</u>. The Debtors may base the selection of the Successful Bidder and Backup Bidder on the following factors, among others: purchase price;

liabilities assumed in the bid; the ability to obtain necessary licenses, and the markup of the Polo APA submitted with the bid. The Debtors may, in consultation with the Consultation Parties, (a) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures or the terms and conditions of sale or (iii) contrary to the best interests of Sellers, their estates and creditors and/or (b) refuse to consider any bid that fails to comply with the Bid Procedures. After the determination of the Successful Bidder, the Debtors shall promptly execute the asset purchase agreement previously executed and submitted by such Successful Bidder, together with any changes thereto necessitated by the parties' actions at the Auction.

7. <u>Backup Bidder</u>. If the Successful Bidder fails to consummate the sale, breaches the asset purchase agreement executed by the Successful Bidder or otherwise fails to perform, (a) the Debtors, in consultation with the Consultation Parties, may consummate the proposed sale with the next highest or best bidder at the Auction (i.e., the Backup Bidder), which hereafter shall be included in the definition of "Successful Bidder," without the need for further Court approval, (b) the Debtors, in consultation with the Consultation Parties, will retain the Deposit of such bidder and (c) the Debtors will maintain the right to pursue all available remedies against such bidder. Notwithstanding anything to the contrary in these Bid Procedures, the Deposit of the Successful Bidder will be retained by the Debtors. Deposits of all other bidders will be retained by the Debtors until closing of the sale of the Purchased Assets to the Successful Bidder.

8. <u>Reservation of Rights</u>. The Debtors reserve the right, in consultation with the Consultation Parties, to modify the Bid Procedures in any manner that will best promote the goals of the Sale; <u>provided, however,</u> that any such modification must be in form and substance reasonably satisfactory to the DIP Agent and the Required Lenders under the DIP Credit Agreement.

9. <u>Fees and Expenses</u>. All bidders submitting bids shall bear their own fees and expenses in connection with the bid, the bid process, the Auction and the proposed sale, whether or not such sale is ultimately approved, unless otherwise agreed to by the Debtors and approved by the Court, in consultation with the Consultation Parties. Further, by submitting a bid, a bidder shall be deemed to waive its right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code in any way related to the submission of its bid, the bid process, the Auction or the Sale.

*Approved by Judge Gloria M. Burns September 15, 2014*