UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-2(c)**

**FOX ROTHSCHILD LLP**
(Formed in the Commonwealth of Pennsylvania)
Michael J. Viscount, Jr., Esq.
Raymond M. Patella, Esq.
John H. Strock, Esq.
1301 Atlantic Avenue, Suite 400
Atlantic City, NJ 08401
(609) 348-4515/fax (609) 348-6834
mviscount@foxrothschild.com
rpatella@foxrothschild.com
jstrock@foxrothschild.com

**WHITE & CASE LLP**
John K. Cunningham, Esq. (admitted *pro hac vice*)
Richard S. Kebrdle, Esq. (admitted *pro hac vice*)
Kevin M. McGill, Esq. (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, FL 33131
(305) 371-2700/fax (305) 358-5744
jcunningham@whitecase.com
rkebrdle@whitecase.com
kmcgill@whitecase.com

*Co-Counsel to the Debtors and
Debtors in Possession*

In re:

REVEL AC, INC., et al.,

                Debtors.[1]

Chapter 11

Case No. 14-22654 (GMB)

Jointly Administered

**Hearing Date: December 8, 2014 at 10:00 a.m. (ET)
Re: Docket Nos. 533, 541 & 693**

## DEBTORS' SUPPLEMENTAL OBJECTION TO MOTION OF CLASS ACTION CLAIMANTS FOR AN ORDER ALLOWING FILING OF A LATE FILED CLAIM

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Revel AC, Inc. (3856), Revel AC, LLC (4456), Revel Atlantic City, LLC (9513), Revel Entertainment Group, LLC (2321), NB Acquisition, LLC (9387) and SI LLC (3856). The location of the Debtors' corporate headquarters is 500 Boardwalk, Atlantic City, New Jersey 08401.

Americas 31033431 (2K)

Revel AC, Inc. ("Revel") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") hereby file this supplemental objection (the "Objection") to the motion [Docket No. 541] (the "Motion") of certain consumer fraud class action claimants (the "Class Action Claimants"), and in support of this Objection, respectfully represent as follows:

## Background

### A. The Bankruptcy Cases

1. The Debtors own a state of the art gaming and resort facility unlike any other in Atlantic City, New Jersey. The Debtors' facility consists of 6.2 million square feet, located on approximately 20 acres with 820 feet of boardwalk frontage, and features the tallest building in Atlantic City, the Revel hotel, a sleek 47-story, 710-foot high tower. The Debtors' 130,000 square foot casino featured 110 table games and approximately 2,300 slot machines.

2. On June 19, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing these Chapter 11 Cases. The Debtors continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On July 2, 2014, the United States Trustee appointed the Official Committee of Unsecured Creditors ("Creditors' Committee"). No trustee or examiner has been requested or appointed in these Chapter 11 Cases as of the date hereof.

4. Additional background facts on the Debtors, including an overview of the Debtors' business, information on the Debtors' debt structure and information on the events leading up to the Chapter 11 Cases are contained in the Declaration of Shaun Martin in Support of First Day Motions and Applications [Docket No. 5] (the "Martin Declaration").

2

B. **The August 6, 2014 Bar Date**

5. On July 14, 2014, the Court entered an Order (i) Establishing Bar Dates for Filing Proofs of Claim for Prepetition Claims Against the Debtors; (ii) Establishing Ramifications for Failure to Comply Therewith; (iii) Approving Electronic Proof of Claim System and Form of Proof of Claim; (iv) Approving Form and Manner of Notice of Deadlines to File Proofs of Claim; and (v) Approving Form and Manner of Publication Notice [Docket No. 225] (the "Bar Date Order"). The Bar Date Order fixed August 6, 2014 (the "Bar Date") as the last date for all persons or entities, with certain limited exceptions, holding a Claim (as such term is defined in section 101(5) of the Bankruptcy Code) against the Debtors to file proofs of claim in these Chapter 11 Cases.

