UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-2(c)**

**Milbank, Tweed, Hadley & McCloy LLP**
Thomas R. Kreller, Esq.
Julian I. Gurule, Esq.
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017
Tel.:  (213) 892-4463
Fax: (213) 629-5063

**Duane Morris LLP**
James J. Holman, Esq. (015341989)
30 South 17th Street
Philadelphia, PA 19103-4196
Tel.: (215) 979-1530
Fax: (215) 689-2562

and

Richard W. Riley, Esq. (040011988)
Sommer L. Ross, Esq. (004112005)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801-1659
Tel. (302) 657-4900
Fax:  (302) 657-4901

*Counsel for Wells Fargo Bank, N.A. and   Wells Fargo Principal Lending, LLC*

| | |
|---|---|
| In re: | Chapter 11 |
| REVEL AC, INC., et al., | Case No. 14-22654 (GMB) |
| Debtors.[1] | Jointly Administered |

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are:  Revel AC, Inc. (3856), Revel AC, LLC (4456), Revel Atlantic City, LLC (9513), Revel Entertainment Group, LLC (2321), NB Acquisition, LLC (9387) and SI, LLC (3856).  The location of the Debtors' corporate headquarters is 500 Boardwalk, Atlantic City, New Jersey 08401.

**SUPPLEMENTAL REPLY OF WELLS FARGO BANK, N.A. AND WELLS FARGO
PRINCIPAL LENDING, LLC TO OBJECTIONS TO DEBTORS' EMERGENCY
MOTION PURSUANT TO SECTIONS 361, 362, 363 AND 364
OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL
RULES OF BANKRUPTCY PROCEDURE FOR THE ENTRY OF
INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTORS TO
(I) OBTAIN POSTPETITION FINANCING, (II) GRANT SENIOR PRIMING LIENS
AND SUPERPRIORITY CLAIMS TO POSTPETITION LENDERS, (III) USE CASH
COLLATERAL, AND (IV) PROVIDE ADEQUATE PROTECTION TO
PREPETITION SECURED PARTIES, AND (B) PRESCRIBING FORM
AND MANNER OF NOTICE OF AND SCHEDULING HEARINGS**

Wells Fargo Bank, N.A. and Wells Fargo Principal Lending, LLC (together,
"Wells Fargo"), as DIP Agent[2] and as DIP Lender, respectively, under the DIP Facility hereby
submit this supplemental reply to the supplement to the objection (the "Supplement")[3] filed by
the official committee of unsecured creditors (the "Committee") in connection with the *Debtors'
Emergency Motion Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code and Rule
4001 of the Federal Rules of Bankruptcy Procedure for the Entry of Interim and Final Orders
(A) Authorizing the Debtors to (I) Obtain Postpetition Financing, (II) Grant Senior Priming
Liens and Superpriority Claims to Postpetition Lenders, (III) Use Cash Collateral, and (IV)
Provide Adequate Protection to Prepetition Secured Parties, and (B) Prescribing Form and
Manner of Notice of and Scheduling Hearings* [Docket No. 16] (the "DIP Motion").  Wells
Fargo respectfully states as follows:

---

[2] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to such terms
in the DIP Motion.

[3] See *Supplement to Objection of the Official Committee of Unsecured Creditors to Debtors' Motion
Pursuant to Sections 361, 362, 363, and 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules
of Bankruptcy Procedure for the Entry of a Final Order Authorizing the Debtors to (I) Obtain Post-
Petition Financing, (II) Grant Senior Priming Liens and Superpriority Claims to Post-Petition Lenders,
(III) Use Cash Collateral, and (IV) Provide Adequate Protection to Prepetition Secured Parties* [Docket
No. 915].

