ORIGINAL

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-2(c)**

**FOX ROTHSCHILD LLP**
(Formed in the Commonwealth of Pennsylvania)
Michael J. Viscount, Jr., Esq.
Raymond M. Patella, Esq.
1301 Atlantic Avenue, Suite 400
Atlantic City, NJ 08401
(609) 348-4515/fax (609) 348-6834

**WHITE & CASE LLP**
John K. Cunningham, Esq. (admitted *pro hac vice*)
Richard S. Kebrdle, Esq. (admitted *pro hac vice*)
Kevin M. McGill, Esq. (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, FL 33131
(305) 371-2700/fax (305) 358-5744

*Co-Counsel to the Debtors and
Debtors in Possession*

In re:

REVEL AC, INC., et al.,

                    Debtors.[1]

Chapter 11

Case No. 14-22654 (GMB)

Jointly Administered

FILED
JAMES J. WALDRON, CLERK
JAN - 8 2015
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____ DEPUTY

## ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND GRANTING RELATED RELIEF

The relief set forth on the following pages two (2) through twenty-four (24) is hereby ORDERED:

1/8/15

C. USBJ

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are:  Revel AC, Inc. (3856), Revel AC, LLC (4456), Revel Atlantic City, LLC (9513), Revel Entertainment Group, LLC (2321), NB Acquisition, LLC (9387) and SI LLC (3856).  The location of the Debtors' corporate headquarters is 500 Boardwalk, Atlantic City, New Jersey 08401.

(Page 2)
Debtors:                Revel AC, Inc., et al.
Case No.:               14-22654 (GMB)
Caption of Order:       ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS
                        OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS,
                        ENCUMBRANCES AND INTERESTS AND GRANTING RELATED
                        RELIEF

Upon the motion (the "Sale Motion") of Revel AC, Inc. and its affiliated debtors

and debtors in possession (collectively, the "Debtors" or "Sellers") in the above-captioned

chapter 11 cases (the "Chapter 11 Cases") pursuant to sections 105 and 363 of the United States

Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007 and

9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1

of the District of New Jersey Local Bankruptcy Rules (the "Local Rules") seeking, among other

things, entry of an order (a) authorizing and approving the sale of the substantially all the assets

of the Debtors (the "Sale") pursuant to that certain Asset Purchase Agreement, dated as of

September 30, 2014 (including all exhibits, schedules and ancillary agreements related thereto,

and as may be amended from time to time, the "Agreement") [Docket No. 707], attached hereto

as Exhibit "A", by and among the Debtors and Polo North Country Club, Inc. (together with its

subsidiaries and any successors or assigns, or other entity designated to effect the transactions

contemplated by the Agreement, the "Purchaser") free and clear of all liens, claims,

encumbrances and interests (other than Permitted Encumbrances[2] and Assumed Liabilities), in

accordance with the terms and conditions contained in the Agreement (the "Sale Transaction")

and (b) granting related relief; and this Court having entered an order on July 14, 2014 [Docket

No. 231], which was amended by an order entered on September 15, 2014 [Docket No. 625] (as

amended, supplemented or otherwise modified with the consent of the Purchaser, the "Bid

Procedures Order"), approving, among other things, the dates, deadlines and bidding procedures

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the
Agreement and the Sale Motion, provided that if a term is defined in both, the definition in the Agreement shall
govern.

(Page 3)

| | |
|---|---|
| Debtors: | Revel AC, Inc., et al. |
| Case No.: | 14-22654 (GMB) |
| Caption of Order: | ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND GRANTING RELATED RELIEF |

(the "Bid Procedures") with respect to, and notice of, the Sale Transaction; and an auction (the "Auction") having been held on September 24 and 30, 2014 and October 1, 2014, in accordance with the Bid Procedures Order; and the Court having approved the Debtors' termination of that certain asset purchase agreement with Brookfield US Holdings LLC, previously approved by the Court following the hearing held on October 7, 2014 (the "Brookfield Sale Hearing"); and having determined that the Agreement represents the highest or otherwise best bid for the Assets; and a hearing having been held on January 5, 2015 (the "Polo North Sale Hearing" and, together with the Brookfield Sale Hearing, the "Sale Hearings") to consider approval of the Agreement; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; and reasonable, adequate and sufficient notice of the Sale Motion having been given to all parties in interest in these Chapter 11 Cases; and all such parties having been afforded due process and an opportunity to be heard with respect to the Sale Motion and all relief requested therein; and the Court having reviewed and considered: (i) the Sale Motion; (ii) the objections to the Sale Motion, if any; and (iii) the arguments of counsel made, and the evidence proffered or adduced at, the Sale Hearings; and after due deliberation and sufficient cause appearing;

## IT HEREBY IS FOUND, DETERMINED AND CONCLUDED THAT:

A.      Any of the findings of fact contained herein shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law contained herein shall constitute a conclusion of law even if it is stated as a finding of fact. The Court's findings shall

(Page 4)
Debtors:              Revel AC, Inc., et al.
Case No.:             14-22654 (GMB)
Caption of Order:     ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS
                      OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS,
                      ENCUMBRANCES AND INTERESTS AND GRANTING RELATED
                      RELIEF

also include any oral findings of fact and conclusions of law made by the Court during or at the

conclusion of the Sale Hearings.

      B.      The Court has jurisdiction over this matter, over the property of the

Debtors' estates, including the Assets to be sold, transferred or conveyed pursuant to the

Agreement, and over the Debtors' respective estates pursuant to 28 U.S.C. §§ 157 and 1334.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue in this district is

proper under 28 U.S.C. §§ 1408 and 1409.

      C.      The statutory and other bases for the relief sought in the Sale Motion are

sections 105 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007 and

9014 and Local Rule 6004-1.

      D.      As evidenced by the affidavits of service on file with the Court: (i) due,

proper, timely, adequate and sufficient notice of the Bid Procedures, the Auction, the Sale

Hearings and the Sale Motion and the relief requested therein has been provided in accordance

with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Bid Procedures Order;

(ii) such notice was good, sufficient and appropriate under the circumstances; and (iii) no other

or further notice of the Bid Procedures, the Auction, the Sale Hearings, the Agreement, the Sale

Transaction or the Sale Motion is or shall be required.

      E.      Actual written notice of, and a reasonable opportunity to object and to be

heard with respect to, the Sale Motion has been given, in light of the circumstances, to all

interested persons and entities, including, without limitation, to: (i) the Office of the United

States Trustee for the District of New Jersey; (ii) counsel to the DIP Agent; (iii) counsel to the

(Page 5)
Debtors:                    Revel AC, Inc., et al.
Case No.:                   14-22654 (GMB)
Caption of Order:           ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS
                            OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS,
                            ENCUMBRANCES AND INTERESTS AND GRANTING RELATED
                            RELIEF

First Lien Lenders; (iv) counsel to the Second Lien Lenders; (v) the Debtors' thirty (30) largest

unsecured creditors on a consolidated basis (including counsel if known); (vi) the non-Debtor

parties to any active UCC financing statements on file against any of the Debtors; (vii) the non-

Debtor parties who hold any tax or judgment liens; (viii) entities previously identified by Moelis

as potentially interested in a transaction with the Debtors; (ix) all parties requesting notices

pursuant to Bankruptcy Rule 2002; (x) the Office of the Attorney General for the State of New

Jersey; (xi) the New Jersey Division of Gaming Enforcement; (xii) the New Jersey Casino

Control Commission; (xiii) the United States Attorneys' Office for the District of New Jersey;

(xiv) the United States Attorney General; (xv) the Environmental Protection Agency; (xvi) the

Internal Revenue Service; (xvii) the Securities and Exchange Commission; (xviii) the consumer

privacy ombudsman appointed in these Chapter 11 Cases; (xix) holders of Permitted Liens (as

defined in the First Lien Credit Agreement); and (xx) the applicable state and local taxing

authorities.

       F.       As demonstrated by (i) the evidence adduced at and prior to the Sale

Hearings and (ii) the representations of counsel made on the record at the Sale Hearings, the

Debtors have conducted a fair and open sale process in a manner reasonably calculated to

produce the highest and otherwise best offer for the Assets in compliance with the Bid

Procedures Order.  The Bid Procedures were substantively and procedurally fair to all parties and

were the result of arms' length negotiations.  The sale process, Bid Procedures and Auction were

non-collusive, duly noticed and afforded a full, fair and reasonable opportunity for any person to

make a higher and otherwise better offer to purchase all or any of the Assets.  The bidding and

(Page 6)

| | |
|---|---|
| Debtors: | Revel AC, Inc., et al. |
| Case No.: | 14-22654 (GMB) |
| Caption of Order: | ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND GRANTING RELATED RELIEF |

related procedures established by the Bid Procedures Order have been complied with in all material respects by the Debtors, the Purchaser and their respective counsel and other advisors. The Bid Procedures obtained the highest value for the Assets for the Debtors and their estates, and any other transaction would not have yielded as favorable an economic result.

G.      The Debtors provided all interested parties with timely and proper notice of the Sale, Sale Hearings and Auction.

H.      The Purchaser has communicated its decision to exclude all executory contracts, unexpired leases and intellectual property rights from being an Assumed Contract in accordance with the Agreement.

I.      As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate and sufficient notice of the Sale Motion, Auction, Sale Hearings and Sale Transaction has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014. The Debtors also have complied with all obligations to provide notice of the Sale Motion, Auction, Sale Hearings and Sale Transaction required by the Bid Procedures Order, as revised by Revised Bid Procedures approved by the Court on September 15, 2014. The notices described above were good, sufficient and appropriate under the circumstances and no other or further notice of the Sale Motion, Auction, Sale Hearings or Sale Transaction is required.

J.      The disclosures made by the Debtors concerning the Agreement, Auction, Sale Transaction and Sale Hearings were good, complete and adequate.

(Page 7)

| | |
|---|---|
| Debtors: | Revel AC, Inc., et al. |
| Case No.: | 14-22654 (GMB) |
| Caption of Order: | ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND GRANTING RELATED RELIEF |

K.      The Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. The Debtors have all right, title and interest in the Assets required to transfer and convey the Assets to the Purchaser. The Debtors have taken all corporate or other entity action necessary to authorize and approve the Agreement and the consummation of the Sale Transaction, and the Debtors' sale of the Assets to the Purchaser has been duly and validly authorized by all necessary corporate or other entity action. Upon entry of this Sale Order, the Debtors shall have full authority to consummate the Agreement and transactions contemplated by the Agreement.

L.      Approval of the Agreement and consummation of the Sale Transaction is in the best interests of the Debtors, their estates, creditors and other parties in interest. The Debtors have demonstrated good, sufficient and sound business purposes and justifications for the Sale to the Purchaser pursuant to section 363(b) of the Bankruptcy Code. Such business purposes and justifications include, but are not limited to, the following: (i) the Sale Transaction is the only viable alternative to liquidation; and (ii) the Agreement and the closing thereon will present the best opportunity to realize the value of the Assets on a going concern basis and avoid decline and devaluation of the Assets.

M.      The Agreement was negotiated, proposed and entered into by the Debtors and the Purchaser without collusion, in good faith and from arms' length bargaining positions. The Purchaser is not an "insider" or an "affiliate" of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code.

(Page 8)
Debtors:               Revel AC, Inc., et al.
Case No.:              14-22654 (GMB)
Caption of Order:      ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS
                       OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS,
                       ENCUMBRANCES AND INTERESTS AND GRANTING RELATED
                       RELIEF

N.      The sale price in respect of the Assets was not controlled by any

agreement among potential bidders at such sale and neither the Debtors nor the Purchaser

engaged in collusion or any other conduct that would cause or permit the Agreement or Sale

Transaction to be avoidable under section 363(n) of the Bankruptcy Code. Accordingly, neither

the Agreement nor the Sale Transaction may be avoided and no party shall be entitled to any

damages or other recovery pursuant to section 363(n) of the Bankruptcy Code.

O.      The Purchaser is a good faith purchaser under section 363(m) of the

Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. The

Purchaser is acting in good faith within the meaning of section 363(m) of the Bankruptcy Code

in consummating the Sale Transaction. The Purchaser has proceeded in good faith in all respects

in that, among other things, (i) the Purchaser recognized that the Debtors were free to deal with

any other party interested in acquiring the Assets; (ii) the Purchaser complied with the provisions

of the Bid Procedures Order; (iii) the Purchaser's bid was subjected to the competitive Bid

Procedures set forth in the Bid Procedures Order; (iv) no common identity of directors or officers

exists among the Purchaser and the Debtors; and (v) all payments to be made by the Purchaser

and all other material agreements or arrangements entered into by the Purchaser and the Debtors

in connection with the Sale Transaction have been disclosed and are appropriate.

P.      The consideration to be provided by the Purchaser pursuant to the

Agreement: (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Assets;

(iii) will provide a greater recovery for the Debtors' creditors than would be provided by any

other practically available alternative; and (iv) constitutes reasonably equivalent value and fair

(Page 9)

| | |
|---|---|
| Debtors: | Revel AC, Inc., et al. |
| Case No.: | 14-22654 (GMB) |
| Caption of Order: | ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND GRANTING RELATED RELIEF |

consideration under the Bankruptcy Code and other laws of the United States, any state, territory, possession or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing. The Debtors' determination that the Agreement constitutes the highest or otherwise best offer for the Assets is a result of due deliberation by the Debtors and constitutes a valid and sound exercise of the Debtors' business judgment consistent with their fiduciary duties. Entry of an order approving the Sale Motion, the Agreement and the Sale Transaction is a necessary condition precedent to the Purchaser consummating the Sale Transaction.

Q.      The transfer of the Assets to the Purchaser will be a legal, valid and effective transfer of the Assets and will vest the Purchaser with all right, title and interest of the Debtors to the Assets free and clear of all liens, claims, encumbrances and other interests of any kind and every kind whatsoever, other than Permitted Encumbrances and Assumed Liabilities; provided, that all liens, claims, encumbrances and interests of which the Assets are sold free and clear shall attach to the proceeds of the sale in order of priority.

R.      The Purchaser would not have entered into the Agreement and would not consummate the Sale Transaction if the transfer of the Assets to the Purchaser was not free and clear of all liens, claims, encumbrances and other interests of any kind and every kind whatsoever (other than Permitted Encumbrances and Assumed Liabilities), or if the Purchaser would, or in the future could, be liable for any such liens, claims, encumbrances or other interests. A sale of the Assets other than one free and clear of such liens, claims, encumbrances

(Page 10)
Debtors:                    Revel AC, Inc., et al.
Case No.:                   14-22654 (GMB)
Caption of Order:           ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS
                            OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS,
                            ENCUMBRANCES AND INTERESTS AND GRANTING RELATED
                            RELIEF

and other interests would adversely impact the Debtors' estates, and would yield substantially

less value for the Debtors' estates, with less certainty than the Sale Transaction.

      S.      The Debtors may sell the Assets free and clear of all liens, claims,

encumbrances and interests of any kind or nature whatsoever (other than Permitted

Encumbrances and Assumed Liabilities), because, in each case, one or more of the standards set

forth in section 363(f)(1) through (5) of the Bankruptcy Code have been satisfied. Each entity

with a lien, claim, encumbrance or other interest in the Assets to be transferred on the Closing

Date (as defined in the Agreement) (i) has, subject to the terms and conditions of this Sale Order,

consented to the Sale Transaction or is deemed to have consented; (ii) could be compelled in a

legal or equitable proceeding to accept money satisfaction of such lien, claim, encumbrance or

interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.

Those holders of liens, claims, encumbrances and interests who did not object to the Sale Motion

are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

      T.      The transfer of the Assets to the Purchaser will not subject the Purchaser

to any liability (including any successor liability) with respect to the operation of the Debtors'

business prior to the Closing Date or by reason of such transfer, except that the Purchaser shall

remain liable for the Assumed Liabilities. The Purchaser (i) is not, and shall not be, considered a

successor to the Debtors; (ii) has not, de facto or otherwise, merged with or into the Debtors; (iii)

is not a continuation or substantial continuation of the Debtors or any enterprise of the Debtors;

(iv) does not have a common identity of incorporators, directors or equity holders with the

Debtors; and (v) is not holding itself out to the public as a continuation of the Debtors.

(Page 11)
Debtors:          Revel AC, Inc., et al.
Case No.:         14-22654 (GMB)
Caption of Order: ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS
                  OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS,
                  ENCUMBRANCES AND INTERESTS AND GRANTING RELATED
                  RELIEF

U.      The Agreement is a valid and binding contract between the Debtors and
the Purchaser, which is and shall be enforceable according to its terms. The Agreement was not
entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy
Code or under the laws of the United States, any state, territory, possession or the District of
Columbia. No Debtor nor the Purchaser is entering into the Sale Transaction fraudulently.

V.      The Purchaser has informed the Debtors that it does not wish to have any
Assumed Contracts assumed by the Debtors and assigned to it.

W.      Other than claims arising under the Agreement, the Debtors agree and
acknowledge that they have no claims against the Purchaser.

~~X.      Time is of the essence in consummating the Sale Transaction. Cause has
been shown as to why this Sale Order should not be subject to any stay provided by Bankruptcy
Rules 6004(h) and 6006(d).~~

Y.      The Sale Transaction does not constitute a de facto plan of reorganization
or liquidation as it does not and does not propose to (i) impair or restructure existing debt of, or
equity interests in, the Debtors; (ii) impair or circumvent voting rights with respect to any plan
proposed by the Debtors; (iii) circumvent chapter 11 plan safeguards, such as those set forth in
sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests or
extend debt maturities.

Z.      The Purchaser is not a continuation of the Debtors or their respective
estates and there is no continuity between the Purchaser and the Debtors. The Purchaser is not
holding itself out to the public as a continuation of the Debtors or their respective estates or

AMERICAS 90356114

(Page 12)
Debtors:              Revel AC, Inc., et al.
Case No.:             14-22654 (GMB)
Caption of Order:     ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS
                      OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS,
                      ENCUMBRANCES AND INTERESTS AND GRANTING RELATED
                      RELIEF

businesses and the Sale Transaction does not amount to a consolidation, merger or *de facto*

merger of Purchaser and the Debtors.

AA.    The consummation of the Sale Transaction is legal, valid and properly

authorized under all applicable provisions of the Bankruptcy Code, including, without limitation,

sections 105(a), 363(b), 363(f) and 363(m) of the Bankruptcy Code and all of the applicable

requirements of such sections have been complied with in respect of the Sale Transactions.

BB.    There is other good and sufficient cause to grant the relief requested in the

Sale Motion and approve the Agreement and the Sale Transaction.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The Sale Motion is GRANTED.

2.    Any objections to the Sale Motion or the entry of this Sale Order that have

not been withdrawn, waived or settled, and all reservations of rights included therein, are denied

and overruled on the merits and with prejudice.

3.    The Agreement and the Sale Transaction are APPROVED in all respects.

4.    Pursuant to section 363 of the Bankruptcy Code, the Debtors are

authorized to (i) execute, deliver and perform under, consummate and implement the Agreement

and the Sale Transaction together with all additional instruments and documents that are

reasonably requested by the Purchaser which are consistent with the Agreement and this Sale

Order and may be reasonably necessary or desirable to implement the Agreement, (ii) take any

and all actions as the Debtors deem necessary, appropriate or advisable for the purpose of

assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to the

(Page 13)
Debtors:              Revel AC, Inc., et al.
Case No.:             14-22654 (GMB)
Caption of Order:     ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS
                      OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS,
                      ENCUMBRANCES AND INTERESTS AND GRANTING RELATED
                      RELIEF

Purchaser's possession, the Assets, or as may be necessary or appropriate to the performance of

the obligations as contemplated by the Agreement, including, without limitation, any and all

actions reasonably requested by the Purchaser which are consistent with the Agreement and this

Sale Order; and (iii) take all other and further acts or actions as may be reasonably necessary to

implement the Sale Transaction.

     5.      Pending further order of the Court (which order may be an order in

connection with interim or final approval of debtor-in-possession financing from the DIP

Lenders and/or the Debtors' use of cash collateral), the Purchase Price paid to the Debtors on the

Closing Date shall be held by the Debtors in a segregated account and shall not be disbursed

except as provided in or authorized by such further order; provided, however, that any party

seeking entry of such order must do so on reasonable notice to all parties-in-interest and all

parties-in-interest reserve all rights to object to the release of proceeds from the segregated

account.

     6.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the

Closing Date: (i) the transfer of the Assets to the Purchaser pursuant to the Agreement shall

constitute a legal, valid and effective transfer of the Assets and shall vest the Purchaser with all

right, title and interest in and to the Assets; and (ii) the Assets shall be transferred to the

Purchaser free and clear of all liens, claims, encumbrances and other interests of any kind and

every kind whatsoever (including liens, claims, encumbrances and interests of any Governmental

Authority), other than Permitted Encumbrances and Assumed Liabilities, in accordance with

section 363(f) of the Bankruptcy Code, with any such liens, claims, encumbrances and interests

(Page 14)
Debtors:            Revel AC, Inc., et al.
Case No.:           14-22654 (GMB)
Caption of Order:   ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS
                    OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS,
                    ENCUMBRANCES AND INTERESTS AND GRANTING RELATED
                    RELIEF

of which the Assets are sold free and clear to attach to the proceeds of the Sale Transaction, in

the order of their priority, with the same validity, force and effect which they had against the

Assets prior to the entry of this Sale Order, subject to any rights, claims and defenses the Debtors

and all interested parties may possess with respect thereto.

      7.      The Debtors are permitted to transfer their customer database (the

"Database") and the personally identifiable information of the Debtors' customers to the

Purchaser.

      8.      With respect to the transfer of the personally identifiable information of

the Debtors' customers, the Purchaser shall take such information as successor-in-interest under

the Debtors' privacy policy as it was in effect on the Petition Date.

      9.      The Purchaser shall include in its first communication to the customers

included in the Database notice of (i) the Purchaser's acquisition of the Revel Casino Resort and

its status as successor-in-interest under the privacy policy and (ii) each customer's right to opt-

out of further communications from the Purchaser and to be removed from the database. If the

Purchaser does not operate a casino at the premises, before it may use or transfer the database or

any of a customer's personally identifiable information, it must notify customers of the transfer

and the intended use of the customers' Personally Identifiable Information and give customers

the ability to opt-in to the Purchaser's use or transfer of the database or any of a customer's

Personally Identifiable Information.  The opt-in notice must be provided by email or, if

unavailable, by first class mail to each customer.  Failure of a customer to affirmatively opt-in

shall not be deemed consent to the Purchaser's use or transfer of the customer's Personally

(Page 15)
Debtors:            Revel AC, Inc., et al.
Case No.:           14-22654 (GMB)
Caption of Order:   ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS
                    OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS,
                    ENCUMBRANCES AND INTERESTS AND GRANTING RELATED
                    RELIEF

Identifiable Information and its Personally Identifiable Information shall be removed from the

database.

10.     On the Closing Date, this Sale Order shall be considered and constitute for

any and all purposes a full and complete general assignment, conveyance and transfer of the

Assets acquired under the Agreement or a bill of sale or assignment transferring good and

marketable, indefeasible title and interest in all the Assets to the Purchaser.

11.     This Sale Order is and shall be effective as a determination that all liens,

claims, encumbrances and interests, other than Permitted Encumbrances and Assumed

Liabilities, shall be and are, without further action by any person, released with respect to the

Assets as of the Closing Date.  After the Closing Date, no holder of any liens, claims,

encumbrances and interests, other than Permitted Encumbrances and Assumed Liabilities, or

other party in interest may interfere with the Purchaser's use and enjoyment of the Assets based

on or related to such lien, Claim, encumbrance or other interest or any actions that the Debtors

may take in their Chapter 11 Cases, and no party may take any action to prevent, interfere with,

impair or otherwise enjoin consummation of the Sale Transaction.  All persons and governmental

units (as defined in section 101 of the Bankruptcy Code) and all holders of liens based upon,

arising out of or related to liabilities retained by the Debtors (including, for the avoidance of

doubt, related to the New Jersey New Jobs Investment Tax Credit (NJITC) or any other credit,

reimbursement or incentives provided by the State of New Jersey), shall not take any action

against the Purchaser, including asserting any setoff, right of subrogation or recoupment of any

kind, to recover any claims secured by liens or on account of any liabilities of the Debtors, other

(Page 16)
Debtors:            Revel AC, Inc., et al.
Case No.:           14-22654 (GMB)
Caption of Order:   ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS
                    OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS,
                    ENCUMBRANCES AND INTERESTS AND GRANTING RELATED
                    RELIEF

than Assumed Liabilities pursuant to the Agreement. All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Assets to the Purchaser in accordance with the terms of the Agreement and this Sale Order.

12.     The Purchaser and its Affiliates, successors and assigns shall not be deemed or considered a successor to the Debtors or the Debtors' estates by reason of any theory of law or equity and the Purchaser has not assumed nor is it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates, except with respect to the Assumed Liabilities.  Without limitation, the Purchaser and its Affiliates, successors and assigns shall have no successor, transferee or vicarious liability of any kind or character, including, without limitation, under any theory of foreign, federal, state or local antitrust, environmental, successor, tax, ERISA, assignee or transferee liability, labor, product liability, employment, de facto merger, substantial continuity, or other law, rule, regulation or doctrine, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, without limitation, liabilities on account of any taxes or other Governmental Authority fees, contributions or surcharges, in each case arising, accruing or payable under, out of, in connection with, or in any way relating to, the operation of the Assets prior to the Closing Date or arising based on actions of the Debtors taken after the Closing Date.

(Page 17)
Debtors:              Revel AC, Inc., et al.
Case No.:             14-22654 (GMB)
Caption of Order:     ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS
                      OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS,
                      ENCUMBRANCES AND INTERESTS AND GRANTING RELATED
                      RELIEF

13.      Except to the extent expressly included in the Assumed Liabilities or to

enforce the Agreement, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons

and entities, including, without limitation, the Debtors, all debt security holders, all equity

security holders, the Debtors' employees or former employees, governmental, tax and regulatory

or investigatory authorities of any sort, lenders, parties to or beneficiaries under any benefit plan,

trade and other creditors asserting or holding any liens, claims, encumbrances and other interests

of any kind and every kind whatsoever against, in or with respect to any of the Debtors, the

business or all or any part of the Assets (whether legal or equitable, secured or unsecured,

matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or

out of, in connection with, or in any way relating to the Debtors, all or any part of the Assets, the

operation of the business prior to the Closing Date or the transfer of the Assets to the Purchaser

shall be forever barred, estopped and permanently enjoined from asserting, prosecuting or

otherwise pursuing such liens, claims, encumbrances or other interests, whether by payment,

setoff or otherwise, directly or indirectly, against the Purchaser or any affiliate, successor, or

assign thereof, or against the Assets.

14.      Notwithstanding anything to the contrary in the Agreement or this Sale

Order, the sale of the Debtors' Assets pursuant to 11 U.S.C. § 363(f) shall be free and clear of

existing tenancies and/or possessory rights, irrespective of any rights a tenant may hold under 11

U.S.C. § 365(h), including, but not limited to, all possessory rights under section 365(h) of the

Bankruptcy Code of each of the tenants comprising the Leasehold Interests identified in Section

1.1(b) of the Seller's Disclosure Letter. *provided* the effectiveness of the sale
of the Assets free and clear to Purchaser under the Agreement and this
Order shall be concurrent with the occurrence of the Closing.

AMERICAS 90356114

(Page 18)
Debtors:            Revel AC, Inc., et al.
Case No.:           14-22654 (GMB)
Caption of Order:   ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS
                    OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS,
                    ENCUMBRANCES AND INTERESTS AND GRANTING RELATED
                    RELIEF

15.     The consideration provided by the Purchaser for the Assets under the Agreement is fair and reasonable and constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act and (iii) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia.

16.     The Agreement and Sale Transaction shall not be avoidable under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Agreement or the Sale Transaction.

17.     The Agreement and the Sale Transaction are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Agreement and the Sale Transaction shall not affect the validity of the sale of the Assets to the Purchaser, unless this Sale Order is duly stayed pending such appeal. The Purchaser is a good faith purchaser of the Assets and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.  The Debtors and the Purchaser will be acting in good faith if they proceed to consummate the Sale Transaction at any time after the entry of this Sale Order.

18.     All persons and entities that are in possession of some or all of the Assets as of or after the Closing Date are hereby ordered to surrender possession of such Assets to the

(Page 19)
Debtors:              Revel AC, Inc., et al.
Case No.:             14-22654 (GMB)
Caption of Order:     ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS
                      OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS,
                      ENCUMBRANCES AND INTERESTS AND GRANTING RELATED
                      RELIEF

Purchaser as of the Closing Date or at such time thereafter as the Purchaser may request. The

Debtors agree to exercise commercially reasonable efforts to assist the Purchaser in assuring that

all persons or entities that are presently, or on the Closing Date may be, in possession of some or

all of the Assets in which the Debtors hold an interest will surrender possession of the Assets

and/or leasehold premises to either (i) the Debtors before the Closing Date or (ii) the Purchaser

on or after the Closing Date.

      19.      This Sale Order is and shall be binding on and shall govern acts of all

entities including, without limitation, all filing agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies,

governmental departments, secretaries of state, federal, state and local officials and all other

persons and entities, who may be required by operation of law, the duties of their office, or

contract, to accept, file, register or otherwise record or release any documents or instruments that

reflect that the Purchaser is the assignee and owner of the Assets free and clear of all liens,

claims, encumbrances and interests, other than Permitted Encumbrances and Assumed Liabilities

(all such entities being referred to as "Recording Officers"). All Recording Officers are

authorized and specifically directed to strike recorded encumbrances, claims, liens and other

interests against the Assets recorded prior to the date of this Sale Order, other than Permitted

Encumbrances and Assumed Liabilities. A certified copy of this Sale Order may be filed with

the appropriate Recording Officers to evidence cancellation of any recorded encumbrances,

claims, liens and other interests against the Assets recorded prior to the date of this Sale Order,

other than Permitted Encumbrances and Assumed Liabilities.

(Page 20)
Debtors:                Revel AC, Inc., et al.
Case No.:               14-22654 (GMB)
Caption of Order:       ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS
                        OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS,
                        ENCUMBRANCES AND INTERESTS AND GRANTING RELATED
                        RELIEF

20.     To the greatest extent available under applicable law and to the extent provided for under the Agreement, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Assets and, to the greatest extent available under applicable law and to the extent provided for under the Agreement, all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been transferred to the Purchaser as of the Closing Date.  All existing licenses or permits applicable to the business shall remain in place for the Purchaser's benefit until either new licenses and permits are obtained or existing licenses and permits are transferred in accordance with applicable administrative procedures.

21.     This Order shall be binding in all respects upon the Debtors and their estates and creditors, all holders of equity interests in the Debtors, all holders of any claims, whether known or unknown, against the Debtors, any holders of liens, claims, encumbrances, and interests of any kind against or on all or any portion of the Assets, including, but not limited to all contract counterparties, leaseholders, governmental units, and any trustees, examiners, responsible officers, estate representatives, or similar entities for the Debtors, if any, subsequently appointed in any of these Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Chapter 11 Cases. This Order and the Agreement shall inure to the benefit of the Debtors, their estates and creditors, the Purchaser and their respective successors and assigns.  The Agreement, the Sale Transaction and this Sale Order shall be enforceable against and binding on, and shall not be subject to rejection or avoidance by, any chapter 7 or chapter 11 trustee appointed in these Chapter 11 Cases.

