| |
|---|
| **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY** <br> Caption in Compliance with D.N.J. LBR. 9004-2(c) <br><br> **DLA PIPER LLP (US)** <br> Stuart M. Brown (NJ ID #026641988) <br> Timothy J. Lowry (NJ ID #013342002) <br> Richard A. Chesley (admitted *pro hac vice*) <br> 17 Gordon's Alley, Suite 100 <br> Atlantic City, NJ  08401 <br> (609) 449-7000 <br><br> *Counsel to ACR Energy Partners LLC* |

| | |
|---|---|
| In re: <br><br> REVEL AC, INC., et al.[1] <br><br> DEBTORS. | Chapter 11 <br><br> Case No. 14-22654 (MBK) <br><br> Jointly Administered <br><br> **Related to Docket No. 1634** |

**PRELIMINARY REPONSE OF ACR ENERGY PARTNERS, LLC TO THE DEBTORS' OMNIBUS OBJECTION TO CERTAIN ADMINISTRATIVE EXPENSE REQUESTS**

ACR Energy Partners, LLC ("ACR Energy"), through its undersigned counsel, hereby submits this Preliminary Response (the "Response") to the Debtors' Omnibus Objection to Certain Administrative Expense Requests [Docket No. 1634] (the "Omnibus Objection") and respectfully states as follows:

**I.     PRELIMINARY STATEMENT**

In keeping with their practice of putting the cart before the horse, the Debtors now seek to disallow ACR Energy's claims for prepetition and postpetition energy services (the "Claims"), notwithstanding that the determination as to whether the Debtors may pay less than their contracted-for rate for postpetition energy services (the "CUP Motion") is currently pending

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Revel AC, Inc. (3856), Revel AC, LLC (4456), Revel Atlantic City, LLC (9513), Revel Entertainment Group, LLC (2321), NB Acquisition, LLC (9387) and SI LLC (3856). The location of the Debtors' corporate headquarters is 500 Boardwalk, Atlantic City, New Jersey 08401.

EAST\100829357.1

before the Court, with a second evidentiary hearing currently scheduled for June 4, 2015 (the "CUP Hearing"). Indeed, the Debtors' only support for their Objection to ACR Energy's postpetition claim[2] is their CUP Motion, which has created protracted litigation that is still pending before the Court.[3] It is nonsensical to consider the Omnibus Objection as to ACR Energy before the Court has made a determination as to the CUP Motion or the mediation of such issues has concluded. Accordingly, the Omnibus Objection is premature as to ACR Energy's Claims and should, therefore, be overruled.

Notwithstanding this procedural confusion, the Court must overrule the Omnibus Objection in its entirety because it clearly violates Bankruptcy Rule 3007's requirements for omnibus claims objections. Furthermore, even if the Omnibus Objection were permitted under Bankruptcy Rules, it fails to defeat the *prima facie* validity of ACR Energy's Claims. Therefore, for the many reasons set forth above, the Omnibus Objection must be overruled.

## II.    FACTUAL BACKGROUND

### A.    The Debtors' Bankruptcy Cases

1. On June 19, 2014 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2. On July 2, 2014, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a) and (b) of the Bankruptcy Code. [Docket. No. 143]. ACR Energy was appointed to serve on the Committee.

---

[2] ACR Energy asserts several administrative claims: a claim under section 503(b)(9); a claim under the holding of *In re Montgomery Ward Holding Corp.*, 268 F.3d 205 (3d. Cir. 2001) with respect to the entirety of the invoice for services rendered in June 2015; and, of course the short pay under section 366 that is the subject of the CUP Motion.

[3] ACR Energy incorporates by reference its objections and other pleadings filed with respect to the CUP Motion and related litigation. *See, e.g.*, Docket Nos. 111, 399, 644, 748, 817, 1077, 1257, and 1598.

3. By order entered on July 14, 2014, the Bankruptcy Court set August 6, 2014, as the bar date for filing nongovernmental proofs of claim. [Docket No. 225] (the "Bar Date Order").

4. On August 4, 2014, ACR Energy timely filed Proofs of Claim Nos. 180-185, and 193-198, asserting against each of the Debtors a claim in the amount of $12,069,271.00 plus unliquidated amounts, of which $2,646,230.23 is entitled to priority pursuant to Bankruptcy Code section 503(b)(9) (the "Section 503(b)(9) Claim"). *See* Attachment to Proof of Claim of ACR Energy Partners, LLC (Exhibit A). The bases for these Proofs of Claim are that certain Second Amended and Restated Energy Sales Agreement Between Revel Entertainment Group, LLC and ACR Energy Partners, LLC, Dated April 11, 2011 (the "ESA") and that certain letter agreement dated March 27, 2014 with Revel Entertainment Group, LLC, concerning deferred payments of certain amounts invoiced for January 2014 services (the "Letter Agreement"). *See id.*, ¶ 2.