6. Within two business days of the entry of the Bar Date Order, the Debtors' noticing, claims and balloting agent, AlixPartners, LLP (the "Claims Agent"), who maintains the register of proofs of claim filed in these Chapter 11 Cases, gave notice of the Bar Date by mailing to all entities known or reasonably ascertainable as potential holders of a Claim (a) a notice of the Bar Date approved by the Court (the "Bar Date Notice") and (b) a proof of claim form substantially similar to Official Form No. 10 customized for these Cases.[2] On July 24, 2014, the Debtors filed an Affidavit of Mailing [Docket No. 308] executed by the Claims Agent with respect to its mailing of the Bar Date materials described above.

7. On July 16, 2014, and July 17, 2014, respectively, the Debtors also published notice of the Bar Date in the following newspapers and trade journals: The New York Times (National Edition) and The Press of Atlantic City. On July 24, 2014, the Debtors filed the Affidavit of Timothy F. Sambrano Regarding Publication of The Revel AC, et al. Proposed Sale

---

[2] Copies of the Bar Date Notice and proof of claim form are attached to the Bar Date Order as Exhibits "A" and "B" thereto, respectively.

3

Notice and Claims Bar Date Notice [Docket No. 318] executed by Tim Sambrano of the Claims Agent with respect to the publication of the notice of Bar Date as described above.

8. Prior to and following the expiration of the Bar Date, the Debtors expended a substantial amount of time and effort to quantify and evaluate the total amount of their claims liability in these Chapter 11 Cases.

**C.    The Class Action Claimants' Late-Filed Claim**

9. As stated in the Motion, the Class Action Claimants represent certain named plaintiffs in a consolidated consumer fraud class action case against the Debtors in the United States District Court for the Southern District of New York [Case No. 13-5965-KPF] (the "Class Action Case"), consolidated and currently stayed as a result of these Chapter 11 Cases.[3] The Class Action Claimants were aware of these Chapter 11 Cases, and the Debtors were in fact granted a stay in the Class Action Case, prior to the entry of the Bar Date Order and the mailing of the Bar Date Notice.

10. On or about July 14, 2014, the Class Action Claimants and their counsel were served with copies of the Bar Date Notice by first-class mail directed to at least two separate locations, with multiple mailings directed to one of such locations. Specifically, the Class Action Claimants received the Bar Date Notice at each of the following addresses:

> Todd D. Muhlstock
> Baker Sanders, LLC
> 100 Garden City Plaza, Suite 500
> Garden City, NY 11530
>
> John A. Kehoe
> Girard Gibbs, LLP
> 711 Third Ave., 20th Floor
> New York, NY 10017

---

[3]    Although the Class Action Claimants purport to represent unnamed plaintiffs as well, because a class has not yet been certified in the Class Action Case the Class Action Claimants do not have standing to represent similarly situated creditors in these Chapter 11 Cases. See infra ¶ 27.

>Megan Boyd
>c/o Todd Muhlstock
>Baker Sanders
>100 Garden City Plaza, Suite 500
>Garden City, NY 11530
>
>Rakeen Henderson
>c/o Todd Muhlstock
>Baker Sanders
>100 Garden City Plaza, Suite 500
>Garden City, NY 11530

11. Among other things, the Bar Date Notice served on the Class Action Claimants contained the following heading in bold, capitalized letters: "**NOTICE OF DEADLINES TO FILE CERTAIN CLAIMS AGAISNT THE DEBTORS**." In the first paragraph following the heading, the Bar Date Notice also provided as follows: "You may hold claims against or equity interest in the Debtors. This notice lists important deadlines. You may want to consult an attorney to protect your rights." The Bar Date Notice also specifically outlines the consequence of failure to timely file a proof of claim: "**ANY PROOF OF CLAIM FILED AFTER THE APPLICABLE BAR DATE OR OTHER APPLICABLE DEADLINE (A) IS SUBJECT TO DISALLOWANCE AND (B) ANY PERSON OR ENTITY THAT IS REQUIRED BY THE BAR DATE ORDER TO FILE A PROOF OF CLAIM AND FAILS TO DO SO BY THE APPLICABLE BAR DATE, EXPECT BY FURTHER ORDER OF THE BANKRUPTCY COURT, SHALL NOT BE TREATED AS A CREDITOR FOR PURPOSES OF VOTING OR DISTRIBUTIONS.**"

12. Notwithstanding having received the Bar Date Notice at two separate locations, with three separate mailings being directed to one of such locations, the Class Action Claimants failed to file a proof of claim prior to the Bar Date.