## PRELIMINARY STATEMENT

1. As reflected in the modifications to the proposed Final DIP Order that were identified in Wells Fargo's earlier reply to the Committee's initial objections to the DIP Facility, Wells Fargo has addressed the principal concerns that the Court previously raised with the DIP Facility, namely:

> a.   the Roll Up, which Wells Fargo has agreed will not impair the Committee's ability to pursue challenges to prepetition liens;
>
> b.   Avoidance actions, which Wells Fargo has agreed will not be encumbered by liens securing the DIP Facility; and
>
> c.   the priming of real property tax claims, which has been mooted by the tax settlement approved by the Court and consummated in December.

2. Despite this good-faith effort to address the concerns raised by the Court and the Committee, the Committee and the other objecting parties will undoubtedly continue to assert their scatter shot objections.  Wells Fargo encourages the Court to see the objections for what they truly are:  a thinly veiled attempt to leverage their position to wrongfully extract yet more value from Wells Fargo, notwithstanding Wells Fargo's status as the only party willing to continue to support the Debtors during these difficult, volatile and highly uncertain cases.  The Court should therefore ignore the hyperbole and instead focus on the actual asserted issues with the modified Final DIP Order—few of which actually remain and all of which should be overruled.

3. For example, any continuing objection to Wells Fargo's fees should plainly be rejected given the relentless and substantial uncertainty that continues to plague these Chapter 11 Cases, including the tenuous status of the Debtors' ongoing sale process.  In this high-risk credit, Wells Fargo's fees are more than reasonable.  Likewise, any remaining objection to the section 506(c) waiver should be overruled for the reasons stated in the Reply and in light of the fact that

only Wells Fargo has stepped forward to fund the enormous administrative expense of these cases (which continue to mount on a daily basis).

**REPLY TO COMMITTEE'S SUPPLEMENT**

4.      The Supplement accomplishes nothing for the Committee, but instead proves what the Court itself presaged at the October 16th hearing:  the Committee's misguided discovery exercise was a waste of time and estate resources that uncovered absolutely nothing of value or even anything particularly interesting.[4]

5.      Simply put, the few remaining disputed issues are entirely legal.  Thus, it is not at all surprising that the Committee's discovery yielded nothing more than a series of entirely unremarkable "facts" that are almost entirely irrelevant to this Court's consideration of the pertinent legal issues.  Wells Fargo has already responded to the Committee's "grab bag" of issues with the DIP Facility in its Reply.[5]  Accordingly, this supplemental reply will only briefly address the points raised in the Supplement.

6.      <u>Roll Up</u>.  The Committee's arguments regarding the Roll Up are irrelevant in light of the modifications to the Final DIP Order that Wells Fargo has proposed in connection with the Roll Up.[6]  Wells Fargo has expressly agreed that the Roll Up will not be used to "white-wash" any alleged flaws in Wells Fargo's prepetition collateral.  Nonetheless, it is worth noting that the

---

[4]  <u>See</u> October 16, 2014 Hearing Transcript, pg. 23, lines 12-16, attached as Exhibit 2 to the Gurule Declaration ("[I]t just does not seem valuable to me for your office, the lender's professionals, and the debtor's professionals to be spending a huge amount of time on discovery, when, you know, money is at a premium.").

[5]  <u>See</u> *Wells Fargo Bank, N.A. and Wells Fargo Principal Lending, LLC's Omnibus Reply to Objections to Debtors' Motion Pursuant to Sections 361, 362, 363, and 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure for the Entry of a Final Order Authorizing the Debtors to (I) Obtain Post-Petition Financing, (II) Grant Senior Priming Liens and Superpriority Claims to Post-Petition Lenders, (III) Use Cash Collateral, and (IV) Provide Adequate Protection to Prepetition Secured Parties, and (B) Prescribing Form and Manner of Notice of and Scheduling Hearing* [Docket No. 918] (the "<u>Reply</u>").