(Page 21)
Debtors:              Revel AC, Inc., et al.
Case No.:             14-22654 (GMB)
Caption of Order:     ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS
                      OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS,
                      ENCUMBRANCES AND INTERESTS AND GRANTING RELATED
                      RELIEF

22.        Nothing contained in any chapter 11 plan confirmed in the Debtors' cases,

in any order confirming any such plan, or in any other order of any type or kind entered in these

Chapter 11 Cases (including, without limitation, any order entered after any conversion of any or

all of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code) or in any related

proceeding shall alter, conflict with, or derogate from the provisions of the Agreement or the

terms of this Sale Order.

23.        The Agreement and any related agreements, documents or other

instruments may be amended by the parties in a writing signed by such parties without further

order of the Court, provided that any such amendment does not have a material adverse effect on

the Debtors or the Debtors' estates.

24.        The failure to include specifically any particular provision of the

Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it

being the intent of the Court that the Agreement be and is authorized and approved in its entirety

with such amendments thereto as may be made by the parties in accordance with this Sale Order

prior to the Closing Date.  To the extent of any inconsistency between the provisions of this Sale

Order, the Agreement and any documents executed in connection therewith, the provisions

contained in the Sale Order, the Agreement and any documents executed in connection therewith

shall govern, in that order.

25.        The provisions of this Sale Order authorizing the sale and assignment of

the Assets free and clear of all liens, claims, encumbrances and interests, other than Permitted

Encumbrances and Assumed Liabilities, shall be self-executing, and notwithstanding the failure

(Page 22)
Debtors:              Revel AC, Inc., et al.
Case No.:             14-22654 (GMB)
Caption of Order:     ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS
                      OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS,
                      ENCUMBRANCES AND INTERESTS AND GRANTING RELATED
                      RELIEF

of the Debtors, the Purchaser or any other party to execute, file or obtain releases, termination

statements, assignments, consents or other instruments to effectuate, consummate or implement

the provisions hereof, all liens, claims, encumbrances and other interests on or against such

Assets (other than Permitted Encumbrances and Assumed Liabilities), if any, shall be deemed

released, discharged and terminated in all respects.  To the extent the Purchaser deems it

necessary or appropriate, if, upon consummation of the transactions set forth in the Agreement,

any person or entity which has filed statements or other documents or agreements evidencing

liens, claims, encumbrances or other interests on or in all or any portion of the Assets (other than

Permitted Encumbrances and Assumed Liabilities) shall not have delivered to the Debtors prior

to the Closing Date, in proper form for filing and executed by the appropriate parties, termination

statements, instruments of satisfaction, releases of liens and easements and any other documents

necessary or desirable to the Purchaser for the purpose of documenting the release of all such

liens, claims, encumbrances or other interests, the Purchaser is hereby authorized (but not

required) to execute and file such statements, instruments, releases and other documents on

behalf of such person or entity with respect to the Assets.

26.     The Sale is exempt from any applicable New Jersey Transfers Taxes (as

defined in the Bid Procedures Order).

27.     With respect to the Assets being transferred pursuant to this Sale Order,

and notwithstanding anything else contained in this Sale Order, all interested parties' rights and

interests with respect to the intellectual property associated with or embedded in such Assets, if

(Page 23)
Debtors:            Revel AC, Inc., et al.
Case No.:           14-22654 (GMB)
Caption of Order:   ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS
                    OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS,
                    ENCUMBRANCES AND INTERESTS AND GRANTING RELATED
                    RELIEF

any, and any disputes related to the same shall be fully preserved and unaffected by this Sale

Order.

28.     From time to time, as and when requested, each party to the Agreement

shall execute and deliver, or cause to be executed and delivered, all such documents and

instruments and shall take, or cause to be taken, all such further or other acts or actions as such

other party may reasonably deem necessary or desirable to consummate the Sale Transaction

consistent with the Agreement and this Sale Order, including such acts or actions as may be

necessary to vest, perfect or confirm, of record or otherwise, in the Purchaser its right, title and

interest in and to all the Assets.

29.     To the extent applicable, the automatic stay pursuant to section 362(a) of

the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without

further order of the Court (a) to allow the Purchaser to give the Debtors any notice under the

Agreement and (b) to allow the Purchaser to take any and all acts or actions in accordance with

the Agreement.

30.     ~~Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d) or
7062, this Sale Order shall be effective and enforceable immediately and shall not be stayed.
Time is of the essence in closing the Sale Transaction and the Debtors and the Purchaser intend
to close the Sale Transaction as soon as practicable.~~ This Sale Order constitutes a final and

appealable order within the meaning of 28 U.S.C. § 158(a). Any party objecting to this Sale

Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being

dismissed as moot.

(Page 24)

| | |
|---|---|
| Debtors: | Revel AC, Inc., et al. |
| Case No.: | 14-22654 (GMB) |
| Caption of Order: | ORDER APPROVING THE SALE AND PURCHASE OF THE ASSETS OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND GRANTING RELATED RELIEF |

31.     This Court shall retain exclusive jurisdiction to resolve any controversy or claim arising out of or related to this Sale Order, the Agreement or any related agreements, including, without limitation: (i) any actual or alleged breach or violation of this Sale Order, the Agreement or any related agreements; (ii) the enforcement of any relief granted in this Sale Order; or (iii) as otherwise set forth in the Agreement.

32.     Notwithstanding anything herein to the contrary, (i) the Purchaser reserves all rights of appeal, if any, and the fact that the Purchaser has provided input in the preparation of this Order of Sale shall not be construed as a waiver of such rights of appeal, and (ii) the Debtors reserve all of their rights, if any, with respect to such appeal by the Purchaser.

## Exhibit A

(Agreement)

AMERICAS 90356114

**CONFIDENTIAL**

ASSET PURCHASE AGREEMENT

DATED AS OF SEPTEMBER 30, 2014

BY AND AMONG

REVEL AC, INC. AND
CERTAIN OF ITS SUBSIDIARIES
NAMED HEREIN

AS SELLERS,

AND

POLO NORTH COUNTRY CLUB, INC.

AS PURCHASER



EXHIBIT
Debtor's 6
9/30/14

NEWYORK 9324874

**SECTION 1 INTERPRETATION** ....................................................................................1

   1.1.    Definitions ......................................................................................1

**SECTION 2 PURCHASE, SALE AND ASSIGNMENT OF PURCHASED ASSETS** ........10

   2.1.    Sale of Assets ...............................................................................10

   2.2.    Excluded Assets ...........................................................................12

   2.3.    Assumed Liabilities .....................................................................13

   2.4.    Excluded Liabilities .....................................................................13

   2.5.    Purchase Price .............................................................................14

   2.6.    Purchaser Deposit ........................................................................14

   2.7.    Allocation of Purchase Price .......................................................15

   2.8.    Excluded Assets and Liabilities ..................................................15

**SECTION 3 REPRESENTATIONS AND WARRANTIES OF SELLERS** ..........................16

   3.1.    Organization and Good Standing ................................................16

   3.2.    Authorization ...............................................................................16

   3.3.    No Conflicts .................................................................................16

   3.4.    Consents and Approvals ..............................................................16

   3.5.    Compliance with Law ..................................................................17

   3.6.    Title to Assets ..............................................................................17

   3.7.    No Broker or Finder .....................................................................17

   3.8.    Financial Statements ....................................................................17

   3.9.    Disclaimer of Other Representations and Warranties ..................17

**SECTION 4 REPRESENTATIONS AND WARRANTIES OF PURCHASER** ....................18

   4.1.    Organization and Good Standing ................................................18

   4.2.    Authorization ...............................................................................18

   4.3.    No Conflicts .................................................................................18

   4.4.    Consents and Approvals ..............................................................18

   4.5.    Financing .....................................................................................18

   4.6.    Licensability ................................................................................18

   4.7.    "AS IS" TRANSACTION ............................................................19

   4.8.    Disclaimer of Other Representations and Warranties ..................19

**SECTION 5 CERTAIN COVENANTS OF SELLERS** ........................................................19

   5.1.    Provision of Records ...................................................................19

   5.2.    Receipt of Property Relating to Assets .......................................20

-i-

| 5.3. | Conduct of Business Pending the Closing | 20 |
| 5.4. | Access to Information | 21 |
| 5.5. | Communication with Parties to Contracts | 21 |
| 5.6. | Bankruptcy Action | 21 |
| 5.7. | Sale Order | 22 |
| 5.8. | Transfer of Permits | 22 |
| 5.9. | Release of Encumbrances | 22 |
| 5.10. | Assignability of Certain Contracts | 22 |
| 5.11. | Rejected Contracts | 23 |
| 5.12. | Further Assurances | 23 |
| **SECTION 6 CERTAIN COVENANTS OF PURCHASER** | | 23 |
| 6.1. | Performance with Respect to the Assets and the Assumed Contracts | 23 |
| 6.2. | Cure Amounts | 23 |
| 6.3. | Further Assurances | 23 |
| **SECTION 7 CERTAIN MUTUAL COVENANTS** | | 23 |
| 7.1. | Cooperation | 23 |
| 7.2. | Approvals and Filings | 24 |
| 7.3. | Public Statements | 26 |
| 7.4. | Notification of Certain Matters | 26 |
| **SECTION 8 EMPLOYEE MATTERS** | | 27 |
| 8.1. | Employment | 27 |
| **SECTION 9 CONDITIONS TO SELLERS' OBLIGATIONS** | | 27 |
| 9.1. | Representations and Warranties | 27 |
| 9.2. | Compliance with Agreements | 27 |
| 9.3. | Approvals; No Injunctions | 27 |
| 9.4. | Purchaser's Closing Deliveries and Obligations | 27 |
| 9.5. | Entry of the Sale Order | 27 |
| **SECTION 10 CONDITIONS TO PURCHASER'S OBLIGATIONS** | | 28 |
| 10.1. | Representations and Warranties | 28 |
| 10.2. | Compliance with Covenants and Agreements | 28 |
| 10.3. | Approvals; No Injunctions | 28 |
| 10.4. | Sellers' Closing Deliveries and Obligations | 28 |
| 10.5. | Entry of the Sale Order | 28 |

-ii-

10.6.   Assumed Contracts .................................................................. 28

**SECTION 11 CLOSING; TERMINATION** ................................................ 28

11.1.   The Closing ............................................................................ 28

11.2.   Termination ............................................................................ 30

11.3.   Effects of Termination ........................................................... 31

11.4.   Frustration of Closing Conditions .......................................... 31

**SECTION 12 TAXES** .......................................................................... 32

12.1.   Taxes Related to Purchase of Assets ...................................... 32

12.2.   Cooperation ............................................................................ 32

**SECTION 13 EXPENSES, ATTORNEYS' FEES AND BROKERS' FEES** ....... 32

13.1.   Expenses ................................................................................ 32

**SECTION 14 MISCELLANEOUS** ......................................................... 33

14.1.   Sale of Assets Subject to Bankruptcy Court Approval ............. 33

14.2.   Survival of Representations and Warranties and Covenants ..... 33

14.3.   Entirety of Agreement; Amendments and Waivers .................. 33

14.4.   Assignment ............................................................................ 33

14.5.   Successors and Assigns; No Third Party Beneficiaries ........... 33

14.6.   Governing Law; Jurisdiction .................................................. 34

14.7.   Gender and Number ............................................................... 34

14.8.   Headings ................................................................................ 34

14.9.   Construction ........................................................................... 34

14.10.  Severability ............................................................................ 34

14.11.  Negotiated Agreement ........................................................... 34

14.12.  Notices ................................................................................... 35

14.13.  Counterparts; Facsimile Copies ............................................. 36

14.14.  Specific Performance ............................................................. 36

## EXHIBITS:

Exhibit A      Form of Assignment and Assumption Agreement

Exhibit B      Form of Intellectual Property Assignment Agreement

Exhibit C      Form of Bill of Sale

NEWYORK 9324874

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (this "Agreement") is made as of this 30th day of September, 2014, by and among  Polo North Country Club, Inc., a Florida corporation ("Purchaser"), Revel AC, Inc., a Delaware corporation ("Parent"), and each of Parent's direct and indirect Subsidiaries (as defined below) listed on the signature pages hereto (collectively with Parent, "Sellers" and, each individually, a "Seller" and, together with Purchaser, the "Parties").

## W I T N E S S E T H:

WHEREAS, on June 19, 2014, Sellers filed voluntary Petitions (as defined below) for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court (each as defined below);

WHEREAS, Sellers, as debtors and debtors-in-possession, will continue, prior to the Closing (as defined below), in the possession of their respective assets and in the management of their respective businesses pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code;

WHEREAS, Purchaser desires to purchase and assume from Sellers, and Sellers desire to sell, convey, transfer, assign and deliver to Purchaser, the Assets and Assumed Liabilities (each, as defined below) in accordance with this Agreement, subject to the receipt by Sellers of any higher or better offer for the Assets and Assumed Liabilities, and in accordance with and subject to the Bid Procedures, the Bid Procedures Order and the Sale Order (each as defined below), pursuant to Sections 105, 363 and 365 of the Bankruptcy Code; and

WHEREAS, the Parties acknowledge and agree that the purchase by Purchaser of the Assets and the assumption by Purchaser of the Assumed Liabilities are being made at arm's length, in good faith and without intent to hinder, delay or defraud creditors of Sellers.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants, promises and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## SECTION 1
## INTERPRETATION

1.1.  Definitions.  Whenever used in this Agreement, the following words and phrases shall have the respective meanings ascribed to them as follows.

"Accounts Receivable" means all accounts receivable of Sellers and other rights to payment (whether current or noncurrent) outstanding as of the Closing Date, including in respect of goods shipped, products sold, licenses granted, services rendered or otherwise associated with the business of Seller, and all claims, remedies and/or causes of action related to the foregoing.

"Action" means any demand, claim, action, suit, proceeding, arbitral action or criminal prosecution by or before any Governmental Authority.

Case 14-22265-MBK   Doc 1367-4   Filed 01/08/15   Entered 01/08/15 15:30:54   Desc Main
Exhibit D (Back-Up Bid APA)   Page 31 of 152

Case 14-22265-MBK   Doc 787   Filed 09/05/14   Entered 09/05/14 15:30:54   Desc Main
Document   Page 7 of 128

"Administrative Expenses" means claims allowed under Section 503 of the Bankruptcy Code.

"Affiliate" means, with respect to any Person, any other Person which directly or indirectly controls, is controlled by or is under common control with such Person. For purposes of this definition "control" means, with respect to any Person, the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of such Person, whether through ownership of voting securities, by contract or otherwise.

"Agreement" has the meaning set forth in the preamble.

"Alternative Transaction" has the meaning set forth in Section 5.7.

"Ancillary Agreements" means, together, the Assignment and Assumption Agreement, the Bill of Sale and the Assignment of Intellectual Property.

"Antitrust Laws" means the Sherman Act, as amended; the Clayton Act, as amended; the HSR Act; the Federal Trade Commission Act, as amended; and all other federal, state and foreign statutes, rules, regulations, Orders, decrees, administrative and judicial doctrines and other Laws that are designed or intended to prohibit, restrict or regulate actions having the purpose or effect of monopolization or restraint of trade.

"Annual Financial Statements" has the meaning set forth in Section 3.8.

"Arbitrator" has the meaning set forth in Section 2.7.

"Assets" means, other than the Excluded Assets, all of Sellers' tangible and intangible assets, properties, rights, claims and contracts owned, leased and/or licensed by any Seller of every kind, character and description, whether accrued, contingent or otherwise, existing as of the Closing, including, without limitation those Assets set forth in Section 2.1.

"Assignment and Assumption Agreement" means that certain assignment and assumption agreement to be entered into at Closing, substantially in the form attached hereto as Exhibit A.

"Assignment of Intellectual Property" means that certain Intellectual Property assignment agreement to be entered into at Closing with respect to the Intellectual Property of Sellers, substantially in the form attached hereto as Exhibit B.

"Assumed Contracts" has the meaning set forth in Section 2.1(b).

"Assumed Liabilities" has the meaning set forth in Section 2.3.

"Avoidance Actions" means all causes of action arising under Chapter 5 of the Bankruptcy Code.

NEWYORK 9324874

"Bankruptcy Cases" means Sellers' cases under Chapter 11 of the Bankruptcy Code commenced by the filing of the Petitions in the Bankruptcy Court.

"Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of New Jersey.

"Bankruptcy Rules" has the meaning set forth in Section 5.6(a).

"Bid Procedures" means bid procedures approved by the Bankruptcy Court pursuant to the Bid Procedures Order.

"Bid Procedures Order" means the order of the Bankruptcy Court entered on July 14, 2014 approving bid procedures to govern the sale of the Assets and assumption of the Assumed Liabilities.

"Bill of Sale" means that certain bill of sale to be entered into at Closing with respect to the Assets, substantially in the form attached hereto as Exhibit C.

"Block 73" means Block 73, LLC, a New Jersey limited liability company.

"Break-up Fee" means Three Million Dollars ($3,000,000) due to Purchaser by Sellers in accordance with Section 5.7 of this Agreement.

"Business" means the business as conducted by Sellers of providing hospitality services (including lodging and dining), casino gaming offerings, entertainment offerings and convention spaces, and owning and leasing of real property, in each case, at the Revel Casino Hotel.

"Business Day" means a day other than a Saturday, Sunday or any other day on which commercial banks located in New York, New York are required or authorized to be closed for business.

"CBAs" mean, collectively, (i) the Collective Bargaining Agreement between Revel Entertainment and Northeast Regional Council of Carpenters Local #255 effective June 1, 2012, (ii) the Collective Bargaining Agreement between Revel Entertainment and International Union of Operating Engineers Local 68 effective June 1, 2012 and (iii) the Collective Bargaining Agreement between Revel Entertainment and District Council 711 International Union of Painters and Allied Trades effective June 1, 2012, in each case, with any amendments, supplements or modifications thereto.

"Claim" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, known or unknown; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed,

-3-

contingent, matured, unmatured, disputed, undisputed, secured or unsecured, known or unknown.

"Closing" has the meaning set forth in <u>Section 11.1</u>.

"Closing Date" has the meaning set forth in <u>Section 11.1</u>.

"Code" means the Internal Revenue Code of 1986, as amended.

"Confidentiality Agreement" means that certain Confidentiality Agreement dated August 28, 2014 by and between Purchaser and Sellers.

"Contracts" means all commitments, contracts, leases, licenses, agreements and understandings, written or oral, relating to the Assets or the operation of the Business to which any Seller is a party or by which any Seller or any of the Assets are bound.

"CRDA" means the New Jersey Casino Reinvestment Development Authority.

"Credit Agreements" means (a) that certain Amended and Restated First-Lien Credit Agreement, dated as of November 8, 2013, by and among Sellers, the lenders party thereto and JPMorgan Chase Bank, N.A., as administrative agent, collateral agent and issuing bank, (b) that certain Second-Lien Credit Agreement, dated as of May 21, 2013 and as amended on August 9, 2013, August 16, 2013 and November 8, 2013, by and among Sellers, the lenders party thereto and Wilmington Trust, National Association, as administrative agent and collateral agent, and (c) the DIP Loan Credit Agreement, in each case, with any amendments, supplements or modifications thereto.

"Cure Amounts" means all amounts payable in connection with the cure of monetary defaults under any of the Assumed Contracts to the extent required by Section 365(b) of the Bankruptcy Code.

"DIP Loan Credit Agreement" means that certain Debtor In Possession Credit Agreement entered into on June 20, 2014 and amended on July 30, 2014 by and among Sellers and Wells Fargo Bank, as administrative agent, Wells Fargo Principal Lending, LLC, as sole arranger, and certain lenders thereunder, as may be amended from time to time.

"Documents" has the meaning set forth in <u>Section 2.1(h)</u>.

"DOJ" has the meaning set forth in <u>Section 7.2(d)</u>.

"Employee" means any employee of Sellers immediately prior to the Closing Date.

"Encumbrances" means, with respect to any Asset, any mortgage, deed of trust, pledge, security interest, lien, charge, lease, claim, encumbrance, option, right of first refusal, imperfection of title, restrictive covenant, easement, servitude, proxy, voting trust

NEWYORK 9324874

or agreement, transfer restriction under any shareholder or similar agreement or any other restrictions or third party rights.

"Environmental Laws" means the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq.; the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq.; the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq.; the Clean Air Act, 42 U.S.C. § 7401 et seq.; the Toxic Substances Control Act, 15 U.S.C. §§ 2601 through 2629; the Oil Pollution Act, 33 U.S.C. § 2701 et seq.; the Emergency Planning and Community Right to Know Act, 42 U.S.C. § 11001 et seq.; the Safe Drinking Water Act, 42 U.S.C. §§ 300f through 300j, and all similar Laws (including implementing regulations) or Orders of any Governmental Authority having jurisdiction over the Assets in question, addressing pollution or protection of the environment or human health and safety (to the extent related to the exposure to Hazardous Materials).

"Excluded Assets" has the meaning set forth in Section 2.2.

"Excluded Liabilities" has the meaning set forth in Section 2.4.

"Financial Advisors" has the meaning set forth in Section 3.7.

"FTC" has the meaning set forth in Section 7.2(d).

"GAAP" means generally accepted accounting principles of the United States consistently applied, as in effect from time to time.

"Gaming Approvals" means all licenses, permits, approvals, authorizations, registrations, findings of suitability, franchises, entitlements, waivers and exemptions issued by any Gaming Authority or under Gaming Laws necessary for or relating to conduct of gaming and related activities or the manufacture, distribution, service or sale of alcoholic beverages, the ownership or the operation, management and development of any gaming operations, including the ownership, operation, management and development of the Business.

"Gaming Authority" means the New Jersey Casino Control Commission, the New Jersey Division of Gaming Enforcement and/or any other Governmental Authority possessing and exercising jurisdiction over the Assets, the Business, any Seller, any of Sellers' respective Affiliates or constituent owners, or any officers, directors, partners, members or managers of any of the foregoing, with respect to gaming activities.

"Gaming Laws" means any foreign, federal, tribal, state, county or local statute, law, ordinance, rule, regulation, permit, consent, approval, finding of suitability, license, judgment, Order, decree, injunction or other authorization governing or relating to gaming and related activities and operations or the manufacture, distribution, service or sale of alcoholic beverages, including the rules and regulations of any Gaming Authority.

"Governmental Authority" means any United States federal, state or local government or any foreign government, or political subdivision thereof, or any authority,

-5-

agency or commission entitled to exercise any administrative, executive, judicial, legislative, police, regulatory or taxing authority or power, any court or tribunal (or any department, bureau or division thereof), or any arbitrator or arbitral body, including Gaming Authorities.

"Hazardous Materials" means (a) any petrochemical or petroleum products, radioactive materials, asbestos, polychlorinated biphenyls, and radon gas; (b) any chemicals, materials or substances defined as or included in the definition of "hazardous substances," "hazardous wastes," "hazardous materials," "restricted hazardous materials," "extremely hazardous substances," "toxic substances," "contaminants" or "pollutants" or words of similar meaning and regulatory effect, which is prohibited, limited, or regulated by any applicable Environmental Law.

"HSR Act" means the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, and the rules and regulations promulgated thereunder.

"Intellectual Property" means all intellectual property and proprietary rights of any kind related to the Business, including the following: (a) trademarks, service marks, trade names, slogans, logos, trade dress, internet domain names, uniform resource identifiers, rights in design, brand names, and other similar designations of source or origin, together with all goodwill, registrations and applications related to the foregoing; (b) patents, utility models and industrial design registrations (and all continuations, divisionals, continuations in part, provisionals, renewals, reissues, re-examinations and applications for any of the foregoing); (c) copyrights and copyrightable subject matter (including any registration and applications for any of the foregoing); (d) trade secrets and other confidential or proprietary business information, know how, proprietary processes, formulae, algorithms, models, and methodologies; and (e) computer software, computer programs, and databases (whether in source code, object code or other form).

"Interim Financial Statements" has the meaning set forth in Section 3.8.

"Inventory" means all inventory (including finished goods, supplies, work in progress, spare, replacement and component parts) to the extent used in connection with the Business, maintained or held by, stored by or on behalf of, or in transit to, any of Sellers and to which Sellers have title.

"Law" means any federal, state, local or foreign statute, law, code, ordinance, Order, rule, regulation, common law requirement, policy, guideline or agency requirement of or undertaking to or agreement with any Governmental Authority.

"Liability" means any unsatisfied debt, liability, obligation, assessment, cost, expense, loss, expenditure, charge, fee, penalty, fine, or obligation of any kind, whether known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due, and regardless of when sustained, incurred or asserted or when the relevant events occurred or circumstances existed, including all costs and expenses relating thereto.

"Licensed Parties" has the meaning set forth in Section 4.6.

NEWYORK 9324874

"Licensing Affiliates" has the meaning set forth in Section 4.6.

"Material Adverse Effect" means any event, circumstance, change, occurrence or state of facts that has had, or would reasonably be expected to have, individually or in the aggregate, a material adverse effect on the Business, financial condition or results of operations of Sellers, taken as a whole; provided, however, that in determining whether there has been a Material Adverse Effect, any effect, event, circumstance, change, occurrence or state of facts to the extent attributable to any of the following shall be disregarded: (i) any change in the general political, economic or business condition, including the commencement, continuation or escalation of war, acts of terrorism, natural disasters or acts of God; (ii) any change in financial or capital markets, including interest rates or currency exchange rates, and the industry in which Sellers are engaged; (iii) the taking of any action required to be taken by a Party under the terms of this Agreement or consented to by the other Party to this Agreement, (iv) the announcement or existence of this Agreement or the Transactions, including effects on relationships, contractual or otherwise, with financing sources, customers, suppliers, vendors or employees or the initiation of any litigation in connection therewith; (v) the commencement of the Bankruptcy Cases or resulting from or arising in connection therewith; (vi) changes in Laws or Orders or interpretations thereof or changes in accounting requirements or principles, GAAP or any other change or effect arising out of or relating to any proceeding, Claims or Orders before a Governmental Authority; (vii) any failure to meet any internal projections; (viii) any seasonal changes in the results of operations of Sellers; and (ix) the cessation of operations of the Business and any changes to the Business resulting therefrom.

"Material Contract" means any Contract with a customer, vendor, supplier, distributor or other counterparty that is material to the Business.

"NJEDA" means the New Jersey Economic Development Authority.

"Ordinary Course of Business" means the ordinary and usual course of normal day to day operations of the Business consistent with past practice.

"Order" means any order, judgment, writ, injunction, decree, settlement, stipulation, decision, ruling, subpoena, verdict or award of any Governmental Authority.

"Organizational Documents" means, with respect to any Person (other than an individual), (a) the certificate or articles of incorporation or organization and any joint venture, limited liability company, operating or partnership agreement and other similar documents adopted or filed in connection with the creation, formation or organization of such Person and (b) all by-laws, voting agreements and similar documents, instruments or agreements relating to the organization or governance of such Person, in each case, as amended or supplemented.

"Parent" has the meaning set forth in the preamble.

"Parties" has the meaning set forth in the preamble.

"Permits" means all material approvals, permits, certificates, qualifications, authorizations, licenses, franchises, consents, Orders and registrations, together with all modifications, amendments, supplements and extensions thereof, of all United States federal, state and local Governmental Authorities and any other Person that are necessary for Sellers to own the Assets.

"Permitted Encumbrances" means: (a) those Encumbrances set forth on Section 1.1(b) of the Sellers Disclosure Letter; (b) any other Encumbrances such as utility easements, zoning restrictions, land use or environmental regulations, other exemptions noted on a current survey, or other customary covenants and restrictions of record that do not materially affect the ownership or leasing of the real property or the conduct of the Business; and (c) Encumbrances related to Assumed Liabilities.

"Person" means any individual or corporation, association, partnership, limited liability company, joint venture, joint stock or other company, business trust, trust, organization, Governmental Authority or other entity of any kind.

"Petition Date" means June 18, 2014, the date on which Sellers filed their Petitions.

"Petitions" mean voluntary petitions for Chapter 11 bankruptcy relief.

"Pre-2014 Tax Benefits" has the meaning set forth in Section 2.2(f).

"Pre-Closing Period" has the meaning set forth in Section 5.3.

"Pre-Closing Tax Period" means all taxable years or other taxable periods that end on or before the Closing Date and, with respect to any taxable year or other taxable period beginning on or before and ending after the Closing Date, the portion of such taxable year or period ending on and including the Closing Date.

"Project Agreements" means the (a) Amended and Restated State Economic Redevelopment and Growth Incentive Grant Agreement dated as of May 21, 2013 by and among Revel Entertainment Group, Parent, the NJEDA and the Treasurer of the State of New Jersey, (b) Redevelopment Agreement dated November 8, 2007 by and between the City of Atlantic City, the City Council of the City of Atlantic City and Revel Entertainment, (c) Project Grant Agreement dated as of December 18, 2007 by and between the CRDA and Revel Entertainment, (d) Entertainment-Retail District Project Donation and Credit Agreement dated as of December 18, 2007 by and between the CRDA and Revel Entertainment, (e) Amended and Restated South Inlet Transportation Improvement Project Donation and Credit Agreement dated as of November 22, 2010 by and between the CRDA, Revel Entertainment and Revel Atlantic, (f) Agreement to Reimburse for Remediation Costs last executed on November 11, 2009 by and among Revel Entertainment, the NJEDA and the Treasurer of the State of New Jersey, (g) Contract for Sale of Land for Private Redevelopment dated as of November 30, 2004 by and between the Housing Authority and Urban Redevelopment Agency of the City of Atlantic City and North Beach Holdings, LLC, (h) Securities Purchase Contact dated as of August 5, 2009 by and between the CRDA and Revel Entertainment, (i) South Inlet

-8-

Transportation Improvement Project Donation Agreement dated as of August 5, 2009 by and between the CRDA and Revel Entertainment, (j) Agreement dated as of July 11, 2012 between Atlantic City Alliance and Revel Entertainment, (k) Declaration of Covenants and Restrictions dated as of December 4, 2009 by Parent, and (m) any amendments, supplements or modifications to the foregoing.

"Providing Party" has the meaning set forth in Section 7.1(b).

"Purchase Price" has the meaning set forth in Section 2.5.

"Purchaser" has the meaning set forth in the preamble.

"Purchaser Deposit Amount" has the meaning set forth in Section 2.6.

"Requesting Party" has the meaning set forth in Section 7.1(b).

"Revel Casino Hotel" means Revel Casino Hotel in the City of Atlantic City, New Jersey, as such hotel may be renamed from time to time.

"Sale Hearing" means the hearing conducted by the Bankruptcy Court to consider approval of the sale of the Assets.

"Sale Order" means the order of the Bankruptcy Court approving the sale of the Assets.

"Secured Loan Encumbrance" means all Encumbrances arising out of or relating to the Credit Agreements.

"Sellers" has the meaning set forth in the preamble.

"Sellers Disclosure Letter" has the meaning set forth in Section 3.

"Subsidiary" means, with respect to any Person, any corporation or other business entity, whether or not incorporated, of which more than fifty percent (50%) of the securities or equity interests are owned or have, by their terms, ordinary voting power to elect members of the board of directors or managers, or other persons performing similar functions with respect to such entity, are held, directly or indirectly, by such Person.

"Tax" or "Taxes" means (i) all federal, state, local and foreign taxes, charges, fees, imposts, levies or other assessments, including income, gross receipts, excise, employment, sales, use, transfer, license, payroll, franchise, stamp, withholding, social security, unemployment, real property, personal property, alternative or add on minimum, estimated or other taxes, charges, fees, imposts, levies or other assessments, including any interest, penalties or additions thereto, whether disputed or not, and (ii) any Liability for any items described in clause (i) payable by reason of transferee liability or operation of law (including Treasury Regulation 1.1502-6).

NEWYORK 9324874

"Tax Return" means any report, return, information return, filing, claim for refund or other information, including any schedules or attachments thereto, and any amendments to any of the foregoing required to be supplied to a Taxing Authority in connection with Taxes.