5. On October 24, 2014, ACR Energy timely filed Proof of Claim No. 512; Proofs of Claim Nos. 534-539, 549-554, and 625 were timely filed on October 27, 2014; and Proofs of Claim Nos. 601-606 and 613-618 were timely filed on October 28, 2014 (collectively, the "Administrative Expense Requests" and together with the Section 503(b)(9) Claim, the "Claims"). The Administrative Expense Requests assert against each of the Debtors a claim in the amount of $9,216,790.92 for goods sold and services performed post-petition through the administrative bar date pursuant to the ESA and Letter Agreement.[4] *See* Attachment to Request for Payment of Administrative Expense of ACR Energy Partners, LLC (Exhibit B). Certain of the Administrative Expense Requests are the subject of the pending CUP Motion.

---

[4] ACR Energy has reserved its right to amend its claims to reflect any additional claims against the Debtors.

EAST\100829357.1                                      3

6. On April 24, 2015, the Debtors filed the Omnibus Objection, which includes vague objections to ACR Energy's Claims. *See* Omnibus Objection, at ¶¶ 21, 24.

**B.    The ESA**

7. As the Revel moved toward construction, it made the determination, as had a number of its competitors, to have a dedicated utility plant constructed at its location. The business rationales underlying this decision were many, including a dedicated and consistent supply of energy (including system redundancies which are critical in the gaming and hospitality industry) and cost. Indeed, a dedicated facility eliminated many of the extensive costs associated with connecting with and relying on the local utilities and created an efficient costing process that permitted the Revel to monitor and modify its energy usage.

8. Thus, Revel conducted a competitive bidding process to select a provider for its full range of energy needs, and in the end, the Debtors awarded the ESA to ACR Energy.[5] The ESA expressly states that the Debtors selected ACR Energy due to its "skill and expertise . . . in the developing, constructing, owning and operating of energy production facilities for the purpose of producing and selling various energy products and services, including thermal energy (hot water and chilled water) and generation of electricity . . . ." *See* ESA at 1 (Exhibit C). In order to supply the Debtors with the utility needs and other services required, ACR Energy constructed and developed a system consisting of the Central Energy Center ("CEC") and the Energy Distribution System ("EDS"). *See* ESA, Schedule 1 (System Descriptions and Scope of Work) at 1. The CEC includes an electrical sub-station, chiller plant and hot water boiler plant and emergency electric generation equipment, together with necessary ancillary and control equipment housed within ACR Energy's central utility plant (the "CUP") that was constructed

---

[5] Were there any doubts that ACR Energy provided the most economical proposal, in the face of exclusivity provisions in favor of ACR Energy, the Debtors entertained a competing bid by a competitor. This gamesmanship required ACR Energy to rebid its proposal on the ESA.

EAST\100829357.1                                  4

for the sole purpose of serving the Debtors' energy needs. ESA at 1. The EDS consists of the distribution piping, conduits, and equipment which convey thermal and electric energy between the CEC and the Revel facility. *Id.*

9. Through the CEC and the EDS, ACR Energy provides the necessary chilled water and hot water production,[6] primary pumping systems, high voltage electrical transformation and distribution, emergency generation, and fuel storage required to support the operation of the Revel facility. The systems were designed and developed in accordance with all applicable codes and standards and to the capacity specifically required by the Debtors. *Id.*

10. Following the award of the ESA, ACR Energy and the Debtors negotiated and ultimately agreed upon a packaged rate for providing the services under the ESA. The agreed-upon rate, which includes the "Fixed Financing Fees" and the "Operation & Maintenance Fees"[7] components, represents the fair market value of the services provided under the ESA.

11. For the reasons explained below, the Omnibus Objection should be overruled and the Claims should be allowed in the full asserted amounts.

### III.     ARGUMENT

**A.     The Objection Violates Rule 3007 and Must Be Overruled.**

12. Bankruptcy Rule 3007 provides the procedure for filing an objection to a proof of claim, and sets forth specific rules and limitations for omnibus objections. Fed. R. Bankr. P. 3007. Specifically, "[u]nless otherwise ordered by the court or permitted by subdivision (d), objections to more than one claim shall not be joined in a single objection." Fed. R. Bankr. P. 3007(c). Rule 3007(d) circumscribes the types of claims which may be joined in an omnibus

---

[6] ACR Energy manufactures hot water and cold water and generates back-up electricity at the CUP.

[7] Fixed Financing Fees and Operation & Maintenance Fees are defined in the Debtors' CUP Motion as the "fixed monthly debt and equity financing fees," and the "operation and maintenance related fees," respectively. CUP Motion at 6.

objection. Fed. R. Bankr. P. 3007(d). Subdivision (e) contain additional requirements for an omnibus objection, including that "an omnibus objection shall…contain objections to no more than 100 claims." Fed. R. Bankr. P. 3007(e).