13. In the Motion, the Class Action Claimants admit to receiving copies of the Bar Date Notice, but that such "notices became stockpiled within [their] firm's mail, winding up

in the mail of summer interns and a law clerk on extended leave to sit for the New York State Bar Exam." See Motion at 2. As a result, the Class Action Claimants filed their proof of claim thirteen (13) days following the applicable Bar Date.

### Objection

**A.    The Class Action Claimants' Failure to Timely File
Proof of Claim Was Not The Result of Excusable Neglect**

14.    Courts within the Third Circuit have consistently held that claims bar dates are deadlines to which creditors must strictly adhere. See, e.g., Trump Taj Mahal Assocs. v. Alibraham (In re Trump Taj Mahal Assocs.), 156 B.R. 928, 936 (Bankr. D.N.J. 1993) ("The well-established law of this Circuit is that bar dates for filing Proofs of Claim are strictly construed."). A bar date is critical to the administration of a successful chapter 11 case and the reorganization process because it

> serves the important purpose of enabling parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving the goal of a successful reorganization. . . . Thus a bar order does not "function merely as a procedural gauntlet," . . . but as an integral part of the reorganization process.

In re Keene Corp., 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995) (emphasis added) (quoting First Fid. Bank, N.A. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.), 937 F.2d 833, 840 (2d Cir. 1991)). "The bar date is akin to a statute of limitations, and must be strictly observed." Id. Indeed, a party's failure to assert a prepetition claim by the bar date, absent a showing of excusable neglect, renders such late claim "legally dead." Berger v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.), 96 F.3d 687, 690 (3d Cir. 1996) (noting that bar date means "a 'drop-dead date' that bars all prepetition claimants who received the required notice"); In re The Grand Union Co., 204 B.R. 864, 871 (Bankr. D. Del. 1997) ("In short, the claims bar date

operates as a federally created statute of limitations, after which the claimant loses all of her rights to bring an action against the debtor.").

15. For cause shown, however, a bankruptcy court "may extend the time within which proofs of claim or interest may be filed." Fed. R. Bankr. P. 3003(c)(3). Read in conjunction with Bankruptcy Rule 9006(b), Bankruptcy Rule 3003(c)(3) permits an act to be done after the deadline has expired "where the failure to act was the result of excusable neglect." Trump, 156 B.R. at 936. The burden of demonstrating excusable neglect rests with the late-filing claimant. See Jones v. Chemetron Corp., 212 F.3d 199, 205 (3d Cir. 2000). The United States Supreme Court has held that the following four factors are relevant in considering whether a movant has demonstrated that the neglect is excusable: "[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." Pioneer Inv. Servs. Co. v. Brunswick Assocs., L.P., 507 U.S. 380, 395 (1993); see also Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 188 F. 3d 116, 125 (3d Cir. 1999) (applying the four factors articulated in Pioneer).

16. Courts have further clarified this definition by adding that "all factors must be considered and balanced; no one factor trumps the others." Hefta v. American Classic Voyages Co. (In re American Classic Voyages Co.), 405 F.3d 127, 133 (3d Cir. 2005), citing George Harms Constr. Co. v. Chao, 371 F.3d 156, 164 (3d Cir. 2004). However, courts have at times relied on the fault factor above the others. See, e.g., American Classic Voyages, 405 F.3d at 134 ("[W]e rely primarily on the third Pioneer factor. Specifically, we conclude that the delay in this case was entirely avoidable and within creditor's control.").

7

17. As set forth below, a review of these factors as applicable to the Motion indicates that the relief being sought by Class Action Claimants should be denied.

### i. The Danger of Prejudice to the Debtors

18. Late claims may prejudice the debtor by virtue of negating the very purpose of the bar date and rendering an already complex case more difficult to manage and administer. See In re W.R. Grace & Co., 389 B.R. 373, 379 (Bankr. D. Del. 2008) (allowing late claims "would operate to negate the bar date"); see also American Classic Voyages, 405 F.3d at 133 (accepting debtor's argument that allowing creditor to file late would "render the bar order meaningless"). Courts have also found that "the opening of the floodgates to other late-filing creditors . . . supports a finding of prejudice [to the debtor]". In re Smidth & Co., 413 B.R. 161, 167 (Bankr. D. Del. 2009).