[6]  <u>See</u> Reply, ¶ 19.

deposition testimony of Mr. Bohannon that is cited to by the Committee does nothing to bolster the Committee's argument that the Roll Up is somehow improper.  Mr. Bohannon's testimony reflects nothing more than the unremarkable proposition that a roll up is a standard form of lender protection that prepetition lenders seek when lending under a DIP.  The mere fact that a DIP loan is "protective" of a prepetition secured position does not mean that the DIP is not the debtor's best available source of financing, which the DIP Facility plainly was.  Nor does it mean that a DIP lender would ever agree (or be compelled) to offer a DIP loan that contained no other protections for the lender beyond the opportunity to make the loan.

7.      <u>Cage Cash and SI LLC Real Property</u>.  The Cage Cash and SI LLC real property issues are closely intertwined with the Roll Up and, as explained at length in the Reply, the Committee's arguments with respect to such assets are moot in light of the modifications to the Final DIP Order.[7]  The Final DIP Order will preserve the Committee's challenge rights with respect to such collateral and, in the unlikely event of a successful challenge, only the "new money" DIP loans will by secured by such collateral, thereby fully addressing the Committee's issues with the Roll Up, the Cage Cash and the SI LLC real property.

8.      Nonetheless, it is worth noting that Mr. Bohannon's testimony regarding Cage Cash and SI LLC real property add absolutely nothing to the Committee's unsubstantiated allegations on those issues.  With respect to Cage Cash, the issue is purely legal: Does the Committee have any legal basis for overturning the perfected lien on Cage Cash that was granted to the Prepetition First Lien Secured Parties pursuant to Judge Wizmur's 2013 confirmation order in Revel's prior bankruptcy case?  Mr. Bohannon's testimony cannot possibly shed any light on that legal issue.

---

[7] <u>See</u>, Reply ¶ 19.

9.    Similarly, with respect to the SI LLC real property, there is no factual dispute: The Prepetition Secured Parties have a perfected pledge of the equity of SI LLC, but they do not have a recorded mortgage on the real property owned by that entity.  There is only the legal question of whether the Committee can establish any legal basis for avoiding that pledge.

10.    <u>Avoidance Actions</u>.    The Committee's avoidance actions arguments are completely mooted by the modified Final DIP Order, which provides that the DIP Facility liens will not attach to any avoidance actions, subject to the Prepetition First Lien Secure Parties' right to participate in any recovery on account of their deficiency claims.[8]

11.    <u>Fees and Interest</u>.    The Committee wrongfully puts forward Mr. Bohannon's testimony to support their argument that Wells Fargo is undersecured.  As stated in the Reply, the Committee ignores the fact that Wells Fargo was oversecured <u>as of the Petition Date</u> because only (a) approximately $6.5 million in property tax claims and (b) $10.0 million in JPM "first out" loans were senior to Wells Fargo's $75.0 million claim.  Given that the auction set the value of the Debtors' assets at $110.0 million, Wells Fargo was oversecured on the Petition Date by $18.5 million.  Even at a reduced valuation based on Polo North's current bid of $95.4 million, Wells Fargo was oversecured on the Petition Date by $10.4 million.  Nothing in Mr. Bohannon's testimony contradicts that fact, because Mr. Bohannon was not questioned about the situation as it existed as of the Petition Date.

12.    The Committee engages in yet another exercise in comparing apples to oranges when it refers to Mr. Bohannon's testimony regarding an April DIP proposal that proposed a $750,000 commitment fee, which is substantially lower than the commitment fee for the current DIP.  What the Committee's argument conveniently fails to recognize, however, is that the April 2014 DIP proposal was being proposed as a DIP loan that would be made in a scenario where the

---

[8] <u>See</u> Reply, ¶ 19.

Debtors had a committed stalking horse buyer already signed up. Such a scenario would obviously carry with it a significantly lower risk profile than the "free fall" DIP loan that the Debtors later requested of Wells Fargo. It is hardly remarkable that with greater risk comes greater fees and other lender protections.