"Taxing Authority" means any Governmental Authority responsible for the administration or the imposition of any Tax.

"Termination Date" has the meaning set forth in Section 11.2(b).

"Transaction Taxes" has the meaning set forth in Section 12.1.

"Transactions" mean the transactions contemplated by this Agreement, the Ancillary Agreements and all other transactions and agreements contemplated hereby and thereby.

"Treasury Regulations" mean the Treasury Regulations promulgated pursuant to the Code, as amended from time to time, including the corresponding provisions of any successor regulations.

"WARN Act" means, collectively, the Worker Adjustment and Retraining Notification Act of 1988, as amended, and any other similar statutes or regulations of any jurisdiction relating to any plant closing or mass layoff (or such similar terms as used in such statutes or regulations).

## SECTION 2
## PURCHASE, SALE AND ASSIGNMENT OF PURCHASED ASSETS

2.1.     Sale of Assets.  Subject to the terms and conditions of this Agreement, at Closing, Sellers shall sell, convey, transfer, assign and deliver to Purchaser, and Purchaser shall purchase from Sellers, all of Sellers' right, title and interest in the Assets, free and clear of all Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) including all of Sellers' right, title and interest in the following:

(a)     all real property and tangible personal property owned or used by any Seller including, without limitation, all machinery, equipment (including gaming equipment), computers, furniture, furnishings, fixtures, office supplies, vehicles, and tools that relate in any way to the Business;

(b)     all Contracts listed or described in Section 2.1(b) of the Sellers Disclosure Letter, as may be amended by Purchaser in accordance with the last paragraph of this Section 2.1 ("Assumed Contracts");

(c)     all Inventory;

-10-

(d)    all interests of Sellers in and to all Intellectual Property (including all goodwill associated therewith or symbolized thereby);

(e)    subject to <u>Section 2.2(b)</u> below, all Accounts Receivable (other than any Accounts Receivable relating to Pre-2014 Tax Benefits);

(f)    all Permits that relate in any way to the Business (to the extent transferrable to Purchaser);

(g)    customer database, excluding any records, data, customer information or any other item that is part of such database which Sellers are prohibited by Law (or Contract) from providing to Purchaser or the transfer of which would require consent if the required consent has not been provided;

(h)    other than the customer database excluded under <u>Section 2.1(g)</u>, all books and records, files, data, reports, computer codes and sourcing data, advertiser and supplier lists, cost and pricing information, business plans, and manuals, blueprints, research and development files, personnel records for Employees and other records that relate in any way to the Business (but excluding any personnel records with respect to former employees of Sellers and excluding personnel records with respect to Employees which Sellers are prohibited by Law from providing to Purchaser or the transfer of which would require Employee consent) (collectively, the "<u>Documents</u>");

(i)    all marketing, advertising and promotional materials;

(j)    all goodwill associated with the Business and/or the Assets;

(k)    all telephone, telex and telephone facsimile numbers and other directory listings used in connection with the Business;

(l)    all equity interests in Block 73 owned by any Seller;

(m)    all of Sellers' right in and to any existing lawsuits and any unfiled legal claims against third parties with respect to the Assets, Assumed Contracts or any Assumed Liabilities, except those that are Avoidance Actions or that arise from or relate to facts and circumstances occurring prior to Closing; and

(n)    all entitlement and rights in and to any tax credits due Sellers for 2014, or prior years to the extent not applied for by Sellers prior to the date of this Agreement, including all credits arising out of or related to (i) the New Jobs Investment Tax Credit, (ii) the Economic Redevelopment Growth Grant, and (iii) Casino Reinvestment Development Authority.

Purchaser shall have the right at any time prior to three (3) days prior to the Closing Date to amend <u>Section 2.1(b)</u> of the Sellers Disclosure Letter so as to exclude any Contract from being an Assumed Contract. A schedule of Assumed Contracts and any Cure Amounts relating thereto shall be filed by Sellers with the Bankruptcy Court and served on the counterparties to the Assumed Contracts in accordance with the Bid Procedures Order. Notwithstanding anything to

-11-

the contrary, in connection with any change to <u>Section 2.1(b)</u> of the Sellers Disclosure Letter as may be agreed to by Sellers and Purchaser, (i) any Assets attendant to any Contract that is excluded shall become an Excluded Asset to the extent applicable in accordance with <u>Section 2.2</u>, (ii) Sellers shall be permitted to update the Sellers Disclosure Letter as necessary to correct or complete any such disclosure contained therein, and (iii) the Cure Amount shall be adjusted, as applicable.

2.2.    <u>Excluded Assets</u>.    Notwithstanding the generality of <u>Section 2.1</u>, the following assets are not a part of the sale and purchase contemplated by this Agreement and are excluded from the Assets (collectively, the "<u>Excluded Assets</u>"):

(a)    any Contracts other than the Assumed Contracts;

(b)    those assets of Sellers set forth on <u>Section 2.2(b)</u> of the Sellers Disclosure Letter;

(c)    the Purchase Price and all other cash in Sellers' possession;

(d)    all Avoidance Actions;

(e)    all proceeds and claims for refund or credit of Taxes and other Governmental Authority charges of whatever nature, and any other Tax benefits, arising out of or attributable to any Pre-Closing Tax Period, except for the period beginning January 1, 2014 and provided that Sellers have made the applicable applications for such refunds, credits or other tax benefits prior to the date of this Agreement;

(f)    all of Sellers' rights and entitlements to (x) any payment made to, (y) investments made with the approval of, or (z) notes or bonds purchased from the CRDA, any sums held by the CRDA or any other agency or department of the State of New Jersey, or any city thereof, for the account of, benefit of, or attributable to a Seller and any credits accrued or due a Seller related to its obligations in connection therewith, as to each of (x), (y) and (z), including, without limitation, all such rights, entitlements and credits in connection with the Project Agreements, in each case, arising out of or attributable to any period prior to December 31, 2013 (the "<u>Pre-2014 Tax Benefits</u>") and provided that Sellers have made the applicable applications for such rights, entitlements and credits prior to the date of this Agreement;

(g)    all corporate minute books, stock transfer books, the corporate seal of Sellers and all other corporate books and records relating to Sellers' organization and existence, and Documents (i) related to any Excluded Assets or Excluded Liabilities (including, without limitation, those which are subject to attorney-client or other privilege), (ii) which Sellers are required by Law to retain in its possession, (iii) prepared primarily in connection with the Transactions, (iv) relating to personnel records of former employees of Sellers who do not become employees of Purchaser, (v) relating to personnel records of Employees but which Sellers are prohibited by Law (or Contract) from providing to Purchaser or the transfer of which would require Employee consent or (vi) any records, data, customer information or any other item that is part of the customer database which Sellers are prohibited by Law (or Contract) from providing to Purchaser

NEWYORK 9324874

or the transfer of which would require consent if the required consent has not been provided;

       (h)    any shares of stock or other equity interests in Parent or any Subsidiary of Parent (other than Block 73);

       (i)    all Claims, rights of action, suits or proceedings, whether in Law or in equity, whether known or unknown, that Sellers or Sellers' bankruptcy estates may hold against any third party, foreign or domestic, under any law whatsoever, other than with respect to an Asset, Assumed Contract or any Assumed Liabilities under <u>Sections 2.1</u> and <u>2.3</u> of this Agreement; and

       (j)    all rights or assets of any Seller relating to any employee benefit plan and all rights or assets of any employee benefit plan (including any insurance policies, annuity contracts or assets held in trust) sponsored, maintained or contributed to by any Seller for the benefit of its current or former employees.

    2.3.    <u>Assumed Liabilities</u>. Notwithstanding anything to the contrary in this Agreement, Purchaser shall only assume the following Liabilities of Sellers (collectively, the "<u>Assumed Liabilities</u>):

       (a)    certain trade payables of the vendors incurred prior to the Petition Date in the ordinary course of business, which are listed on <u>Section 2.3(a)</u> of the Sellers Disclosure Letter provided that Purchaser has received, as a part of the Assets (including any restoration, improvements or maintenance thereof), the goods, services or chattels from the vendor who is seeking payment;

       (b)    all Liabilities relating to ownership or use of the Assets or otherwise relating to the Business, in each case, arising after the Closing;

       (c)    all Cure Amounts with respect to the Assumed Contracts, but not any Contracts rejected or not assumed by Purchaser;

       (d)    any stamp or similar Taxes in connection with any transfer of any Asset pursuant to the Agreement to the extent not otherwise exempted pursuant to Section 1146 of the Bankruptcy Code; and

       (e)    all Liabilities for Taxes arising out of or attributable to the operation of the Business on and after the Closing Date.

    2.4.    <u>Excluded Liabilities</u>. Sellers acknowledge and agree that pursuant to the terms and provisions of this Agreement, Purchaser will not assume any Liability of Sellers, other than the Assumed Liabilities. In furtherance, and not in limitation, of the foregoing, except for the Assumed Liabilities, neither Purchaser nor any of its Affiliates shall assume, and shall not be deemed to have assumed, and Sellers shall retain any debt, Claim, obligation or other Liability of Sellers whatsoever, including, but not limited to the following (collectively, the "<u>Excluded Liabilities</u>"):

NEWYORK 9324874

(a)     all Liabilities which are not Assumed Liabilities, including but not limited to any claims under Sections 503 and 507 of the Bankruptcy Code, other than Liabilities assumed pursuant to Section 2.3(i);

(b)     all Liabilities with respect to any Excluded Assets;

(c)     all Liabilities with respect to any and all indebtedness of any Seller for borrowed money not included in the Assumed Liabilities;

(d)     all penalties, fines, settlements, interest, costs and expenses arising out of or incurred as a result of any actual or alleged violation by any Seller of any Law prior to the Closing;

(e)     all Liabilities for Taxes arising out of or attributable to the operation of the Business prior to the Closing;

(f)     all Liabilities under the WARN Act assumed by Sellers; and

(g)     all Liabilities for fees and expenses (i) relating to the negotiation and preparation of this Agreement and (ii) relating to the Transactions, in each case, to the extent incurred by Sellers.

2.5.     Purchase Price.  The aggregate purchase price for the Assets (the "Purchase Price") shall equal the sum of: (i) Ninety One Million Dollars ($91,000,0000) in cash payable at Closing, plus Four Million Four Hundred Thousand Dollars ($4,400,000) in cash payable to Sellers (or Sellers' designated estate representative) in equal installments at each anniversary of the Closing so that the full amount of Four Million Four Hundred Thousand Dollars ($4,400,000) is paid in full on the fourth (4th) anniversary of the Closing (such payment to be made in installments being referred to as the "Purchaser Installment Payment"), and (ii) plus the assumption of the Assumed Liabilities.  For the avoidance of doubt and notwithstanding anything herein to the contrary, Purchaser shall not be entitled to credit-bid or otherwise discount or reduce the Purchase Price in any manner on account of the Break-up Fee contemplated by Section 5.7, which Purchase Price shall be paid in cash in full.

2.6.     Purchaser Deposit.  As required under the Bid Procedures Order, Purchaser has deposited into an escrow account established at Wells Fargo Bank, N.A., as escrow agent, an amount in cash equal to Ten Million Dollars ($10,000,000.00) (the "Purchaser Deposit Amount"), to be released by the escrow agent and delivered to either Purchaser or Sellers in accordance with the provisions of this Agreement as follows:

(a)     If the Closing shall occur, then the Purchaser Deposit Amount, together with all accrued interest and investment income thereon, shall be applied in accordance with Section 11.1(b) hereof towards the cash portion of the Purchase Price payable by Purchaser under Section 2.5 hereof;

(b)     If this Agreement is terminated by Sellers pursuant to Sections 11.2(c) or 11.2(i), then the Purchaser Deposit Amount, together with all accrued interest and investment income thereon, shall be delivered to Sellers (it being understood and agreed

-14-

that Sellers' right to the Purchaser Deposit Amount shall be in addition to any and all other remedies that Sellers may have against Purchaser with respect to any breach, violation or default by Purchaser under this Agreement); and

(c)  If this Agreement is terminated for any reason, other than by Sellers pursuant to Sections 11.2(c) or 11.2(i), then the Purchaser Deposit Amount, together with all accrued interest and investment income thereon, shall be returned to Purchaser without prejudice to Purchaser's right to receive the Break-up Fee if any when payable in accordance with Section 5.7.

2.7.  Allocation of Purchase Price.  Within sixty (60) days following the Closing Date, Purchaser shall deliver to Sellers a proposed allocation of the Purchase Price (including the Assumed Liabilities and any other amounts properly included therein) among the Assets in accordance with Section 1060 of the Code and Treasury Regulations thereunder (and any similar provision of state, local or foreign Law, as applicable).  Sellers shall have thirty (30) days following receipt of Purchaser's proposed allocation to review and comment on such proposed allocation, and Purchaser shall consider such comments in good faith.  If and to the extent the Parties are unable to agree on the allocation, the Parties shall retain a mutually agreed upon accounting firm of national repute (the "Arbitrator") to resolve such dispute.  The determination of the Arbitrator with respect to any such disagreement shall be final and binding upon each Party (absent fraud or manifest error) and the decision of the Arbitrator shall constitute an arbitral award that is final, binding, and non-appealable (absent fraud or manifest error) and upon which a judgment may be entered by a court having jurisdiction thereover.  Thereafter, Purchaser shall provide Sellers with Purchaser's final allocation schedule.  If Sellers and Purchaser submit any dispute to the Arbitrator for resolution pursuant to this Section 2.7, Sellers and Purchaser shall each pay their own costs and expenses incurred under this Section 2.7.  Each of Purchaser and Sellers shall bear fifty percent (50%) of the costs and expenses of the Arbitrator incurred pursuant to this Section 2.7.  To the extent required by Law after the Closing Date, Purchaser and Sellers shall prepare and file those statements or forms (including Form 8594) required by Section 1060 of the Code and the Treasury Regulations thereunder and shall file such statements or forms with their respective federal income Tax Returns no later than one hundred twenty (120) days after the Closing Date.  Each Party shall provide the other Party with a copy of such statements or forms as filed.  The Parties shall prepare such statements or forms, and all Tax Returns, consistently with the allocation of all or a portion of the Purchase Price and the Assumed Liabilities among the Assets as determined pursuant to this Section 2.7, except as may be adjusted by subsequent agreement following an audit by the IRS and provided that Sellers and Purchaser agree to update such final allocation as necessary to account for any subsequent adjustment to the Purchase Price; provided, further, that neither Sellers nor Purchaser (nor their respective Affiliates) shall be obligated to litigate any challenge to such allocation of the Purchase Price by any Governmental Authority.  The Parties shall promptly inform one another of any challenge by any Governmental Authority to any allocation made pursuant to this Section 2.7 and agree to consult with and keep one another informed with respect to the state of, and any discussion, proposal or submission with respect to, such challenge.

2.8.  Excluded Assets and Liabilities.  Notwithstanding anything to the contrary contained herein, Purchaser shall not purchase any of the Excluded Assets nor assume any liability for any of the Excluded Liabilities.

NEWYORK 9324874

## SECTION 3
## REPRESENTATIONS AND WARRANTIES OF SELLERS

Except as set forth on the disclosure letter delivered by Sellers to Purchaser concurrently with the entering into this Agreement (the "Sellers Disclosure Letter"), Sellers hereby jointly and severally represent and warrant to Purchaser as follows:

3.1.   Organization and Good Standing.  Each Seller is (a) validly existing and in good standing under the laws of the jurisdiction of its organization and (b) duly qualified to do business and in good standing in each jurisdiction in which the ownership, use or leasing of its assets and properties, or the conduct or nature of its business, makes such qualification necessary, except for such failures to be so qualified and in good standing which, individually or in the aggregate, would not be reasonably expected to have a Material Adverse Effect.

3.2.   Authorization.  Subject to entry of the Sale Order, each Seller has all requisite power and authority to execute and deliver, and carry out its obligations under, this Agreement and the Ancillary Agreements and consummate the Transactions.  Each of this Agreement and the Ancillary Agreements has been or will be duly executed and delivered by each Seller and, assuming due authorization, execution and delivery by Purchaser, constitutes or will constitute the legal, valid and binding obligation of such Seller, enforceable against it in accordance with its terms, subject to entry of the Sale Order.

3.3.   No Conflicts.  Subject to entry of the Sale Order, approval under the HSR Act and compliance with and obtaining such Gaming Approvals as may be required under applicable Gaming Laws, if required and other than as set forth on Section 3.3 of the Sellers Disclosure Letter, the execution, delivery and performance by each Seller of this Agreement and each of the Ancillary Agreements and the consummation by each Seller of the Transactions shall not, with or without the giving of notice or lapse of time (a) violate any provision of the Organizational Documents of such Seller, (b) violate any Law to which such Seller is subject, or (c) conflict with, result in any violation of any term or condition of, result in a breach or termination of, or constitute a default under any Material Contract to which such Seller is a party or result in the creation of any Encumbrance (other than a Permitted Encumbrance, Secured Loan Encumbrance or an Assumed Liability) upon any of the Assets (including any Assumed Contract), except in each case as would not be reasonably expected to have a Material Adverse Effect.

3.4.   Consents and Approvals.  Subject to (a) entry of the Sale Order, (b) approval under the HSR Act and other than as set forth on Section 3.4 of the Sellers Disclosure Letter and (c) compliance with and obtaining such Gaming Approvals as may be required under applicable Gaming Laws, the execution, delivery and performance by each Seller of this Agreement and the Ancillary Agreements and the consummation of the Transactions do not require the consent or approval of, or filing with, any Governmental Authority.

-16-

3.5.    <u>Compliance with Law</u>.  Sellers are in compliance with Sellers' Organizational Documents and with all Laws relating to the Assets, except as would not be reasonably expected to have a Material Adverse Effect.

3.6.    <u>Title to Assets</u>.  Except as set forth in <u>Section 3.6</u> of the Sellers Disclosure Letter, Sellers are the owners of or have valid leasehold interests in or valid contractual rights to use, as applicable, the Assets as of the date hereof.  Subject to entry of the Sale Order, Sellers have, and at the Closing Purchaser shall receive, good, valid and marketable title to the material Assets, free and clear of any and all Encumbrances (other than Permitted Encumbrances. Secured Loan Encumbrance and Assumed Liabilities).

3.7.    <u>No Broker or Finder</u>.  Except for Moelis & Company LLC and Winter Harbor LLC (collectively, the "<u>Financial Advisors</u>"), no broker, finder or financial advisor has been engaged by any Seller in connection with the Transactions.

3.8.    <u>Financial Statements</u>.  Sellers have delivered to Purchaser true and complete copies of Sellers' unaudited balance sheet and the related consolidated statements of operations, stockholders deficit and cash flows as of and for the fiscal year ended December 31, 2013 (the "<u>Annual Financial Statements</u>"), and the unaudited consolidated balance sheet of Sellers as of March 31, 2014, and the related consolidated statements of operations and cash flows for the month then ended (the "<u>Interim Financial Statements</u>").  Except as set forth in <u>Section 3.8</u> of the Sellers Disclosure Letter, the Annual Financial Statements were prepared in accordance with GAAP consistently applied and were derived from Sellers' books and records, and fairly present, in all material respects, the financial position, results of operations and cash flows of Sellers as of the date thereof and the period covered thereby.  The Interim Financial Statements were prepared in accordance with GAAP (subject to normal, recurring year-end adjustments, and except for the omission of certain footnotes and other presentation items required by GAAP) consistently applied and maintained throughout the period indicated, and in accordance with an consistent with Sellers' books and records, and fairly present, in all material respects, the financial position, results of operations and cash flows of Sellers as of the date thereof and for the period covered thereby.

3.9.    <u>Disclaimer of Other Representations and Warranties</u>.  Except as expressly set forth in this <u>Section 3</u>, Sellers make no representation or warranty, statutory, express or implied, at law or in equity, in respect of Sellers, the Assets, the Business or the Assumed Liabilities, and any such other representations or warranties, express or implied, are hereby expressly disclaimed, and there are no other warranties, statutory, express or implied that extend beyond the warranties contained in this Agreement.  Purchaser hereby acknowledges and agrees that, except to the extent specifically set forth in this <u>Section 3</u>, Purchaser is purchasing the Assets on an "as-is, where-is" basis and "with all faults."  Sellers are not, directly or indirectly, making any representations or warranties regarding any pro-forma financial information, financial projections or other forward-looking statements.  It is understood that any due diligence materials made available to Purchaser or its Affiliates or their respective representatives do not, directly or indirectly, and shall not be deemed to, directly or indirectly, contain representations or warranties of Sellers.

-17-

## SECTION 4
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser hereby represents and warrants to Sellers as follows:

4.1.    <u>Organization and Good Standing</u>.  Purchaser is a corporation, duly organized, validly existing and in good standing under the laws of Florida and has full corporate power and authority to execute and deliver, and carry out its obligations under, this Agreement and the Ancillary Agreements and consummate the Transactions.

4.2.    <u>Authorization</u>.  Purchaser has all requisite power and authority to execute and deliver and carry out its obligations under this Agreement and the Ancillary Agreements, and consummate the Transactions, and is not under any prohibition or restriction, contractual, statutory or otherwise, against doing so.  Each of this Agreement and the Ancillary Agreements has been or will be duly executed and delivered by Purchaser, and, assuming due authorization, execution and delivery by each Seller, constitutes or will constitute the legal, valid and binding obligation of Purchaser, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, fraudulent conveyance, moratorium or other Laws affecting the rights of creditors generally and by general principles of equity (regardless of whether enforcement is considered in a proceeding at law or in equity).

4.3.    <u>No Conflicts</u>.  Subject to entry of the Sale Order, approval under the HSR Act and compliance with and obtaining such Gaming Approvals as may be required under applicable Gaming Laws, if required, the execution, delivery and performance by Purchaser of this Agreement and each of the Ancillary Agreements and the consummation by Purchaser of the Transactions shall not, with or without the giving of notice or lapse of time, (a) violate any provision of the Organizational Documents of Purchaser, (b) violate any Law to which Purchaser is subject, or (c) conflict with, or result in a breach or default under, any term or condition of any other agreement or other instrument to which Purchaser is a party or by which Purchaser is bound.

4.4.    <u>Consents and Approvals</u>.  Subject to (a) entry of the Sale Order, (b) approval under the HSR Act and (c) compliance with and obtaining such Gaming Approvals as may be required under applicable Gaming Laws, the execution, delivery and performance by Purchaser of this Agreement and the Ancillary Agreements and the consummation of the Transaction do not require the consent or approval of, or filing with, any Governmental Authority.

4.5.    <u>Financing</u>.  Purchaser has sufficient funds, in an aggregate amount necessary to pay the Purchase Price and to perform and assume the Assumed Liabilities and to consummate all of the other Transactions.

4.6.    <u>Licensability</u>.  Neither Purchaser nor any of its officers, directors, partners, managers, members, principals or Affiliates which may reasonably be considered in the process of determining the suitability of Purchaser for a Gaming Approval by a Gaming Authority, or any holders of any of Purchaser's capital stock or other equity interests who will be required to be licensed or found suitable under applicable Gaming Laws (the foregoing Persons collectively,

-18-

the "Licensing Affiliates"), has ever abandoned or withdrawn (in each case in response to a communication from a Gaming Authority regarding a likely or impending denial, suspension or revocation) or been denied or had suspended or revoked a Gaming Approval, or an application for a Gaming Approval, by a Gaming Authority. Purchaser and each of its Licensing Affiliates which is licensed or holds any Gaming Approval pursuant to applicable Gaming Laws (collectively, the "Licensed Parties") is in good standing in each of the jurisdictions in which such Licensed Party owns, operates, or manages gaming facilities or is otherwise required to be licensed. To Purchaser's knowledge, there are no facts which, if known to any Gaming Authority, would be reasonably likely to (i) result in the denial, revocation, limitation or suspension of a Gaming Approval of any of the Licensed Parties or (ii) result in a negative outcome to any finding of suitability proceedings of any of the Licensed Parties currently pending, or under the suitability proceedings necessary for the consummation of the Transactions.

4.7.    "AS IS" TRANSACTION. PURCHASER HEREBY ACKNOWLEDGES AND AGREES THAT, EXCEPT AS EXPRESSLY PROVIDED IN SECTION 3 OF THIS AGREEMENT, SELLERS MAKE NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO THE ASSETS OR THE BUSINESS INCLUDING, WITHOUT LIMITATION, THE CONDITION OF ANY REAL PROPERTY LEASED OR OWNED BY ANY OF THE SELLERS AND THE IMPROVEMENTS THEREON OR AS TO ANY ENVIRONMENTAL CONDITIONS OR THE PRESENCE OF ANY HAZARDOUS MATERIALS. WITHOUT IN ANY WAY LIMITING THE FOREGOING, SELLERS HEREBY DISCLAIM ANY WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AS TO ANY PORTION OF THE ASSETS. PURCHASER FURTHER ACKNOWLEDGES THAT PURCHASER HAS CONDUCTED AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE PHYSICAL CONDITION OF THE ASSETS AND ALL SUCH OTHER MATTERS RELATING TO OR AFFECTING THE ASSETS OR THE BUSINESS AND THAT IN PROCEEDING WITH ITS ACQUISITION OF THE ASSETS, EXCEPT FOR ANY REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN SECTION 3 HEREOF, PURCHASER IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS, ANALYSIS, EVALUATIONS AND INVESTIGATIONS. ACCORDINGLY, PURCHASER WILL ACCEPT THE ASSETS AT THE CLOSING "AS IS," "WHERE IS," AND "WITH ALL FAULTS."

4.8.    Disclaimer of Other Representations and Warranties. Except as expressly set forth in this Section 4, Purchaser does not make any representation or warranty, statutory, express or implied, at law or in equity, and any such other representations or warranties, express or implied, are hereby expressly disclaimed, and there are no other warranties, statutory, express or implied that extend beyond the warranties contained in this Agreement.

## SECTION 5
## CERTAIN COVENANTS OF SELLERS

5.1.    Provision of Records. Sellers shall arrange, at Purchaser's cost, as soon as reasonably practicable following the Closing Date for transportation to Purchaser of the

-19-

Documents in the possession of any Seller that are Assets, to the extent not previously delivered in connection with the Transactions, but excluding Documents that are Excluded Assets.

5.2.     Receipt of Property Relating to Assets.  Subject to the terms and conditions of this Agreement and applicable Law, if, following the Closing, any of Sellers shall receive any money, check, note, draft, instrument, payment or other property which are Assets pursuant to Section 2.1, such Seller shall receive all such items in trust for, and as the sole and exclusive property of, Purchaser and, upon receipt thereof, shall notify Purchaser within a reasonable amount of time of such receipt and shall remit the same (or cause the same to be remitted) to Purchaser in the reasonable manner specified by Purchaser.

5.3.     Conduct of Business Pending the Closing.  From the date hereof through the Closing Date or the earlier termination of this Agreement (the "Pre-Closing Period"), except as may be expressly permitted or contemplated by this Agreement, set forth in Section 5.3 of the Sellers Disclosure Letter, provided in the Credit Agreements, required, authorized or restricted pursuant to any Gaming Law, the Bankruptcy Code or ordered by the Bankruptcy Court, or as otherwise agreed to in writing by Purchaser (which agreement shall not be unreasonably withheld, conditioned or delayed), Sellers shall use their commercially reasonable efforts not to:

(a)     resume operations of Business;

(b)     sell (including by sale-leaseback), lease, transfer, license, mortgage or otherwise dispose of, encumber or subject to any Encumbrance (other than a Permitted Encumbrance, Secured Loan Encumbrance or an Assumed Liability), any material Assets or interests therein;

(c)     fail to maintain in full force and effect insurance covering the Assets;

(d)     incur or permit the incurrence of any Liability that would constitute a material Assumed Liability, except as required to comply with applicable Laws or with the terms of this Agreement, including this Section 5.3;

(e)     sell or otherwise dispose of Inventory except as required as part of the cessation of operations of the Business;

(f)     except as previously disclosed to or known by Purchaser, materially modify, amend, supplement or terminate any Assumed Contract; or

(g)     authorize any of, or commit or agree to take any of, the foregoing actions.

Notwithstanding anything to the contrary in Section 5.3 above, on or prior to 5:00 p.m. EST on the day prior to the Closing Date, Sellers shall discontinue all operations of the Business, including but not limited to discontinuation of all casino and hospitality, except (i) those that directly involve life-safety issues and those necessary to comply with Government rules, regulations or law and (ii) those operations described on Section 5.3 of the Sellers Disclosure Letter.

5.4.    Access to Information.  Upon reasonable notice by Purchaser and subject to the terms of the Confidentiality Agreement, Purchaser and its representatives shall have reasonable access during normal business hours during the Pre-Closing Period, to the Assets and documents relating thereto, and during such period Sellers shall furnish to Purchaser, at Purchaser's expense, all information concerning the Assets as Purchaser may reasonably request.  Sellers shall provide or cause to be provided to Purchaser, at Purchaser's expense and subject to the terms of the Confidentiality Agreement, such copies or extracts of Documents with respect to the Assets and Assumed Liabilities as Purchaser may reasonably request.  Any inspections, examinations and audits shall be conducted during normal business hours by Purchaser's employees or agents upon reasonable advance notice.  Notwithstanding anything in this Agreement to the contrary, no Seller shall be required to provide access to or to disclose information where such access or disclosure would be reasonably likely to (i) breach any agreement with any third party, (ii) constitute a waiver of or jeopardize the attorney-client or other privilege held by any Seller or (iii) otherwise violate any applicable Law, including Gaming Laws.

5.5.    Communication with Parties to Contracts.  Upon Sellers' prior written consent, such consent not to be unreasonably withheld, Purchaser may communicate with all suppliers, tenants, lenders, vendors and other parties to Assumed Contracts for the purpose of renegotiating such Assumed Contracts or establishing new agreements with such parties to be effective upon Closing.

5.6.    Bankruptcy Action.

(a)    Sellers shall comply in all material respects with all of the obligations of Sellers under the Bid Procedures Order and the Sale Order (after the entry of such Orders by the Bankruptcy Court).  The Sale Order shall be subject to the approval of Purchaser in its reasonable discretion.

(b)    Sellers shall use commercially reasonable efforts to comply (or obtain an Order from the Bankruptcy Court waiving compliance) with all requirements under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in connection with obtaining approval of the Transactions. Sellers shall serve on all required Persons in the Bankruptcy Case, including (i) all Persons who are known to possess or assert a Claim against or interest in any of the Assets, (ii) the Internal Revenue Service, (iii) all applicable Governmental Authorities, (iv) all applicable state and local Governmental Authorities with taxing authority, (v) all other Persons required by any Order of the Bankruptcy Court, (vi) all parties to Assumed Contracts, (vii) all Persons that request or are entitled to notice under Bankruptcy Rule 2002, and (viii) using their commercially reasonable efforts to serve any other Persons that Purchaser reasonably may request, any notice required to be served under the Bid Procedures Order or the Sale Order, and all objection deadlines in accordance with all applicable Bankruptcy Rules, the Bid Procedures Order, and any applicable local rules of the Bankruptcy Court.

(c)    Sellers shall use commercially reasonable efforts to commence the Auction (as that term is defined in the Bid Procedures Order) no later than ten (10) days after entry of the order of the Bankruptcy Court approving the Break-up Fee.