13. The Omnibus Objection violates Rule 3007(c), (d), and (e) and, therefore, must be overruled. First, ACR Energy's Claims, which are listed on Schedule 1 as "Disputed Administrative Expense Requests," do not fall under one of the permitted categories listed in subdivision (d).[8] This is a clear violation of Rule 3007 and, pursuant to the language of the Rule itself, shall not be permitted. Additionally, even if the Omnibus Objection fell under one of the exceptions listed in subsection (d), the Omnibus Objection would still violate Rule 3007(e) because it contains over 140 claim objections – clearly violating the Rule's strict 100-claim limit. The Omnibus Objection is a flagrant violation of all of Rule 3007's requirements for omnibus claims objections. Therefore, the Court must overrule the Omnibus Objection and allow ACR Energy's Claims in their full asserted amounts.

**B.    The Omnibus Objection Fails to Defeat the *Prima Facie* Validity of ACR Energy's Claims.**

14. Under Bankruptcy Rule 3001(f), the filing of a proof of claim constitutes *prima facie* evidence of both the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). "[A] proof of claim that alleges sufficient facts to support liability satisfies the claimant's initial obligation to proceed, after which the burden shifts to the objector to produce sufficient evidence to negate the prima facie validity of the filed claim." *In re Lampe*, 665 F.3d 506, 514 (3d Cir. 2011) (citing *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173-74 (3d Cir. 1992)). Conclusory statements or generalized objections are insufficient to rebut 3001(f)'s presumption. *See, e.g., In re Patton*, 388 B.R. 629, 634-35 (Bankr. E.D. Pa. 2008) ("where the creditor endeavors, through

---

[8] For the avoidance of doubt, the Court has not authorized the Debtors to file omnibus objections outside of the requirements of Rule 3007.

the production of account histories, escrow analyses, invoices and other supplemental materials, to establish the bona fides of its claim, self-serving testimony of the Debtor will not shift the burden"); *see also In re DeAngelis Tangibles, Inc.*, 238 B.R. 96, 99 (Bankr. M.D. Pa. 1999) (a "mere allegation that the transfer of funds from claimant to Debtor is not a deposit, is insufficient to rebut the proof of claim to the contrary"). Rather, the "evidence must be sufficient to demonstrate a true dispute and must have probative force equal to the contents of the claim. Upon introduction of sufficient evidence by the objecting party, the burden of proof will fall on whichever party would bear that burden outside of bankruptcy." 9 COLLIER ON BANKRUPTCY ¶ 3001.09.

15. Here, the Debtors have failed to provide any legal or factual support for their claim that ACR Energy's Section 503(b)(9) Claim does not meet the requirements for administrative priority. Rather, the Debtors simply allege in conclusory terms that ACR's proofs of claim do not support the Debtor's obligation to pay. This allegation and the other conclusory statements in the Omnibus Objection do not overcome the presumption of validity given to ACR Energy's Claims. *See DeAngelis Tangibles*, 238 B.R. at 99.

16. As to the Debtors' objection to the Administrative Expense Requests, that issue is not ripe for determination, as the CUP Motion is still pending before the Court. ACR Energy reserves all of its rights as to this matter.

17. As a matter of law, the Omnibus Objection is insufficient to defeat the *prima facie* validity of ACR Energy's Claim, and the Omnibus Objection should be overruled.[9]

---

[9] The Debtors have not submitted any evidence to contest the amount of the Section 503(b)(9) Claim and, therefore, failed to carry their burden to rebut the Section 503(b)(9) Claim amount. *See Patton*, 388 B.R. at 634-35. That issue is now conclusively resolved.

**C.     The ESA Establishes That the Debtors Are Responsible for ACR Energy's Claims.**

18.     Although the Court need go no further to allow ACR Energy's Claims in full, the Omnibus Objection should also be overruled because the ESA's express terms require the Debtors to pay ACR Energy for "Energy Services" which is defined by the ESA to include "Thermal Energy, All Requirements Service and Emergency Generation supplied pursuant to the specifications set forth in Schedule 3," which includes hot water and chilled water and electricity.  *See* Exhibit C, ESA at 2, 12.

## IV.     CONCLUSION

19.     The Omnibus Objection should be overruled and ACR Energy's Claims should be allowed in the full amounts asserted in the Proofs of Claim.

20.     First, the Debtors' Omnibus Objection must be overruled because it clearly violates several requirements of Rule 3007.  In addition to their procedural failure, the Debtors failed to rebut the *prima facie* validity of ACR Energy's Claims.  The Omnibus Objection did not meet ACR Energy's Claims with evidence "at least equal in probative force" so as to call into doubt the Claims' *validity* and wholly failed to bring forth any evidence to contest the *amount* of such Claims.  Because the Debtors did not carry their burden of rebutting ACR Energy's Claims, the Claims should be allowed in their entirety.

21.     For the foregoing reasons, ACR Energy respectfully requests that the Court overrule the Debtors' Objection and allow ACR Energy's Claims in the full amount and with the priority asserted.

Dated: May 19, 2015

**DLA PIPER LLP (US)**
By:  */s/ Stuart M. Brown*
Stuart M. Brown (NJ ID #026641988)
Timothy J. Lowry (NJ ID #013342002)
Richard A. Chesley (admitted *pro hac vice*)
17 Gordon's Alley, Suite 100
Atlantic City, NJ  08401
(609) 449-7000

*Counsel to ACR Energy Partners, LLC*