19. The prejudice factor is itself determined by a multi-factor test set out by the Third Circuit Court of Appeals. Smidth, 413 B.R. at 167 (citing O'Brien, 188 F.3d at 126 (citing Keene, 188 B.R. at 912-3)). The factors are:

> the size of the claim with respect to the rest of the estate; whether allowing the late claim would have an adverse impact on the judicial administration of the case; whether the plan was filed or confirmed with knowledge of the existence of the claim; the disruptive effect that the late filing would have on the plan or upon the economic model upon which the plan was based; and whether allowing the claim would open the floodgates to other similar claims.

Id. at 167. Allowing a claim that is untimely due to wholly negligent conduct by the Class Action Claimants would invite other claimants to similarly late file regardless of the reason they failed to do so timely. With no standard set by which to bar inexcusably late claims, the bar date would be essentially nullified, and the judicial administration of these cases would thus be compromised.

Americas 31033431 (2K)

### ii. The Length of Delay and Potential Impact on Proceedings

20. The Class Action Claimants filed a claim late by 13 days (eight business days). Motions to file late claims on the grounds of excusable neglect have been denied even when the delay was minimal. See, e.g., Lee Distributors, Inc. v. Freeport Kitchen Foods, Inc. (In re Freeport Kitchen Foods, Inc.), No. 96-22018(JKF), 1996 WL 761437, at *3 (Bankr. W.D. Pa. Dec. 19, 1996) (disallowing claims late by one week, even while acknowledging delay was merely "minimal"); In re Dennis, 230 B.R. 244 (Bankr. N.J. 1999) (disallowing claims late by nine days).

21. Given the Class Action Claimants' wholly negligent conduct and the prejudice allowing such late claim would cause the Debtors, the delay of the Class Action Claimants does not weigh in favor of a finding of excusable neglect.

### iii. The Reason for Delay

22. The Class Action Claimants had all information needed to file a timely claim, and as such their failure to do so was entirely their own fault and does not constitute excusable neglect. If a creditor has possession of the necessary information to file its claim with ample time to meet the deadline, then there can be no good reason for delay and thus no excusable neglect. In re MK Lombard Group I, Ltd., 301 B.R. 812, 818 (Bankr. E.D. Pa. 2003); Cable & Wireless, 338 B.R. at 617 ("[T]he reason for delay weighs against a finding of excusable neglect, as the [creditor] 1) received timely notice of the Bar Date, 2) was in possession of other information that could have informed it of [the proceeding requiring filing of a claim], 3) and nonetheless failed to file a proof of claim."). A "crucial factor" in the Court's determination of excusable neglect is "whether [the delay] was within the reasonable control of the [creditor]." In re Seivers, 378 B.R. 473, 481 (Bankr. W.D. Pa. 2007) (citing Midland

9

Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.), 419 F.3d 115 (2nd Cir. 2005)); see also Trump, 156 B.R. 928 (finding no excusable neglect where creditor caused the delay in filing and where delay in filing was within creditor's reasonable control); Cable & Wireless, 338 B.R. at 617) ("A finding to the contrary would, in effect, allow any creditor who has neglected to comply with a bar date to seek an extension on the grounds of excusable neglect because it did not read the notice.") (citing In re Best Products Co., Inc., 140 B.R. 353, 359 (Bankr. S.D.N.Y. 1992).

23. The Class Action Claimants' mistake is not excused because it was due to a lack of diligence in processing its mail, an error wholly in the control of the Class Action Claimants. "Mistakes resulting from institutionalized procedures, or lack of 'quality of control' type of procedures, are not excusable." Cable & Wireless, 338 B.R. at 617 (citing In re Walker, 332 B.R. 820, 831 (Bankr. D. Nev. 2005)).