13.    "Protective DIP" and "Constricted Budget." As discussed above, Mr. Bohannon's statements that Wells Fargo's desire to protect its prepetition debt incentivized it to work with the Debtors to provide the DIP Facility when no other DIP lenders stepped forward is neither revelatory nor helpful to the Committee's case. "Protective" DIPs are probably the most common form of financing for chapter 11 debtors. The only remarkable matter here is the Committee's refusal to acknowledge that simple reality. Mr. Bohannon also repeatedly testified that the primary purpose of the DIP Facility was to allow for a sale, which would be the best outcome for the all parties involved.[9]

14.    Moreover, the Committee's argument that Wells Fargo imposed a "constricted" budget on the Debtors is directly contradicted by the fact that the Debtors have agreed to each iteration of the DIP Budget in their business judgment as sufficient to meet incurred and undisputed administrative expenses. In criticizing Wells Fargo's willingness to fund items outside of the DIP budgets negotiated in good faith with the Company, the Committee essentially argues that Wells Fargo should be required to write a "blank check" DIP loan with no budgetary control whatsoever. The absurdity of the proposal speaks for itself.

15.    The Committee's budget arguments are further undermined by the fact that it was only after Revel was shut down that any potential purchasers submitted credible bids. Thus, far from harming the estates, the Debtors' and Wells Fargo's prudent attention to the tremendous

---

[9] See Bohannon Transcript, pg. 63, lines 4-11, attached to the Jareck Supplemental Declaration as Exhibit 2 ("Q. Were there any other incentives that led Wells to ultimately make a DIP loan in this case? A. Well, the primary incentive was to have a fulsome auction for all of the parties. That was the primary incentive.").

cash burn that characterized the initial months of these Chapter 11 Cases actually maximized value for the estates.

16.    <u>Priming Liens</u>.  The Committee's arguments regarding the priming feature under the DIP Facility are moot given the modifications to the Final DIP Order.[10]

17.    <u>Discovery and Document Production</u>.  The Court should dismiss any argument by the Committee that Wells Fargo's responses to the Committee's wasteful, unnecessary, "fishing expedition" discovery process were anything other than full and in good faith.  Despite the fact that such discovery was plainly intended to cause Wells Fargo to incur substantial costs and thereby drive Wells Fargo to settle with the Committee, Wells Fargo fully engaged in the Committee's pointless discovery exercise.  The Committee knew for weeks that Wells Fargo collected documents on August 13, 2014 in response to the Committee's subpoena and counsel for Wells Fargo explained during a meet and confer with Committee counsel on October 22 that a second collection, review, and production of documents created after August 13 was irrelevant and unduly burdensome.  The Committee also knew the identities of the four Wells Fargo custodians—who Mr. Bohannon testified were the primary members of the Wells Fargo team in connection with the DIP Facility—since at least that same meet and confer on October 22.  The Committee never filed a motion to compel—undoubtedly because the Committee knows such motion would have been plainly meritless—and the Court should therefore disregard the improper effort by the Committee to raise discovery issues that should have been raised long ago.

---

[10] <u>See</u> Reply, ¶ 19.

      **WHEREFORE**, Wells Fargo respectfully requests that the Court overrule the objections and enter the proposed Final DIP Order.

      Respectfully submitted,

      **DUANE MORRIS LLP**

Dated:  January 7, 2015      By:   */s/ Sommer L. Ross*
      James J. Holman, Esq. (015341989)
      30 South 17th Street
      Philadelphia, PA 19103-4196

      and

      Richard W. Riley, Esq. (040011988)
      Sommer L. Ross, Esq. (004112005)
      222 Delaware Avenue, Suite 1600
      Wilmington, DE 19801-1659

      and

      **Milbank, Tweed, Hadley & McCloy LLP**
      Thomas R. Kreller, Esq.
      Julian I. Gurule, Esq.
      601 S. Figueroa Street, 30th Floor
      Los Angeles, CA 90017
      Tel.:  (213) 892-4463

      *Attorneys for Wells Fargo Bank, N.A. and Wells Fargo Principal Lending, LLC*