-21-

5.7.     Sale Order.  The Sale Order shall, among other things:  (a) approve, pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, (i) the execution, delivery and performance by Sellers of this Agreement, (ii) the sale of the Assets to Purchaser on the terms set forth herein and free and clear of all Encumbrances (other than Permitted Encumbrances and Assumed Liabilities), and (iii) the performance by Sellers of their respective obligations under this Agreement; (b) authorize and empower Sellers to assume and assign to Purchaser the Assumed Contracts; and (c) find that Purchaser is a "good faith" buyer within the meaning of Section 363(m) of the Bankruptcy Code and grant Purchaser the protections of Section 363(m) of the Bankruptcy Code.  Purchaser agrees that it will promptly take such actions as are reasonably requested by Sellers to assist in obtaining entry by the Bankruptcy Court of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for purposes, among others, of:  (x) demonstrating that Purchaser is a "good faith" purchaser; and (y) establishing adequate assurance of future performance within the meaning of Section 365 of the Bankruptcy Code.  In the event that the Bankruptcy Court's entry of the Sale Order shall be appealed, Sellers shall use commercially reasonable efforts to defend such appeal. If Sellers conduct an auction for the sale of the Assets, or the Sellers elect to sell the Assets to a third party with or without an auction, and such third party and Sellers enter into a binding Asset Purchase Agreement that is ratified, approved and confirmed in a Sale Order and such sale to the third party is consummated (such sale, an "Alternative Transaction"), then notwithstanding anything in this Agreement to the contrary, this Agreement shall terminate automatically without any action on the part of any Party, and Purchaser, as the "Stalking Horse Bid," shall be entitled to receive a Break-up Fee.  The Break-up Fee shall be paid by Sellers to Purchaser on the date that Sellers consummate the Alternative Transaction, it being understood and agreed that in no event shall Purchaser be entitled to receive the Break-up Fee more than one time.

5.8.     Transfer of Permits.   Except for those Permits that are not transferable to Purchaser by Law, Sellers shall use commercially reasonable efforts to cause the issuance or transfer at Purchaser's expense of all Permits that relate in any way to the Assets to Purchaser. Sellers shall give and make all notices and reports Sellers are required to make to the appropriate Governmental Authorities and other Persons, each at Purchaser's expense, with respect to the Permits that relate in any way to the Assets to Purchaser at the Closing.

5.9.     Release of Encumbrances.  Sellers' obligation to deliver the Assets free and clear of any Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) shall be limited to Sellers' commercially reasonable efforts to obtain the Sale Order that provides for the delivery of the Assets free and clear of any Encumbrances (other than Permitted Encumbrances and Assumed Liabilities).   If Purchaser desires to have any Encumbrances released and discharged other than by means of the Sale Order, Purchaser, at its sole cost and expense, shall obtain such releases or discharges.

5.10.    Assignability of Certain Contracts.  To the extent that the assignment to Purchaser of any Assumed Contract pursuant to this Agreement is not permitted without the consent of a third party and such restriction cannot be effectively overridden or canceled by the Sale Order or other related Order of the Bankruptcy Court, then this Agreement will not be deemed to constitute an assignment of or an undertaking or attempt to assign such Contract or any right or interest therein unless and until such consent is obtained; provided, however, that the Parties will use their commercially reasonable efforts, before the Closing, to obtain all such consents;

-22-

provided, further, that if any such consents are not obtained prior to the Closing Date, Sellers and Purchaser will reasonably cooperate with each other in any lawful and feasible arrangement designed to provide Purchaser with the benefits and obligations of any such Contract and Purchaser shall be responsible for performing all obligations under such Contract required to be performed by Sellers on or after the Closing Date to the extent set forth in this Agreement. Notwithstanding the foregoing, Sellers shall not be obligated hereunder to incur any cost or expense relating to the actions contemplated by this Section 5.10 or to execute any guaranty, assumption of liability or other document or instrument requiring Sellers to assume any obligations.

5.11.    Rejected Contracts.    No Seller shall reject any Assumed Contract in any bankruptcy proceeding following the date of this Agreement and prior to the Closing Date without the prior written consent of Purchaser.

5.12.    Further Assurances.    Upon the request of Purchaser, each Seller shall, at Purchaser's expense, forthwith execute and deliver such documents as Purchaser or its counsel may reasonably request to effectuate the purposes of this Agreement.

## SECTION 6
## CERTAIN COVENANTS OF PURCHASER.

6.1.    Performance with Respect to the Assets and the Assumed Contracts.    Purchaser agrees that from and after the Closing Date, it shall (a) assume all Assumed Liabilities, and (b) take all actions necessary to satisfy its obligations and liabilities with respect to the Assumed Liabilities (including, without limitation, under the terms and conditions of each Assumed Contract).

6.2.    Cure Amounts.    Purchaser shall pay all Cure Amounts with respect to the Assumed Contracts in accordance with the Sale Order.

6.3.    Further Assurances.    Upon the request of Sellers, Purchaser shall, at Sellers' expense, forthwith execute and deliver such documents as Sellers or their counsel may reasonably request to effectuate the purposes of this Agreement.

## SECTION 7
## CERTAIN MUTUAL COVENANTS

7.1.    Cooperation.

(a)    Sellers, on one hand, and Purchaser, on the other hand, shall promptly give notice to the other upon becoming aware that any Action is pending or threatened by or before any Governmental Authority with respect to the Transactions. Sellers, on the one hand, and Purchaser, on the other hand, (i) shall cooperate with each other in connection with the prosecution, investigation or defense of any such Action, (ii) shall supply as promptly as reasonably practicable all information requested by the other, by any such Governmental Authority or by any party to any such Action that is legally required to be produced, and (iii) shall each use commercially reasonable efforts to cause any such

-23-

Action to be determined as promptly as reasonably practicable and in a manner which does not impact adversely on, and is consistent with, the Transactions.

(b)     After the Closing, each of Sellers and Purchaser shall use commercially reasonable efforts to provide to any other Party to this Agreement, the official committee of unsecured creditors, any trustee or other bankruptcy estate representative or fiduciary and the United States Trustee (the "Requesting Party") such records and information and to make available to the Requesting Party such employees or other personnel, in each case as may be reasonably requested in writing by the Requesting Party, for the purpose of responding to governmental inquiries, making required governmental filings or defending or prosecuting any Action or other proceeding involving any Person other than the Party providing such information or records or making available such employees or other personnel (the "Providing Party") and in resolving all claims, preparing all Tax Returns, and handling all matters necessary to administer and close the Bankruptcy Cases, including assisting the Requesting Party in winding down the bankruptcy estate of Sellers, liquidating the Excluded Assets, pursuing or processing any Action with respect to the bankruptcy estate of Sellers or the Excluded Liabilities; provided, however, that no Providing Party shall be required to (i) provide information, records or employees or other personnel under circumstances which the Providing Party believes in its sole reasonable determination may waive privilege, confidentiality or a similar protection or expose it to material liability to any Person or may prejudice any legal interest of the Providing Party, or (ii) take any action that in the Providing Party's reasonable determination unreasonably interferes with its business.  To the extent Pre-2014 Tax Benefits are received by Purchaser or any of its Affiliates at any time following the Closing, then Purchaser shall remit, or cause its Affiliates to remit, such Pre-2014 Tax Benefits to the bankruptcy estate of Sellers as promptly as reasonably practicable.

7.2.     Approvals and Filings.

(a)     Subject to the terms and conditions of this Agreement, each of the Parties shall use all reasonable best efforts to take, or cause to be taken, all action and to do, or cause to be done, all things necessary, proper or advisable under applicable Laws (including Gaming Laws) and regulations to consummate and make effective the Transactions, including using reasonable best efforts to obtain all necessary or appropriate waivers, consents and approvals (including Gaming Approvals), and effecting all necessary registrations and filings.  Purchaser shall make or cause to be made all filings and submissions under Laws (including Gaming Laws) applicable to Purchaser, if any, as may be required for the consummation of the Transactions.  Sellers shall make or cause to be made all such other filings and submissions under Laws (including Gaming Laws) applicable to any Seller, if any, as may be required for the consummation of the Transactions.  Purchaser, on the one hand, and Sellers, on the other hand, shall coordinate and cooperate in exchanging such information and reasonable assistance as may be requested by either of them in connection with the filings and submissions contemplated by this Section 7.2.  Purchaser, on the one hand, and Sellers, on the other hand, shall each promptly provide the other or their respective counsel with copies of all filings made by such Party with any Governmental Authority in connection with this Agreement and the Ancillary Agreements and the Transactions.

-24-

(b)    In furtherance and not in limitation of the provisions of <u>Section 7.2(a)</u>, Purchaser shall use all reasonable best efforts to, and agrees to cause their respective Affiliates and their respective directors, officers, partners, managers, members, principals and stockholders to, prepare and submit to the Gaming Authorities all applications and supporting documents that are necessary to obtain all required Gaming Approvals as promptly as reasonably practicable, and in any event no later than thirty (30) calendar days from the date of this Agreement.

(c)    If a Party receives a request for information or documentary material from any Governmental Authority with respect to this Agreement or any of the Transactions, including but not limited to requests for supporting, supplemental, or additional documentation from any Gaming Authority, then such Party shall use its reasonable best efforts to make, or cause to be made, as soon as reasonably practicable, a response in substantial compliance with such request.

(d)    Each of Purchaser and Sellers shall, as promptly as reasonably practicable after the date of this Agreement but in no event later than the fifth (5th) Business Day following the date hereof, make any filing required of it or any of its Affiliates under any applicable Antitrust Laws in connection with this Agreement and the transactions contemplated hereby, including with the United States Federal Trade Commission (the "<u>FTC</u>") and the United States Department of Justice (the "<u>DOJ</u>") the notification and report form, if any, required for the consummation of the Transactions.  Any such notification and report form and supplemental information shall be in substantial compliance with the requirements of the HSR Act or other applicable Antitrust Laws. Each of Purchaser and Sellers shall furnish to the other such necessary information and reasonable assistance as the other may reasonably request in connection with its preparation of any filing or submission which is necessary under the HSR Act or other applicable Antitrust Laws and shall consult and cooperate with the other, and consider in good faith the views of the other, in connection with any analyses, appearances, presentations, memoranda, briefs, arguments, opinions and proposals made or submitted by or on behalf of any Party in connection with proceedings under or relating to any Antitrust Laws.

(e)    Sellers and Purchaser shall keep each other apprised of the status of any communications with, and any inquiries or requests for additional information from, the FTC, the DOJ, the Gaming Authorities or other applicable Governmental Authority and, subject to applicable Law, if reasonably practicable, permit the other Party to review in advance any proposed written communication to the FTC, the DOJ, the Gaming Authorities or other such Governmental Authority and incorporate the other Party's reasonable comments, not agree to participate in any substantive meeting or discussion with the FTC, the DOJ, the Gaming Authorities or other such Governmental Authority in respect of any filing, investigation or inquiry concerning this Agreement or the Transactions unless, to the extent reasonably practicable, it consults with the other Party in advance and, to the extent permitted by the FTC, the DOJ, the Gaming Authorities or other applicable Governmental Authority, gives the other Party the opportunity to attend, and furnish the other Party with copies of all correspondence, filings and written communications between them and their Affiliates and their respective representatives on

-25-

one hand and the FTC, the DOJ, the Gaming Authorities or other applicable Governmental Authority or their respective staff on the other hand, with respect to this Agreement and the Transactions.  If a filing required under the Antitrust Laws is made, each of Purchaser and Sellers shall seek early termination of the waiting period under the HSR Act, use its reasonable best efforts to obtain as promptly as reasonably possible any clearance required under the HSR Act or other applicable Antitrust Laws for the consummation of the Transactions and, at the earliest reasonably practicable date comply with (or properly reduce the scope of) any formal or informal request for additional information or documentary material received by it or any of its Affiliates from any Governmental Authority having jurisdiction with respect to the transactions contemplated hereby pursuant to applicable Antitrust Laws.

(f)     Purchaser shall not, and shall cause its Affiliates not to, acquire or agree to acquire, by merging with or into or consolidating with, or by purchasing a substantial portion of the assets of or equity in, or by any other manner, any business or any corporation, partnership, association or other business organization or division thereof, or otherwise acquire or agree to acquire any assets, if the entering into of a definitive agreement relating to, or the consummation of such acquisition, merger or consolidation could reasonably be expected to: (i) impose any delay in the obtaining of, or increase the risk of not obtaining, any consents of any Governmental Authority necessary to consummate the transactions contemplated hereby or the expiration or termination of any applicable waiting period; (ii) increase the risk of any Governmental Authority entering an Order prohibiting the consummation of the transactions contemplated hereby; (iii) increase the risk of not being able to remove any such Order on appeal or otherwise; or (iv) delay or prevent the consummation of the transactions contemplated hereby.

7.3.    Public Statements.  The Parties shall consult with each other prior to issuing any press release or making any public announcement with respect to this Agreement, the Ancillary Agreements, or the Transactions (including the financial terms hereunder and thereunder), and shall not issue any such press release or public announcement without the prior written consent of the other Party, which consent shall not be unreasonably withheld, except for press releases or public announcement as may be required by Law or judicial process.  Purchaser shall not make any statement to, or otherwise communicate (whether orally or in writing) with, any employee, customer or supplier to any Seller regarding this Agreement, the Ancillary Agreements or the Transactions except for any statement or communication with respect to which Sellers shall have previously consented in writing.

7.4.    Notification of Certain Matters.  Sellers shall give prompt notice to Purchaser, and Purchaser shall give prompt notice to Sellers, of (a) any notice or other communication from any Person alleging that the consent of such Person which is or may be required in connection with the transactions contemplated by this Agreement or the Ancillary Agreements is not likely to be obtained prior to Closing, and (b) any written objection or proceeding that challenges the transactions contemplated hereby or the entry of the approval of the Bankruptcy Court.  To the extent permitted by applicable Law, Sellers shall give notice, as promptly as reasonably practicable, to Purchaser of (x) any written notice of any alleged violation of Law applicable to any Seller, and (y) the commencement of any Action by any Governmental Authority with respect to the Business.

NEWYORK 9324874

## SECTION 8
## EMPLOYEE MATTERS

8.1.  <u>Employment</u>.  Purchaser shall have no obligation to make any offers of employment to Employees; <u>provided</u>, however that in the event that Purchaser or any of its Affiliates plan to hire any employees at the Revel Casino Hotel (as may be renamed following the Closing), Purchaser agrees to consider hiring up to ninety percent (90%) of the former employees of the Business who performed the functions required by Purchaser, on a priority basis.

## SECTION 9
## CONDITIONS TO SELLERS' OBLIGATIONS

The obligations of Sellers to consummate the Transactions are subject to the satisfaction (unless waived in writing by Sellers) of each of the following conditions on or prior to the Closing Date:

9.1.  <u>Representations and Warranties</u>.  The representations and warranties of Purchaser contained in this Agreement that are not qualified by materiality or a Material Adverse Effect shall be true and correct in all material respects on and as of the Closing Date, except to the extent expressly made as of an earlier date, in which case as of such earlier date, and the representations and warranties of Purchaser contained in this Agreement that are qualified by materiality or a Material Adverse Effect shall be true and correct in all respects on and as of the Closing Date, except to the extent expressly made as of an earlier date, in which case they shall be true and correct as of such earlier date.

9.2.  <u>Compliance with Agreements</u>.  Purchaser shall have performed and complied in all material respects with all covenants and agreements under this Agreement and the Ancillary Agreements to be performed or complied with by it on or prior to the Closing Date.

9.3.  <u>Approvals; No Injunctions</u>.  The approvals set forth on <u>Section 9.3</u> of the Sellers Disclosure Letter shall have been obtained or provided by an Order of the Bankruptcy Court, including the expiration or termination of the waiting period (and each extension thereof, if any) applicable to the sale of the Assets under the HSR Act.  No Governmental Authority of competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any statute, rule, regulation or non-appealable judgment, decree, injunction or other Order that is in effect on the Closing Date and prohibits the consummation of the Closing.

9.4.  <u>Purchaser's Closing Deliveries and Obligations</u>.  Purchaser shall have delivered all items and satisfied all obligations pursuant to <u>Sections 11.1(b)</u> and <u>11.1(b)</u>.

9.5.  <u>Entry of the Sale Order</u>.  The Bankruptcy Court shall have entered the Sale Order.

NEWYORK 9324874

## SECTION 10
## CONDITIONS TO PURCHASER'S OBLIGATIONS

The obligation of Purchaser to consummate the Transactions is subject to the satisfaction (unless waived in writing by Purchaser) of each of the following conditions on or prior to the Closing Date:

10.1.   <u>Representations and Warranties</u>.   The representations and warranties of Sellers contained in this Agreement shall be true and correct (without giving effect to any "material", "Material Adverse Effect" or similar qualifiers contained in any of such representations and warranties) on and as of the Closing Date, except to the extent expressly made as of an earlier date, in which case as of such earlier date, except, in each case, where the failure of such representations and warranties to be true and correct would not reasonably be expected to have a Material Adverse Effect.

10.2.   <u>Compliance with Covenants and Agreements</u>.   Each Seller shall have performed and complied in all material respects with all covenants and agreements under this Agreement and the Ancillary Agreements to be performed or complied with by it on or prior to the Closing Date.

10.3.   <u>Approvals; No Injunctions</u>.   The approvals and Permits set forth on <u>Section 9.3</u> of the Sellers Disclosure Letter shall have been obtained or provided by an Order of the Bankruptcy Court, including the expiration or termination of the waiting period (and each extension thereof, if any) applicable to the sale of the Assets under the HSR Act.   No Governmental Authority of competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any statute, rule, regulation or non-appealable judgment, decree, injunction or other Order that is in effect on the Closing Date and prohibits the consummation of the Closing.

10.4.   <u>Sellers' Closing Deliveries and Obligations</u>.   Each Seller shall have delivered all items and satisfied all obligations pursuant to <u>Section 11.1(a)</u>.

10.5.   <u>Entry of the Sale Order</u>.   The Bankruptcy Court shall have entered the Sale Order.

10.6.   <u>Assumed Contracts</u>.   The Bankruptcy Court shall have approved and authorized the assumption and assignment of the Assumed Contracts set forth on <u>Section 10.6</u> of the Sellers Disclosure Letter.

## SECTION 11
## CLOSING; TERMINATION

11.1.   <u>The Closing</u>.   The Closing of the purchase by Purchaser from Sellers and sale by Sellers to Purchaser of the Assets (the "<u>Closing</u>") shall be held on the second (2nd) Business Day after the satisfaction or waiver of the conditions set forth in <u>Sections</u> 9 and <u>10</u> of this Agreement (excluding those conditions which by their nature are to be satisfied as part of the Closing), or at such other time as the Parties may agree (the "<u>Closing Date</u>").   The Closing shall be held at the offices of White & Case LLP, 1155 Avenue of the Americas, New York, NY 10036 or at such other location as the Parties may agree.   At the Closing, all of the Transactions shall be deemed

-28-

to be consummated on a concurrent and simultaneous basis. The Closing shall be effective as of 12:01 a.m. New York City time on the Closing Date.

(a)   Sellers' Deliveries at Closing.   At the Closing, Sellers shall deliver (or cause to be delivered) to Purchaser the following:

(i)   the duly executed Assignment and Assumption Agreement;

(ii)   the duly executed Bill of Sale;

(iii)   the duly executed Assignment of Intellectual Property;

(iv)   a certified copy of the Sale Order and case docket reflecting that the Sale Order is in effect;

(v)   a copy of resolutions of the governing body of each Seller approving and authorizing the Transactions;

(vi)   officer's certificates, executed by a duly authorized officer of each Seller to the effect that all conditions to Closing set forth in Section 10.1 and Section 10.2 have been satisfied or waived;

(vii)   affidavits executed by each Seller organized under the laws of the United States stating that such Seller is not a "foreign person" within the meaning of Section 1445(f)(3) of the Code;

(viii)   a "bargain and sale" deed relating to all real property acquired as part of the Purchased Assets; and

(ix)   such other documents as Purchaser or its counsel shall reasonably require in order to effect the Transactions.

(b)   Purchaser's Payment of Purchase Price.   At the Closing, Purchaser shall deliver (or cause to be delivered) the cash portion of the Purchase Price consisting Ninety One Million Dollars ($91,000,000) with the Purchaser Installment Payments to be made to Sellers (or Sellers' designated estate representative) following the Closing in accordance with Section 2.5, less the Purchaser Deposit Amount, together with all accrued interest and investment income thereon (which shall be released by Parent to Sellers in accordance with Section 2.6).

(c)   Purchaser's Deliveries to Sellers at Closing.   At the Closing, Purchaser shall deliver (or cause to be delivered) to Sellers the following:

(i)   the duly executed Assignment and Assumption Agreement;

(ii)   a copy of resolutions of the governing body of Purchaser approving and authorizing the Transactions;

-29-

(iii)    a certificate, executed by a duly authorized officer of Purchaser, to the effect that all conditions to Closing set forth in <u>Section 9.1</u> and <u>Section 9.2</u> have been satisfied or waived; and

(iv)    such other documents as Sellers or their counsel shall reasonably require in order to effect the Transactions.

11.2.   <u>Termination</u>. Anything in this Agreement to the contrary notwithstanding, this Agreement and the Transactions may be terminated in any of the following ways at any time before the Closing and in no other manner, subject to the provisions hereof:

(a)    at any time by mutual written consent of Purchaser and Sellers;

(b)    by Purchaser, if the Closing shall not have occurred on or before the date that is thirty (30) days following the date the Sale Order is entered by the Bankruptcy Court or such later date as Sellers and Purchaser agree or is necessary due solely to the scheduling and availability of the Bankruptcy Court (the "<u>Termination Date</u>"); <u>provided, however</u>, that Purchaser may not terminate this Agreement pursuant to this <u>Section 11.2(b)</u> if the Closing shall not have occurred on or before the Termination Date due to a breach of any representations, warranties, covenants or agreements contained in this Agreement by Purchaser;

(c)    by Sellers, if Purchaser is in breach of any of its representations or is in violation or default of any of its covenants or agreements in this Agreement, which would result in a failure of a condition set forth in <u>Section 9</u> and which breach, violation or default is incapable of being cured or if such breach, violation or default has not been cured or waived within twenty (20) days following receipt of written notice from Sellers specifying, in reasonable detail, such claimed breach, violation or default and demanding its cure or satisfaction; <u>provided, however</u>, that Sellers (i) are not themselves in material breach of any of their representations, warranties or covenants contained herein, in the Bid Procedures Order or Sale Order, (ii) send a notice of termination and (iii) specify in such notice of termination the representation, warranty or covenant contained herein, in the Bid Procedures Order or the Sale Order of which Purchaser is allegedly in material breach;

(d)    by Purchaser, if Sellers are in breach of any of their representations or is in violation or default of any of its covenants or agreements in this Agreement, which would result in a failure of a condition set forth in <u>Section 10</u> and which breach, violation or default is incapable of being cured or if such breach, violation or default has not been cured or waived within twenty (20) days following receipt of written notice from Purchaser specifying, in reasonable detail, such claimed breach, violation or default and demanding its cure or satisfaction; <u>provided, however</u>, that Purchaser (i) is not itself in material breach of any of their representations, warranties or covenants contained herein, in the Bid Procedures Order or Sale Order, (ii) sends a notice of termination and (iii) specifies in such notice of termination the representation, warranty or covenant contained herein, in the Bid Procedures Order or the Sale Order of which a Seller or Sellers are allegedly in material breach;

-30-

(e) by Sellers or Purchaser, if there shall be in effect a final non-appealable Order of a Governmental Authority of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the Transactions, it being agreed that the Parties shall as promptly as reasonably practicable appeal any adverse determination which is not non-appealable (and pursue such appeal with reasonable diligence); provided, that the Party seeking to terminate pursuant to this Section 11.2(e) shall have complied with its obligations, if any, under Section 7.1 and/or Section 7.2 in connection with such Law or Order;

(f) by Purchaser, if, as a result of an Order of the Bankruptcy Court, the Bankruptcy Cases are converted to Chapter 7 and a Chapter 7 trustee is appointed with respect to Sellers;

(g) by Purchaser, if any secured creditor of any Seller obtains relief from the stay to foreclose on or enforce its rights against any material portion of the Assets;

(h) by Sellers, if Parent's Board of Directors determines based upon consultation with Sellers' counsel that proceeding with the Transaction as contemplated herein would be inconsistent with its fiduciary duties under applicable Law in light of any material event, change, development or occurrence arising after the date of this Agreement that was not known to Parent's Board of Director;

(i) by Sellers, if the Closing shall not have occurred on or before the Termination Date; provided, however, that Sellers may not terminate this Agreement pursuant to this Section 11.2(i) if the Closing shall not have occurred on or before the Termination Date due to a breach of any representations, warranties, covenants or agreements contained in this Agreement by Sellers; or

(j) automatically upon consummation of the Alternative Transaction in accordance with Section 5.7.

11.3. Effects of Termination. If this Agreement is terminated pursuant to Section 11.2, this Agreement (other than Section 2.6 (Purchaser Deposit), Section 5.7 (Sale Order), this Section 11.3 (Effects of Termination), Section 13 (Expenses, Attorneys' Fees and Brokers' Fees), Section 14.6 (Governing Law; Jurisdiction), Section 14.11 (Negotiated Agreement), Section 14.12 (Notices) and Section 14.14 (Specific Performance), each of which shall remain in full force and effect) shall forthwith become null and void and no Party shall have any liability or further obligation to any other Party, except (i) as provided in Section 5.7, this Section 11.3 and Section 14.14 of this Agreement and (ii) that nothing herein will relieve or release any Party from liability arising from any material breach by such Party of this Agreement prior to such termination. If this Agreement is terminated as provided herein, each Party shall redeliver all documents, work papers and other material of any other Party relating to the Transactions, whether obtained before or after the execution hereof, in accordance with the terms of the Confidentiality Agreement.

11.4. Frustration of Closing Conditions. Neither Sellers nor Purchaser may rely on the failure of any condition set forth in Section 9, Section 10 or any right of termination under

-31-

Section 11.2, as the case may be, if such failure was caused by such Party's failure to comply with any provision of this Agreement.

## SECTION 12
## TAXES

12.1.  <u>Taxes Related to Purchase of Assets</u>.  Purchaser shall be solely responsible for the payment of any state and local sales, transfer, recording, stamp or other similar transfer taxes (collectively "<u>Transaction Taxes</u>") that may be imposed by reason of the sale, transfer, assignment and delivery of the Assets and not exempted under the Sale Order, along with any recording and filing fees.  Purchaser and Sellers agree to cooperate to determine the amount of Transaction Taxes payable in connection with the Transactions.  Sellers shall, within five (5) days of the date of this Agreement, file a motion with the Court for an Order exempting Sellers from the obligation to pay the New Jersey State Transfer Tax and any similar State transfer tax or documentary tax stamp in connection with the sale and transfer of the Assets from Sellers to Purchaser.  At the Closing, Purchaser shall remit to Sellers such properly completed resale exemption certificates and other similar certificates or instruments as are applicable to claim available exemptions from the payment of sales, transfer, use or other similar Taxes under applicable Law.  Purchaser and Sellers shall cooperate in preparing such forms and shall execute and deliver such affidavits and forms as are reasonably requested by the other Party.

12.2.  <u>Cooperation</u>.  Purchaser and Sellers agree to furnish or cause to be furnished to each other, as promptly as reasonably practicable, such information and assistance relating to the Assets as is reasonably necessary for the preparation and filing of any Tax Return, for the preparation for and proof of facts during any Tax audit, for the preparation for any Tax protest, for the prosecution or defense of any suit or other proceeding relating to Tax matters and for the answer of any governmental or regulatory inquiry relating to Tax matters.  Purchaser agrees to retain possession of all Tax files, books and records delivered to Purchaser by Sellers for a period of at least five (5) years from the Closing Date.  If Purchaser determines to destroy or discard any of such files, books or records after the end of such five (5) year period, Purchaser shall give Sellers reasonable notice thereof and shall allow Sellers to take possession of such files, books and records at Sellers' expense.  From and after the Closing Date, Purchaser agrees that it shall provide reasonable access to Sellers and their attorneys, accountants and other representatives (after reasonable notice and during normal business hours and without charge) to such files, books and records as Sellers may reasonably deem necessary to prepare for, file, prove, answer, prosecute or defend any claim, suit, inquiry or other proceeding, related to Taxes in connection with the Assets.

## SECTION 13
## EXPENSES, ATTORNEYS' FEES AND BROKERS' FEES

13.1.  <u>Expenses</u>.  Each Party shall be responsible for the payment of its own attorneys', brokers' and other fees and expenses in connection with the Transactions.

NEWYORK 9324874

**SECTION 14**
**MISCELLANEOUS**

14.1. <u>Sale of Assets Subject to Bankruptcy Court Approval</u>. This Agreement, the sale of the Assets hereunder, and Sellers' obligations and ability to perform under this Agreement is conditioned and contingent upon Bankruptcy Court entry of the Sale Order. Sellers shall use their commercially reasonable efforts to obtain entry of the Sale Order at the Sale Hearing.

14.2. <u>Survival of Representations and Warranties and Covenants</u>. Until the Closing, all representations and warranties herein or in any Ancillary Agreement shall be operative and in full force and effect. All representations and warranties and covenants contained herein or in any Ancillary Agreement shall terminate and shall not survive the Closing, except that covenants that by their terms are to be performed after Closing shall survive Closing in accordance with their terms, including without limitation those contained in <u>Sections 5.1</u>, <u>5.2</u>, <u>5.7</u>, <u>5.12</u>, <u>Section 6</u>, <u>Section 7</u>, <u>Section 8</u>, <u>Section 12</u>, and <u>Section 13</u>.

14.3. <u>Entirety of Agreement; Amendments and Waivers</u>. This Agreement, the Sellers Disclosure Letter (including all schedules and exhibits hereto and thereto), together with the Ancillary Agreements and certificates delivered hereunder, state the entire agreement of the Parties with respect to the subject matter hereof, merge all prior negotiations, agreements and understandings, if any, and state in full all representations, warranties, covenants and agreements which have induced this Agreement. Each of Sellers and Purchaser otherwise makes no other representations or warranties including any implied representations or warranties. Each Party agrees that in dealing with third parties no contrary representations shall be made. This Agreement can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument making specific reference to this Agreement signed by the Party against whom enforcement of any such amendment, supplement, modification or waiver is sought. The waiver by any Party of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any other or subsequent breach. No failure on the part of any Party to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such Party preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

14.4. <u>Assignment</u>. Neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any of the Parties without the prior written consent of the other Party except, in the case of Purchaser, this Agreement and the rights, interests and obligations may be assigned to a newly formed corporation or limited liability company of which Glenn F. Straub is the sole shareholder without the consent of Sellers as long as such entity becomes a party to this Agreement and agrees to be bound by the representations, warranties, covenants and obligations herein and Purchaser guaranties such entity's obligations. No Party shall be relieved of any liability or obligations hereunder in respect of any assignment pursuant to this <u>Section 14.4</u>, unless such assignor has received a written release expressly excepting such assignor from any liability that may arise hereunder.

14.5. <u>Successors and Assigns; No Third Party Beneficiaries</u>. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted

NEWYORK 9324874

assigns. This Agreement shall not confer any rights or remedies upon any Person other than the Parties and their respective heirs, personal representatives, legatees, successors and permitted assigns.

14.6.  Governing Law; Jurisdiction.  This Agreement shall be governed by, and construed and enforced in accordance with, the Laws of the State of New York applicable to contracts made and to be entirely performed therein, except to the extent that such Laws are superseded by the Bankruptcy Code.  In the event of any controversy or claim arising out of or relating to this Agreement or the breach or alleged breach hereof, each of the Parties irrevocably (a) submits to the exclusive jurisdiction of the Bankruptcy Court, (b) waives any objection which it may have at any time to the laying of venue of any Action or proceeding brought in the Bankruptcy Court, (c) waives any claim that such Action or proceeding has been brought in an inconvenient forum, and (d) agrees that service of process or of any other papers upon such Party by registered mail at the address to which notices are required to be sent to such Party under Section 14.12 shall be deemed good, proper and effective service upon such Party.