24. The Class Action Claimants' claim that the envelopes containing notice of the Bar Date "were sent via regular postage" and "contained no markings indicating their urgency" does not establish excusable neglect. Motion at 2. A law firm's failure to open and inspect its mail, and its decision to entrust "summer interns" with such responsibility with no apparent oversight, does not constitute excusable neglect. See American Classic Voyages, 405 F. 3d at 134 ("Delay was the direct result of the negligence of [the creditor's] counsel in failing to review the [n]otice sent to him by [the debtor]."). Rather than being excusable, the failure of counsel for the Class Action Claimants to open and review its mail was grossly negligent, and not a basis to allow the Class Action Claimants to late file their proof of claim.

    **iv.**  **Good Faith**

  25.  The Class Action Claimants summarily state in the Motion that they have conducted themselves in good faith throughout the process and that therefore the fourth Pioneer factor is met. Motion at 4. Although the Debtors have no reason to dispute the Class Action Claimants' "good faith" conduct, such conduct is not dispositive in determining excusable neglect and does not provide a compelling reason to ignore the cause of the delay in filing timely. See Lucas Aerospace Inc. v. Continental Airlines, Inc. (In re Cont'l Airlines, Inc.), No. Civ. A. 94-474-SLR, 1995 WL 704783, *5 (D. Del. Oct. 19, 1995) (denying the claimant's requested relief where the only Pioneer factor weighing in favor of the claimant was good faith). Courts have denied motions to file late claims even where there is neither showing nor even allegations of bad faith. See, e.g., Seivers, 378 B.R. 473; Trump Taj Mahal, 156 B.R. 928; American Classic Voyages, 405 F.3d 127; Cable & Wireless, 338 B.R. 609.

  26.  Whether to timely file was in the complete control of the Class Action Claimants, and the failure to do so because of grossly negligent conduct should not serve as a basis to allow the Class Action Claimants to late file their proof of claim.

  **B.**  **The Class Action Claimants' Untimely Proof of Claim is Deficient Because No Class Has Been Certified**

  27.  Even had the Class Action Claimants timely filed their proof of claim, the claim would still be deficient in that it asserts a class action claim for a class that had not yet been certified. The Class Action Claimants filed a claim "on behalf of themselves and all others similarly situated." However, nothing in the Bankruptcy Code permits a named plaintiff to file a proof of claim on behalf of an entire class if such class has not been certified. See In re Ephedra Prods. Liab. Litig., 329 B.R. 1, 3 (Bankr. S.D.N.Y. 2005) (expunging putative class proof of claim, noting that "[n]othing in the Bankruptcy Code or Rules expressly permits a creditor to file

11

a proof of claim not only for himself but also on behalf of all other creditors similarly situated"); see also In re Orlando Investors, L.P., 103 B.R. 593, 597-98 (Bankr. E.D. Pa. 1989) (holding that named plaintiff in putative class action lacks ability to object to plan on behalf of putative class members, including releases contained therein).

28.     Accordingly, even had the Class Action Claimants timely filed their proof of claim, it should be disallowed to the extent it asserts a claim on behalf of "similarly situated" creditors.

Americas 31033431 (2K)

**Conclusion**

For all of the foregoing reasons, the Debtors respectfully request that the Motion be denied.

Dated: December 1, 2014
Atlantic City, New Jersey

FOX ROTHSCHILD LLP

By: /s/ *John H. Strock*
Michael J. Viscount, Jr., Esq.
Raymond M. Patella, Esq.
John H. Strock, Esq.
1301 Atlantic Avenue, Suite 400
Atlantic City, NJ 08401
(609) 348-4515/fax (609) 348-6834
mviscount@foxrothschild.com
rpatella@foxrothschild.com
jstrock@foxrothschild.com

– and –

John K. Cunningham, Esq.
(admitted *pro hac vice*)
Richard S. Kebrdle, Esq.
(admitted *pro hac vice*)
Kevin M. McGill, Esq.
(admitted *pro hac vice*)
WHITE & CASE LLP
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
(305) 371-2700/fax (305) 358-5744
jcunningham@whitecase.com
rkebrdle@whitecase.com
kmcgill@whitecase.com

*Co-Counsel to the Debtors and Debtors in Possession*