14.7.  Gender and Number.  In this Agreement, words importing the singular include the plural and vice versa and words importing a specific gender include all genders.

14.8.  Headings.  The division of this Agreement into Sections and the insertion of headings are for convenience of reference only and shall not affect the construction or interpretation of this Agreement.

14.9.  Construction.  In this Agreement (a) words denoting the singular include the plural and vice versa, (b) "it" or "its" or words denoting any gender include all genders, (c) the word "including" shall mean "including without limitation," whether or not expressed, (d) any reference to a statute shall mean the statute and any regulations thereunder in force as of the date of this Agreement or the Closing Date, as applicable, unless otherwise expressly provided, (e) any reference herein to a Section or Exhibit refers to a Section of, or Exhibit to, this Agreement, unless otherwise stated and (f) when calculating the period of time within or following which any act is to be done or steps taken, the date which is the reference day in calculating such period shall be excluded and if the last day of such period is not a Business Day, then the period shall end on the next day which is a Business Day.

14.10.  Severability.  If any one or more of the provisions contained in this Agreement or in any other instrument referred to herein, shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, then to the maximum extent permitted by applicable Law, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement or any other such instrument.

14.11.  Negotiated Agreement.  Each of Sellers and Purchaser acknowledges that it has been advised and represented by counsel in the negotiation, execution and delivery of this Agreement and accordingly agrees that, if an ambiguity exists with respect to any provision of this Agreement, such provision shall not be construed against any party because such party or its representatives drafted such provision.

-34-

14.12. Notices. All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given or made as follows: (a) if sent by registered or certified mail in the United States return receipt requested, upon receipt; (b) if sent designated for overnight delivery by nationally recognized overnight air courier (such as Federal Express), one Business Day after delivery to such courier; (c) if sent by electronic mail or facsimile transmission before 5:00 p.m. in New York, when transmitted and receipt is confirmed; (d) if sent by electronic mail or facsimile transmission after 5:00 p.m. in New York and receipt is confirmed, on the following Business Day; and (e) if otherwise actually personally delivered, when delivered, provided that such notices, requests, demands and other communications are delivered to the address set forth below, or to such other address as any Party shall provide by like notice to the other Parties to this Agreement:

Purchaser:

POLO NORTH COUNTRY CLUB, INC.
11199 Polo Club Road
Wellington, Florida 33414
Attn: Glenn F. Straub, President
Tel: (561) 596-9500
E-mail: straubpolo@aol.com

With a copy to:

THE GALLE LAW GROUP, P.A.
13501 South Shore Blvd., Suite 103
Wellington, Florida 33414
Attn: Craig T. Galle, Esq.
Tel: (561) 798-1708
Fax: (561) 798-1709
Email: pololawyer@aol.com

Sellers:

Revel AC, Inc.
500 Boardwalk
Atlantic City, New Jersey 08401
Email: skreeger@revelentertainment.com
tglebocki@revelentertainment.com
lpickus@revelentertainment.com
smartin@winterharborco.com
Facsimile: (609) 572 - 6608
Attn: Scott Kreeger
Terry Glebocki
Loretta Pickus
Shaun Martin

-35-

|                                              |                                                     |
| -------------------------------------------- | --------------------------------------------------- |
| with a copy to (which shall not constitute notice): | White & Case LLP |

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036
Email: mpierce@whitecase.com
    jcunningham@whitecase.com
    cgong@whitecase.com
    rkebrdle@whitecase.com
Facsimile: (212) 354-8113
Attn: Morton A. Pierce, Esq.
    John K. Cunningham, Esq.
    Chang-Do Gong, Esq.
    Richard Kebrdle, Esq.

And a copy to (which shall not constitute notice):

Fox Rothschild LLP
1301 Atlantic Avenue
Suite 400 Midtown Building
Atlantic City, NJ 08401-7212
Email: ncasiello@foxrothschild.com
    mviscount@foxrothschild.com
Fax: 609.348.6834
Attn: Nicholas Casiello, Jr., Esq.
    Michael Viscount, Esq.

Any Party may change its address for service from time to time by notice given to other Parties in accordance with the foregoing.

14.13. Counterparts; Facsimile Copies. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Signed facsimile or other electronic copies of this Agreement shall legally bind the Parties to the same extent as original documents.

14.14. Specific Performance. (a) Sellers acknowledge that Purchaser would be damaged irreparably in the event that this Agreement is not performed by Sellers in accordance with its specific terms or is otherwise breached, or threatened to be breached, by Sellers or Sellers fail to consummate the Closing as required hereunder and that, in addition to any other remedy that Purchaser may have under Law or equity as a remedy for any such breach or threatened breach, Purchaser shall be entitled to equitable relief, without proof of actual damages, including an injunction or injunctions or Orders for specific performance to prevent breaches of the terms of this Agreement and to enforce specifically the terms and provisions hereof that are required to be performed by Sellers (including any Order sought by Purchaser to cause Sellers to perform their agreements and covenants contained in this Agreement or any Ancillary Agreement).

(a) In the event that this Agreement is not performed by Purchaser in accordance with its specific terms or is otherwise breached, or threatened to be breached, by Purchaser or Purchaser fails to consummate the Closing as required hereunder, Sellers' sole and exclusive remedy shall be their right to retain the Purchaser Deposit Amount.

-36-

NEWYORK 9324874

(b)      Sellers and Purchaser further agree that no other Party or any other Person shall be required to obtain, furnish or post any bond or similar instrument in connection with or as a condition to obtaining any remedy referred to in this Section 14.14, and each Party (i) irrevocably waives any right it may have to require the obtaining, furnishing or posting of any such bond or similar instrument and (ii) agrees to cooperate fully in any attempt by the other Party or Parties in obtaining such equitable relief.   Each Party further agrees that the only permitted objection that it may raise in response to any Action for equitable relief is that it contests the existence of a breach or threatened breach of this Agreement.

**[Remainder of Page Intentionally Left Blank]**

NEWYORK 9324874

**IN WITNESS WHEREOF**, the Parties have duly executed and delivered this Agreement as of the date first above written.

**<u>SELLERS</u>**:

**REVEL AC, INC.**

By: _____
Name:  Terry Glebocki
Title: Chief Financial Officer

**REVEL AC, LLC**

By: _____
Name:  Terry Glebocki
Title: Authorized Person

**REVEL ATLANTIC CITY, LLC**

By: _____
Name:  Terry Glebocki
Title: Authorized Person

**REVEL ENTERTAINMENT GROUP, LLC**

By: _____
Name:  Terry Glebocki
Title: Authorized Person

[Signature Page to Asset Purchase Agreement]

**NB ACQUISITION, LLC**

By: _____

Name:  Terry Glebocki
Title: Authorized Person

**SI LLC**

By: _____

Name:  Terry Glebocki
Title: Authorized Person

[Signature Page to Asset Purchase Agreement]

**PURCHASER:**

**POLO NORTH COUNTRY CLUB, INC.**

By: _____
Name: Glenn F. Straub
Title: President

[Signature Page to Asset Purchase Agreement]

Case 14-22654-MBK Doc 1387-4 Filed 01/08/15 Entered 01/08/15 17:25:20 Desc Main
Exhibit D (Back Up Bid APA) Page 46 of 128

Case 14-22654-RMB Doc 707-4 Filed 10/02/14 Entered 10/02/14 25:30:54 Desc
Document Page 70 of 152

## Exhibit A

## Form of Assignment and Assumption Agreement

See attached.

# ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Assignment") is made and entered into on this [●] day of [●], by and among Polo North Country Club, Inc., a corporation formed under the laws of Florida ("Purchaser"), Revel AC, Inc., a corporation formed under the laws of Delaware ("Parent"), and Parent's direct and indirect Subsidiaries listed on the signature pages hereto (collectively with Parent, "Sellers", and together with Purchaser, the "Parties").

WHEREAS, pursuant to that certain Asset Purchase Agreement, dated as of September 30, 2014 (the "Asset Purchase Agreement"), by and among Purchaser and Sellers, Sellers, among other things, have agreed to (i) sell, convey, transfer, assign and deliver to Purchaser and Purchaser has agreed to purchase, acquire and accept from Sellers the Assets, including the Assumed Contracts, and (ii) assume the Assumed Liabilities; and

WHEREAS, the Bankruptcy Court entered the Sale Order on [●], which authorized the sale of the Assets to, and the assumption of the Assumed Liabilities by, Purchaser.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and pursuant to the terms and subject to the conditions of the Asset Purchase Agreement, the Parties hereto agree as follows:

1.      Capitalized terms used herein but not otherwise defined in this Assignment shall have the meanings ascribed to such terms in the Asset Purchase Agreement.

2.      Effective as of the date hereof, (a) Sellers hereby sell, convey, transfer, assign and deliver to Purchaser and Purchaser's successors and assigns all of the right, title and interest of Sellers in and to the Assets, including the Assumed Contracts set forth on Exhibit 1 hereto, free and clear of all Encumbrances (other than Permitted Encumbrances and Assumed Liabilities) and (b) Purchaser hereby accepts the foregoing sale, conveyance, transfer, assignment and delivery and expressly assumes and agrees to pay, discharge and perform all of the Assumed Liabilities, including the obligations and Liabilities of Sellers arising under the Assumed Contracts as and when the same shall become due. Notwithstanding the foregoing, nothing in this Assignment shall constitute or be construed as selling, assigning, transferring, conveying or delivering to Purchaser, and Purchaser shall not acquire hereby, any right, title or interest to or in any of the Excluded Assets, and Purchaser is not assuming or in any way becoming liable or responsible for any of the Excluded Liabilities.

3.      This Assignment is expressly made subject to the terms and conditions of the Asset Purchase Agreement. The delivery of this Assignment shall not affect, alter, enlarge, diminish or otherwise impair any of the representations, warranties, covenants, conditions, indemnities, terms or provisions of the Asset Purchase Agreement, which

shall survive the delivery of this Agreement to the extent, and in the manner, set forth in the Asset Purchase Agreement. If any conflict exists between the terms of this Assignment and the terms of the Asset Purchase Agreement, the terms of the Asset Purchase Agreement shall govern and control.

4.        This Assignment and the covenants and agreements herein contained shall inure to the benefit of and shall bind the respective parties hereto and their respective successors and permitted assigns.

5.        This Assignment shall be governed by and construed and enforced in accordance with the Laws of the State of New York, except to the extent that such Laws are superseded by the Bankruptcy Code.

6.        This Assignment may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. Counterparts of this Assignment (or applicable signature pages hereof) that are manually signed and delivered by facsimile or other electronic transmission shall be deemed to constitute signed original counterparts hereof and shall bind the parties signing and delivering in such manner.

7.        This Assignment may only be modified by a written agreement duly signed by the Parties hereto.

8.        The Parties hereto agree that the assignment of each of the Assumed Contracts shall be construed as being separable and divisible from the assignment of every other Assumed Contract. The unenforceability or invalidity of this Assignment with respect to any one Assumed Contract shall not limit the enforceability or validity, in whole or in part, with respect to any other Assumed Contract.

9.        The Parties hereto agree to execute and deliver such further documentation, instruments, and the like and to take such further action as is reasonably required to carry out the intentions or to facilitate the performance of the terms of this Assignment.

*[signature page follows]*

2

 

 

**IN WITNESS WHEREOF**, the Parties have duly executed and delivered this Assignment as of the date first written above.

<u>**SELLERS**</u>:

 

**REVEL AC, INC.**

 

By: _____
Name:
Title:

 

**REVEL AC, LLC**

 

By: _____
Name:
Title: Authorized Person

 

**REVEL ATLANTIC CITY, LLC**

 

By: _____
Name:
Title: Authorized Person

 

**REVEL ENTERTAINMENT GROUP, LLC**

 

By: _____
Name:
Title: Authorized Person

 

[Signature Page to Assignment and Assumption Agreement]

**NB ACQUISITION, LLC**

By: _____

Name:

Title: Authorized Person


**SI LLC**

By: _____

Name:

Title: Authorized Person


[Signature Page to Assignment and Assumption Agreement]

**PURCHASER:**


**POLO NORTH COUNTRY CLUB, INC.**


By: _____
Name:
Title:


[Signature Page to Assignment and Assumption Agreement]

**Exhibit 1**

Assumed Contracts

See attached.

Case 14-22654-MBK Doc 1387-4 Filed 01/08/15 Entered 01/08/15 17:25:30 Desc Main
Exhibit D (Back-Up Bid APA) Page 53 of 128

Case 14-22654-RMB Doc 707-4 Filed 10/02/14 Entered 10/02/14 21:30:54 Desc
Document Page 77 of 152

**Exhibit B**

**Form of Intellectual Property Assignment Agreement**

See attached.

Case 14-22654-GMB   Doc 1307-4   Filed 01/08/15   Entered 01/08/15 17:25:30   Desc Main
Exhibit D (Back-Up Bid APA)   Page 54 of 128

Case 14-22654-GMB   Doc 787-4   Filed 10/02/14   Entered 10/02/14 21:30:54   Desc
Document   Page 78 of 152

EXHIBIT B

# <u>CONFIRMATION OF TRADEMARK ASSIGNMENT</u>

THIS CONFIRMATION OF ASSIGNMENT OF TRADEMARKS, dated as of [●] (this "<u>Assignment</u>"), is made by Revel AC, Inc., a corporation formed under the laws of Delaware ("<u>Parent</u>"), and Parent's direct and indirect Subsidiaries listed on the signature pages hereto (collectively with Parent, "<u>Assignors</u>"), in favor of Polo North Country Club, Inc. ("<u>Assignee</u>"), a corporation formed under the laws of Florida.

<u>W I T N E S S E T H</u>:

WHEREAS, Assignors and Assignee have entered into that certain Asset Purchase Agreement, dated as of September 30, 2014 (the "<u>Asset Purchase Agreement</u>") and that certain Bill of Sale, dated as of [●] (the "<u>Bill of Sale</u>"), pursuant to which Assignors have assigned certain assets to Assignee, including the registered trademarks and trademark applications listed on <u>Schedule A</u> attached hereto (the "<u>Marks</u>"), on the terms and conditions contained therein; and

WHEREAS, the Bankruptcy Court entered the Sale Order on [●], which authorized the sale of the Assets to, and the assumption of the Assumed Liabilities by, Assignee.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and pursuant to the terms and subject to the conditions of the Asset Purchase Agreement, the parties hereto agree as follows:

1.      Capitalized terms used herein but not otherwise defined in this Assignment shall have the meanings ascribed to such terms in the Asset Purchase Agreement.

2.      Assignors hereby confirm that they have sold, granted, conveyed, assigned, and set over unto Assignee, its successors, legal representatives, and assigns, on an exclusive basis all of their right, title and interest in and to the Marks, including the goodwill of the businesses with which the Marks are associated, and to all of the assets, properties, contracts, rights and obligations relating thereto, including without limitation, any renewals and/or extensions thereof, for all territories of the world in perpetuity, and further including all income, royalties, and damages now and hereafter due and/or payable to Assignee, including without limitation, damages and payments for past or future infringements and misappropriations thereof, all rights to sue for past, present and future infringements or misappropriations thereof, and all rights corresponding to any of the above throughout the world.  The parties agree that the terms and conditions of this Assignment, including this Section 2, are more fully set forth in the Asset Purchase Agreement, the terms and conditions which are incorporated herein.

3.      Assignors hereby authorize and request the Register of the United States Patent and Trademark Office, and any official of any country or countries foreign to the United States, whose duty is to issue trademark registrations or other evidence or

forms of industrial property protection on applications as aforesaid, to issue the same to the Assignee, its successors, legal representatives and assigns, with respect to the Marks in accordance with the terms of this instrument.

       4.     Assignors hereby agree to execute upon the request of Assignee such additional instruments, documents and papers as are necessary to continue, secure, defend, register and otherwise give full effect to and to perfect the rights of Assignee under this Assignment in and to the Marks, including all documents necessary to register in the name of Assignee the assignment of the Marks with the United States Patent and Trademark Office, and with respect to any equivalent foreign rights, with any other appropriate trademark office or registrar.

       5.     This Assignment shall be governed by, and construed and enforced in accordance with, the Laws of the State of New York, except to the extent that such Laws are superseded by the Bankruptcy Code.

       6.     This Assignment may be executed in any number of counterparts, each of which shall be an original, but such counterparts shall together constitute but one and the same instrument. Facsimile transmission of any signed original counterpart and/or retransmission of any signed facsimile transmission shall be deemed the same as the delivery of an original.

*[signature page follows]*

2

      **IN WITNESS WHEREOF**, the parties have duly executed and delivered this
Assignment as of the date first written above.

**SELLERS**:

**REVEL AC, INC.**

By: _____
Name:
Title:

**REVEL AC, LLC**

By: _____
Name:
Title: Authorized Person

**REVEL ATLANTIC CITY, LLC**

By: _____
Name:
Title: Authorized Person

**REVEL ENTERTAINMENT GROUP,
LLC**

By: _____
Name:
Title: Authorized Person

**NB ACQUISITION, LLC**


By: _____
Name:
Title: Authorized Person


**SI LLC**


By: _____
Name:
Title: Authorized Person

**PURCHASER**


**POLO NORTH COUNTRY CLUB, INC.**


By: _____
Name:
Title:

Case 14-22654-MBK Doc 767-4 Filed 10/02/14 Entered 10/02/14 21:30:54 Desc
Document Page 83 of 152

## SCHEDULE A

### Registered Trademarks and Trademark Applications

| Jurisdiction | Mark | Owner | Application Date | Application No. | Registration Date | Registration No. | Status | Class(es) |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

**Exhibit C**

**Form of Bill of Sale**

See attached.

Case 14-22654-MBK Doc 1387-4 Filed 01/08/15 Entered 01/08/15 17:25:20 Desc Main
Document Page 61 of 128
Case 14-22654-GMB Doc 707-4 Filed 10/02/14 Entered 10/02/14 21:30:54 Exhibit
Exhibit D (Back-Up Bid APA) Page 85 of 152

EXHIBIT C

# BILL OF SALE

THIS BILL OF SALE (this "Bill of Sale") is made and entered into on this [●] day of [●], by and among Polo North Country Club, Inc., a corporation formed under the laws of Florida ("Purchaser"), Revel AC, Inc., a corporation formed under the laws of Delaware ("Parent"), and Parent's direct and indirect Subsidiaries listed on the signature pages hereto (collectively with Parent, "Sellers", and together with Purchaser, the "Parties").

WHEREAS, pursuant to that certain Asset Purchase Agreement, dated as of September 30, 2014 (the "Asset Purchase Agreement"), by and among Purchaser and Sellers, (i) Sellers have agreed to sell, convey, transfer, assign and deliver the Assets to Purchaser and (ii) Purchaser has agreed to purchase, acquire and accept the Assets from Sellers; and

WHEREAS, the Bankruptcy Court entered the Sale Order on [●], which authorized the sale of the Assets to Purchaser.

NOW, THEREFORE, pursuant to the terms and subject to the conditions of the Asset Purchase Agreement and in consideration of the mutual promises it contains, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Sellers hereby agree as follows:

1.     Defined Terms.  Capitalized terms used herein but not otherwise defined in this Bill of Sale shall have the meanings ascribed to such terms in the Asset Purchase Agreement.

2.     Transfer of Assets.  Effective as of the date hereof, Sellers do, to the extent provided in the Asset Purchase Agreement, hereby sell, convey, transfer, assign and deliver to Purchaser, and each of Purchaser's respective successors and assigns, and Purchaser does hereby accept at and as of the date hereof, all of Sellers' right, title and interest in the Assets, free and clear of all Encumbrances (other than Permitted Encumbrances and Assumed Liabilities).

3.     Excluded Assets.  Notwithstanding anything herein to the contrary, nothing in this Bill of Sale shall constitute or be construed as selling, assigning, transferring, conveying or delivering to Purchaser, and Purchaser shall not acquire hereby, any right, title or interest to or in any of the Excluded Assets.

4.     Asset Purchase Agreement Controls.  This Bill of Sale is expressly made subject to the terms and provisions of the Asset Purchase Agreement.  The delivery of this Bill of Sale shall not affect, alter, enlarge, diminish or otherwise impair any of the representations, warranties, covenants, conditions, indemnities, terms or provisions of the Asset Purchase Agreement which shall survive the delivery of this Bill of Sale to the extent, and in the manner, set forth in the Asset Purchase Agreement.  If any conflict exists between the terms of this Bill of Sale and the terms of the Asset Purchase Agreement, the terms of the Asset Purchase Agreement shall govern and control.

5.     Governing Law.  This Bill of Sale shall be governed by and construed and enforced in accordance with the Laws of the State of New York, except to the extent that such Laws are superseded by the Bankruptcy Code.

6.     <u>Successors and Assigns</u>. This Bill of Sale shall be binding upon Sellers and Sellers' successors and assigns and shall inure to the benefit of Purchaser and Purchaser's successors and assigns.

7.     <u>Counterparts</u>.  This Bill of Sale may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

8.     <u>Amendment and Waiver</u>.  This Bill of Sale may not be amended or modified in any manner other than by an agreement in writing signed by the Parties or their respective successors or permitted assigns.  No waiver under this Bill of Sale shall be valid or binding unless set forth in a writing duly executed and delivered by the Party against whom enforcement of such waiver is sought.  Neither the waiver by any of the Parties of a breach or default under any of the provisions of this Bill of Sale, nor the failure by any of the Parties, on one or more occasions, to enforce any of the provisions of this Bill of Sale or to exercise any right or privilege hereunder, shall be construed as a waiver of any other breach or default of a similar nature, or as a waiver of any of such provisions, rights or privileges hereunder.

9.     <u>Notice</u>. Any notice given pursuant to this Bill of Sale shall be given in the same manner as stated in Section 14.12 of the Asset Purchase Agreement.

*[Signature Page Follows]*

2

IN WITNESS WHEREOF, the Parties have duly executed and delivered this Bill of Sale as of the date first written above.

<u>**SELLERS**</u>:

**REVEL AC, INC.**

By: _____
Name:
Title:

**REVEL AC, LLC**

By: _____
Name:
Title: Authorized Person

**REVEL ATLANTIC CITY, LLC**

By: _____
Name:
Title: Authorized Person

**REVEL ENTERTAINMENT GROUP, LLC**

By: _____
Name:
Title: Authorized Person

[Signature Page to Bill of Sale]

**NB ACQUISITION, LLC**

By: _____
Name:
Title: Authorized Person


**SI LLC**

By: _____
Name:
Title: Authorized Person

[Signature Page to Bill of Sale]

**<u>PURCHASER</u>**

**POLO NORTH COUNTRY CLUB, INC.**

By: _____
Name:
Title:

[Signature Page to Bill of Sale]

CONFIDENTIAL

SELLERS DISCLOSURE LETTER

TO THE

ASSET PURCHASE AGREEMENT

DATED AS OF SEPTEMBER 30, 2014

BY AND AMONG

REVEL AC, INC. AND
CERTAIN OF ITS SUBSIDIARIES NAMED HEREIN

AS SELLERS,

AND

POLO NORTH COUNTRY CLUB, INC.

AS PURCHASER

Case 14-22654-MBK   Doc 1307-4   Filed 01/08/15   Entered 01/08/15 17:25:20   Desc Main
Exhibit D (Back-Up Bid APA)   Page 67 of 128

Case 14-22654-MBK   Doc 1307-4   Filed 01/08/15   Entered 01/08/15 17:25:20   Desc
Document   Page 91 of 152

**CONFIDENTIAL**

This Sellers Disclosure Letter (this "Sellers Disclosure Letter") is made and delivered pursuant to that certain Asset Purchase Agreement (the "Agreement"), dated as of this 30th day of September, 2014, by and among Polo North Country Club, Inc., a corporation incorporated under the laws of Florida ("Purchaser"), Revel AC, Inc., a corporation formed under the laws of Delaware ("Parent"), and Parent's direct and indirect Subsidiaries listed on the signature pages thereto. Unless the context otherwise requires, all capitalized terms used in this Sellers Disclosure Letter shall have the respective meanings assigned to such terms in the Agreement.

This Sellers Disclosure Letter (including drafts or portions thereof, or information contained therein) contains highly confidential business information and trade secrets, shall be kept confidential, and shall not be filed with the Bankruptcy Court, made publicly available, or disclosed to any non-Party (other than the existing holders of obligations under the (x) that certain Amended and Restated First Lien Credit Agreement dated as of November 8, 2013 executed by Sellers, (y) that certain Second Lien Credit Agreement dated as of May 21, 2013 executed by Sellers and (z) the DIP Loan Credit Agreement) without prior written consent of the Parties, unless otherwise required by applicable Law.

No reference to or disclosure of any item, amount or other matter in this Sellers Disclosure Letter shall be construed as an admission or indication, or otherwise imply, that such item, amount or other matter is material or outside of the Ordinary Course of Business or that such item, amount or other matter is required to be referred to or disclosed in this Sellers Disclosure Letter. No disclosure in this Sellers Disclosure Letter relating to any possible breach or violation of any agreement or Law shall be construed as an admission or indication that any such breach or violation exists or has actually occurred. The disclosure of any fact or item in any section of this Sellers Disclosure Letter shall, should the existence of such fact or item be relevant to any other section, be deemed to be disclosed with respect to that other section so long as the relevance of such disclosure to such other section is reasonably apparent from the nature of such disclosure. Nothing in this Sellers Disclosure Letter is intended to broaden the scope of any representation or warranty of Sellers made herein. In disclosing the information in this Sellers Disclosure Letter, Sellers expressly do not waive any attorney-client privilege associated with such information or any protection afforded by the work-product doctrine with respect to any of the matters disclosed or discussed therein.

Matters disclosed in this Sellers Disclosure Letter are not necessarily limited to matters required by the Agreement to be reflected herein. Any such additional matters are set forth for informational purposes and this Sellers Disclosure Letter does not necessarily include other matters of a similar informational nature. The inclusion of any item in this Sellers Disclosure Letter, including the documents referred to herein, is not intended to imply that the item so included or other items are or are not material or could result in a Material Adverse Effect with respect to Sellers, and no party shall use the fact of setting forth the inclusion of any such item in any dispute or controversy between the parties as to whether any item not included in this Sellers Disclosure Letter is or is not material or could result in a Material Adverse Effect with respect to Sellers for purposes of the Agreement. The introductory language hereto and the headings to each Section are inserted for convenience only and shall neither create a different standard for disclosure nor affect in any way the meaning or interpretation of the language set forth in the Agreement or this Sellers Disclosure Letter. The information set forth in this Disclosure Letter was not prepared or disclosed with a view to disclosure to any Person other than the parties to the

Agreement, and neither Sellers nor other Person assumes any responsibility for the accuracy of such information or otherwise to any Person that is not a party to the Agreement.

Case 14-22654-MBK Doc 1-7 Filed 01/08/14 Entered 01/08/15 17:25:20 Desc Main
Case 14-22654-MBK Doc 1387-4 Filed 01/08/14 Entered 01/08/15 17:25:20 Desc Main
Exhibit D Document (Back-Up Bid APA) Page 93 Page 69 of 128

CONFIDENTIAL

## Section 1.1(b)
## Permitted Encumbrances

### *Property Taxes*

All Taxes relating to real property incurred in the Ordinary Course of Business on or prior to the Closing Date.

### *Non-compliance under the Americans with Disabilities Act*[1]

See Section 3.5

### *Leasehold Interests*[2]

| Counterparty | Agreement[3] |
|---|---|
| IDEA Boardwalk, LLC<br>50 Washington St.<br>Hoboken, NJ 07030 | Lease Agreement dated May 12, 2012 |
| RJ Atlantic City, LLC/Royal Jelly Burlesque Nightclub<br>1901 Avenue of the Stars 1050<br>Los Angeles, CA 90067 | Lease Agreement dated February 15, 2012 |
| GRGAC1, LLC<br>2401 Walnut Street STE 300<br>Philadelphia, PA 19103 | Lease Agreement dated December 7, 2011 |
| GRGAC2, LLC<br>2401 Walnut Street STE 300<br>Philadelphia, PA 19103 | Lease Agreement dated December 7, 2011 |
| GRGAC3, LLC<br>2401 Walnut Street STE 300<br>Philadelphia, PA 19103 | Lease Agreement dated December 7, 2011 |
| Azure AC Allegretti, LLC   LDV Hospitality<br>450 7th Ave Ste 4210<br>New York, NY 10123 | Lease Agreement dated February 10, 2012 |
| Lugo AC, LLC LDV Hospitality<br>450 7th Ave Ste 4210<br>New York, NY 10123 | Lease Agreement dated January 5, 2012 |
| American Cut AC Marc Forgione LLC<br>450 7th Ave Ste 4210<br>New York, NY 10123 | Lease Agreement dated January 5, 2012 |
| PM Atlantic City, LLC<br>526 Pacific Ave Unit 1101<br>Atlantic City, NJ 08401 | Lease Agreement dated May 22, 2012 |
| Mussel Bar AC, LLC<br>2401 Pennsylvania Avenue, NW<br>Washington, DC 20037 | Lease Agreement dated January 16, 2012 |

---

[1]  These encumbrances will not be Permitted Encumbrances as of the Closing Date.
[2]  The Sellers will use commercially reasonable efforts to sell free and clear of all leasehold interests.
[3]  Notwithstanding any agreement's characterization below as a lease, the Debtors reserve all rights, including, but not limited to, seeking to recharacterize such agreement as something other than a lease of real property.  Each agreement included in this list of agreements shall include any amendments thereto.

| Exhale Enterprises XXI, Inc.<br>500 Boardwalk-Revel Beach<br>Atlantic City, NJ 08401 | Lease Agreement dated February 20, 2012 |
|---|---|
| Hugo Boss Retail INC<br>601 West 26th Street, 8th Floor<br>New York, NY 10001 | Lease Agreement dated March 19, 2012 |
| DNA2050 Emporium, LLC<br>3238 Prospect Street, NW<br>Washington, DC 20007 | Lease Agreement dated May 22, 2012 |
| The Marshall Retail Group, LLC<br>500 Boardwalk-Revel Beach<br>Atlantic City, NJ 08401 | Lease Agreements dated May 22, 2012 and July 19, 2012 |
| Revolution Jewelers, LLC<br>500 Boardwalk-Revel Beach<br>Atlantic City, NJ 08401 | Lease Agreement dated June 29, 2012 |
| Denim Habit AC, LLC<br>1535 Chestnut Street, Suite 100<br>Philadelphia, PA 19102 | Lease Agreement dated May 7, 2012 |

CONFIDENTIAL

**Section 2.1(b)**
**Assumed Contracts**

See attached.

<u>**CONFIDENTIAL**</u>

**Section 2.2(b)**
<u>**Excluded Assets**</u>

| Insurance | Carrier | Policy No. | Expiration Date |
|---|---|---|---|
| D&O Fiduciary | Beazley Insurance Co. | V13B16140201 | 5/21/15 |
| Excess D&O | Endurance American Insurance Company | D0X10004898700 | 5/21/15 |
| Excess D&O | XL Specialty Insurance Co. | ELU134196-14 | 5/21/15 |
| Excess D&O | Freedom Specialty Insurance Company | XMF1401106 | 5/21/15 |
| Excess D&O – Side A DIC | Lloyd's of London | B0509QBO36814 | 5/21/15 |
| D&O Runoff | Beazley Insurance Co. | V13B19130101 | 10/3/19 |
| Excess D&O Runoff | Arch Insurance Company | DOX0054931-00 | 10/3/19 |
| Excess D&O Runoff | XL Specialty Insurance Company | ELU129816-13 | 10/3/19 |
| Excess D&O Runoff | Continental Casualty | 592398573 | 10/3/19 |

CONFIDENTIAL

**Section 2.3(a)**
**Assumed Liabilities — Trade Payables**

None.

CONFIDENTIAL

## Section 3.3
## No Conflicts

The Assumed Contracts may contain anti-assignment provisions which would be triggered as a result of the proposed Transaction.  However, each such assignment provision in such Assumed Contracts should have no force or effect upon the entry of a Sale Order by virtue of the applicable Bankruptcy Rules.

**CONFIDENTIAL**

**Section 3.4**
**Consents and Approvals**

None.

Case 14-22654-MBK Doc 1187 Filed 01/08/15 Entered 01/08/15 17:25:20 Desc Main
Case 14-22654-rdd Doc 707-4 Filed 10/02/14 Entered 10/02/14 21:30:54 Desc
Exhibit D (Back-Up Bid APA) Page 100 of 152 Page 76 of 128

CONFIDENTIAL

**Section 3.6**
**Title to Assets**

None.

CONFIDENTIAL

## Section 3.8
### Financial Statements

Due to the financial circumstances of Sellers, Sellers' auditors have not yet completed their audit of the Annual Financial Statements.

Case 14-22654-MBK   Doc 707-4   Filed 10/02/14   Entered 10/02/14 21:30:54   Desc
Exhibit D (Back-Up Bid APA)   Page 78 of 128

CONFIDENTIAL

## Section 5.3
### Conduct of Business Pending the Closing

Sellers will take any and all necessary actions in their Bankruptcy Cases as permitted under the Bankruptcy Code and in accordance with any Order or regulation by the New Jersey Division of Gaming Enforcement.

__CONFIDENTIAL__

## Section 9.3
### Conditions to Sellers' and Purchaser's Obligations - Approvals

Approvals required under applicable antitrust laws, including the HSR Act.

__CONFIDENTIAL__

**Section 10.6**
__Conditions to Purchaser's Obligations__

None.

**Section 2.1 of the Sellers Disclosure Letter**

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Absecon Island Beverage, Inc.<br><br>6754 Washington Avenue Unit B<br>Egg Harbor Township, NJ  08234 | Bar equipment service agreement/Renewal Letter |
| Revel Entertainment Group, LLC | AC Coin & Slot Service Co.<br><br>dba AC Slots<br>P.O. Box 8500  Box #7827<br>Philadelphia, PA  19178 | Lease agreement for 9 gaming devices |
| Revel AC, Inc. | ACE American Insurance Company<br><br>436 Walnut Street<br>Philadelphia, PA 19106 | Insurance Policy |
| Revel Entertainment Group, LLC | Acela Technologies<br><br>5115 Pegasus Ct. Suite A<br>Frederick, MD  21704 | The installation and implementation of a 2 way radio system. |
| Revel Entertainment Group, LLC | ACLS Wardrobe Ind<br>30 N New Road<br>Pleasantville, NJ  08232 | Laundry Services Contract |
| Revel Entertainment Group, LLC | ACLS Wardrobe Ind<br><br>30 N New Road<br>Pleasantville, NJ  08232 | Laundry Services Contract, 1st addendum to laundry services agreement, 2nd addendum to the laundry services agreement |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | ACLS Wardrobe Ind<br>30 N New Road<br>Pleasantville, NJ   08232 | 3rd addendum to the laundry services agreement |
| Revel Entertainment Group, LLC | ACR Energy Partners<br>214 Morris Avenue<br>Linwood, NJ   08221 | Energy Sales Agreement |
| NB Acquisition, LLC | ACR Energy Partners LLC<br>ATTN: Dave Robbins<br>PO Box 152<br>Hammonton, NJ 08037 | Nonresidential real property lease agreement |
| Revel Entertainment Group, LLC | Acxiom Information Security Services, Inc.<br>6111 Oak Tree Boulevard<br>Independence, OH 44131 | Service Agreement |
| Revel Entertainment Group, LLC | Adaptive Data Storage, Inc.<br>1805 Underwood Blvd.<br>Delran, NJ   08075 | Colocation License Agreement |
| Revel Entertainment Group, LLC | Adept Consulting Services, Inc.<br>408 W Main Street<br>Suite A<br>Lansdale, PA   19446 | Software License Agreement |
| Revel Entertainment Group, LLC | AEG Live Productions, LLC<br>145 West 45th, 9th Floor<br>New York, NY 10036 | Entertainment Contract |
| Revel Entertainment Group, LLC | AFCO Premium Credit LLC<br>14 Wall Street, Suite 8A-19<br>New York, NY 10005 | Commercial Premium Finance Agreement |
| Revel AC, Inc. | AFCO Premium Credit LLC<br>14 Wall Street, Suite 8A-19<br>New York, NY 10005 | Commercial Premium Finance Agreement |
| Revel Entertainment Group, LLC | Agilysys<br>1858 Paysphere Circle<br>Chicago, IL   60674 | Systems monitoring management & support for |
| Revel Entertainment Group, LLC | Agilysys NV, LLC<br>1858 Paysphere Circle<br>Chicago, IL   60674 | Universal Agreement |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Agilysys NV, LLC<br>1858 Paysphere Circle<br>Chicago, IL  60674 | Supplement to universal agreement |
| Revel AC, Inc. | AIG<br>PO Box 25947<br>Shawnee Mission, KS 66225 | Insurance Policy: Policy No. 01-582-79-85 |
| Revel Entertainment Group, LLC | AirWatch LLC<br>931 Monroe Drive, Suite 102-303<br>Atlanta, GA 30308 | Support and SAAS hosting fees |
| Revel Entertainment Group, LLC | AirWatch, LLC d/b/a Wandering WiFi<br>P.O. Box 742048<br>Atlanta, GA  30374-2048 | Amendment to Hotel Wireless Internet Project Agreement |
| Revel Entertainment Group, LLC | AJ Conveyor and Laundy Systems, LLC<br><br>735 Willow Street<br>Cranford, NJ  07016 | Wardrobe conveyor equipment and soiled linen conveyor maintenance agreement |
| Revel Entertainment Group, LLC | Alfresco Software, Ltd.<br>The PlaceBridge Avenue<br>Maidenhead, BerkshireSL6 1AF UK | Enterprise Agreement |
| Revel Entertainment Group, LLC | All American Sign Company, LLC<br>2780 Delsea Drive<br>Franklinville, NJ  08322 | Lease of bulletin boards for advertising |
| Revel Entertainment Group, LLC | American Auto Salvage & Recycling<br>3113 Route 50<br>Mays Landing, NJ 08330 | Scrap removal services |
| Revel Entertainment Group, LLC | American Cut AC Marc Forgione, LLC<br>450 7th Avenue<br>Suite 4200<br>New York, NY  10123 | Restaurant property lease agreement |
| Revel Entertainment Group, LLC | American Express Travel Related Services Inc<br>200 Vesey Street<br>MSTP: 01-19-10<br>New York, NY  10285 | Hotel collection participation agreement |
| Revel Entertainment Group, LLC | American Society of Composers, Authors and Publishers<br>Authors and Publishers<br>PO Box 331608-7515<br>Nashville, TN  37203 | License Agreement - Hotels and Motels to play music at hotel |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel AC, Inc. | Amerihealth Casualty<br>1700 Market Street, 7th Floor<br>Philadelphia, PA 19103 | Insurance Policy |
| Revel Entertainment Group, LLC | AMG Boardwalk AND RJ Atlantic City<br>500 Boardwalk<br>Atlantic City, NJ 08401 | CHAB Liability Agreement |
| Revel Entertainment Group, LLC | Anthony Gonsalves<br>1740 Shady Oaks Drive<br>Southlake, TX 76092 | Settlement agreement and general release |
| Revel Entertainment Group, LLC | Aon Hewitt<br>44 Whippany Road<br>Suite 220<br>Morristown, NJ 07960 | Engagement letter to manage prescription drug program |
| Revel Entertainment Group, LLC | Aon Hewitt<br>44 Whippany Road<br>Suite 220<br>Morristown, NJ 07960 | Health and benefits consulting services |
| Revel AC, Inc. | Arch<br>3100 Broadway, Suite 511<br>Kansas City, MO 64111 | Insurance Policy |
| Revel AC, Inc. | Arch<br>3100 Broadway, Suite 511<br>Kansas City, MO 64111 | Insurance Policy |
| Revel AC, Inc. | Arch Specialty Insurance Company<br>Three Parkway, Suite 1500<br>Philadelphia, PA 19102 | Insurance Policy |
| Revel Entertainment Group, LLC | Aristocrat Technologies Inc.<br>P.O. Box 849540<br>Los Angeles, CA 90084-9540 | Master Terms & Conditions Agreement |
| Revel Entertainment Group, LLC | Aristocrat Technologies Inc.<br>P.O. Box 849540<br>Los Angeles, CA 90084-9540 | Minimum Lease Agreement |
| Revel Entertainment Group, LLC | Aristocrat Technologies Inc.<br>P.O. Box 849540<br>Los Angeles, CA 90084-9540 | Gaming Device Agreement |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Aristocrat Technologies Inc.<br>P.O. Box 849540<br>Los Angeles, CA  90084-9540 | Gaming Device Agreement (1st Amendment) |
| Revel Entertainment Group, LLC | Aristocrat Technologies Inc.<br>P.O. Box 849540<br>Los Angeles, CA  90084-9540 | Gaming Device Agreement |
| Revel Entertainment Group, LLC | Aristocrat Technologies Inc.<br>P.O. Box 849540<br>Los Angeles, CA  90084-9540 | Gaming Device Agreement |
| Revel AC, Inc. | Aspen Specialty Insurance Co<br>175 Capital Blvd, Suite 300<br>Rocky Hill, CT 06067 | Insurance Policy |
| Revel Entertainment Group, LLC | Assurity Design Group<br>PO Box 207<br>Warwick, NY  10990 | Onsite service and operations contract. |
| Revel Entertainment Group, LLC | Atlantic City Alliance<br><br>Historic Boardwalk Hall<br>2301 Boardwalk<br>Atlantic City, NJ  08401 | Amendment to Agreement.<br>Agreement to address and clarify Revel's obligation to contribute to the ACA's statutorily mandated marketing program. |
| Revel Entertainment Group, LLC | Atlantic City Alliance<br>Historic Boardwalk Hall<br>2301 Boardwalk<br>Atlantic City, NJ  08401 | Marketing agreement |
| Revel Entertainment Group, LLC | Atlantic City Golf Vacations<br>331 Tilton Road, suite 29<br>Northfield, NJ 08225 | Intermediary agreement |
| Revel Entertainment Group, LLC | Atlantic County Utilities Authority<br>P.O. Box 721<br>Pleasantville, | Inspection Services |
| Revel Entertainment Group, LLC | AtlantiCare Regional Medical Center<br>6685 Washington Avenue<br>Egg Harbor Township, NJ  08234 | First Amendment to Emergency Medical Services Agreement |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Automated Gaming Technologies, Inc.<br><br>6845 S.Escondido St Ste 104<br>Las Vegas, NV  89119 | Sales and service agreement for currency and coin recycling units and software |
| Revel AC, Inc. | AWAC<br>199 Water Street, 24th Floor<br>New York, NY 10038 | Insurance Policy |
| Revel Entertainment Group, LLC | Azure AC Allegretti, LLC<br>450 7th Avenue<br>Suite 4200<br>New York, NY   10123 | Restaurant property lease agreement |
| Revel Entertainment Group, LLC | Azure AC Allegretti, LLC<br>450 7th Avenue<br>Suite 4200<br>New York, NY   10123 | Restaurant property lease agreement (1st Amendment) |
| Revel Entertainment Group, LLC | Back Bay Management LLC<br>520 S Independence Blvd<br>Virginia Beach, VA   23452 | Entertainment contract |
| Revel Entertainment Group, LLC | Bally Gaming Inc.<br>dba Bally Technologies<br>Lockbox #749335<br>Los Angeles, CA   90074-9335 | Slot System Agreement |
| Revel Entertainment Group, LLC | Bally Gaming Inc.<br>dba Bally Technologies<br>Lockbox #749335<br>Los Angeles, CA   90074-9335 | Gaming Device Agreement |
| Revel Entertainment Group, LLC | Bally Gaming Inc.<br>dba Bally Technologies<br>Lockbox #749335<br>Los Angeles, CA   90074-9335 | Gaming Device Agreement (1st Amendment) |
| Revel Entertainment Group, LLC | Bally Gaming Inc.<br>dba Bally Technologies<br>Lockbox #749335<br>Los Angeles, CA   90074-9335 | Gaming Device Agreement (2nd Amendment) |
| Revel Entertainment Group, LLC | Bally Gaming Inc.<br>dba Bally Technologies<br>Lockbox #749335<br>Los Angeles, CA   90074-9335 | Gaming Device Agreement |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Bally Gaming Inc.<br>dba Bally Technologies<br>Lockbox #749335<br>Los Angeles, CA 90074-9335 | Gaming Device Agreement (1st Amendment) |
| Revel Entertainment Group, LLC | Bally Gaming Inc.<br>dba Bally Technologies<br>Lockbox #749335<br>Los Angeles, CA 90074-9335 | Gaming Device Agreement (2nd Amendment) |
| Revel Entertainment Group, LLC | Bally Gaming Inc.<br>dba Bally Technologies<br>Lockbox #749335<br>Los Angeles, CA 90074-9335 | Gaming Device Agreement (on loan) |
| Revel Entertainment Group, LLC | Bally Gaming Inc.<br>dba Bally Technologies<br>Lockbox #749335<br>Los Angeles, CA 90074-9335 | Lease Agreement |
| Revel Entertainment Group, LLC | Bally Gaming Inc.<br>dba Bally Technologies<br>Lockbox #749335<br>Los Angeles, CA 90074-9335 | Gaming Device Agreement (on loan) |
| Revel AC, Inc. | Beazley<br>1270 Avenue of the Americas<br>New York, NY 10020 | Insurance Policy |
| Revel AC, Inc. | Beazley<br>1270 Avenue of the Americas<br>New York, NY 10020 | Insurance Policy |
| Revel AC, Inc. | Beazley<br>1270 Avenue of the Americas<br>New York, NY 10020 | Insurance Policy |
| Revel AC, Inc. | Beazley<br>1270 Avenue of the Americas<br>New York, NY 10020 | Insurance Policy |
| Revel Entertainment Group, LLC | Bellator Sport Worldwide, LLC<br>5000 Birch Street<br>Suite 7100<br>Newport Beach, CA 92660 | Site agreement for staging mixed martial arts |
| Revel Entertainment Group, LLC | Bevtech/Enostore Distribution LLC<br>300 Broadacres Drive, 4th floor<br>Bloomfield, NJ 07003 | Test the concept for using the enomatic wine serving systems |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Biometrica Systems, LLC<br>c/o MorphoTrak<br>33405 8th Avenue South<br>Federal Way, WA 98003 | Visual Casino Software License Agreement |
| Revel Entertainment Group, LLC | BLT Architects<br>1216 Arch St. Suite 800<br>Philadelphia, PA 19107 | Assignment of Contract - E-Builder |
| Revel Entertainment Group, LLC | BlueWater Communications Group LL<br>110 Parkway Drive South<br>Suite A<br>Hauppauge, NY 11788 | Consulting Services |
| Revel Entertainment Group, LLC | Bluewater Communications Group LLC<br>110 Parkway Drive South<br>Suite A<br>Hauppauge, NY 11788 | Installation and maintenance support for internet service |
| Revel Entertainment Group, LLC | Bluewater Communications Group LLC<br>110 Parkway Drive South<br>Suite A<br>Hauppauge, NY 11788 | Data Center Solution, AD, Exchange & SQL |
| Revel Entertainment Group, LLC | Bluewater Communications Group LLC<br>110 Parkway Drive South<br>Suite A<br>Hauppauge, NY 11788 | Data Center Solution Scope of Work |
| Revel Entertainment Group, LLC | BlueWater Communications Group LLC<br>110 Parkway Drive South<br>Suite A<br>Hauppauge, NY 11788 | Master Services Agreement |
| Revel Entertainment Group, LLC | BlueWater Communications Group LLC<br>110 Parkway Drive South<br>Suite A<br>Hauppauge, NY 11788 | Staging Facility Agreement |
| Revel Entertainment Group, LLC | Bonnie Bernstein d/b/a Velvet Hammer Media<br>61 W 62nd Street<br>Suite 9G<br>New York, NY 10023 | Professional Consulting Services |
| Revel Entertainment Group, LLC | Booking.com<br>5295 Paysphere Circle<br>Lockbox 5294<br>Chicago, IL 60674 | Accomodation agreement |
| Revel Entertainment Group, LLC | Bower Lewis Thrower Architects (BLT)<br><br>1216 Arch St. Suite 800<br>Philadelphia, PA 19107 | Agreement to provide certain architectural and design services. AMENDMENT |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Brown Rudnick<br>One Financial Center<br>Boston, MA   02111 | Legal Services Agreement |
| Revel Entertainment Group, LLC | CallCopy, Inc.<br>P.O. Box 674562<br>Detroit, MI   48267-4562 | System Purchase Agreement |
| Revel Entertainment Group, LLC | Camden Outdoor, L.L.C<br>1616 Pacific Avenue<br>Suite 500<br>Atlantic City, NJ   08401 | Service agreement to maintain outdoor billboard sign and display of Revel. |
| Revel Entertainment Group, LLC | Camden Outdoor, L.L.C<br>1616 Pacific Avenue<br>Suite 500<br>Atlantic City, NJ   08401 | Billboard sign display contract |
| Revel Entertainment Group, LLC | Capaldi Reynolds & Pelosi, CPA<br>332 Tilton Road<br>Northfield, NJ   08225 | Accounting services |
| Revel Entertainment Group, LLC | Casino Express of Central Florida<br>105 Rollingwood Trail<br>Altamonte Springs, FL   32714 | Independent agent agreement |
| Revel Entertainment Group, LLC | Casino Player Publishing LLC<br>333 E Jimmie Leeds Road<br>Suite #7<br>Galloway, NJ   08406 | Advertising Contract |
| Revel Entertainment Group, LLC | Casino, Hotel & Resort Consultants, LLC<br>772 Brackett Road<br>Sanbornville, NH   03872 | Agreement for Professional Consulting Services |
| Revel Entertainment Group, LLC | CBS Outdoor<br>185 US Highway 46<br>Fairfield, NJ   07004 | Advertiser agreement |
| Revel Entertainment Group, LLC | CBS Outdoor<br>185 US Highway 46<br>Fairfield, NJ   07004 | Advertiser agreement |
| Revel Entertainment Group, LLC | Cellco Partnership d/b/a Verizon Wireless<br>P.O. Box 4833<br>Trenton, NJ   08650 | In building radio distribution agreement |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Cellco Partnership d/b/a Verizon Wireless<br>P.O. Box 4833<br>Trenton, NJ  08650 | In building radio distribution agreement - First Amendment |
| Revel Entertainment Group, LLC | Center Stage Entertainment, Inc.<br>902 West Laurel Road<br>Lindenwold, NJ  08021 | Don't Call Me Francis Band performance on 12/31/2013. |
| Revel Entertainment Group, LLC | Center Stage Entertainment, Inc.<br>902 West Laurel Road<br>Lindenwold, NJ  08021 | Don't Call Me Francis Band performances |
| Revel Entertainment Group, LLC | Center Stage Entertainment, Inc.<br>902 West Laurel Road<br>Lindenwold, NJ  08021 | Agreement for DJ and entertainment services |
| Revel Entertainment Group, LLC | Centerstance, Inc.<br>514 SW 6th Avenue Ste 500<br>Portland, OR  97204 | Statement of Work - Salesforce.com Implementation |
| Revel Entertainment Group, LLC | Central Credit, LLC<br>3525 East Post Road, Suite 120<br>Las Vegas, NV  89120 | Central Credit Subscriber Agreement |
| Revel Entertainment Group, LLC | Central Credit, LLC<br>3525 East Post Road, Suite 120<br>Las Vegas, NV  89120 | Central Credit Check Warranty Agreement |
| Revel AC, Inc. | Chan Suh<br>428 Broome Street<br>5th Floor<br>New York, NY  10013 | Indemnification Agreement |
| Revel Entertainment Group, LLC | Channing Stowell<br><br>31474 Enchanted Loop<br>Burtrurn, MN  56318 | Agreement for Professional Consulting Services for database marketing analysis and consulting |
| Revel Entertainment Group, LLC | Chatham Financial Corp<br><br>235 Whitehorse Lane<br>Kennett Square, PA  19348 | Services in connection with over the counter interest rate derivative transactions |
| Revel AC, Inc. | Chubb Custom Market, Inc<br>555 South Flower Street, 3rd Floor<br>Los Angeles, CA 90001 | Insurance Policy |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Cintas Corp.<br>97627 Eagle Way<br>Chicago, IL  60678-7627 | Primary uniform supplier to Revel. |
| Revel Entertainment Group, LLC | Cintas Corp.<br>97627 Eagle Way<br>Chicago, IL  60678-7627 | Uniform rental service agreement |
| Revel Entertainment Group, LLC | Cintas Corp.<br>97627 Eagle Way<br>Chicago, IL  60678-7627 | Primary uniform supplier to Revel (1st Amendment). |
| Revel Entertainment Group, LLC | Cintas Corporation<br><br>97627 Eagle Way<br>Chicago, IL  60678-7627 | Service agreement to provide garment rental services and other items to Revel. |
| Revel Entertainment Group, LLC | Cintas Corporation<br>97627 Eagle Way<br>Chicago, IL  60678-7627 | Mutual consent to termination of agreement and release |
| Revel Entertainment Group, LLC | Cintas Corporation<br><br>97627 Eagle Way<br>Chicago, IL  60678-7627 | Service agreement to provide garment rental services and other items to Revel. (1st Amendment) |
| Revel Entertainment Group, LLC | City of Atlantic City<br>1301 Bacharach Blvd. Room 308<br>Atlantic City, NJ  08401 | Hold harmless agreement for boardwalk vehicular permit |
| Revel Entertainment Group, LLC | City of Atlantic City<br>1301 Bacharach Blvd. Room 406<br>Atlantic City, NJ  08401 | Nonresidential Real Property |
| Revel Entertainment Group, LLC | ClearChannel Outdoor<br>99 Park Avenue<br>Floor 2<br>New York, NY  10016 | Digital bulletin advertising |
| Revel Entertainment Group, LLC | Cleargoals Company<br>3575 St. Laurent<br>Suite 410<br>Montreal, QC  H2X 2T7 | Integration and configuration services |
| Revel Entertainment Group, LLC | CLS Water Quality, Inc.<br>156 Mt. Bethel Road<br>Warren, NJ  07059 | Water treatment service agreement |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel AC, Inc. | CNA<br>125 Broad Street, 8th Floor<br>New York, NY 10004 | Insurance Policy |
| Revel Entertainment Group, LLC | Coca-Cola FoodService and Coca-Cola Refreshments USA<br><br>Po Box 8500S-2735<br>Philadelphia, PA   19178-2735 | Marketing agreement to exclusively market and sell Coca-Cola beverages and agrees to certain minimum purchase and other requirements. |
| Revel Entertainment Group, LLC | Cognitive Box Consulting LLC<br>107 Wilcox Road<br>Suite 115<br>Stonington, CT   06378 | Master Service Agreement |
| Revel AC, Inc. | Colony Insurance Co<br>PO Box 85122<br>Richmond, VA 23285 | Insurance Policy |
| Revel Entertainment Group, LLC | Com1 Consulting<br>3 Gregory Street<br>Hazlet, NJ  07730 | Proposal for hardware, software and maintenance |
| Revel Entertainment Group, LLC | Continent 8 LLC<br>4900 North Ocean Blvd, Suite 319<br>Fort Lauderdale, FL 33308 | Colocation agreement |
| Revel AC, Inc. | Continental Casualty<br>125 Broad Street, 8th Floor<br>New York, NY 10004 | Insurance Policy |
| Revel AC, Inc. | Continental Casualty<br>125 Broad Street, 8th Floor<br>New York, NY 10004 | Insurance Policy |
| Revel Entertainment Group, LLC | Copier Plus<br>3112 Fire Road Unit C<br>Egg Harbor Twp., NJ   08234 | Office Equipment Agreement |
| Revel Entertainment Group, LLC | Crestron Electronics, Inc.<br>PO Box 932917<br>Atlanta, GA   31193 | Authorization to use photographs and/or audio/video |
| Revel Entertainment Group, LLC | Cummins-Allison Corp.<br><br>Cummins-Allison Corp.<br>Mt. Prospect, IL   60056 | Preventive Maintenance Inspection Agreement for Jet Scan, Jet Sort and Shredder |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Cummins-Allison Corp.<br>Cummins-Allison Corp.<br>Mt. Prospect, IL 60056 | Addendum to Preventative Maintenance Inspection Agreement |
| Revel Entertainment Group, LLC | Currency Counting Consultants, LLC<br>290 Hansen Access Road<br>King of Prussia, PA 19406 | Software Service Agreement |
| Revel Entertainment Group, LLC | Cvent Supplier Network<br>8180 Greensboro Drive, Suite 900<br>McLean, VA 22102 | Marketing agreement |
| Revel Entertainment Group, LLC | CVPS, Inc<br>9514 Glenhaven Drive<br>PO Box 638<br>Glenhaven, CA 95443 | Master services agreement |
| Revel Entertainment Group, LLC | De La Rue North America Inc.<br>6401 Commerce Drive<br>Irving, TX 75063 | Purchase agreement for equipment, software and services. |
| Revel Entertainment Group, LLC | De La Rue North America Inc.<br>6401 Commerce Drive<br>Irving, TX 75063 | Agreement for the performance of equipment maintenance |
| Revel AC, Inc. | Deborah DeMars<br>9429 Holbrook Drive<br>Orlando, FL 32817 | Stock purchase agreement |
| Revel Entertainment Group, LLC | Deloitte Consulting LLP<br>P.O. Box 7247-6447<br>Philadelphia, PA 19170-6447 | Consulting agreement |
| Revel Entertainment Group, LLC | Delphic Digital<br>116 Shurs Lane 2nd Floor<br>Philadephia, PA 19127-1726 | Maintenance Agreement |
| Revel Entertainment Group, LLC | Denim Habit<br>346 W. 14th Street<br>New York, NY 10014 | Lease agreement for denim clothing store. |
| Revel Entertainment Group, LLC | DEQ Systems Corp<br>1840 1st Street<br>Suite 103-A<br>St Romuald, QC G6W 5M6 | G3 license agreement |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | DEQ Systems Corp<br>1840 1st Street<br>Suite 103-A<br>St Romuald, QC  G6W 5M6 | EZ Baccarat and EZ Trak license agreement |
| Revel Entertainment Group, LLC | Digi Deal Corp.<br>5207 E. Third Avenue<br>Spokane, WA  99212 | Gaming Equipment Leasing Agreement |
| Revel Entertainment Group, LLC | DNA2050 Emporium<br>3238 Prospect Street NW<br>Washington, DC  20007 | Lease agreement for a clothing store. |
| Revel Entertainment Group, LLC | Dr. Kenneth Noisewater, Inc<br>15260 Ventura Blvd<br>Suite #2100<br>Sherman Oaks, CA  91403 | Agreement with artist for certain engagements |
| Revel Entertainment Group, LLC | E.W. Cox USA<br>216 North Avenue East<br>Cranford, NJ  07016 | Building maintenance unit agreement |
| Revel Entertainment Group, LLC | E.W. Cox USA, Inc.<br>216 North Avenue East<br>Cranford, NJ  07016 | Building Maintenance Unit Agreement |
| Revel Entertainment Group, LLC | E>Connect, Inc.<br>10180 Corbett Street<br>Las Vegas, NV  89149 | Software support agreement |
| Revel Entertainment Group, LLC | East Coast Outdoor Advertising LLC<br>1616 Pacific Avenue<br>Suite 500<br>Atlantic City, NJ  08401 | Billboard sign display contract |
| Revel Entertainment Group, LLC | E-Builder, Inc.<br>1800 NW 69th Avenue #201<br>Plantation, FL  33313 | Service agreement |
| Revel Entertainment Group, LLC | E-Builder, Inc.<br>1800 NW 69th Avenue #201<br>Plantation, FL  33313 | Service agreement Addendum |
| Revel Entertainment Group, LLC | E-Builder, Inc.<br>1800 NW 69th Avenue #201<br>Plantation, FL  33313 | Work Order |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Ecolab Inc.<br>P.O. Box 905327<br>Charlotte, NC  28290-5327 | Product and Services Supply Agreement |
| Revel Entertainment Group, LLC | Elder Pest Control, Inc.<br>P.O. Box 169<br>Absecon, NJ  08201 | Pest Control Program Contract |
| Revel Entertainment Group, LLC | ELITE Casino Marketing Group Inc<br>199 New Road<br>Suite 61<br>Linwood, NJ  08221 | The FASHIONISTAS Show Agreement |
| Revel Entertainment Group, LLC | ELITE Casino Marketing Group Inc<br>199 New Road<br>Suite 61<br>Linwood, NJ  08221 | The Latin Quarter |
| Revel Entertainment Group, LLC | eMarker, LLC<br>3616 Hoods Hill Road<br>Nashville, TN  37215 | Communications system lease |
| Revel Entertainment Group, LLC | Emerge Artist Development<br>80 Perry Road<br>Petersburg, NJ  08270 | Agreement for Professional Consulting Services |
| Revel Entertainment Group, LLC | Employee Relations Solutions<br>Two University Plaza Ste 507<br>Hackensack, NJ  07601 | Legal and Human Resources Consulting Agreement |
| Revel Entertainment Group, LLC | Employment Screening Services<br>2500 Southlake Park<br>Birmingham, AL  35244 | Consumer Report User's Agreement for pre-employment screening |
| Revel Entertainment Group, LLC | Encore Productions, Inc.<br>PO Box 29839<br>Phoenix, AZ  85038 | Hotel Services Concession Agreement |
| Revel AC, Inc. | Endurance<br>750 Third Avenue<br>New York, NY 10017 | Insurance Policy |
| Revel AC, Inc. | Endurance<br>750 Third Avenue<br>New York, NY 10017 | Insurance Policy |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel AC, Inc. | Epiq Systems<br>757 Third Avenue 3rd Floor<br>New York, NY 10017 | Consulting Agreement |
| Revel Entertainment Group, LLC | Equifax Information Services, LLC<br>P.O. Box 105835<br>Atlanta, GA  30348-5835 | FirstSearch Service Addendum |
| Revel Entertainment Group, LLC | Eric Mayo, Believe Publications<br>P.O. Box 1671<br>Pleasantville, NJ  08232 | Professional Consulting Services Agreement |
| Revel AC, Inc. | Essex Insurance Co<br>4521 Highwoods Parkway<br>Glen Allen, VA 23060 | Insurance Policy |
| Revel Entertainment Group, LLC | Euro RSCG New York<br>200 Hudson Street<br>New York, NY 10013 | Location/Name Release agreement |
| Revel AC, Inc. | Everest Indemnity Insurance Company<br>Westgate Corporate Center<br>477 Martinsville Road<br>Liberty Corner, NJ 07938 | Insurance Policy |
| Revel Entertainment Group, LLC | Exhale Enterprises<br>250 West 57th Street<br>New York, NY  10107 | Trademark Cross-License Agreement: BASK EXHALE |
| Revel Entertainment Group, LLC | Exhale Enterprises XXI, Inc.<br>250 West 57th Street<br>New York, NY  10107 | Management Agreement under the Lease Agreement for Exhale Spa. |
| Revel Entertainment Group, LLC | Exhale Enterprises XXI, Inc.<br>250 West 57th Street<br>New York, NY  10107 | Property lease agreement for Exhale spa. |
| Revel Entertainment Group, LLC | Eye to Eye Media LLC<br>43 Woodbine Road<br>Woodbine, NJ  08270 | The Aqua Billboard Boat Advertising Agreement |
| Revel Entertainment Group, LLC | EyeMed Vision Care<br>Combined Ins Co of America<br>P.O. Box 8069<br>Chicago, IL  60680-8069 | Vision Plan Summary |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Fab Faux Inc<br>250 W 24th Street #4FW<br>New York, NY 10011 | Booking agreement |
| Revel Entertainment Group, LLC | Farmer Bros. Co.<br>PO Box 79705<br>City of Industry, CA 91716-9705 | Purchase Agreement for coffee products |
| Revel Entertainment Group, LLC | Farmers Bros. Co.<br>PO Box 79705<br>City of Industry, CA 91716-9705 | Coffee Supplier |
| Revel Entertainment Group, LLC | Fashion Works Atlantic City, LLC d/b/a Hugo Boss<br>1950 Old Cuthbert Road<br>Cherry Hill, NJ 08034 | Lease agreement for Hugo Boss in Revel. |
| Revel Entertainment Group, LLC | FC USA Inc<br>1936 McArthur Road<br>Whitehall, PA 18052 | LibGo Travel Agreement |
| Revel Entertainment Group, LLC | Four Winds Interactive LLC<br>P.O. Box 912441<br>Denver, CO 80291-2441 | Software License Agreement |
| Revel Entertainment Group, LLC | Four Winds Interactive LLC<br>P.O. Box 912441<br>Denver, CO 80291-2441 | Interactive Software Maintenance and Professional Services Agreement |
| Revel Entertainment Group, LLC | Franco Pilli<br>3 Ridgewood Drive<br>Northfield, NJ 08225 | Executive Employment Agreement |
| Revel AC, Inc. | Freedom Specialty<br>7 WTC 250 Greenwich St, 33rd Fl<br>New York, NY 10007 | Insurance Policy |
| Revel AC, Inc. | Freedom Specialty<br>7 WTC 250 Greenwich St, 33rd Fl<br>New York, NY 10007 | Insurance Policy |
| Revel Entertainment Group, LLC | Galaxy Gaming, Inc<br>6767 Spencer Street<br>Las Vegas, NV 89119 | Lease license agreement |

Case 14-22654-GMB Doc 1397 Filed 01/08/15 Entered 01/08/15 17:25:30 Desc Main
Document Page 98 of 128

Case 14-22654-MBK Doc 1387-4 Filed 01/06/15 Entered 01/06/15 17:25:20 Desc
Exhibit D (Back-Up Bid - Part A) Page 122 of 152

Page 18

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Galloway National Golf Club<br>270 South New York Road<br>Route 9<br>Galloway, NJ  08205 | Golf agreement |
| Revel Entertainment Group, LLC | GARDA CL Atlantic, Inc.<br>3209 Momentum Place<br>Chicago, IL  60689-5332 | Armored Car Service Agreement |
| Revel Entertainment Group, LLC | Garden State Laboratories Inc.<br>410 Hillside Avenue<br>Hillside, NJ  07205 | Bacteriological and chemical sampling and analysis |
| Revel Entertainment Group, LLC | Garden State Outdoor, L.L.C.<br><br>1616 Pacific Avenue<br>Suite 500<br>Atlantic City, NJ  08401 | Marketing agreement to post and maintain outdoor billboard sign and display of Customer. |
| Revel Entertainment Group, LLC | Gartner, Inc.<br>P.O. Box 911319<br>Dallas, TX  75391 | Service Agreement for IT Leaader Advisor Workgroup Role |
| Revel Entertainment Group, LLC | Global Cash Access, Inc.<br>3525 E. Post Rd.<br>Las Vegas, NV  89120 | Global Cash Access Master Services Agreement |
| Revel Entertainment Group, LLC | Global Cash Access, Inc.<br>3525 E. Post Rd.<br>Las Vegas, NV  89120 | Cash Access Services Schedule |
| Revel Entertainment Group, LLC | Global Cash Access, Inc.<br>3525 E. Post Rd.<br>Las Vegas, NV  89120 | Installation and maintenance of ATM machines |
| Revel Entertainment Group, LLC | Globe Vending Company Inc.<br>111 East Parkway Drive<br>Egg Harbor Township, NJ | Vending machines contract |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Graham Curtin A Professional Accounts Receivable P.O. Box 1991 Morristown, NJ 07962-1991 | Legal engagement letter |
| Revel AC, Inc. | Gregory Roselli 1333 Hudson Street #707 Hoboken, NJ 07030 | Indemnification Agreement |
| Revel Entertainment Group, LLC | GRGAC1, LLC d/b/a AMADA 2929 Arch Street Philadelphia, PA 19104 | Restaurant property lease agreement |
| Revel Entertainment Group, LLC | GRGAC1, LLC d/b/a AMADA 2929 Arch Street Philadelphia, PA 19104 | Restaurant property lease agreement (1st Amendment) |
| Revel Entertainment Group, LLC | GRGAC1, LLC d/b/a Distrito Cantina/Guapos Tacos 2929 Arch Street Philadelphia, PA 19104 | Restaurant property lease agreement |
| Revel Entertainment Group, LLC | GRGAC1, LLC d/b/a Distrito Cantina/Guapos Tacos 2929 Arch Street Philadelphia, PA 19104 | Restaurant property lease agreement (1st Amendment) |
| Revel Entertainment Group, LLC | GRGAC1, LLC d/b/a Village Whiskey 2929 Arch Street Philadelphia, PA 19104 | Restaurant property lease agreement |
| Revel Entertainment Group, LLC | GRGAC1, LLC d/b/a Village Whiskey 2929 Arch Street Philadelphia, PA 19104 | Restaurant property lease agreement (1st Amendment) |
| Revel Entertainment Group, LLC | GrouponLive 600 West Chicago Avenue, Suite 620 Chicago, Il 60654 | Merchant Agreement |
| Revel AC, Inc. | Herman Caucci Landscape Contractors, Inc. 1406 Shore Rd. Linwood, NJ 08221 | Landscape Maintenance Services |
| Revel Entertainment Group, LLC | Hopson Associates 46 S. Second Street 3rd Floor Philadelphia, PA 19106-4519 | Agreement for Professional Consulting Services |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Horizon Blue Cross Blue Shield of New Jersey, Inc.<br>P.O. Box 1738<br>Newark, NJ 07101 | Dental Plan (High Option) |
| Revel Entertainment Group, LLC | Horizon Blue Cross Blue Shield of New Jersey, Inc.<br>P.O. Box 1738<br>Newark, NJ 07101 | Dental Plan (Low Option) |
| Revel Entertainment Group, LLC | Horizon Blue Cross Blue Shield of New Jersey, Inc.<br>P.O. Box 1738<br>Newark, NJ 07101 | Medical Benefits Agreement (Basic) |
| Revel Entertainment Group, LLC | Horizon Blue Cross Blue Shield of New Jersey, Inc.<br>P.O. Box 1738<br>Newark, NJ 07101 | Medical Benefits Agreement (Select) |
| Revel Entertainment Group, LLC | Hospitality Careers Online, Inc. d/b/a Hcareers<br>PO Box 673682<br>Detroit, MI 48267 | Services Agreement |
| Revel Entertainment Group, LLC | Hoss Marketing Group<br>2850 Horizon Ridge Parkway<br>Suite 200<br>Henderson, NV 89052 | Independent agent agreement |
| Revel Entertainment Group, LLC | Hotels at Home, Inc.<br>208 Passaic Avenue<br>Fairfield, NJ 07004 | Marketing Services Agreement |
| Revel Entertainment Group, LLC | Hotwire Communications Ltd<br>P.O. Box 57330<br>Philadelphia, PA 19111-7330 | 1st amendment to the guest connect agreement |
| Revel Entertainment Group, LLC | Hotwire Communications Ltd<br>P.O. Box 57330<br>Philadelphia, PA 19111-7330 | Addendum A - add on content |
| Revel Entertainment Group, LLC | Hotwire Communications Ltd<br>P.O. Box 57330<br>Philadelphia, PA 19111-7330 | Guest connect agreement |
| Revel Entertainment Group, LLC | Hotwire Communications Ltd<br>P.O. Box 57330<br>Philadelphia, PA 19111-7330 | 2nd amendment to the guest connect agreement |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Howie Day Touring Inc<br>PO Box 220307<br>Boston, MA 02122 | Entertainment Contract |
| Revel Entertainment Group, LLC | IBM Credit LLC<br>International Business Machine<br>PO Box 643600<br>Pittsburgh, PA 15264-3600 | Software/Services Financing Agreement |
| Revel Entertainment Group, LLC | Idea Boardwalk<br><br>5555 Badura Avenue<br>Las Vegas, NV 89119 | The original lease was between Revel and AMG Boardwalk.<br>Contact is from Ikea Boardwalk - Michael Barry |
| Revel Entertainment Group, LLC | International Game Technology (IGT)<br>6355 S. Buffalo Drive<br>Las Vegas, NV 89113-7866 | 3/28/2012 Systems General T&C Agreement<br>Advantage Schedule to 3/28/2012 Systems General T&C Agmt.<br>Contract change orders dated 7/5/2012 and 3/13/2013 |
| Revel Entertainment Group, LLC | International Game Technology (IGT)<br>6355 S. Buffalo Drive<br>Las Vegas, NV 89113-7866 | Consulting Services Addendums to the Systems<br>General T&C Agreement dated 5/21/2013 and 10/30/2013 |
| Revel Entertainment Group, LLC | International Game Technology (IGT)<br>6355 S. Buffalo Drive<br>Las Vegas, NV 89113-7866 | Mutual Nondisclosure Agreement dated 5/27/2009 |
| Revel Entertainment Group, LLC | International Game Technology (IGT)<br>6355 S. Buffalo Drive<br>Las Vegas, NV 89113-7866 | Letter Agreement Proposal dated 11/8/2011 |
| Revel Entertainment Group, LLC | International Game Technology (IGT)<br>6355 S. Buffalo Drive<br><br>Las Vegas, NV 89113-7866 | Financing and Security Agreement (System General Terms<br>& Conditions Agreement and Sales Order) and Amendment dated 12/7/2011 and amendments<br>dated 2/21/2012 and 3/30/2012 |
| Revel Entertainment Group, LLC | International Game Technology (IGT)<br>6355 S. Buffalo Drive<br>Las Vegas, NV 89113-7866 | Nondisclosure Agreement dated 12/8/2011 |
| Revel Entertainment Group, LLC | International Game Technology (IGT)<br>6355 S. Buffalo Drive<br>Las Vegas, NV 89113-7866 | Nondisclosure Agreement dated 12/18/2011 |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | International Game Technology (IGT)<br>6355 S. Buffalo Drive<br>Las Vegas, NV 89113-7866 | Sale of equipment standard terms and conditions agreement<br>dated 12/24/2011 |
| Revel Entertainment Group, LLC | International Game Technology (IGT)<br><br>6355 S. Buffalo Drive<br>Las Vegas, NV 89113-7866 | IGT Machine Optioning Customer Owned Game Movement Waiver dated<br>1/5/2012<br>Equipment Waiver dated 1/5/2012 |
| Revel Entertainment Group, LLC | International Game Technology (IGT)<br>6355 S. Buffalo Drive<br>Las Vegas, NV 89113-7866 | Microsoft End-User License OTA |
| Revel Entertainment Group, LLC | International Game Technology (IGT)<br>6355 S. Buffalo Drive<br>Las Vegas, NV 89113-7866 | Standard T&C Agreement - IGT Stand Alone, Wide Area<br>Progressive & Multi-Player OTA dated 3/23/2012<br>NJ Addendum dated 3/29/2012 |
| Revel Entertainment Group, LLC | International Game Technology (IGT)<br>6355 S. Buffalo Drive<br>Las Vegas, NV 89113-7866 | Agreements for Instant and Annuity Pay MegaJackpot Systems<br>and Addendum Thereto (each dated 3/22/2012) |
| Revel Entertainment Group, LLC | International Game Technology (IGT)<br>6355 S. Buffalo Drive<br>Las Vegas, NV 89113-7866 | Multihand Poker IP License Agreement dated 3/30/2012 |
| Revel Entertainment Group, LLC | International Game Technology (IGT)<br>6355 S. Buffalo Drive<br>Las Vegas, NV 89113-7866 | Confidential Disclosure and License Agreement dated 1/9/2013 |
| Revel Entertainment Group, LLC | Illy Cafe North America Inc<br>PO Box 29917<br>New York, NY 10087 | Customer Equipment Agreement for sold and loaned coffee equipment |
| Revel Entertainment Group, LLC | In Bet Gaming Inc.<br>206 Barlow Ave<br>Cherry Hill, NJ 08002 | License agreement |
| Revel Entertainment Group, LLC | Infinium Software Inc<br>PO Box 843313<br>Los Angeles, CA 90084-3313 | Component systems license agreement |
| Revel Entertainment Group, LLC | Infinium Software Inc<br>PO Box 843313<br>Los Angeles, CA 90084-3313 | Component systems license agreement |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Infinium Software, Inc.<br>PO Box 843313<br>Los Angeles, CA 90084-3313 | Services Work Order to provide general consulting and project management |
| Revel Entertainment Group, LLC | Innovative Service Solutions<br>208 Allen Drive<br>Exton, PA 19341 | Guest room technology services |
| Revel Entertainment Group, LLC | Innsight Reports, LLC d/b/a GoConcierge.net<br>15433 Ventura Blvd<br>Sherman Oaks, CA 91403 | Web Access License Agreement |
| Revel Entertainment Group, LLC | Insurance Services Office, Inc<br>545 Washington Boulevard<br>Jersey City, NJ 07310-1686 | Master agreement |
| Revel Entertainment Group, LLC | Insurance Services Office, Inc.<br>545 Washington Boulevard<br>Jersey City, NJ 07310-1686 | Master Agreement |
| Revel Entertainment Group, LLC | Integrated Energy Development, LLC<br>50 Horseshoe Drive<br>Mount Laurel, NJ 08054 | Consulting Services for Revel Monthly Energy Billing |
| Revel Entertainment Group, LLC | International Business Machines Corp. (IBM)<br>PO Box 643600<br>Pittsburgh, PA 15264-3600 | Customer agreement to purchase machines, licensed ICA programs. |
| Revel Entertainment Group, LLC | International Business Machines Corp. (IBM)<br><br>PO Box 643600<br>Pittsburgh, PA 15264-3600 | Contract to acquire several software programs as well as software maintenance or subscriptions. |
| Revel Entertainment Group, LLC | International Union of Operating Engineers Local 68<br>4425 Atlantic Avenue<br>Atlantic City, NJ 08401 | Collective Bargaining Agreement terms and conditions. |
| Revel Entertainment Group, LLC | Interstate Outdoor Advertising LP<br>905 North Kings Highway<br>Cherry Hill, NJ 08034 | Bulletin contract |
| Revel Entertainment Group, LLC | Interstate Outdoor Advertising LP<br>905 North Kings Highway<br>Cherry Hill, NJ 08034 | Bulletin contract |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | InvoTech Systems, Inc.<br>16530 Ventura Blvd Ste 603<br>Encino, CA 91436 | Software license and maintenance agreement |
| Revel AC, Inc. | Ironshore Specialty Insurance Company<br>One State Street, 7th Floor<br>New York, NY 10004 | Insurance Policy |
| Revel AC, Inc. | Israel Del Rio<br>1409 Nerine Cir.<br>Atlanta, GA 30338 | Stock purchase agreement |
| Revel Entertainment Group, LLC | IUPAT District Council 711<br>c/o Frank M Vaccaro & Assoc<br>27 Roland Ave Suite 200<br>Mt Laurel, NJ 08054 | Collective Bargaining Agreement terms and conditions. |
| Revel Entertainment Group, LLC | JD Casino Services LLC<br>601 Central Avenue<br>Egg Harbor Township, NJ 08234 | Independent agent agreement |
| Revel Entertainment Group, LLC | Jeanette Sherman<br>255 South Zurich Avenue<br>Egg Harbor City, NJ 08215 | Executive Employment Agreement |
| Revel Entertainment Group, LLC | Jeanette Sherman<br>255 South Zurich Avenue<br>Egg Harbor City, NJ 08215 | Executive Employment Agreement (1st Amendment) |
| Revel AC, Inc. | Jeffrey J Dahl<br>801 Montreux Avenue<br>Colleyville, TX 76034 | Indemnification Agreement |
| Revel Entertainment Group, LLC | Jetsetter<br>2 Park Avenue 4th Floor<br>New York, NY 10017 | Hotel Supplier Agreement |
| Revel Entertainment Group, LLC | John Gunnels<br>814 Harlequin Drive<br>Gallowway, NJ 08205 | Executive Employment Agreement |
| Revel AC, Inc. | John Krasznekewicz<br>8th & San Carlos Suite S-3069<br>Carmel, CA 93921 | Indemnification Agreement |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel AC, Inc. | Joseph Nicosia<br>6404 Monmouth Ave<br>Ventnor, NJ 08406 | Stock purchase agreement |
| Revel Entertainment Group, LLC | JT Packard<br>275 Investment Court<br>Verona, WI  53593 | UPS and battery service agreement |
| Revel Entertainment Group, LLC | Kane's Royal Jelly Burlesque Nightclub<br>450 N. Rossmore Ave. Suite 502<br>Los Angeles, CA  90004 | Property lease agreement for nightclub venue. |
| Revel Entertainment Group, LLC | Kekst and Company, Incorporated<br>437 Madison Avenue<br>New York, NY  10022-7016 | Provide corporate communications advice |
| Revel Entertainment Group, LLC | Key Consulting/Software, Inc.<br>PO Box 19238<br>Reno, NV 89511 | Independent contractor agreement |
| Revel Entertainment Group, LLC | Keystone Outdoor Advertising Company, Inc.<br>P.O. Box 202<br>Cheltenham, PA  19012-0202 | Contract for bulletin advertising |
| Revel Entertainment Group, LLC | KGM Gaming<br>4250 Wissahickon Avenue<br>Phildelphia, PA  19129 | Gaming equipment purchase and software license agreement |
| Revel Entertainment Group, LLC | KGM Gaming<br>4250 Wissahickon Avenue<br>Phildelphia, PA  19129 | Gaming equipment purchase and software license agreement |
| Revel Entertainment Group, LLC | Knitting Factory Presents<br><br>418 S 9th Street Ste 306<br>Boise, ID  83702 | Service agreement to pay Knitting Factory Presents as agent with respect to the performance of "Capital Cities" at the Social entertainment venue within the Revel casino, hotel and resort. |
| Revel Entertainment Group, LLC | Konami Gaming Equipment<br>PO Box 848401<br>Los Angeles, CA  90084-8401 | Purchase and an lease agreement for gaming devices. |
| Revel Entertainment Group, LLC | Konami Gaming Equipment<br>PO Box 848401<br>Los Angeles, CA  90084-8401 | Amendment to purchase order |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Konami Gaming Equipment<br>PO Box 848401<br>Los Angeles, CA  90084-8401 | Gaming Device Agreement |
| Revel Entertainment Group, LLC | Konami Gaming Equipment<br>PO Box 848401<br>Los Angeles, CA  90084-8401 | Gaming Device Agreement |
| Revel AC, Inc. | Landmark<br>945 East Paces Ferry Road, Suite 1800<br>Atlanta, GA 30326 | Insurance Policy |
| Revel AC, Inc. | Lexington Insurance Company<br>1650 Market Street, Suite 3700<br>Philadelphia, PA 19103 | Insurance Policy: Policy No. 1619075 |
| Revel Entertainment Group, LLC | Liam Josh Corporation<br>c/o Artist in Mind<br>14100 Dickens Street #1<br>Sherman Oak, CA 91423 | Entertainment Contract |
| Revel AC, Inc. | Liberty Mutual<br>55 Water Street<br>New York, NY 10041 | Insurance Policy |
| Revel AC, Inc. | Liberty Surplus Insurance Co<br>177 Berkely Street<br>Boston, MA 02116 | Insurance Policy |
| Revel Entertainment Group, LLC | Lightning Poker, Inc. d/b/a Lightning Slots, LLC<br>23 Creek Circle, Suite 400<br>Boothwyn, PA  19061 | Master Proprietary Lease and License Agreement for gaming machines |
| Revel Entertainment Group, LLC | Lisa Johnson Communications<br>21 Hideaway Lane<br>Egg Harbor Twp., NJ  08234 | Consulting Contract |
| Revel Entertainment Group, LLC | Livingsocial Inc<br>1445 New York Ave, NW 2nd Floor<br>Washington, DC 20005 | Merchant service agreement |
| Revel AC, Inc. | Lloyds of London<br>Marsh Bowring<br>Tower Place<br>London EC3R 5BU | Insurance Policy |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel AC, Inc. | Lloyds of London<br>Marsh Bowring<br>Tower Place<br>London EC3R 5BU | Insurance Policy |
| Revel AC, Inc. | Lloyds of London<br>Marsh Bowring<br>Tower Place<br>London EC3R 5BU | Insurance Policy |
| Revel AC, Inc. | Lloyds of London<br>Marsh Bowring<br>Tower Place<br>London EC3R 5BU | Insurance Policy |
| Revel AC, Inc. | Lloyds of London<br>Marsh Bowring<br>Tower Place<br>London EC3R 5BU | Insurance Policy |
| Revel Entertainment Group, LLC | Logic Solutions Group<br>303 Brame Road<br>Ridgeland, MS   39157 | DataStage and SSIS consulting |
| Revel Entertainment Group, LLC | Longport Media, LLC<br>1601 New Road<br>Linwood, NJ   08221 | Radio Marketing Agreement |
| Revel Entertainment Group, LLC | Loretta Pickus<br>2317 Burroughs Ave<br>Northfield, NJ 08225 | Executive Employment Agreement |
| Revel Entertainment Group, LLC | Lori Loveland<br>16 Sturbridge Court<br>Egg Harbor Township, New Jersey 08234 | Executive Employment Agreement |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Lugo AC, LLC<br>450 Seventh Avenue<br>Suite 4200<br>New York, NY  10123 | Restaurant property lease agreement |
| Revel Entertainment Group, LLC | Lugo AC, LLC<br>450 Seventh Avenue<br>Suite 4200<br>New York, NY  10123 | Restaurant property lease agreement (1st Amendment) |
| Revel Entertainment Group, LLC | Lugo AC, LLC<br>450 Seventh Avenue<br>Suite 4200<br>New York, NY  10123 | Restaurant property lease agreement (2nd Amendment) |
| Revel Entertainment Group, LLC | Luke's Kitchen and Marketplace<br>526 Pacific Avenue #1101<br>Atlantic City, NJ  08401 | Restaurant property lease agreement |
| Revel AC, Inc. | Lyndon Stockton<br>15 Fischer Road<br>Linwood, NJ  08221 | Stock purchase agreement |
| Revel AC, Inc. | Maiden Re<br>379 Thornall Street, 3rd Floor<br>Edison, NJ 08837 | Insurance Policy |
| Revel Entertainment Group, LLC | Mariann Gray<br>644 Country Club Drive<br>Egg Harbor City, NJ 08215 | Executive Employment Agreement |
| Revel AC, Inc. | Marsh USA Inc<br>1717 Arch Street<br>Philadelphia, PA 19103 | Insurance Installment Agreement |
| Revel Entertainment Group, LLC | Marsh USA Inc.<br>P.O. Box 846015<br>Dallas, TX  75284-6015 | Marsh to act as insurance broker |
| Revel AC, Inc. | Mary Helen Medina<br>12582 Misty Creek Lane<br>Fairfax, VA  22033 | Stock purchase agreement |
| Revel Entertainment Group, LLC | Masque Publishing, Inc<br>P.O. Box 631520<br>Highlands Ranch, CO  80163-1520 | Blackjack up-card license agreement |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Masque Publishing, Inc<br>P.O. Box 631520<br>Highlands Ranch, CO   80163-1520 | License agreement for two spanish 21 games |
| Revel Entertainment Group, LLC | Melity, LLC<br>265 Davidson Avenue<br>Suite 205<br>Somerset, NJ   08873 | Master Services Agreement |
| Revel Entertainment Group, LLC | Merrill Communications, LLC<br>CM-9638<br>St Paul, MN 55170 | Statement of Work to Merrill Datasite Services Agreement |
| Revel Entertainment Group, LLC | Michael Cammarasana<br>166 Old New York Road<br>Galloway, NJ  08205 | Independent agent agreement |
| Revel Entertainment Group, LLC | Michael Edward Kelly<br>500 Boardwalk<br>Atlantic City, NJ 08401 | Employment Agreement |
| Revel AC, Inc. | Michael Garrity<br>7 Howard Drive<br>Hingham, MA  02043 | Stock purchase agreement |
| Revel Entertainment Group, LLC | Micro Gaming Technologies, Inc.<br>7690 W Sahara<br>Las Vegas, NV  89117 | Promo Kiosk Software Master License and Support Agreement |
| Revel Entertainment Group, LLC | Micro Gaming Technologies, Inc.<br><br>7690 W Sahara<br>Las Vegas, NV  89117 | Addendum to Promo Kiosk Software Master License and Support Agreement |
| Revel Entertainment Group, LLC | Micro Gaming Technologies, Inc.<br><br>7690 W Sahara<br>Las Vegas, NV  89117 | Micro Gaming Technologies Promo Kiosk Software Master License and Support Agreement and Addendum |
| Revel Entertainment Group, LLC | MicroFirst Gaming d/b/a MicroFirst Associates, Inc.<br><br>11 E Oak Street<br>Oakland, NJ  07436 | Agreement to provide both remote and on-site support to Revel for the iSeries Reservation Web Service Project |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Microsoft Corporation<br><br>One Microsoft Way<br>Redmond, WA 98052 | Service agreement to provide support assistance and problem resolution services. |
| Revel Entertainment Group, LLC | MMAWC LLC dba World Series of Fighting<br>4631 S Dean Martin Drive<br>Las Vegas, NV  89103 | License Agreement |
| Revel Entertainment Group, LLC | MMAWC, LLC d/b/a World Series of Fighting<br>4631 S Dean Martin Drive<br>Las Vegas, NV  89103 | Location Access Agreement |
| Revel Entertainment Group, LLC | Mobility on Wheels, LLC<br>4272 Harbour Beach Blvd<br>Brigantine, NJ 08203 | Contract for shared revenue plan |
| Revel Entertainment Group, LLC | Mussel Bar AC, LLC<br>2401 Pennsylvania Ave N.W.<br>Washington, DC  20037 | Restaurant property lease agreement |
| Revel Entertainment Group, LLC | Nancy Saam<br>322 Grays Lane<br>Haverford, PA  19041 | Agreement for Professional Consulting Services for event décor |
| Revel Entertainment Group, LLC | Nanta Cowen<br>112 Daphne Drive<br>Galloway, NJ  08205 | Independent agent agreement |
| Revel AC, Inc. | National Specialty<br>10900 NE 8th Street, Suite 1170<br>Bellevue, WA 98004 | Insurance Policy |
| Revel AC, Inc. | National Union Fire Ins. Of Pit<br>175 Water Street<br>New York, NY  10038 | Settlement Agreement |
| Revel AC, Inc. | Neil Cantor<br>5707 Mohican Place<br>Bethesda, MD  20816 | Stock purchase agreement |
| Revel Entertainment Group, LLC | Nelbud<br>P.O. Box 271<br>Egg Harbor City, NJ  08215 | ESP cell exchanges |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Nelbud<br>P.O. Box 271<br>Egg Harbor City, NJ  08215 | Change frequency of Relish |
| Revel Entertainment Group, LLC | Nelbud<br>P.O. Box 271<br>Egg Harbor City, NJ  08215 | General service agreement |
| Revel Entertainment Group, LLC | Network Construction Co., Inc.<br>1410 South New Road<br>PO Box 1475<br>Pleasantville, NJ  08232 | Agreement to dismantle and remove construction trailers |
| Revel Entertainment Group, LLC | New Cingular Wireless PCS, LLC<br>12555 Cingular Way, Suite 1300<br>Alpharetta, GA 30004 | Inbuilding Radio Distribution Agreement |
| Revel Entertainment Group, LLC | New Jersey Casino Control Commission<br>Tennessee Ave. & Boardwalk<br>Atlantic City, NJ  08401 | Casino License |
| Revel Entertainment Group, LLC | New Jersey Economic Development Authority<br>PO Box 990<br>Trenton, NJ 08625 | Amended and Restated State Economic Redevelopment and Growth Incentive Grant Agreement |
| Revel AC, Inc. | New Jersey Economic Development Authority<br>PO Box 990<br>Trenton, NJ 08625 | Amended and Restated State Economic Redevelopment and Growth Incentive Grant Agreement |
| Revel Atlantic City, LLC | New Jersey Economic Development Authority<br>PO Box 990<br>Trenton, NJ 08625 | Amended and Restated State Economic Redevelopment and Growth Incentive Grant Agreement |
| Revel Entertainment Group, LLC | Newmarket International, Inc.<br>P. O. Box 845707<br>Boston, MA  02284-5707 | Order Form for CAD Services |
| Revel Entertainment Group, LLC | Newmarket International, Inc.<br>P. O. Box 845707<br>Boston, MA  02284-5707 | Amendment to Master Software License Agreement Order |
| Revel Entertainment Group, LLC | Newmarket International, Inc.<br>P. O. Box 845707<br>Boston, MA  02284-5707 | Master Software License Agreement |

Case 14-22654-MBK Doc 1387-4 Filed 01/08/15 Entered 01/08/15 17:25:30 Desc Main
Exhibit D (Back-Up Bid APA) Page 212 of 128

Case 14-22654-MBK Doc 1387-4 Filed 01/08/15 Entered 01/08/15 17:25:30 Desc
Document Page 136 of 152
Page 32

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Newmarket International, Inc.<br>P. O. Box 845707<br>Boston, MA  02284-5707 | Master Software License Agreement |
| Revel Entertainment Group, LLC | NJ DOL & Workforce Development<br>Office of Internal Audit<br>P.O. Box 950<br>Trenton, NJ  08625-0950 | SUI - Amortization schedule and payment plan |
| Revel Entertainment Group, LLC | Northeast Regional Council of Carpenters Local #255<br>White Horse Pike<br>Mullica Township, NJ | Collective Bargaining Agreement terms and conditions. |
| Revel Entertainment Group, LLC | Norwegian Cruise Line<br>7665 Corporate Center Drive<br>Miami, FL  33126 | Event/Promotion Agreement |
| Revel Entertainment Group, LLC | Norwegian Cruise Line<br>7665 Corporate Center Drive<br>Miami, FL  33126 | Event/Promotion Letter Agreement |
| Revel Entertainment Group, LLC | NuCO2 LLC<br>P.O. Box 9011<br>Stuart, FL  34995 | Beverage gas equipment/product supply agreement |
| Revel AC, Inc. | One Beacon<br>601 Carlson Prky., Suite 600<br>Minnetonka, MN 10017 | Insurance Policy |
| Revel Entertainment Group, LLC | OpenTable<br>799 Market Street<br>4th Floor<br>San Francisco, CA  94103 | Business Listing |
| Revel Entertainment Group, LLC | Orbitz Worldwide<br>500 W Madison, Suite 1000<br>Chicago, IL 60661 | Addendum to Orbitz Platinum Hotel Participant Program |
| Revel Entertainment Group, LLC | Origami Risk LLC<br>516 Madison Avenue<br>Glencoe, IL  60022 | Statement of Work |
| Revel Entertainment Group, LLC | Origami Risk LLC<br>516 Madison Avenue<br>Glencoe, IL  60022 | Software License and Services Agreement |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Otis Elevator Company<br>30 Twosome Drive Suite 4<br>Moorestown, NJ  08057 | Maintenance agreement for 22 elevators provided by Otis. |
| Revel Entertainment Group, LLC | Outthink, LLC<br>8 Railroad Avenue,Suite 110<br>Essex, CT 06426 | Online Media Center Site Maintenance & Support |
| Revel Entertainment Group, LLC | Outthink, LLC<br>8 Railroad Avenue,Suite 110<br>Essex, CT 06426 | Retainer Agreement for 6 months for support and maintenance services |
| Revel Entertainment Group, LLC | Ovation Live Inc. d/b/a Ovation Entertainment<br>P.O. Box 238<br>Oradell, NJ  07649-0238 | Ovation is to be the Talent Buyer for Ovation Hall in the casino. |
| Revel Entertainment Group, LLC | Ovation Live Inc. d/b/a Ovation Entertainment<br>P.O. Box 238<br>Oradell, NJ  07649-0238 | Termination letter |
| Revel Entertainment Group, LLC | Ovation Live Inc. d/b/a Ovation Entertainment<br>P.O. Box 238<br>Oradell, NJ  07649-0238 | Settlement and mutual releases |
| Revel Entertainment Group, LLC | Parker Interior Plantscape, Inc.<br>1325 Terrill Road<br>Scotch Plains, NJ  07076 | Landscape maintenance services |
| Revel Entertainment Group, LLC | Passkey International, Inc<br>PO Box 842485<br>Boston, MA  02284-2485 | Standard service agreement |
| Revel AC, Inc. | Patrik Hellstrand<br>14343 Burbank Blvd. Unit 303<br>Sherman Oaks, CA  91401 | Stock purchase agreement |
| Revel Entertainment Group, LLC | Paymentech, LLC<br><br>250 West 57th Street<br>Suite 420<br>New York, NY  10107 | Chase Paymentech Select Merchant Payment Instrument Processing Agreement |
| Revel Entertainment Group, LLC | Paymentech, LLC<br><br>250 West 57th Street<br>Suite 420<br>New York, NY  10107 | Authorization by Revel to the Bank to disclose to Paymentech financial information |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | PBC-200 Park Ave, LLC d/b/a/ Carr Workplaces<br>200 Park Avenue Suite 1700<br>New York, NY  10166 | Office Service Agreement |
| Revel Entertainment Group, LLC | PBC-200 Park Ave, LLC d/b/a/ Carr Workplaces<br>200 Park Avenue Suite 1700<br>New York, NY  10166 | Office Service Agreement (1st Amendment) |
| Revel Entertainment Group, LLC | PBC-200 Park Ave, LLC d/b/a/ Carr Workplaces<br>200 Park Avenue Suite 1700<br>New York, NY  10166 | Office Service Agreement (2nd Amendment) |
| Revel AC, Inc. | Peter E Murphy<br>1306 Wentworth Avenue<br>Pasadena, CA  91106 | Indemnification Agreement |
| Revel Entertainment Group, LLC | Phigenics<br><br>1701 Quincy Avenue, Suite 32<br>Naperville, IL  60540<br>Naperville, IL 60540 | Building Water System Management Program Review and Recommendations |
| Revel AC, Inc. | Philadelphia Insurance Company<br>One Bala Plaza, Suite 100<br>Bala Cynwyd, PA 19004 | Insurance Policy |
| Revel Entertainment Group, LLC | Phoenix Digital Imaging<br>201 Clayton Street<br>Chester, PA  19013 | Advertising Contract |
| Revel Entertainment Group, LLC | Phoenix Digital Imaging<br>201 Clayton Street<br>Chester, PA 19013 | Outdoor advertising agreement |
| Revel AC, Inc. | PICC Property & Casualty Company Limited<br>Block 2, No 2<br>Jianguomen Outer Street Chaoyang District<br>Beijing, China 100022 | Insurance Policy |
| Revel Atlantic City, LLC | PM Atlantic City LLC<br>t/a Luke's Kitchen & Marketplace<br>526 Pacific Avenue #1101<br>Atlantic City, NJ 08401 | Amended and restated operating agreement. |
| Revel Entertainment Group, LLC | Polisano Contruction Svce LLC<br>1010 Plaza Place<br>Absecon, NJ  08201 | Contruction consulting agreement |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Power Strategies LLC<br>69 Wamphassuc Road<br>Stonington, CT  06378 | IGT Upgrade January 2013 |
| Revel Entertainment Group, LLC | Premier Casino Destinations LLC<br>5645 Habersham Valley<br>Swannee, GA  30024 | Independent agent agreement |
| Revel Entertainment Group, LLC | Presidio Network Solutions, Inc.<br>110 Parkway Drive<br>Hauppauge, NY  11788 | Managed IT services agreement and addendum |
| Revel Entertainment Group, LLC | Presidio Network Solutions, Inc.<br>110 Parkway Drive<br>Hauppauge, NY  11788 | Managed services agreement |
| Revel Entertainment Group, LLC | Presidio Network Solutions, Inc.<br>110 Parkway Drive<br>Hauppauge, NY  11788 | Managed services agreement - Cisco Telephony |
| Revel Entertainment Group, LLC | Priceline.com LLC<br>800 Connecticut Avenue<br>Norwalk, CT 06854 | Property participation agreement |
| Revel Entertainment Group, LLC | PrideVel Consulting LLC<br>387 Shuman Blvd<br>Suite 205-W<br>Naperville, IL  60563 | Nevotek license and support agreement |
| Revel Entertainment Group, LLC | PrideVel Consulting LLC<br>387 Shuman Blvd<br>Suite 205-W<br>Naperville, IL  60563 | End User Software License and Support Agreement |
| Revel Entertainment Group, LLC | Prime Source Purchasing, Inc.<br>1333 Broad Street<br>Clinton, NJ  07013 | Contract Agreement for Rebate Programs |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel AC, Inc. | **Principal Trust Company**<br><br>**1013 Centre Road**<br>**Wilmington, DE 19805** | Fee Agreement and Acknowledgement Form Revel AC, Inc. Rabbi Trust Effective May 21, 2013 |
| Revel AC, Inc. | **Principal Trust Company**<br>**1013 Centre Road**<br>**Wilmington, DE 19805** | Trust under the Revel AC, Inc 2013 management equity incentive plan |
| Revel Entertainment Group, LLC | **Prism Media**<br>**240 Main Street, #204**<br>**Little Falls, NJ 07424** | Outdoor advertising display agreement |
| Revel Entertainment Group, LLC | **Profero LLC**<br><br>**386 Park Avenue South**<br>**13th Floor**<br>**New York, NY 10016** | Agreement for Professional Consulting Services for assistance with digital strategy efforts |
| Revel Entertainment Group, LLC | **Red Bull North America, Inc.**<br>**1740 Stewart Street**<br>**Santa Monica, CA 90404** | Location Agreement |
| Revel Entertainment Group, LLC | **Redrock Software**<br>**10120 W. Flamingo Road**<br>**Suite 4-348**<br>**Las Vegas, NV 89147** | Software Maintenance Agreement |
| Revel Entertainment Group, LLC | **RedRock Software, LLC**<br>**10120 W. Flamingo Road**<br>**Suite 4-348**<br>**Las Vegas, NV 89147** | Software Licensing Agreement |
| Revel Entertainment Group, LLC | **Redrock Software, LLC**<br>**10120 W. Flamingo Road**<br>**Suite 4-348**<br>**Las Vegas, NV 89147** | Software maintenance agreement |
| Revel Entertainment Group, LLC | **Resort Advantage, LLC**<br>**26622 WOODWARD AVE**<br>**SUITE 105**<br>**ROYAL OAK, MI 48067** | Software License, Maintenance and Warranty Agreement |
| Revel Entertainment Group, LLC | **Resort Advantage, LLC**<br>**26622 WOODWARD AVE**<br>**SUITE 105**<br>**ROYAL OAK, MI 48067** | Professional Services Agreement |
| Revel Atlantic City, LLC | **Revel Entertainment Group, LLC**<br>**500 Boardwalk**<br>**Atlantic City, NJ 08401** | Nonresidential real property - short form of lease |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Revel Group, LLC<br>375 Park Avenue, Suite 2607<br>New York, NY 10152 | Letter agreement |
| Revel Entertainment Group, LLC | Revel Group, LLC<br>375 Park Avenue, Suite 2607<br>New York, NY 10152 | Trademark License Agreement (extended) |
| Revel Entertainment Group, LLC | Revel Group, LLC<br>375 Park Avenue, Suite 2607<br>New York, NY 10152 | Trademark License Agreement (extended) |
| Revel Entertainment Group, LLC | Revel Group, LLC<br>375 Park Avenue, Suite 2607<br>New York, NY 10152 | First amendment to trademark license agreement |
| Revel Entertainment Group, LLC | Revel Group, LLC<br>375 Park Avenue, Suite 2607<br>New York, NY 10152 | Second amendment to trademark license agreement |
| Revel Entertainment Group, LLC | Revolution Jewelers<br>130 Almshouse Road Ste 400<br>Richboro, PA 18954 | Property lease agreement for a jewelry store. |
| Revel Entertainment Group, LLC | Rich Fire Protection<br>P.O. Box 1149<br>Pleasantville, NJ 08232 | Automatic fire suppression system inspection agreement |
| Revel Entertainment Group, LLC | Richard Haskins<br>10945 State Bridge Road<br>Suite 401-336<br>Alpharetta, GA 30022 | Independent agent agreement |
| Revel Entertainment Group, LLC | RR Donnelley<br>14100 Lear Blvd<br>Suite 130<br>Reno, NV 89506 | Data room services |
| Revel Entertainment Group, LLC | Ruds Inc (Mtech)<br>9941 West Jessamine Street<br>Miami, FL 33157 | Master Service Agreement |
| Revel Entertainment Group, LLC | Ruds, Inc. d/b/a MTECH Master Service Agreement<br>9941 West Jessamine Street<br>Miami, FL 33157 | Master Service Agreement |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | salesforce.com, Inc<br>P.O. Box 203141<br>Dallas, TX  75320-3141 | Master subscription agreement |
| Revel Entertainment Group, LLC | Sauce Industries (d/b/a Gray V)<br>1098 W. Willow Street<br>Louisville, CO  80027 | Music services agreement |
| Revel Entertainment Group, LLC | Sauce Industries, LLC d/b/a Gray V<br>1098 W. Willow Street<br>Louisville, CO  80027 | Music Services Agreement for background music broadcasting services |
| Revel Entertainment Group, LLC | SCA Entertainment, LP<br>3030 LBJ Freeway<br>Suite 300<br>Dallas, TX  75234 | Contingent prize contract |
| Revel Entertainment Group, LLC | SCA Entertainment, LP<br>3030 Lyndon B Johnson Frwy., Suite 300<br>Dallas, TX 75234 | Contingenet prize contract |
| Revel Entertainment Group, LLC | SCA Entertainment, LP<br>3030 LBJ Freeway<br>Suite 300<br>Dallas, TX  75234 | Addendum A to contingent prize contract |
| Revel Entertainment Group, LLC | Sceptre Hospitality Resources LLC<br>7600 E. Orchard Road<br>Suite 230 S<br>Greenwood Village, CO  80111 | Software development services |
| Revel Entertainment Group, LLC | Schindler Elevator Corporation<br>200 West Parkway Drive<br>Egg Harbor Township, NJ   08234 | Maintenance agreement for escalators and elevators. |
| Revel Entertainment Group, LLC | Scott Kreeger<br>500 Boardwalk<br>Atlantic City, NJ 08401 | Executive Employment Agreement |
| Revel Entertainment Group, LLC | SGA Holdings, Inc. d/b/a SGA Production Services<br>3120 Spanish Oak Drive<br>Lansing, MI  48911 | Agreement for Services for equipment rental |
| Revel AC, Inc. | Sherman, Jeanette A.<br>255 South Zurich Avenue<br>Egg Harbor City, NJ 08215 | Stock purchase agreement |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | SHFL Entertainment Inc<br>6650 El Camino Road<br>Las Vegas, NV 89118 | License and Lease Agreement |
| Revel Entertainment Group, LLC | SHFL Entertainment, Inc.<br><br>PO Box 846961<br>Los Angeles, CA 90084-6961 | License Fortune Pai GOW Poker side bet. Lease I-Verify display and iDEAL single deck specialty shuffler |
| Revel Entertainment Group, LLC | SHFL Entertainment, Inc.<br>PO Box 846961<br>Los Angeles, CA 90084-6961 | Batch shufflers |
| Revel Entertainment Group, LLC | Shift4 Corporation<br><br>1491 Center Crossing Road<br>Las Vegas, NV 89135 | Agreement to enhance the interface with the Dollars on the Net secure online service and implementing Shift4 payment security technologies |
| Revel Entertainment Group, LLC | Shotspotter, Inc.<br>7979 Gateway Blvd, Suite 210<br>Newark, CA 94560-1156 | Permission for Sensor Placement |
| Revel Entertainment Group, LLC | ShowClix, Inc<br>650 Smithfield Street<br>Pittsburgh, PA 15222 | Ticketing Services agreement |
| Revel Entertainment Group, LLC | Shred-It USA Inc<br>796 Haunted Lane<br>Bensalem, PA 19020 | Automatic service agreement |
| Revel Entertainment Group, LLC | Shuffle Master, Inc.<br>1106 Palms Airport Drive<br>Las Vegas, NV 89119 | Display lease |
| Revel AC, Inc. | Sid Yu<br>12035 Great Elm Dr.<br>Potomac, MD 20854 | Stock purchase agreement |
| Revel Entertainment Group, LLC | Siemens Industry, Inc.<br>1450 Union Meeting Road<br>Blue Bell, PA 19422 | Building Automation Agreement effective June 1, 2013 as amended<br>*Cure amount to be adjusted to reflect payments made and obligations incurred postpetition and prior to assumption |
| Revel Entertainment Group, LLC | Siemens Industry, Inc.<br>1450 Union Meeting Road<br>Blue Bell, PA 19422 | Fire Alarm & Safety Services Agreement effective May 1, 2012 as amended<br>*Cure amount to be adjusted to reflect payments made and obligations incurred postpetition and prior to assumption |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Siemens Industry, Inc.<br>1450 Union Meeting Road<br>Blue Bell, PA 19422 | Technical support service agreement |
| Revel Entertainment Group, LLC | Sixteenfifty Holding, Inc.<br>1110 Torrey Pines Road, Suite E<br>La Jolla, CA 92037 | Marketing Consultant Contract |
| Revel Entertainment Group, LLC | Slater, Tenaglia, Fritz & Hunt, P.A.<br>301 3rd Avenue<br>Ocean City, NJ 08226 | Collection services agreement |
| Revel Entertainment Group, LLC | SmarTV Company LLC<br>480 Olde Worthington Road<br>Suite 350<br>Westerville, OH 43082 | Payment and reporting agreement |
| Revel AC, Inc. | Sompo Japan Insurance Company of America<br>777 Third Avenue, 28th Floor<br>New York, NY 10017 | Insurance Policy |
| Revel Entertainment Group, LLC | South Jersey Energy Company<br>1 N White Horse Pike<br>Hammonton, NJ 08037 | Energy Services Agreement |
| Revel Entertainment Group, LLC | South Jersey Energy Company<br>1 N White Horse Pike<br>Hammonton, NJ 08037 | Energy Services Contract |
| Revel Entertainment Group, LLC | South Jersey Gas Company<br>P.O. Box 6091<br>Bellmawr, NJ 08099-6091 | Standard Gas Service Agreement (LV) |
| Revel Entertainment Group, LLC | South Jersey Gas Company<br>P.O. Box 6091<br>Bellmawr, NJ 08099-6091 | Standard gas service agreement |
| Revel Entertainment Group, LLC | South Jersey Transportation Authority<br>AC International Airport<br>P.O. Box 8500-1706<br>Philadelphia, PA 19178-1706 | Commercial lane permit |
| Revel Entertainment Group, LLC | Spielo International USA, LLC<br>6757 Spencer Street<br>Las Vegas, NV 89119 | Master Lease Agreement for gaming equipment. |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Spielo International USA, LLC<br>6757 Spencer Street<br>Las Vegas, NV 89119 | Master Sales Agreement for gaming equipment. |
| Revel Entertainment Group, LLC | Sprocket Staffing Services, LLC<br>P.O. Box 9627<br>Manchester, NH  03108 | Agreement to procure temporary personnel |
| Revel Entertainment Group, LLC | SRO Artists Inc<br>6629 University Avenue<br>Suite 206<br>Middleton, WI  53562 | Service of a performing artist - Dark Star Orchestra |
| Revel Entertainment Group, LLC | Standard & Poors<br><br>2542 Collection Center Drive<br>Chicago, IL  60693 | Standard maintains rating and other analytical services in reference to publicly distributed debt etc... |
| Revel Entertainment Group, LLC | Stanley Access Technologies<br>P.O. Box 0371595<br>Pittsburgh, PA  15251-7595 | Swinging and sliding doors maintenance agreement |
| Revel AC, Inc. | Star Aviation/Federal Insurance<br>15 Mountain Road<br>Warren, NJ 07059 | Insurance Policy |
| Revel Entertainment Group, LLC | Star Group d/b/a The Media & Marketing Group<br><br>Voorhees Town Center<br>220 Laurel Road<br>Voorhees, NJ  08043 | Marketing agreement to perform marketing, media, advertising and related services. |
| Revel Entertainment Group, LLC | Starcite<br>Dept 2421 PO Box 122421<br>Dallas, TX  75312-2421 | Starcite services (not specified) |
| Revel Atlantic City, LLC | State of New Jersey, Dept of Law & Public Safety, Division of Gaming Enforcement<br>1300 Atlantic Avenue, Suite 200<br>Atlantic City, NJ 08401 | Casino Service Industry Enterprise License |
| Revel Entertainment Group, LLC | State of New Jersey, Division of Gaming Enforcement<br>1300 Atlantic Avenue, Suite 200<br>Atlantic City, NJ 08401 | Operation Certificate |
| Revel Entertainment Group, LLC | State of New Jersey, Division of Gaming Enforcement<br>1300 Atlantic Avenue, Suite 200<br>Atlantic City, NJ 08401 | Casino license for Revel Executive Team. |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | State of New Jersey, Division of Gaming Enforcement<br>1300 Atlantic Avenue, Suite 200<br>Atlantic City, NJ 08401 | Revel's Casino Hotel Alcoholic Beverage (CHAB) license. |
| Revel Entertainment Group, LLC | State of New Jersey, Division of Gaming Enforcement<br>1300 Atlantic Avenue, Suite 200<br>Atlantic City, NJ 08401 | Amendment to Revel's Casino Hotel Alcoholic Beverage (CHAB) license. |
| Revel Entertainment Group, LLC | State of New Jersey, Division of Gaming Enforcement<br>1300 Atlantic Avenue, Suite 200<br>Atlantic City, NJ 08401 | Amendment to Revel's Casino Hotel Alcoholic Beverage (CHAB) license. |
| Revel Entertainment Group, LLC | State of New Jersey, Division of Gaming Enforcement<br>1300 Atlantic Avenue, Suite 200<br>Atlantic City, NJ 08401 | Amendment to Revel's Casino Hotel Alcoholic Beverage (CHAB) license. |
| Revel Entertainment Group, LLC | State of New Jersey: Department of Environmental Protection<br>P.O. Box 638<br>Trenton, NJ  08646 | Portable Bars beach permit. |
| Revel Entertainment Group, LLC | Stellabean Incorporated<br>22 Wakeman Rd.<br>South Salem, NY  10590 | Graphic design services for brand & revenue |
| Revel Entertainment Group, LLC | Stream Integration<br>1133 Broadway, Suite 706<br>New York, NY 10010 | Implementation of a SOA oriented guest<br>management system entitled FirstSight. |
| Revel Entertainment Group, LLC | Strike Force Protective Services, Inc.<br>51 Progress<br>Union, New Jersey 07083 | Security Agreement |
| Revel Entertainment Group, LLC | Strike Force Protective Services, Inc.<br>51 Progress<br>Union, New Jersey 07083 | Security Agreement |
| Revel Entertainment Group, LLC | Sunnyside Up Beach Rental, Inc.<br>100 North Wilson Avenue<br>Margate City, NJ 08406 | Management Agreement - Concessions |
| Revel AC, Inc. | Swiss Re<br>2 Waterside Crossing, Suite 200<br>Windsor, CT 06095 | Insurance Policy |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Target Environmental Co., Inc.<br>P.O.Box 283<br>235 New Orleans Ave.<br>Egg Harbor City, NJ  08215 | Site Inspection |
| Revel Entertainment Group, LLC | TCS John Huxley America Inc<br>6171 McLeod<br>Suite H-M<br>Las Vegas, NV  89120 | Gaming Device Agreement |
| Revel Entertainment Group, LLC | TD Bank<br>15 N. PENNSYLVANIA AVE.<br>ATLANTIC CITY, NJ  08401 | Cash Management Master Agreement |
| Revel Entertainment Group, LLC | TD eTreasury Services<br>15 N. PENNSYLVANIA AVE.<br>ATLANTIC CITY, NJ  08401 | Electronic banking system |
| Revel Entertainment Group, LLC | Terri Vrabel<br>Internal Revenue Service<br>2670 Industrial Highway<br>York, PA  17402 | 2014 Secure Email Agreement |
| Revel Entertainment Group, LLC | Terri Vrabel<br>Internal Revenue Service<br>2670 Industrial Highway<br>York, PA  17402 | Gaming Industry Tip Compliance Agreement |
| Revel Entertainment Group, LLC | Terry Glebocki<br>20 Arlene Dr<br>Little Egg Harbor, NJ 08087 | Executive Employment Agreement |
| Revel Entertainment Group, LLC | Terry Glebocki<br>20 Arlene Dr<br>Little Egg Harbor, NJ 08087 | Rate adjustment agreement for executive employment |
| Revel Entertainment Group, LLC | The Atlantic City Utilities Authority (ACUA)<br>P.O. Box 721<br>Pleasantville, NJ  08232-0721 | Inspection Services Agreement |
| Revel Entertainment Group, LLC | The Marshall Retail Group d/b/a Dash<br>5385 Wynn Road<br>Las Vegas, NV  89118 | Lease agreement for Dash Employee Store. |
| Revel Entertainment Group, LLC | The Marshall Retail Group d/b/a Encore<br>5385 Wynn Road<br>Las Vegas, NV  89118 | Lease agreement for Core Sundries Store. |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | The Network, Inc.<br>333 Research Court<br>Norcross, Georgia 30092 | Implementation of Ethics and Compliance Program for employees |
| Revel Entertainment Group, LLC | The Network, Inc.<br>333 Research Court<br>Norcross, Georgia 30092 | Governance, risk and compliance software and services |
| Revel Entertainment Group, LLC | The Rainmaker Group Las Vegas, Inc.<br>4550 North Point Parkway<br>Suite 400<br>Atlanta, GA  30022 | Master service agreement |
| Revel Entertainment Group, LLC | The Rainmaker Group Las Vegas, Inc.<br>4550 North Point Parkway<br>Suite 400<br>Atlanta, GA  30022 | Master Services Agreement |
| Revel Entertainment Group, LLC | The Richard Stockton College of New Jersey<br><br>Carnegie Library Center<br>35 S DR Martin Luther King Bvd<br>Atlantic City, NJ  08401 | Conduct a suvey research study, analyze the results and prepare a final report |
| Revel Entertainment Group, LLC | The Ultimate Software Group, Inc<br>1485 North Park Ave.<br>Weston, FL  33326 | Intersourcing service model agreement |
| Revel Entertainment Group, LLC | The United States Playing Card Company<br>P.O. Box 824377<br>Philadelphia, PA  19182-4377 | Contract to purchase decks of custom playing cards |
| Revel Entertainment Group, LLC | The United States Playing Card Company<br>P.O. Box 824377<br>Philadelphia, PA  19182-4377 | Contract to purchase decks of custom playing cards |
| Revel Entertainment Group, LLC | Think Loud Touring, LLC<br>210 York Street #300<br>York, PA  17403 | Performance Contract - LIVE |
| Revel Entertainment Group, LLC | Thomas A Patchin<br>4017 Highland Castle Court<br>Las Vegas, NV  89129 | Digital and online marketing strategies consulting agreement |
| Revel AC, Inc. | Thomas Auriemma<br>11 Overlook Road<br>Chatham, NJ  07928 | Indemnification Agreement |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel AC, Inc. | Thomas Auriemma<br>11 Overlook Road<br>Chatham, NJ  07928 | Stock purchase agreement |
| Revel Entertainment Group, LLC | Thomas Company<br>6587 Delilah Road<br>Egg Harbor Township, NJ 08234 | Lease Agreement |
| Revel AC, Inc. | Thomas M Benninger<br>101 Baywood Avenue<br>Hillsborough, CA  94010 | Indemnification Agreement |
| Revel Entertainment Group, LLC | Ticketmaster L.L.C.<br>International Plaza #2<br>Suite 330<br>Philadelphia, PA  19113 | Activation Agreement for events at Revel |
| Revel Entertainment Group, LLC | Titus Leasing Company<br>1851 Center Street<br>Camp Hill, PA  17011 | Limo lease agreement |
| Revel Entertainment Group, LLC | T-Mobile Northeast, LLC<br>4 Sylvan Way<br>Parsippany, NJ 07054 | In-Building Telecommunications License Agreement |
| Revel AC, Inc. | Tokio Marine & Nichido Fire Insurance Company<br>230 Park Avenue<br>New York, NY 10169 | Insurance Policy |
| Revel Entertainment Group, LLC | Transervice Transportation Management<br><br>821 Shunpike Road<br>Cape May, NJ 08204 | Shuttle Services for the Fuel Merchants Association of New Jersey & Revel Entertainment |
| Revel Entertainment Group, LLC | Transperfect Legal Solutions<br>3 Park Avenue<br>39th Floor<br>New York, NY  10016 | Contracted legal services |
| Revel Entertainment Group, LLC | Transperfect Staffing Solutions<br>3 Park Avenue<br>New York, NY  10016 | Onsite Document Reviewers |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | Travelclick<br>P.O. Box 71199<br>Chicago, IL 60694-1199 | Master services agreement |
| Revel AC, Inc. | Travelers<br>770 Pennsylvania Drive, Suite 110<br>Exton, PA 19341 | Insurance Policy |
| Revel Entertainment Group, LLC | Travelocity.com<br>11603 Crosswinds Way<br>San Antonio, TX 78233 | Business Listing |
| Revel Entertainment Group, LLC | TravelZoo<br>5505 N.Cumberland ave Ste 307<br>Chicago, IL 60656-1471 | Merchant Agreement |
| Revel Entertainment Group, LLC | Tripadvisor LLC<br>141 Needham Street<br>Newton, MA 02472 | Business listing & mobile marketing agreement |
| Revel Entertainment Group, LLC | Turnberry Solutions, Inc.<br>Gwynedd Hall, Suite 401<br>1777 Sentry Parkway West<br>Blue Bell, PA 19422 | Master Consulting Agreement |
| Revel Entertainment Group, LLC | United States Playing Card Co<br>P.O. Box 824377<br>Philadelphia, PA 19182-4377 | Contract - 508,032 decks of customer playing cards |
| Revel Entertainment Group, LLC | Vantage Business Systems, Inc.<br>6019 Main Street Suite 1A<br>Mays Landing, NJ 08330 | Software Maintenance Agreement |
| Revel Entertainment Group, LLC | Vocera Communications, Inc.<br>P.O. Box 809087<br>Chicago, IL 60680-9087 | Implement a Vocera Communications System |
| Revel Entertainment Group, LLC | Vocera Communications, Inc.<br>P.O. Box 809087<br>Chicago, IL 60680-9087 | Master Purchase Agreement |
| Revel Entertainment Group, LLC | Vocera Communications, Inc.<br>P.O. Box 809087<br>Chicago, IL 60680-9087 | Customer Advantage Agreement |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | W.B. Mason Co. Inc.<br>PO Box 981101<br>Boston, MA  02298 | Office Supplies Agreement |
| Revel Entertainment Group, LLC | Wandering Wifi<br>P.O. Box 742048<br>Atlanta, GA  30374-2048 | Hotel wireless internet project agreement |
| Revel Entertainment Group, LLC | Waste Management NJ<br>100 Silvia Street<br>Ewing, NJ  08628 | Roll Off Service Agreement Non-Hazardous Waste Removal |
| Revel Entertainment Group, LLC | WCBS FM<br>345 Hudson Street<br>New York, NY  10014 | Radio Marketing Agreement |
| Revel Entertainment Group, LLC | Weatherby Construction and Renovation Corp.<br><br>147 N. Iowa Avenue<br>Atlantic City, NJ  08401 | Standard Form of Agreement Between Owner and Contractor for a Project of Limited Scope for Pearl Lounge |
| Revel Entertainment Group, LLC | Weatherby Construction and Renovation Corp.<br><br>147 N. Iowa Avenue<br>Atlantic City, NJ  08401 | Construction Management Agreement for Revel Day Club - tile for Beach Club |
| Revel Entertainment Group, LLC | Wells Fargo<br>6th and Marquette<br>Minneapolis, MN  55479 | Revel Retirement Savings Plan |
| Revel Entertainment Group, LLC | WEX Bank<br>P.O. Box 6293<br>Carol Stream, IL  60197-6293 | Deposit Agreement to establish credit line for Revel |
| Revel AC, Inc. | William P McBeath<br>2212 Paiute Meadows<br>Las Vegas, NV  89134 | Indemnification Agreement |

| SELLER ENTITY | COUNTERPARTY | DESCRIPTION |
|---|---|---|
| Revel Entertainment Group, LLC | WMS Gaming Inc<br>800 S. Northpoint Blvd.<br>Waukegan, IL  60085 | Gaming Device Agreement |
| Revel Entertainment Group, LLC | WMS Gaming Inc<br>800 S. Northpoint Blvd.<br>Waukegan, IL  60085 | Gaming Device Agreement |
| Revel Entertainment Group, LLC | WMS Gaming Inc<br>800 S. Northpoint Blvd.<br>Waukegan, IL  60085 | Gaming Device Agreement |
| Revel Entertainment Group, LLC | WMS Gaming Inc<br>800 S. Northpoint Blvd.<br>Waukegan, IL  60085 | Gaming Device Agreement |
| Revel Entertainment Group, LLC | Worth International Media Group<br>5979 N.W. 151 Street<br>Miami Lakes, FL  33014<br>Miami Lakes, FL  33014 | Media Space Contract - Sept/Oct Issue - 2 page spread |
| Revel AC, Inc. | XL<br>70 Seaview Avenue<br>Stamford, CT 06902-6040 | Insurance Policy |
| Revel AC, Inc. | XL<br>70 Seaview Avenue<br>Stamford, CT 06902-6040 | Insurance Policy |
| Revel AC, Inc. | XL<br>70 Seaview Avenue<br>Stamford, CT 06902-6040 | Insurance Policy |
| Revel AC, Inc. | XL Insurance America<br>200 Liberty Street, 21st Floor<br>New York, NY 10004 | Insurance Policy |
| Revel AC, Inc. | XL Specialty<br>70 Seaview Aveneue<br>Stamford, CT 06902-6040 | Insurance Policy |